# EXHIBIT A

AGREEMENT

This June 10, 1997, MONTGOMERY MATERIALS COMPANY, L.L.C., an Alabama limited liability company (hereinafter "Montgomery, LLC") THE CONCRETE COMPANY, a Georgia corporation, (hereinafter "Concrete"), MMC HOLDINGS, INC., an Alabama corporation (hereinafter "Montgomery, Inc."), FRANK D. FOLEY, III, an individual resident of the State of Georgia (hereinafter "Foley") and HARRY E. LAMBERT, an individual resident of the United States (hereinafter "Lambert"), for the premises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:

1. <u>Recitals</u>. The following recitals are a material part of this Agreement:

(a) On or about June 4, 1997 Montgomery, Inc. acquired by merger all assets and liabilities of Beaver Rock, Inc. ("Beaver Rock");

(b) Concrete and Montgomery, Inc. each have contemporaneously herewith acquired fifty percent (50%) of the Membership Interests in Montgomery, LLC which was formed for the purpose of acquiring the business of Montgomery, Inc. and excavating, mining, selling and distributing sand, gravel, clay and/or topsoil (each of the foregoing is herein called a "Product") in the Montgomery, Alabama area; and

(c) Concrete, as consideration for its fifty percent (50%) Membership Interest in Montgomery, LLC, contributed $300,000 in cash, and Montgomery, Inc. contributed the "Transferred Assets" (herein so called) described on Exhibit "A" attached hereto and made a part hereof in consideration for its fifty percent (50%) Membership Interest and the assumption by Montgomery, LLC of certain "Assumed Liabilities" (herein so called) of Montgomery, Inc. and Beaver Rock described on Exhibit "B" attached hereto and made a part hereof;

(d) Foley and Lambert are shareholders of Concrete and Montgomery, Inc., respectively, and therefore benefit by the terms of this Agreement; and

(e) Concrete and Montgomery, Inc. wish to reduce to writing the terms of an Agreement whereby Concrete and Montgomery, Inc., must first offer its Membership Interest in Montgomery, LLC to Montgomery, LLC and the other Members before selling or otherwise conveying such interest to an unrelated third party, and whereby either Concrete or Montgomery, Inc., may cause the other to either purchase or sell (such selling party may be hereinafter referred to as "Seller" and such purchasing party may hereinafter be referred to as "Purchaser") its Membership Interest pursuant to the terms of this Agreement; and

C0593-123
41024.3

1

(f)  Both Concrete and Montgomery, Inc. acknowledge that neither would have been willing to organize and capitalize Montgomery, LLC or be willing to purchase the other's Membership Interest upon the terms contained herein without assurance by the other, including the shareholders named herein, that such parties will not engage in the activities prohibited by Paragraph 8 hereinbelow as and for the period set forth, and, in order to induce the Buyer to consummate the acquisition of such Membership Interest the Seller agrees to restrict its actions throughout the Territory (as herein defined), or otherwise as provided in this Agreement.  All of the parties hereto acknowledge that such restrictions are reasonable in light of the business engaged in and planned to be engaged in by Montgomery, LLC, and in light of the benefit to the Seller and its shareholders of the purchase by the Buyer of the Seller's Membership Interest in Montgomery, LLC and do not place an undue hardship on the Seller and its shareholders.

2.  Definitions.  The following definitions shall control the meaning of the respective terms:

2.1. Alabama Act.  The Alabama Limited Liability Company Act at Code of Alabama § 10-12-1, et seq.

2.2. Continuing Members.  "Continuing Members" means those Members who are not terminating their interests in Montgomery, LLC.

2.3  Effective Date.  May 1, 1997.

2.4. Member.  Each of the parties who executed a counterpart of the Operating Agreement as a Member and each of the parties who may thereafter have become Members or may hereafter become Members pursuant to the terms of the Operating Agreement.

2.5. Membership Interest.  A Member's entire interest in Montgomery, LLC consisting of such Member's Financial Rights and Governance Rights as defined in the Alabama Act.

2.6  Operating Agreement.  The Operating Agreement of Montgomery Materials Company, LLC executed the date hereof, as amended from time to time.

