IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE CONCRETE COMPANY, | |
| PLAINTIFF, | |
| vs. | CASE NO. 2:05-CV-1026-CSC |
| HARRY E. LAMBERT, CAROL'S CONTRACTING, INC., and ALABAMA GRAVEL, LLC, | |
| DEFENDANTS. | |

**DEFENDANT HARRY E. LAMBERT'S BRIEF IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

In support of his Motion for Summary Judgment, Defendant Harry E. Lambert ("Lambert") submits the following:

<u>**Introduction**</u>

On October 25, 2005, Plaintiff The Concrete Company ("TCC") filed this action against Lambert and others alleging breach of contract, tortious interference with contractual and business relations, and conspiracy. [Doc. 1-1]  Specifically, TCC claims that Lambert breached the terms of a five-year, non-compete provision of a 1997 agreement. [Doc. 1-1, ¶¶ 41-48]  Such provisions are generally against public policy because they restrain free trade.  Under Alabama law, such a provision in a buy-sell agreement is enforceable only as long as the buyer remains

in a "like" business, which, in this case, means the sand and gravel business. On April 1, 2005, TCC transferred all of its assets to another company and since that time has been merely a holding company. [Exhibit C] Thus, the non-compete provision was not legally enforceable when this suit was filed in October 2005. At a minimum, TCC cannot claim damages arising out of the non-compete provision as of April 1, 2005, and Lambert is entitled to judgment as a matter of law as to any actions he allegedly took on or after that date. The evidence is further undisputed that co-defendant Alabama Gravel began selling gravel products after April 1, 2005 and that co-defendant Carol's Contracting, Inc. began hauling gravel for Alabama Gravel after April 1, 2005. [Exhibits F & G]

## Statement of Undisputed Facts

1. Plaintiff TCC is a Georgia corporation formerly engaged in the concrete and sand and gravel business. [Exh. A, pg. 3; Exh. B, 7:11-8:7; 10:9-10:19; Exh. C, 21:10-21:16.]

2. In 1997, TCC and MMC Holdings, Inc. formed Montgomery Materials Company, L.L.C., ("Montgomery Materials"), an Alabama company engaged in the mining of sand and gravel. [Doc. 1-1 ¶11.]

3. The formation of Montgomery Materials was a joint venture between TCC and MMC Holdings, Inc. ("MMC"). [*Id.*]

4. At that time, Lambert was the sole shareholder of MMC. [Exh. A, pg. 7.]

5. As of January 2, 2001, MMC was deemed to have sold its interest in Montgomery Materials to TCC pursuant to a forced buy-out. [Doc. 28 (Exh. A thereto).]

6. Foley Materials Company ("Foley Materials") is a Georgia corporation formed on or around April 1, 2005. [Exh. C, 12:20-12:21; 16:15-16:20.]

7. Foley Materials operates sand and gravel pits in the Montgomery area. [*Id.*, 13:10-14:10; 27:11-28:1.]

8. Foley Materials is not a party to this action. [Doc. 1-1.]

9. Plaintiff TCC transferred all of its assets (i.e., sand and gravel operations in the Montgomery area) to Foley Materials on April 1, 2005. [Exh. C, 17:13-21:1; Exh. D.]

10. Since that date, TCC has operated solely as a holding company and has not been engaged in the sand and gravel business in the Montgomery area or anywhere else. [Exh. C, 14:16-15:4; 21:10-21:16.] TCC filed this action on October 25, 2005. [Doc. 1-1.]

11.     The 1997 agreement between TCC and MMC included, among other things, a buy-sell provision and a non-compete provision.[1]  [Doc. 1-2, ¶¶5, 8.]

12.     The non-compete provision purports to prohibit Lambert from engaging in certain activities for a period of five years in the event the buy-sell provision is ever triggered, i.e., if MMC ever transferred its entire interest in Montgomery Materials to any other individual or entity, including TCC.  [Doc. 1-2, ¶8.]

13.     The non-compete provisions expired by their own terms on January 2, 2006.  [Doc. 29 ¶3.]

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. Pro. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S. 317,

---

[1] The buy-sell provision was the subject of a declaratory judgment action filed by TCC against MMC in 2001. [Exh. A.]  Only the non-compete provision is the subject of this litigation.

323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); see also <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  See Fed. R. Civ. Pro. 56(e).

