# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **THE CONCRETE COMPANY,** | \| |
| | \| |
| **PLAINTIFF,** | \| |
| | \| |
| **vs.** | \|    **CASE NO. 2:05-CV-1026-CSC** |
| | \| |
| **HARRY E. LAMBERT,** | \| |
| **CAROL'S CONTRACTING,** | \| |
| **INC., and ALABAMA GRAVEL,** | \| |
| **LLC,** | \| |
| | \| |
| **DEFENDANTS.** | \| |

## DEFENDANT CAROL'S CONTRACTING, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In support of its Motion for Summary Judgment, Defendant Carol's Contracting, Inc. ("Carol's Contracting") submits the following:

### Introduction

On October 25, 2005, Plaintiff The Concrete Company ("TCC") filed this action against Carol's Contracting and others alleging breach of contract, tortious interference with contractual and business relations, and conspiracy. [Doc. 1-1] As to Carol's Contracting, TCC claims that it intentionally interfered with contractual and business relations with various individuals and business, both named and unnamed, and that Carol's Contracting conspired with its co-defendants to interfere with TCC's contractual and business relations. [Doc. 1-1, ¶¶ 52-69]

1

TCC's claims are primarily based on the terms of a non-compete provision of a 1997 agreement relating to the formation of a limited liability company and Defendant Harry E. Lambert's ("Lambert") alleged breach thereof. [Doc. 1-1, ¶¶ 59, 60, 63 & 67]  Carol's Contracting was not a party to that agreement and was not even formed until April 24, 2002. [Exhibit F] On April 1, 2005, TCC transferred all of its assets to another company and since that time has been merely a holding company.  The evidence is undisputed that co-defendant Alabama Gravel began selling gravel products after April 1, 2005, and that Carol's Contracting, Inc. began hauling gravel for Alabama Gravel after April 1, 2005.

## <u>Statement of Undisputed Facts</u>

1.      Plaintiff TCC is a Georgia corporation formerly engaged in the concrete and sand and gravel business.  [Exh. A, pg. 3; Exh. B, 7:11-8:7; 10:9-10:19; Exh. C, 21:10-21:16.]

2.      In 1997, TCC and MMC Holdings, Inc. formed Montgomery Materials Company, L.L.C., ("Montgomery Materials"), an Alabama company engaged in the mining of sand and gravel.  [Doc. 1-1 ¶11.]

3.      The formation of Montgomery Materials was a joint venture between TCC and MMC Holdings, Inc. ("MMC").  [*Id*.]

4.      At that time, Lambert was the sole shareholder of MMC.  [Exh. A, pg. 7.]

5.        As of January 2, 2001, MMC was deemed to have sold its interest in Montgomery Materials to TCC pursuant to a forced buy-out.  [Doc. 28 (Exh. A thereto).]

6.        Foley Materials Company ("Foley Materials") is a Georgia corporation formed on or around April 1, 2005.  [Exh. C, 12:20-12:21; 16:15-16:20.]

7.        Foley Materials operates sand and gravel pits in the Montgomery area. [*Id*., 13:10-14:10; 27:11-28:1.]

8.        Foley Materials is not a party to this action.  [Doc. 1-1.]

9.        Plaintiff TCC transferred all of its assets (i.e., sand and gravel operations in the Montgomery area) to Foley Materials on April 1, 2005.  [Exh. C, 17:13-21:1; Exh. D.]

10.       Since April 1, 2005, TCC has operated solely as a holding company and has not been engaged in the sand and gravel business in the Montgomery area or anywhere else.  [Exh. C, 14:16-15:4; 21:10-21:16.]

11.       TCC filed this action on October 25, 2005.  [Doc. 1-1.]

12.       The 1997 agreement between TCC and MMC included, among other things, a buy-sell provision and a non-compete provision.  [Doc. 1-2, ¶¶5, 8.]

3

13.      The non-compete provision purports to prohibit Lambert from engaging in certain activities for a period of five years in the event the buy-sell provision is ever triggered, i.e., if MMC ever transferred its entire interest in Montgomery Materials to any other individual or entity, including TCC.  [Doc. 1-2, ¶8.]

14.      The non-compete provisions expired by their own terms on January 2, 2006.  [Doc. 29 ¶3.]

15.      Carol's Contracting is an Alabama corporation formed on April 24, 2002, and engaged in the commercial trucking business.  [Exh. F.]

16.      Carol Lambert is the president and sole stockholder of Carol's Contracting.[1]  [*Id.*]

17.      Until April 2005, Carol's Contracting leased its trucks to Foshee Trucking Company, a contract hauler for the Montgomery area.  [*Id.*]

18.      On or about April 1, 2005, Carol's Contracting obtained the necessary government permits to haul products and subsequently removed its trucks from a contract haulers leasing program.  [*Id.*]

19.      Only after April 1, 2005 did Carol's Contracting haul products for its customers under the authority of Carol Lambert.  [*Id.*]

---

[1] Carol Lambert is married to Defendant Harry E. Lambert.

