## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **THE CONCRETE COMPANY,** | \| |
| | \| |
| **PLAINTIFF,** | \| |
| | \| |
| **vs.** | \|    **CASE NO. 2:05-CV-1026-CSC** |
| | \| |
| **HARRY E. LAMBERT,** | \| |
| **CAROL'S CONTRACTING,** | \| |
| **INC., and ALABAMA GRAVEL,** | \| |
| **LLC,** | \| |
| | \| |
| **DEFENDANTS.** | \| |

### DEFENDANTS HARRY E. LAMBERT AND CAROL'S CONTRACTING, INC.'S RESPONSE TO MOTION TO COMPEL

COME NOW Defendants Harry E. Lambert (hereinafter "Lambert") and Carol's Contracting, Inc. (hereinafter "Carol's Contracting") and, in compliance with the Court's Order dated April 14, 2006, [Doc. 36] submit the following response to Plaintiff's Motion to Compel [Doc. 35]:

<u>The Marital Privilege</u>

1.      In its Motion to Compel, Plaintiff requests that this Court deny the well-founded objections to discovery made by Lambert and Carol's Contracting and would have these defendants produce information that is privileged, confidential, irrelevant, and otherwise non-discoverable. In effect, granting Plaintiff's Motion to Compel (1)

1

would create a new exception to the marital privilege not previously recognized in Alabama state or federal courts, (2) would lengthen the time provisions of the non-compete agreement signed by Lambert, and (3) would enforce the non-compete agreement against Carol's Contracting, which was not a party to the agreement and was not even formed until five years later.

2.    Lambert has objected to responding to any discovery regarding confidential communications with his wife and to any discovery that may be related to events occurring after the non-compete undisputedly expired.  Beyond that, Lambert has fully responded to all discovery requests made by TCC.

3.    Carol Lambert, on behalf of Carol's Contracting, has objected to responding to any discovery that may require her, as an individual, to disclose confidential communications with her husband, Defendant Harry Lambert.  Beyond that, Carol's Contracting has fully responded to all discovery requests made by TCC.

4.    Communications made between husband and wife are presumptively confidential, and either spouse may invoke the confidential communications privilege to avoid disclosure.  *See* <u>Blau v. United States</u>, 340 U.S. 332, 333 (1951).  In fact, the Eleventh Circuit has

2

stated as recently as 2001 that "the confidentiality of communications during a valid marriage is presumed."  United States v. Singleton, 260 F.3d 1295, 1300 (11th Cir. 2001), *citing* Blau, *supra*.  As a result, the opposing party has the burden of proving that the communications it seeks were not made with the intent of confidentiality (e.g., made in the presence of third parties).  Several circuits have refused to adopt the position asserted by TCC; namely, that marital communications fall outside the privilege merely because they are related to business or financial matters.  *See*, *e.g.*, United States v. Lea, 249 F.3d 632, 641-42 (7th Cir. 2001) (affirming invocation of the privilege where defendant had "not presented any evidence to overcome this presumption [of confidentiality]"); United States v. Rakes, 136 F. 3d 1, 3 (1st Cir. 1998) (refusing to adopt government's contention that spousal conversations are not privileged if they relate to financial matters"); U.S. v. Berry, 807 F. Supp. 442, 444 (W.D. Tenn. 1992) (U.S. counsel conceded at show-cause hearing that "we would probably not have a legal dispute" if defendant's wife were able to establish that she knew nothing of her husband's income from his dental practice except from communications with him in the course of their marital relationship).

3

5.     In Interrogatory No. 6, TCC seeks to discover "any involvement, communication or other interactions" between Lambert and Carol's Contracting over the past five years.  [Doc. 35 (Exhs. D&E attached thereto).]  Carol Lambert, Defendant Harry Lambert's wife, is the president and sole shareholder of Carol's Contracting.  Thus, any "involvement, communication or other interactions" would have been between Harry and Carol Lambert.  Harry Lambert and Carol's Contracting objected to this interrogatory as being overbroad and impossible to answer since the Lamberts communicate or otherwise interact with each other on a daily basis.  Additionally, the Lamberts note that confidential communications between spouses are privileged.  TCC's argument in its Motion to Compel that Lambert objected to disclosing communications with Carol's Contracting based on the spousal privilege is unfounded.

