## CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT (this "Agreement") is hereby made and entered into as of the 10th day of April, 2006, by and between Alabama Gravel, LLC, an Alabama limited liability company (sometimes referred to as the "Company"), and Harry Lambert, an individual residing in Elmore County, Alabama (sometimes referred to as the "Consultant").

WHEREAS white oversize metallurgical gravel is a scare and valuable commodity in this area of Alabama; and

WHEREAS, Robert Alexander was approached by Simcala in early 2005 to supply white oversized gravel due to its primary supplier—The Concrete Company—reporting to Simcala that its supplies were limited and apparently approaching depletion; and

WHEREAS, the Company was formed March 24, 2005, by Robert Alexander, Dave Tuten and Bill Dasinger initially to mine and sell only white oversize metallurgical gravel at the Gentry Pit near Independence, Alabama primarily for customers who were unable to obtain sufficient supplies from The Concrete Company; and

WHEREAS, Alabama Gravel, LLC first began selling such gravel from said pit after April 1, 2005; and

EXHIBIT A

1

WHEREAS, in October 2005, The Concrete Company filed a lawsuit against former employee Harry Lambert alleging breach of a non-competition agreement that was to expire January 2, 2006 of its own terms; and

WHEREAS, The Concrete Company also made unfounded allegations against Alabama Gravel, LLC falsely asserting that Alabama Gravel LLC was aware of and conspired to violate the specific terms of the non-compete agreement between The Concrete Company and Harry Lambert in an obvious attempt to stifle local competition and keep the price of its products stable; and

WHEREAS, Harry Lambert has never previously been an owner, officer or employee of Alabama Gravel, LLC and has received absolutely no compensation from Alabama Gravel of any kind; and

WHEREAS, The Concrete Company has conceded before a federal judge in the aforementioned civil case that as of January 2, 2006, Harry Lambert was free of any restrictions found in their non-compete contract such that since January 2, 2006, he is free to return to the sand and gravel business without restrictions of any kind; and

WHEREAS, Alabama Gravel, LLC is anticipating a depletion of white oversize gravel supplies at the Gentry Pit; and

WHEREAS, Alabama Gravel, LLC has need for alternative sources for white oversize gravel and has recently been awarded a permit to operate a sand and gravel plant in Deatsville, Alabama; and

WHEREAS, Harry Lambert is known in this area to be a person who is experienced in the setting up of a sand and gravel mining operation; and

WHEREAS, prior to January 2, 2006, Harry Lambert was ostensibly prohibited going back into the sand and gravel business with Alabama Gravel, LLC or any other company and engaged in no such discussions; and

WHEREAS, the limitations upon Lambert and the cost of defending The Concrete Company's charges have caused him financial difficulties requiring him to obtain funds for the payment of attorneys fees, as well as emotional distress to his wife due to their financial situation, and

WHEREAS, since January 2, 2006, Harry Lambert has been in the process of making plans to get back into the sand and gravel business in this area and intends to begin operation of his own company by the fall of 2006; and

WHEREAS, on March 28, 2006, Hugh Sorrell, manager of Foley Materials, Inc. testified that since April 1, 2005, The Concrete Company has

FROM :                           FAX NO. :                   Apr. 07 2006 11:15AM P5

not been in the sand and gravel business but rather served only as a holding company, and

WHEREAS, on April 5—four months after the expiration of the non-compete agreement between The Concrete Company and Lambert—Alabama Gravel, LLC and Lambert, met and discussed a possible business relationship for the first time; and

WHEREAS, Alabama Gravel, LLC understands that Harry Lambert will need to take some portions of work days off on occasion to attend to Lambert's own efforts to re-enter the sand and gravel business; and

WHEREAS, Lambert understands that Alabama Gravel, LLC will not be responsible for portions of days he is not able to devote to the Deatsville pit; and

WHEREAS, Consultant desires to work as an independent contractor for the Company on the terms and conditions herein contained; and