2.7. Terminating Members.  "Terminating Member" means the Member (or Members) which is terminating its interest in Montgomery, LLC.

3.  General Terms.

3.1. Effect on Other Agreements.  Unless expressly provided herein  otherwise, nothing contained in this Agreement shall

discharge, release, or otherwise change, amend, or alter any sums due, or rights under, any employment contract or other employment arrangement between Montgomery, LLC and any party hereto. Further, no other contractual relationship between Montgomery, LLC and a Member or between Members shall be affected by this Agreement save one that attempts to define or speak to the terms of this Agreement, in which case the other contract shall be null and void unless it is in writing, it expressly indicates that it is amending this Agreement, and it is signed by Montgomery, LLC and all Members.

3.2. **Rights of Transferees**. All (1) assignees, transferees, trustees, receivers, or others who obtain an interest in the Membership Interests, whether by attachment, execution, bankruptcy law, receivership law, or otherwise by operation of law, and (2) assignees, transferees, secured parties, creditors, and others who obtain an interest in the Membership Interests, whether or not said transfer occurred with the consent of Montgomery, LLC, take subject to the terms and conditions of this Agreement.

3.3. **Rights of Continuing Members**. Unless otherwise expressly provided herein, any rights of the Continuing Members hereunder shall be shared among them proportionately according to the Membership Interests that each owns in relation to the total owned by all Continuing Members. If one or more Continuing Members decline to participate in the exercise of a right, the remaining Continuing Members shall share the right proportionately according to the Membership Interest that each owns in relation to the total owned by all of the Continuing Members who exercise the right. If only one Continuing Member desires to exercise the right, he may do so, and, by reason of such exercise, he shall be under no fiduciary duty to the other Continuing Members who declined to participate, and the Continuing Member who elects to act may purchase control of Montgomery, LLC.

3.4. **First lien**. All rights of Montgomery, LLC and Members under this Agreement shall be a first lien or encumbrance upon the Membership Interest of each Member. No transfer (as hereinafter defined), whether or not consented to by Montgomery, LLC, shall release any Membership Interest from the force and effect of this Agreement.

4. **Transferred Assets; Assumed Liabilities; Representations and Warranties**.

4.1. **Transferred Assets**. Montgomery, Inc. hereby sells, assigns, transfers, conveys, and delivers the Transferred Assets to Montgomery, LLC, free and clear of all liens and encumbrances other than the Assumed Liabilities in the amounts shown on Exhibit "B".

4.2. <u>Assumed Liabilities</u>. Montgomery, LLC hereby assumes and agrees to timely pay and discharge the Assumed Liabilities.

4.3. <u>Representations and Warranties of Lambert and Montgomery, Inc.</u>

Lambert and Montgomery, Inc. jointly and severally represent and warrant to the other parties hereto as follows:

(1) Montgomery, Inc. has herewith vested in Montgomery, LLC, good and marketable title to the Transferred Assets, free of all claims, liens, and encumbrances other than the Assumed Liabilities.

(2) The Transferred Assets constitute all of the assets used by Montgomery, Inc. in its sand and gravel business on the Effective Date.

(3) The outstanding amount of each Assumed Liability (including accrued interest and other charges) as of the Effective Date as shown on Exhibit "B" is correct.

(4) The amount of the Assumed Liabilities outstanding (including accrued interest and other charges) as of the Effective Date exceeds the "Value" (as hereinafter defined) of the Transferred Assets by no more than $15,136. The Value of all Transferred Assets is the net book value thereof immediately prior to the Effective Date as owned by Montgomery, Inc. and Beaver Rock determined according to the method utilized by Montgomery, Inc. and Beaver Rock for purposes of generally accepted accounting principles.

(5) The Combined Financial Statements of Montgomery, Inc. and Beaver Rock as of December 31, 1996, attached hereto and made a part hereof as Exhibit "C" is complete and correct, and fairly represents the combined financial condition of Montgomery, Inc. and Beaver Rock as of December 31, 1996, and the combined results of operations for the period covered thereby.