The court's role at the summary judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 105 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

## TCC does not have standing to enforce the non-compete provisions in place of Montgomery Materials

In its first cause of action, TCC alleges that Lambert breached the terms of the 1997 agreement by violating the terms of the non-compete provisions.  These provisions were designed to prevent the parties to the 1997 agreement (i.e., MMC and TCC) from competing with Montgomery Materials should either of the parties transfer its interest in Montgomery Materials to another company.  TCC – not

Montgomery Materials – is now attempting to enforce the non-compete provisions and claim damages allegedly arising under their terms. The acquisition of one company by another does not create an automatic transfer of the right to enforce non-compete agreements. *See* Clark Substations v. Ware, 838 So. 2d 360 (Ala. 2002) (finding that purchase of assets did not automatically transfer right to enforce non-compete agreements to purchasing corporation).

Therefore, TCC does not have standing to enforce the non-compete agreements against Lambert in place of Montgomery Materials, and Lambert is entitled to judgment as a matter of law.

## **The non-compete provision is non-enforceable by TCC because it was not mutually binding at the time TCC filed suit**

TCC is also estopped from pursuing its claims because the non-compete provisions were not mutually binding at the time this suit was filed. The Alabama statute dealing with non-compete provisions of buy-sell agreements allows a seller to agree to refrain from engaging in a similar business only so long as the buyer remains in a "like" business. *See* Ala. Code (1975) §8-1-1. This statute provides, in pertinent part, as follows:

> (a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.

> (b) One who sells the good will of a business may agree with the buyer…to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him,…carries on a like business therein.

Furthermore, Alabama courts have found that "[t]hese [non-compete] agreements must be mutually binding and provide adequate consideration. The test for mutuality is to be applied at the time when the agreement is sought to be enforced, not when the agreement is made." ISS Int'l Service Systems v. Alabama Motor Express, 686 So. 2d 1184, 1189 (Ala. Civ. App. 1996), *citing* Stokes v. Moore, 262 Ala. 59, 77 So. 2d 331 (1955). In ISS Int'l Service Systems, the Court stated:

> The trial court found: (1) that ISS no longer carried on a like business, as required by § 8-1-1(b), Ala. Code 1975; (2) that ISS's failure to carry on a like business meant there could be no mutuality at the time it sought to enforce the agreements; and (3) that it would be unduly burdensome on Massey and Knotts to enforce the agreements. A review of the record reveals that, at the time ISS sought to enforce the agreements, the company's operations had ceased. ISS had sold all of its customer contracts, had abandoned the waste removal business, and no longer employed a staff in Massey and Knotts's departments. This fact alone is sufficient to affirm the trial court's holding in regard to this issue.

*Id*.

TCC is no longer in the sand and gravel business. It is undisputed that, as of April 1, 2005, TCC has operated solely as a holding company. TCC filed this suit on October 25, 2005. Therefore, TCC's failure to carry on a like business means there was no mutuality at the time it sought to enforce the provisions, and Lambert is entitled to judgment as a matter of law.

**Alternatively, Lambert is entitled to judgment as a matter of law on all claims and damages allegedly arising under actions he took as of April 1, 2005**

Alternatively, if this Court finds that TCC is not estopped from pursuing its claims entirely, Lambert is, at a minimum, entitled to judgment as a matter of law as to claims and/or damages allegedly arising after April 1, 2005.

To establish a prima facie case for breach of contract, a plaintiff must demonstrate: (1) the existence of a valid contract binding the parties in this action, (2) their own performance under the contract, (3) the defendant's nonperformance and (4) damages. *See* Cong. Life Ins. Co. v. Barstow, 799 So. 2d 931, 937 (Ala. 2001). It is undisputed that the 1997 agreement, as a whole, was a valid contract.[2]

Alabama law generally does not favor non-compete provisions. The Supreme Court of Alabama has stated that "[s]ection 8-1-1 expresses the public policy of Alabama disfavoring contracts in restraint of trade; such contracts are

---

[2] Defendant Lambert does not concede that all of the non-compete provisions of the agreement are valid but under Alabama law, an invalid non-compete provision "does not necessarily render void the entire contract." Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston, 678 So. 2d 765, 767 (Ala. 1996).

disfavored because they tend not only to deprive the public of efficient service but also to impoverish the individual." <u>Construction Materials, Ltd. v. Kirkpatrick Concrete, Inc.</u>, 631 So. 2d 1006, 1009 (Ala. 1994) (citations omitted).

Moreover, "[a] covenant not to compete that does not fall within the limited exceptions set out by §8-1-1 is void." <u>Construction Materials</u>, *supra*, 631 So. 2d at 1009. "The burden is upon the person or entity seeking to enforce a contract that restrains the exercise of a lawful trade or business to show that it is not void under Ala. Code, 1975, §8-1-1." *Id*.