4

20.     Aggregate companies in the Montgomery area do not normally deliver their own products.  [Exh. B, 59:2-59:8.]

21.     TCC is not in the commercial hauling business.  [*Id.*, 35:12-35:19.]

22.     TCC does not consider a trucking company such as Foshee Trucking to be a business competitor.  [Exh. C, 33:16-34:8.]

23.     Foley Materials does not own trucks or employ drivers for the purpose of delivering products from its pits to its customers.  [*Id.*, 28:2-29:21.]

24.     Foley Materials has "never elected to get into the business of hauling product."  [*Id.*]

25.     Foley Materials does not have any plans to go into the trucking business.  [Exh. B, 60:3-60:7.]

26.     Most of the sand and gravel sold by Foley Materials is sold FOB the plant and is picked up by customers to haul the product.  [Exh. C, 28:2-29:21.]

27.     Foley Materials does not consider a trucking company such as Foshee Trucking to be a business competitor.  [*Id.* at 33:16-34:8.]

28.     Defendant Alabama Gravel, LLC ("Alabama Gravel") is an Alabama corporation formed in March 2005.  [Doc. 1-1, ¶ 37]

29.     Alabama Gravel began operations in April 2005 [Exhibit G, No. 1]

30.         The first time that Carol's Contracting ever hauled gravel for Alabama

Gravel was April 10, 2005.  [Exh. F.]

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *see also* Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  *See* Fed. R. Civ. Pro. 56(e).

The court's role at the summary judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 105 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all

reasonable inferences in favor of that party. *See* <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

## Carol's Contracting has not intentionally interfered, or conspired to interfere, with the contractual or business relations of TCC and others as defined by the 1997 agreement

Counts Three and Four of the Complaint allege that the Defendants intentionally interfered with TCC's contractual and business relations with various entities and individuals, both named and unnamed, including Simcala, a former competitor of TCC, and Defendant Lambert. These counts should be dismissed as a matter of law to the extent that they are based on the non-compete provisions of the 1997 agreement because the provisions themselves are not enforceable.[2] *See* <u>Construction Materials</u>, *supra*, 631 So. 2d at 1010, *citing* <u>Defco, Inc. v. Decatur Cylinder, Inc.</u>, 595 So. 2d 1329 (Ala. 1992) (holding that plaintiff's claim of interference with business relations was not a viable claim because "the covenant not to compete is itself not enforceable").

Assuming – for the sake of argument only – that this is a viable claim, Carol's Contracting is nonetheless entitled to judgment as a matter of law. To establish the tort of interference with contractual or business relations under Alabama law, a plaintiff must prove: 1) the existence of a contract or business

---

[2] This argument is more fully developed in Defendant Harry E. Lambert's Motion for Summary Judgment and supporting documents.

relation, 2) the defendant's knowledge of the contract or business relation, 3) intentional interference with the contract or business relation, and 4) damage to the plaintiff as a result of the interference. *See* Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc., 990 F.2d 598, 603 n8 (11th Cir. 1993).

TCC would have this Court hold that Carol's Contracting has intentionally interfered with TCC's contractual and business relations by providing generally available commercial trucking services for customers of TCC's former competitors. Hauling aggregate for customers of Alabama Gravel and other contractors who compete with Plaintiff does not constitute intentional interference with contractual and business relations. First, Carol's Contracting's trucking business does not compete with TCC because TCC is not now, nor has it ever been, in the trucking business. Second, Carol's Contracting is not providing a service that any other trucking business would not be able to provide. Setting aside the fact that, since April 1, 2005, TCC has been merely a holding company, customers of TCC's (former) competitors would be able to arrange to haul their products via other trucking companies regardless of whether Carol's Contracting even existed. By pursuing these claims, TCC is attempting to stifle not only its (former) competitors in the sand and gravel business, but any other entities – such as Carol's Contracting – who in any way provide routine business goods and services to customers of TCC's (former) competitors. "One does not have an

8

unfettered right to be free of competition in this country." Calhoun v. Brendle, Inc., 502 So. 2d 689, 693 (Ala. 1986).

A trucking company such as Carol's Contracting — which is not a party to any non-competition agreements — has no legal duty to refrain from providing legal and otherwise generally available routine commercial hauling services to any customer. See Fossett v. Davis, 531 So. 2d 849, 852 (Ala. 1988) (reversing judgment against defendant on intentional interference claims where defendant was acting within her legal rights). No such legal duty arises because the customer is buying from a supplier who is in competition with others who believe the competition is unfair or improper. See Public Systems, Inc. v. Towry, 587 So. 2d 969, 973-74 (Ala. 1991) (affirming trial court's holding that defendants "had a right to conduct a rival business and to deal with former clients who, because of past services, may have elected to patronize them").

No such legal duty would arise even if the customer were a party to a non-competition agreement with a direct competitor of the customer, a fact which is not even the case here. The legal duty does not arise even if the husband of the owner of the trucking company had a non-compete agreement preventing him from engaging in a separate business, i.e. the sand and gravel business. Accordingly, the fact that Carol's Contracting provides generally available commercial hauling services to customers of Alabama Gravel, LLC, as a matter of law, cannot form the

basis for a claim that Carol's Contracting is intentionally interfering with the business relations of a holding company such as TCC or even a sand and gravel company such as Foley Materials.