6.     TCC then argues that "even if Lambert and Carol's Contracting were in a marital relationship, not all communications between spouses are confidential."  First, this argument is without basis.  No one has stated that Lambert and Carol's Contracting are in a marital relationship. There is no reason to make an argument on such a basis.  Second, assuming that a response to this argument is even necessary, these

4

Defendants would simply reiterate that Plaintiff has cited no federal or state authority binding on this Court to support its assertion that the Lamberts should be compelled to disclose their business-related communications. [Doc. 35 (Exh. B attached thereto, pg. 1).] Plaintiff would have this Court compel these Defendants to respond to discovery based on a "business matters" exception to the spousal privilege, an exception which has never been recognized under the federal or state laws of Alabama. Neither the Lamberts nor even Carol's Contracting are going to voluntarily waive any of their rightful evidentiary privileges based on "exceptions" which heretofore have never been recognized in Alabama.

7.     TCC states that the communications it seeks "relate to business dealings between Lambert and Carol's Contracting." [Doc. 35, pg. 3.] No such dealings exist. Essentially, TCC seeks evidence to support its belief that "Lambert has a financial interest in and controls Carol's Contracting." [Doc. 35, pg. 1.] This is completely unfounded. The only apparent basis that TCC has for such a belief is that Carol's Contracting is owned by Lambert's wife. It seems that TCC refuses to accept the logical alternative; namely, that Carol Lambert can run her own business without the assistance (or "control") of her husband.

5

This is fully supported by the fact that Carol Lambert is the sole shareholder and president of Carol's Contracting. She incorporated the company, she bought the trucks, she hired the employees, she maintained the accounts, and she authorized the deliveries. She signed every document that was created by or for the company (other than weight tickets which are signed by drivers on their deliveries). Harry Lambert has had no relationship with the company other than occasionally driving trucks, an activity that TCC has known about since at least 2002. It is ironic that TCC now wishes to assert that Carol's Contracting is controlled by any one other than Carol Lambert because it is the reason that she formed the business in the first place. Harry Lambert was severely restricted in his ability to generate income for their household based on the terms of the non-compete agreement, an agreement that was triggered when TCC caused a forced buy-out of Lambert's interest in Montgomery Materials. The time provision of the non-compete is five years. The only option that the Lamberts had was for Carol Lambert to support the family during this period.

<u>Post-Expiration of Non-Compete Events</u>

8.     As Exhibit D to TCC's Motion to Compel shows, Lambert objected,
in part, to two discovery requests to the extent that they seek
information relating to events occurring after the expiration of the
non-compete agreement, i.e., January 2, 2006.[1]   Interrogatories No. 6
and 12 seek information relating to Lambert's activities "during the
past five years."[2]   Lambert objected to disclosing conversations, if
any, with co-defendant Alabama Gravel occurring after January 2
(No. 6) and to disclosing any involvements with pits or pit owners
since January 2 (No. 12).

9.     Plaintiff states the information it now seeks is relevant because it goes
to "motivations and activities of all of the defendants."  [Doc. 35, pg.
5.]  Lambert submits that this information is not relevant nor is it
reasonably calculated to lead to the discovery of admissible evidence.
TCC is no longer in the sand and gravel business, and hasn't been

---

[1] TCC erroneously refers to Lambert's Interrogatory Responses Nos. 6, 12, & 14.  Lambert fully
responded to Interrogatory No. 14, which asks whether anyone has received any "Product" from
Lambert within the past five years.  Lambert notes in his response that he has not engaged in the
sand and gravel business during the time period that the non-compete agreement was in effect.
As to the receipt of "product," Lambert responds:  "To date, no one has received any Product
from me and I have not sold anybody [sic] but I plan to very shortly since the non-compete has
expired and I am now involved in trying to get back into the business in the Territory."
[2] None of TCC's discovery requests ask for information relating specifically to post-January 2
events.  The first time this information was requested was in Plaintiff's Motion to Compel.