WHEREAS, the Company is willing to engage the Consultant to serve as an independent contractor on the terms and conditions herein contained:

1) Consultant will provide consulting services required to supervise and set up a sand and gravel plant located in Deatsville, Al. Consultant will be responsible for the completion of Stage One of the sand and gravel plant consisting of (a) having the sand plant

FROM :                          FAX NO :                    Apr  07 2006 11:15AM  P6

producing saleable sand to Company's customers and meeting Company's requirements and (b) having the gravel plant producing white metallurgical gravel for sale along with construction aggregate (67's). Also, Consultant will oversee the completion of the fresh water ponds, road construction and excavation work needed to complete this project. Stage One work shall be completed before June 19, 2006.

2) If requested by Company after the completion of Stage One, Consultant will make himself available to supervise Stage Two of the gravel plant which involves inserting a log washer, truck scales, a second screening deck and other miscellaneous equipment at a time agreed upon by Company and Consultant. Stage Two work will be completed before December 31, 2006.

3) Consultant will not be responsible for the cost of other expenses, labor, equipment or materials necessary to complete Stage One and Stage Two of the Deatsville project. Consultant is authorized to perform routine maintenance on Company's equipment and to order parts and incur expenses as may be reasonably necessary to maintain or repair such equipment.

4) Company will advance Consultant $10,000 within 10 days of signing of this document to help him get started and help him meet his current financial obligations.

5) Company will award Consultant a bonus of $90,000 for completion of the Deatsville plant. Payments will be made as follows: $15,000 upon completion of Stage One, then $25,000 60 days from Stage One completion, $25,000 120 days from completion of Stage One completion and $25,000 180 days from completion of Stage One or by December 31, 2006, whichever comes first.

6) Company agrees to pay a consulting fee to Consultant of $350 for each day Consultant works on this project, with the consulting fee proportionately reduced for partial work days. Consultant may also be available for future consultation after the completion of this project.

7) At the completion of this project, Company will have no further obligations to Consultant and Consultant will have no further obligations to Company. This agreement will create in Company no ownership rights or interests in any of Consultant's companies. This agreement will create in Consultant no ownership rights or interests in Company

FROM :                          FAX NO :                     Apr. 07 2006 11:15AM P8

8) Nothing contained in this Agreement shall be construed to make Company and/or Consultant partners, joint venturers or members of a limited liability company or to render any of said parties liable for the debts or obligations of the other. Nothing herein contained shall constitute this Agreement an agreement or contract of employment from Company to Consultant, nor is any such agreement or contract of employment intended.

9) Company agrees to maintain liability insurance on the property naming Consultant as an additional insured in the event the operations result in personal injury or property damage to a third person. Consultant agrees to maintain liability insurance naming Company as an additional insured in the event of personal injury or property damage to a third person.

10) Company agrees to hold Consultant harmless and to indemnify Consultant in the event that actions of agents, servants or employees of Company cause personal injury or property damage to Consultant or third persons.

11) Consultant agrees to hold Company harmless and to indemnify Company in the event that actions of Consultant cause personal injury or property damage to Company or third persons.

12)   This Agreement sets forth the entire Agreement between the parties, and no amendment or alteration hereof or change hereto shall be binding unless the same shall be in writing and signed by the parties hereto.

13)   This Agreement shall be governed by and construed in accordance with the laws of the State of Alabama.

14)   This Agreement may be executed in counterparts, each of which when executed by all parties and delivered shall constitute an original and all of which taken together shall constitute a single instrument. Delivery by facsimile shall be sufficient under this paragraph and facsimile signatures shall be deemed original and binding.

Done this the 7th day of April, 2006.

_____    4-7-06
COMPANY: Alabama Gravel, LLC        date
By _Dave Tuten_____, its _MEMBER_____

_____    _____
CONSULTANT: Harry Lambert           date

8