(6) The Balance Sheet of Montgomery, Inc. as of April 30, 1997, attached hereto and made a part hereof as Exhibit "D" is complete and correct, and fairly represents the financial condition of Montgomery, Inc. The financial condition of Beaver Rock as of April 30, 1997 is not significantly different from the financial condition as of December 31, 1996.

(7) The Mining Lease Agreement dated December 2, 1994, between SFP, LTD, an Alabama Limited Partnership, and Beaver Rock, as Lessee, as assigned by Beaver Rock to Montgomery, Inc., is in full force and effect, Montgomery, Inc. is the current "Lessee" thereunder, and there are no defaults by the Lessor or the Lessee thereunder.

4.4 <u>Adjustments to Montgomery, Inc.'s Contribution</u>. Lambert and Montgomery, Inc, jointly and severally, will pay to Montgomery, LLC on August 1, 1997, the amount, if any, by which the excess of (1) the Assumed Liabilities outstanding (include accrued interest and other charges) as of the Effective Date over (2) the Value of the Transferred Assets as of the Effective Date, exceeds $15,136. For purposes of this section, the Value of Accounts Receivable as of the Effective Date is the amount of such Accounts Receivable collected by Montgomery prior to August 1, 1997. Upon such payment, Montgomery, LLC will assign to Montgomery, Inc. any of the Accounts Receivable which had not been collected by August 1, 1997.

4.5 <u>Payment of Assumed Liabilities</u>. If Lambert and/or Montgomery, Inc. pay any of the Assumed Liabilities for which either or both of them is liable, whether as a result of the failure of Montgomery, LLC to pay such Assumed Liabilities or otherwise, Concrete, within ten (10) days after written request therefor is given to it by Lambert and Montgomery, Inc., will reimburse the payor one-half (1/2) of the amount of the Assumed Liabilities so paid, including interest and other charges accruing thereon after the Effective Date.

4.6 <u>Operation of Montgomery, Inc. and Beaver Rock Since Effective Date</u>. Notwithstanding that the contributions by Concrete and Montgomery, Inc. to Montgomery, LLC are being made on the date hereof, the parties agree that Montgomery, LLC will become the "Owner" of the sand and gravel business of Montgomery, Inc. "as of" the Effective Date. Therefore, on or after the Effective Date all receipts of Montgomery, Inc. and Beaver Rock with respect to such sand and gravel business are the property of Montgomery, LLC and shall be transferred to Montgomery, LLC, and all disbursements of Montgomery, Inc. and Beaver Rock with respect to such sand and gravel business shall be paid from and charged against such receipts.

5. <u>Restrictions on Disposition</u>. No Member shall transfer his Membership Interests except as expressly permitted in this Agreement and the Operating Agreement, and any such transfer which is not permitted by and in strict compliance with the terms of this Agreement and the Operating Agreement shall be null and void, shall not be recognized by Montgomery, LLC for any purpose, and the transferee of such purported transfer shall have no right, title, or interest in such Membership Interests as a result thereof. The term "transfer" as used herein includes, but is not limited to, a sale, exchange, hypothecation, assignment, gift, pledge, transfer through legal action such as divorce, levy, attachment, foreclosure or sale by the holder of a security interest, judgment, garnishment, bankruptcy, or otherwise, or any other encumbrance of the Membership Interests.

C0593-123
41024.1

5

5.1. <u>Operating Agreement Controlling</u>. A transfer of a Membership Interest pursuant to this Agreement shall be deemed to be in compliance with the Operating Agreement. Each Member agrees to execute such consent or consents as may be necessary to approve the transfers contemplated herein in strict compliance with the terms of the Operating Agreement. A Member shall have no rights hereunder with respect to the transferability of a Membership Interest or any part thereof in contravention of the terms of the Operating Agreement.

5.2. <u>Transfer of Membership Interest</u>. A Member may transfer its Membership Interest, subject to the provisions hereof, if Montgomery, LLC and the Continuing Members do not exercise their respective options to purchase such Membership Interest as hereinafter set forth.