TCC may argue that the non-compete provisions fall within the buy-sell exception of § 8-1-1(b). "There are four essential elements to this statutory exception: 1) a 'sale,' 2) a sale of good will, 3) a covenant that is restricted as to territory; and, 4) carrying on a like business." <u>Kershaw v. Knox Kershaw, Inc.</u>, 523 So. 2d 351 (Ala. 1988) (holding that non-competition agreement was a valid restraint on trade because the transfer of stock constituted a sale of goodwill and the parties carried on the same business).

According to Foley Materials vice-president Horald Sorrell, TCC has operated solely as a holding company since the formation of Foley Materials in April 1, 2005. [Exhibit C, pg. 14: line 16-22] Thus, in accordance with § 8-1-1, TCC has not been in "a like business" (i.e., the sand and gravel business) and cannot have enforced the provision since that time. *See* <u>ISS Int'l Service Systems</u>,

*supra*, (affirming trial court's refusal to enforce nonsolicitation agreements based on evidence that plaintiff was no longer in waste collection business after selling its assets to another entity).

Thus, at a minimum, Lambert is entitled to judgment as a matter of law as to any alleged claims and damages arising after April 1, 2005. Here, the evidence establishes that the claimed "co-conspirators" Alabama Gravel, LLC and Carol's Contracting, Inc. never combined on any sale or shipment of gravel until after April 1, 2005. *See* Exhibits F & G.

### TCC's inability to enforce the non-compete provisions means that its remaining claims against Lambert are not viable, and Lambert is entitled to attorneys' fees

Count Three of the Complaint alleges that the Defendants intentionally interfered with TCC's contractual and business relations with various entities and individuals, both named and unnamed. This count should be dismissed as a matter of law because it is not a viable claim to the extent that the covenant itself is not enforceable. *See* Construction Materials, *supra*, 631 So. 2d at 1010, *citing* Defco, Inc. v. Decatur Cylinder, Inc., 595 So. 2d 1329 (Ala. 1992) (holding that plaintiff's claim of interference with business relations was not a viable claim because "the covenant not to compete is itself not enforceable").

In the same way, TCC's conspiracy claims – Count Five of the Complaint – are due to be dismissed as a matter of law to the extent that there is no remaining

viable underlying cause of action. The cause of action underlying a conspiracy claim must be viable to support the conspiracy claim. *See*, *e.g.*, Allied Supply Co. v. Brown, 585 So. 2d 33, 36 (Ala. 1991) ("a conspiracy itself furnishes no cause of action. … If the underlying cause of action is not viable, the conspiracy claim must also fail").

In accordance with the paragraph 21 of the agreement, Defendant Lambert requests reasonable attorneys' fees and expenses incurred in connection with this litigation. [Doc. 1-2.]

## **Conclusion**

Even if TCC's claims were true as laid out in the Complaint – which Defendant Lambert adamantly denies – TCC does not have standing to enforce the non-compete provisions of the 1997 agreement. Assuming, for the sake of argument only, that the non-compete provisions are not void, they are nonetheless unenforceable because TCC cannot bring this suit in place of Montgomery Materials and, even if it could, TCC was not carrying on a like business at the time the suit was filed. Alternatively, if this Court finds that TCC may legally enforce the non-compete provisions, TCC does not have standing to pursue its claims or receive damages under its claims as of April 1, 2005, because it has not been engaged in the sand and gravel business, or a like business, since that date. For

these reasons, Defendant Harry E. Lambert is entitled to judgment as a matter of law.

  Respectfully submitted this 27th day of April, 2006.

             _/Dennis R. Bailey/_____
             Dennis R. Bailey
             Bethany L. Bolger
             Attorneys for Defendant Harry E. Lambert

Of counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270
(334) 206-3234 (phone)
(334) 481-0031 (fax)
drb@rsjg.com (e-mail)
bbolger@rsjg.com (e-mail)

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing pleading through the ECMF system on this the 27th day of April 2006 which will forward same to:

>Robin G. Laurie, Esq.
>Griffin Lane Knight, Esq.
>Balch & Bingham, LLP
>105 Tallapoosa Street, Suite 200
>Montgomery, Alabama   36104-3515
>
>James N. Walter, Jr., Esq.
>Chad W. Bryan, Esq.
>Capell & Howard
>Post Office Box 2069
>Montgomery, Alabama   36102-2069
>
>Thomas Gristina, Esq.
>William Leonard Tucker, Esq.
>Page, Scrantom, Sprouse, Tucker & Ford
>Synovus Center, Third
>1111 Bay Avenue
>Columbus, Georgia   31901

      /Dennis R. Bailey/
      Of counsel