Likewise, the fact that Carol's Contracting has used the services of Lambert as a commercial truck driver to haul loads for customers buying sand and gravel from Montgomery Materials, TCC, Foley Materials, Alabama Gravel or others cannot constitute intentional interference with the business relations of TCC. [Exh. F.]  Even assuming for the sake of argument that the non-compete provision specifically said that Lambert could not work for any commercial trucking firm, and Carol's Contracting was actually aware of such provisions, Carol's Contracting would be under no legal duty to refrain from hiring Lambert to drive a truck as part of a generally available commercial trucking operation if the non-compete agreement was between Lambert and a company not in the commercial trucking business.  The reason is that non-compete provisions are limited by Alabama law to include only protection from Lambert's engaging in a "similar" business and are otherwise legally unenforceable.  *See* Construction Materials, Ltd. v. Kirkpatrick Concrete, Inc., 631 So. 2d 1006, 1009 (Ala. 1994) ("[a] covenant not to compete that does not fall within the limited exceptions set out by §8-1-1 is void").

There is no dispute in this case that regardless of the breadth of the written prohibitions that may be contained in the non-compete provisions of a buy-sell agreement, at most TCC could only enforce prohibitions relating to Lambert's involvement in the sand and gravel business and for only as long as TCC actually engaged in the sand and gravel business.  Since Lambert was forced out of Montgomery Materials, Carol's Contracting has never been in the sand and gravel business and TCC has never been in the commercial trucking business.  Carol's Contracting was never a party to any non-compete agreement or contract with TCC of any kind.  Therefore, Carol's Contracting was under no legal or contractual duty to refrain from using Lambert as a truck driver in a commercial trucking business regardless of the nature of the load or the identity of the customer.

"In addition to the five elements that a plaintiff must establish for the tort of interference with contracts or business relationship, the plaintiff must also produce substantial evidence of fraud, force, or coercion, on the defendant's part."  Teitel v. Wal-Mart Stores, Inc., 287 F. Supp. 2d 1268 (M.D. Ala. 2003) (citations omitted); see also United States Steel, LLC v. Tieco, Inc., 261 F.3d 1275 (11th Cir. 2001) ("a plaintiff must show some evidence of fraud, force, or coercion on the defendant's part").

Any "minimal interactions" between Carol's Contracting and TCC's former customers are not sufficient to support a claim of intentional interference with

contractual and business relations.  United States Steel, LLC v. Tieco, Inc., 261 F.3d 1275 (11th Cir. 2001) (reversing district court and holding that counterclaim-plaintiff's "minimal interactions, as a matter of law, did not constitute tortious interference with business relations").

At a minimum, Carol's Contracting is entitled to judgment as a matter of law as to any alleged claims and damages arising after April 1, 2005.  Here, the evidence establishes that the claimed "co-conspirators" Alabama Gravel, LLC and Carol's Contracting, Inc., never were involved in the same shipment of gravel until after April 1, 2005.  [Exh. F.]

In the same way, TCC's conspiracy claims – Counts Five and Six of the Complaint – are due to be dismissed as a matter of law to the extent that there is no remaining viable underlying cause of action.  The cause of action underlying a conspiracy claim must be viable to support the conspiracy claim.  *See*, *e.g.*, Allied Supply Co. v. Brown, 585 So. 2d 33, 36 (Ala. 1991) ("a conspiracy itself furnishes no cause of action. … If the underlying cause of action is not viable, the conspiracy claim must also fail").

## Conclusion

The issues presented in this motion are pure questions of law which are ripe for resolution.  Defendant Carol's Contracting, Inc., has shown that no genuine issues of material fact exist, and Plaintiff's claims are deficient as a matter of law

and are due to be dismissed.  Defendant Carol's Contracting is entitled to judgment

as a matter of law.

Respectfully submitted this 27th day of April, 2006.

_/Dennis R. Bailey/_____
Dennis R. Bailey
Bethany L. Bolger
Attorneys for Defendant Carol's Contracting, Inc.

Of counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270
(334) 206-3234 (phone)
(334) 481-0031 (fax)
drb@rsjg.com (e-mail)
bbolger@rsjg.com (e-mail)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have filed the foregoing pleading through the ECMF system on this the 27th day of April 2006 which will forward same to:

> Robin G. Laurie, Esq.
> Griffin Lane Knight, Esq.
> Balch & Bingham, LLP
> 105 Tallapoosa Street, Suite 200
> Montgomery, Alabama   36104-3515
>
> James N. Walter, Jr., Esq.
> Chad W. Bryan, Esq.
> Capell & Howard
> Post Office Box 2069
> Montgomery, Alabama   36102-2069
>
> Thomas Gristina, Esq.
> William Leonard Tucker, Esq.
> Page, Scrantom, Sprouse, Tucker & Ford
> Synovus Center, Third
> 1111 Bay Avenue
> Columbus, Georgia   31901

_/Dennis R. Bailey/_
Of counsel

14