7

since April 1, 2005. This suit was filed in October 2005. Lambert has already filed a motion for summary judgment in this case because, as a matter of law, TCC has no standing to pursue its claims against Lambert. Assuming for the sake of argument that TCC does have standing, any information dated January 2, 2006, or later is irrelevant. TCC's request is nothing more than a veiled attempt to reach beyond the expiration of the non-compete agreement. Even if Lambert does at some point in the future become involved with Carol's Contracting, or any other entity, that would have no bearing on this case. For one thing, the non-compete is *no longer in effect*. Second, Carol's Contracting is not a competitor of TCC, nor has it ever been. Carol's Contracting is not even a competitor of Foley Materials. Plaintiff is attempting to not only broaden the non-compete beyond what is legally enforceable, it is also attempting to broaden the time provision of the non-compete by hindering Lambert from going back into the sand and gravel business (or any business at all, for that matter) and generating income for his family. This is further demonstrated by the fact that TCC waited to file its lawsuit four years and nine months after the non-compete agreement took effect (and three months before its expiration). Lambert's counsel specifically addressed these points

8

in its previous letter to TCC's counsel.  [Doc. 35 (Exh. B thereto, pgs. 1-2).]

10.   TCC, in its Motion to Compel and for the first time, requests "all documents and information related to events that occurred after the term of Lambert's covenant-not-to-compete expired." [Doc. 35, pg. 6.]  Even if TCC's claims could somehow be extended to include events occurring three months after the filing of this suit and after the non-compete expired, its request is still objectionable because it is overbroad and because it has only been formally requested for the first time in TCC's Motion to Compel.

11.   One of the reasons Lambert raised the post-expiration objections is that TCC would be able to learn of Lambert's private and confidential negotiations with land-owners, suppliers, investors or potential partners made as part of Lambert's efforts to re-enter the sand and gravel business — which he is now free to do.  TCC is not entitled to advance notice of Lambert's efforts to re-enter the sand and gravel business taken after the non-compete expired, especially prior to finalization of agreements at a time when such negotiations are tentative and sensitive.  In an effort to show good faith, Lambert has voluntarily provided TCC a copy of a consulting agreement reached

9

with Alabama Gravel LLC in April 2006 (four months after the non-compete expired) because that agreement was executed and could not be affected by the knowledge of or anti-competitive actions by TCC. A copy of that agreement is attached as Exhibit A to this response.

12. Plaintiff's Motion to Compel, although directed to both Harry Lambert and Carol's Contracting, has absolutely nothing to do with Carol's Contracting. It is frankly irresponsible for TCC to file its motion against Carol's Contracting. As Plaintiff points out in its motion, Carol's Contracting is not married to Harry Lambert. Carol Lambert, on behalf of her company, merely pointed out in her objections that if she, individually, had any confidential communications with her husband, then those communications are privileged. Furthermore, with respect to events occurring after the expiration of the non-compete, there is even less justification for filing a motion to compel against Carol's Contracting. Carol's Contracting is not – nor has it ever been – a competitor of TCC. Carol's Contracting has never signed any non-compete agreements with anyone or any entity. Carol's Contracting was not even formed until five years after the noncompete at issue in this case was signed. Carol's Contracting does not make a single objection in its responses

10

relating to events occurring after January 2 (and, not including the Motion to Compel, TCC has never made such a request).  By filing its motion against both Harry Lambert and Carol's Contracting, TCC is only further demonstrating its incessant determination to maliciously harass Carol Lambert, who is not even a party to this lawsuit.

WHEREFORE, Defendants Harry E. Lambert and Carol's Contracting, Inc., respectfully request that this Court deny Plaintiff's Motion to Compel and to award them attorneys fees expended in responding thereto.

Respectfully submitted this 28th day of April 2006.


 _/s/ Bethany L. Bolger_____
Dennis R. Bailey
Bethany L. Bolger
Attorneys for Defendant Harry E. Lambert

Of counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270
(334) 206-3234 (phone)
(334) 481-0031 (fax)
drb@rsjg.com (e-mail)
bbolger@rsjg.com (e-mail)

### CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing pleading through the ECMF system on this the 28th day of April 2006 which will forward same to:

Robin G. Laurie, Esq.
Griffin Lane Knight, Esq.
Balch & Bingham, LLP
105 Tallapoosa Street, Suite 200
Montgomery, Alabama   36104-3515

James N. Walter, Jr., Esq.
Chad W. Bryan, Esq.
Capell & Howard
Post Office Box 2069
Montgomery, Alabama   36102-2069

Thomas Gristina, Esq.
William Leonard Tucker, Esq.
Page, Scrantom, Sprouse, Tucker & Ford
Synovus Center, Third
1111 Bay Avenue
Columbus, Georgia   31901

 */s/ Bethany L. Bolger*
Of counsel

12