5.2.1. <u>Notice to Montgomery, LLC</u>. The Member desiring to transfer its Membership Interest (hereinafter referred to as the "Offering Member") shall first offer to sell its Membership Interest to Montgomery, LLC at the same purchase price and upon the terms and conditions contained in a bona fide written offer from any non-related third party. Such offer to Montgomery, LLC shall specify in reasonable detail the facts and circumstances of the proposed transfer of the Membership Interest, including the name and address of each prospective transferee, the percentage interest involved in the proposed transfer, the terms under which such transfer is to take place and shall include a copy of the third party offer.

5.2.2. <u>Option To Montgomery, LLC and Continuing Members</u>. Montgomery, LLC may, but shall not be required to, purchase the Membership Interest proposed to be transferred by notifying the Offering Member of its acceptance of such offer within sixty (60) days after notice of said offer is given by the Offering Member. Should Montgomery, LLC fail to accept the offer within thirty (30) days after notice of said offer is given, or shall give written notice of the non-exercise of the option, then the Offering Member shall notify all Continuing Members within five (5) days that the offer has been extended and no response received (or offer declined in the case of written notice) and each Continuing Member shall then have the option to purchase the Offering Member's Membership Interest, or any part thereof as to which Montgomery, LLC does not exercise its option, upon the same terms and conditions offered to Montgomery, LLC, and in the proportion that such Continuing Member's Membership Interest bears to the Membership Interests of all Continuing Members desiring to purchase the Offering Member's Membership Interest, subject however, to the right of Montgomery, LLC to accept the offer prior to the expiration of the above 60 day period. While any Continuing Member may give notice of intention to purchase the Offering Member's Membership Interest prior to the expiration

of the 60 day option period to Montgomery LLC, no Continuing Member may accept such offer until the earlier of (i) the expiration of the 60 day option period to Montgomery, LLC, or (ii) the receipt by the Continuing Member of written notification of non-acceptance by Montgomery, LLC. A Continuing Member shall have the right to accept such Offering Member's offer (should Montgomery, LLC fail to accept the offer in full or in part) at any time during the 30 day period following the first to occur of (i) the expiration of Montgomery, LLC's option period or (ii) the receipt by such Continuing Member of notice of Montgomery, LLC's non-exercise. Closing shall occur within thirty (30) days of delivery of notice, whether by Montgomery, LLC or one or more Continuing Members, of acceptance of the Offering Member's offer. Anything to the contrary contained herein notwithstanding, in no event shall any combination of Montgomery, LLC and Continuing Members be allowed to accept such Offering Member's offer with respect to less than the entire interest proposed to be transferred pursuant to such Offering Member's offer. Should Montgomery, LLC accept such Offering Member's offer with respect to less than the entire interest proposed to be transferred, then closing of such purchase shall be delayed until such time as one or more of the Continuing Members have accepted the Offering Member's offer with respect to any remaining interest proposed to be transferred. If the Continuing Members do not accept such Offering Member's offer with respect to the remainder of such interest proposed to be transferred, then Montgomery, LLC's acceptance with respect to less than the entire interest proposed to be transferred shall be deemed non-exercise of its option and the Offering Member shall be free to transfer such interest pursuant to Section 5.2.3 hereinbelow.

    5.2.3  <u>Nonexercise Of Option</u>. If notice of acceptance of such offer is not given by Montgomery, LLC or the Continuing Members within the periods hereinabove provided, then the Offering Member may make a bona fide transfer of its Membership Interest to the prospective transferee named in said offer, but such transfer shall be made only in strict accordance with the terms stated in such offer and only after such transferee agrees in writing to become a party to and be bound by the terms of this Agreement, including Section 5.3. Such transfer shall be made within the thirty (30) day period next following the expiration of the period hereinabove set forth for the acceptance of such offer by the Continuing Members. If such Membership Interest is not transferred to such prospective transferee within the period hereinabove provided, the Membership Interest shall again become subject to the provisions of this Section 5 as though it had never been so offered.

    5.3  <u>Obligation to Purchase or Sell in Certain Events</u>. This section shall be applicable notwithstanding that an event of dissociation may have occurred.

(a) One or more Members (hereinafter collectively referred to as the "Activating Members") may at any time require that the other Member or Members (hereinafter collectively referred to as the "Electing Members") either (i) purchase all of the Activating Members' Interests in the Company or (ii) sell all of the Electing Members' Interests in the Company to the Activating Members, subject to the terms and conditions herein. For purposes of this Section only, a Member's "Interest" in the Company shall include, in addition to all Governance Rights and Financial Rights owned by the Member, all other Financial Rights which are associated with the Governance Rights owned by the Member notwithstanding that such Financial Rights have been transferred by the Member to third parties. Such third parties shall be subject to and bound by all of the provisions of this Section, but shall have no right to participate in any elections pursuant to this Section.

(b) The Activating Members shall notify the Electing Members that the provisions of this Section are being activated. The notice shall set forth a "Cash Price" (herein so called) for all assets of Montgomery, LLC, subject to all liabilities of Montgomery, LLC, (which may include a formula and/or components established with reference to items which cannot be definitely determined until or after closing) at which the Activating Members are willing to either sell all their Interests or purchase all of the Interests of the Electing Members for cash; provided however, if the election of the Electing Members is made on or before April 30, 2000, the Cash Price used to determine the amount of cash actually paid to the Selling Members (after pre-closing and post-closing adjustments as provided in the preceding parenthetical) shall not be less than One Million Two Hundred Thousand Dollars ($1,200,000.00). The price of an Interest shall be the cash price for the entire company set forth in the notice multiplied by the percentage interest of the Interest being purchased. The Electing Members shall have a period of one hundred twenty (120) days after such notice is given to elect to either purchase all of the Interests owned by the Activating Members or sell to the Activating Members all of the Interests owned by the Electing Members, at the price so set forth by the Activating Members. An Electing Member who fails to make an election shall be deemed to have sold its Interest to the Activating Members. If all the Electing Members do not make the same election, then each Electing Member who elected to purchase the Interests of the Activating Members shall have a period of ten (10) days after all elections are made to change its election from an election to purchase the Activating Member's Interests to an election to sell its Interests to the Activating Members by giving written notice to all other Members. The Members (either Activating Members or Electing Members, as the case may be) who become obligated to purchase the Interests from the other Members shall purchase all of the Interests owned by the other Members in proportion to the relative percentage interests owned by the pur-

chasing Members. The closing of the purchase of the Interests provided for herein shall take place simultaneously no later than fifteen (15) days after the giving of the final notice herein which establishes which Members will purchase and which Members will sell or, if notices have not been given, no later than fifteen (15) days after the last date for the giving of the final notice which would determine which Members will sell and which Members will purchase. At the closing, the Selling Members and owners of any associated Financial Rights will convey their Interests by assignment with general warranty, free and clear of all liens and encumbrances.

(c) At the closing, the purchasing Members will cause the Selling Members and owners of any associated Financial Rights to be released from all guaranties of and other contractual obligations for liabilities of Montgomery, LLC.

5.4. <u>Right to Assign</u>. Any Member purchasing a Membership Interest pursuant to this Section 5, shall have the right to assign such right to purchase to any related or affiliated party of such Member, in whole or in part.

6. <u>Purchase Price</u>.

6.1. <u>Payment of Purchase Price</u>. The purchase price for any Membership Interest being purchased pursuant to this Agreement shall be paid at the Closing (as defined hereinbelow) as follows:

6.2. <u>Payment of Indebtedness</u>. A part or all of the purchase price, as the case may be, shall first be applied to the payment of all amounts of every nature whatsoever owed by the seller or a shareholder of seller who is a party to this Agreement or his estate, as the case may be, to the purchaser, without regard to whether such amounts are by the terms of the evidences of indebtedness then due;

6.3. <u>Cash Payment</u>. The amount, if any, by the purchase price exceeds the amount applied against indebtedness pursuant to Section 6.2. shall be paid in cash at Closing;

6.4. <u>Payment of Other Indebtedness</u>. At the Closing all indebtedness of the purchaser or a shareholder of purchaser who is a party to this Agreement or his estate, as the case may be, to the seller (other than indebtedness representing the purchase price) and all accrued interest thereon shall become immediately due and payable, and the seller shall not be required to consummate the sale of the Membership Interest until such indebtedness is paid in full.

7. <u>Closing</u>. The Closing (herein referred to as the "Closing") of the purchase of the Membership Interest provided

for in this Agreement shall be on such dates as the purchaser and seller agree within the periods provided herein, but if no such Agreement is reached, then on the last business day within such period for Closing. The Closing shall take place at the principal offices of Montgomery, LLC, or in such other place as purchaser and seller may agree.

    8.   <u>Non-competition Provisions</u>.

    8.1. <u>Territory</u>. The parties hereto acknowledge that Montgomery, LLC presently operates and sells Product in all locations which are within 60 miles (measured in a straight line by air) from the present limits of the City of Montgomery, Alabama (the area contained within 60 miles of the present limits of Montgomery, Alabama is herein called the "Territory").

    8.2. <u>During Co-Ownership</u>. Except as otherwise provided in Section 8.6, so long as both Concrete and Montgomery, Inc. own a Membership Interest in Montgomery, LLC none of Montgomery, Inc., Concrete, Foley or Lambert, or any entity, other than Montgomery, LLC, in which any of them has an ownership interest will engage in the excavation, mining, selling, delivery, or distribution, or other disposition of Product within the Territory. In addition, so long as both Concrete and Montgomery, Inc., own a Membership Interest in Montgomery, LLC, any opportunity for leasing or otherwise obtaining additional sources of Product within the Territory, now or hereafter known to Concrete, Montgomery, Inc., Foley, Lambert or any entity in which any of them has an ownership interest shall be first the opportunity of Montgomery, LLC, and none of the foregoing shall take advantage of such opportunity until both Concrete and Montgomery, Inc. elect that Montgomery, LLC shall refuse it.

    8.3. <u>Montgomery, Inc.; Concrete</u>. If either Montgomery, Inc. or Concrete transfers all its Membership Interest in Montgomery, LLC to the other or to any third party, then except as otherwise provided in Section 8.6, during the five-year period beginning with the transfer (the "Period") such transferring party shall not:

    (1) engage in the Territory in the business of excavating, mining, distributing, delivering, selling, or otherwise disposing of any Product at wholesale or retail, (such business is herein referred to as the "Prohibited Activity");

    (2) in the Territory (i) have any interest in (whether as a shareholder, partner, member or otherwise), (ii) act as agent, broker, or distributor for or advisor or consultant to, or (iii) in any way assist (whether by solicitation of customers or employees or otherwise), any person, firm, corporation or business entity which is engaged, or which he reasonably knows is

undertaking to become engaged, in the Territory in the Prohibited Activity;

(3) in the Territory induce a Customer (as defined below): (i) to purchase any Product in the Territory from any business entity operating in the Territory (other than Montgomery, LLC or its affiliates); or (ii) to withdraw, curtail or cancel such Customer's business with Montgomery, LLC. As used in this subsection, "Customer" means any actual customer who purchased any Product from Montgomery, LLC in the Territory, within the twenty-four month period prior to the date of the closing of the sale by Montgomery, Inc. or Concrete of its Membership Interest in Montgomery, LLC;

8.4. **Lambert.** If Montgomery, Inc. transfers its entire Membership Interest in Montgomery, LLC to Concrete or any other party, Lambert agrees that during the Period he will not:

(1) engage, as an employee or otherwise, in the Territory in the Prohibited Activity;

(2) in the Territory (i) have any interest in (whether as a shareholder, partner, member or otherwise), (ii) act as agent, broker, or distributor for or advisor or consultant to, or (iii) in any way assist (whether by solicitation of customers or employees or otherwise), any person, firm, corporation or business entity which is engaged, or which he reasonably knows is undertaking to become engaged, in the Territory in the Prohibited Activity;

(3) in the Territory induce a Customer (as defined below): (i) to purchase Product in the Territory from any business entity operating in the Territory (other than Montgomery, LLC or its affiliates); or (ii) to withdraw, curtail or cancel such Customer's business with Montgomery, LLC. As used in this subsection, "Customer" means any actual customer who purchased Product from Montgomery, LLC in the Territory, within the twenty-four month period prior to the date of the closing of the sale by Montgomery, Inc. of its Membership Interest in Montgomery, LLC;

8.5 **Foley.** If Concrete transfers its entire Membership Interest in Montgomery, LLC to Montgomery, Inc. or any other party, Foley agrees that, except as provided in Section 8.6 herein, during the Period he will not:

(1) engage, as an employee or otherwise, in the Territory in the Prohibited Activity;

(2) in the Territory (i) have any interest in (whether as a shareholder, partner, member, or otherwise), (ii) act as agent, broker, or distributor for or advisor or consultant to, or (iii)

in any way assist (whether by solicitation of customers or employees or otherwise), any person, firm, corporation or business entity which is engaged, or which he reasonably knows is undertaking to become engaged, in the Territory in the Prohibited Activity;

(3) in the Territory induce a Customer (as defined below): (i) to purchase Product in the Territory from any business entity operating in the Territory (other than Montgomery, LLC or its affiliates); or (ii) to withdraw, curtail or cancel such Customer's business with Montgomery, LLC. As used in this subsection, "Customer" means any actual customer who purchased products from Montgomery, LLC in the Territory within the twenty-four month period prior to the date of the closing of the sale by Concrete of its Membership Interest in Montgomery, LLC.

8.6. _Exceptions for Foley and Concrete_. Notwithstanding anything contained in this Agreement to the contrary, Concrete and Foley may engage in the following activities in the Territory at the times indicated:

(1) Subject to the Requirements and Supply Contract entered into between Concrete and Montgomery, LLC contemporaneously herewith, mining and selling Product from the "Ward Property" (herein so called and more particularly described on Exhibit "E" attached hereto) it presently leases in Macon County, Alabama at any time;

(2) Subject to the Requirements and Supply Contract entered into between Concrete and Montgomery, LLC contemporaneously herewith, mining and selling Product from the "Dozier Property" (herein so called and more particularly described on Exhibit "F" attached hereto) it presently leases in Montgomery County, Alabama at any time after the first to occur of (a) April 30, 2001, and (b) the time when either Concrete or Montgomery, Inc. no longer owns an interest in Montgomery, LLC;

(3) Subject to the Requirements and Supply Contract entered into between Concrete and Montgomery, LLC contemporaneously herewith, obtaining Product for use in its own operations from any source;

(4) Selling Product as part of Ready-Mix concrete and in raw form as an incidental part of the Ready-Mix concrete business.

9. _Remedies_. The parties hereto acknowledge that any violation of this Agreement may cause irreparable harm to Montgomery, LLC and damages are not an adequate remedy. The parties therefore agree that Montgomery, LLC shall be entitled to an

injunction by an appropriate court in the appropriate jurisdiction, enjoining such party from the continuance of any violation, in addition to any monetary damages which might occur by reason of the violation of the prohibitions of this Agreement. Nothing in this Agreement shall restrict any rights that the Montgomery, LLC may have at law or in equity with respect to matters covered by this Agreement.

10. <u>Disclosure</u>. The parties hereto agree that any party may disclose the provisions of this Agreement in connection with the sale of such party's Membership Interest or as required by law.

11. <u>Severability, Modification</u>.

11.1. The covenants set forth in this Agreement shall be deemed and shall be construed as separate and independent covenants, and should any part or provision of such covenants be held invalid, void or unenforceable by any court of competent jurisdiction, such invalidity, voidness or unenforceability shall in no way render invalid, void or unenforceable any other part or provision thereof or any separate covenant not declared invalid, void or unenforceable; and this Agreement shall in that case be construed as if the void, invalid or unenforceable provision were omitted.

11.2. The parties agree that should any portion, provision or clause of this Agreement be deemed too broad to permit enforcement to its full extent, then it shall be enforced to the maximum extent permitted by law, and the parties hereby consent and agree that such scope may be judicially modified accordingly in any proceeding brought to enforce such restriction.

11.3. This Agreement is separate from and independent of each and any other agreements between the parties in any capacity, and the existence of any claim or cause of action of one party against the other, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement of this Agreement. The sole consideration given by the parties for this Agreement was as set forth herein, and the parties' obligations under this Agreement are in no manner contingent or conditioned upon the performance of obligations under any other agreement.

12. <u>Notices</u>. Any notice required permitted to be given to one party by another party hereto and any election to be made pursuant to this Agreement shall be in writing and shall be personally delivered or sent by United States mail, certified or registered, return receipt requested, first class postage and

charges prepaid, in envelopes addressed to the parties as follows:

| | |
|---|---|
| Montgomery, LLC: | c/o Harry E. Lambert<br>26 Carol Villa<br>Montgomery, Alabama   36109 |
| Montgomery, Inc: | c/o Harry E. Lambert<br>26 Carol Villa<br>Montgomery, Alabama   36109 |
| Harry E. Lambert: | 26 Carol Villa<br>Montgomery, Alabama   36109 |
| Concrete or Foley: | The Concrete Company<br>Attention:  Frank D. Foley, III<br>P. O. Box 7877<br>Columbus, Georgia   31908-7877 |
| With a copy to: | Charles H. Ford, Jr.<br>Page, Scrantom, Sprouse<br>Tucker & Ford, P.C.<br>P. O. Box 1199<br>Columbus, Georgia   31902 |

or at such other addresses as shall be designated in writing as aforesaid by either party to the other party hereto. Notices delivered in person shall be effective on the date of delivery. Notices and elections sent by United States mail shall be effective upon the date of mailing.

13. **Amendments**. No amendment or modification of this Agreement shall be valid or binding unless made in writing and executed by all of the parties hereto.

14. **Waiver**. The waiver by one party of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach of the same or any other provision by the other party.

15. **Governing Law**. This Agreement shall be construed in accordance with the laws of the State of Alabama.

16. **Nouns, Pronouns, Singular and Plural**. Any masculine personal pronouns shall be considered to mean the corresponding feminine (or neuter) personal pronoun. Any terms in the singular number shall include the plural and those in the plural shall include the singular, all as the context may require.

17. <u>Entire Agreement</u>. This Agreement and the exhibits attached hereto, constitute the entire agreement and understanding among the parties hereto and supersede and revoke any prior agreement or understanding relating to the subject matter of this Agreement.

18. <u>Beneficiaries; Assignment</u>. The rights and obligations of the parties hereto shall inure to the benefit of and shall be binding upon their respective heirs, personal representatives, successors, and assigns. Without in any way limiting the generality of the foregoing, a purchaser's rights and privileges hereunder may be assigned to any person, firm, organization, or corporation which is succeeding to any part or all of the business of the purchaser.

19. <u>Counterparts</u>. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

20. <u>Captions</u>. The captions used in this Agreement are inserted for convenience only and shall not constitute a part hereof.

21. <u>Attorney Fees</u>. The prevailing party in any litigation with respect to this Agreement shall be reimbursed by the opposing parties for its reasonable attorneys fees and expenses incurred in connection with such litigation.

IN WITNESS WHEREOF, the undersigned parties have entered into and executed this Agreement under seal as of the day and year first above written.

MONTGOMERY, LLC:

MONTGOMERY MATERIALS COMPANY, LLC

By all its Members,

MMC HOLDINGS, INC.

By: _____
HARRY E. LAMBERT, President

THE CONCRETE COMPANY

By: _____
FRANK D. FOLEY, III, President

MONTGOMERY, INC.:

MMC HOLDINGS, INC.

By: _____
Title: HARRY LAMBERT, President

CONCRETE:

THE CONCRETE COMPANY

By: _____
  FRANK D. FOLEY, III, President

FOLEY:

_____ (L.S.)
FRANK D. FOLEY, III

LAMBERT:

_____ (L.S.)
HARRY E. LAMBERT

SCHEDULE OF EXHIBITS

Exhibit "A" - Transferred Assets

Exhibit "B" - Assumed Liabilities

Exhibit "C" - Combined Financial Statements of Montgomery Materials Company, Inc. and Beaver Rock, Inc. as of December 31, 1996

Exhibit "D" - Balance Sheet of Montgomery Materials Company, Inc. of April 30, 1997

Exhibit "E" - Legal Description of Ward Property

Exhibit "F" - Legal Description of Dozier Property