**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **THE CONCRETE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  2:05-CV-1026-CSC** |
| | ) |
| **HARRY E. LAMBERT,** | ) |
| **CAROL'S CONTRACTING,** | ) |
| **INC., and ALABAMA GRAVEL, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANT ALABAMA GRAVEL, LLC'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Alabama Gravel, LLC ("Alabama Gravel") respectfully submits this brief in support of its Motion for Summary Judgment in the above-styled case.  For the reasons stated herein, Alabama Gravel is entitled to judgment as a matter of law.

## INTRODUCTION

On October 25, 2005, Plaintiff The Concrete Company ("TCC") filed this lawsuit against Defendants Harry E. Lambert ("Lambert"), Carol's Contracting, Inc. ("Carol's Contracting"), and Alabama Gravel.  TCC's claims are based on the non-compete provisions of an Agreement that TCC, Lambert and others entered into on June 10, 1997 (the "1997 Agreement").  [Doc. 1-1, ¶¶41-48].  Alabama Gravel was not a party to the 1997 Agreement.  Moreover, Lambert has never been employed by Alabama Gravel nor did he receive any payment or compensation from Alabama Gravel during the time period involved in this case.  [Affidavit of Dave Tuten (Exhibit A), ¶4].  Nonetheless, TCC has sued Alabama Gravel for intentional interference with contract or business relations and conspiracy.  [Doc. 1-1, ¶¶52-69].

1

Alabama Gravel's Motion for Summary Judgment should be granted for a variety of reasons. First, for the reasons stated in Defendant Harry E. Lambert's Brief in Support of Motion for Summary Judgment [Doc. 40], Lambert's non-compete provision was not legally enforceable by TCC in April 2005 when Alabama Gravel began operating its gravel pit. Second, Alabama Gravel did not <u>intentionally</u> interfere with TCC's contractual or business relations. Moreover, Alabama Gravel did not exert fraud, force, or coercion to obtain any business from Simcala, and Alabama Gravel did not proximately cause any harm to TCC. To the contrary, Simcala placed orders for oversize gravel with Alabama Gravel only <u>after</u> TCC told Simcala that TCC would be unable to supply Simcala with adequate quantities of that product. For those reasons and the additional reasons stated below, Alabama Gravel is entitled to summary judgment as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

Alabama Gravel adopts and incorporates herein by reference the Statements of Undisputed Material Facts set forth in Defendant Harry E. Lambert's Brief in Support of Motion for Summary Judgment [Doc. 40] and Defendant Carol's Contracting, Inc.'s Brief in Support of Motion for Summary Judgment [Doc. 42], both filed on April 27, 2006. In addition, Alabama Gravel sets forth the following additional undisputed facts relevant to Alabama Gravel's Motion for Summary Judgment:

1.     Alabama Gravel was organized on March 24, 2005. [Affidavit of Dave Tuten (Exhibit A), ¶2].

2.     The members of Alabama Gravel are Dave Tuten, Robert Alexander, and Rex Dysinger. [Exhibit A, ¶2].

3.      Alabama Gravel has been in the gravel business since April 2005.  [Exhibit A, ¶3].

4.      Alabama Gravel made its first shipment of gravel on or about April 10, 2005. [Exhibit A, ¶3].

5.      Lambert has never been a member or employee of Alabama Gravel.  [Exhibit A, ¶4].

6.      Lambert received no payment or compensation from Alabama Gravel during the time period involved in this case.  [Exhibit A, ¶4].

7.      Alabama Gravel has never been a party to any agreement involving Lambert and TCC.  [Exhibit A, ¶5; Deposition Transcript of Frank Foley (Exhibit B), pp. 233-34].

8.      Neither TCC nor Lambert furnished Alabama Gravel with a copy of their Agreement dated June 10, 1997.  [Exhibit A, ¶5].

9.      At no time did TCC advise Alabama Gravel that Harry Lambert was possibly violating a non-compete agreement by hauling gravel for his wife's company or by providing advice or answering questions without receiving any compensation. [Exhibit B, pp. 241-43].

10.     The first time that any member of Alabama Gravel received or reviewed the Agreement between TCC and Lambert was after Alabama Gravel was served with the Summons and Complaint in late October 2005.  [Exhibit A, ¶5; Exhibit B, p. 234].

11.     Alabama Gravel has never used fraud, force, or coercion in selling gravel to customers.  [Exhibit A, ¶6].

12. Each of Alabama Gravel's three customers (Simcala, Globe Metallurgical, Inc. and Maddox Stone and Gravel, Inc.) were looking for additional suppliers who had white oversize gravel when Alabama Gravel started its business operations. [Exhibit A, ¶6].

13. Simcala purchased large amounts of oversize gravel from TCC prior to 2005. [Affidavit of Richard Wymer (Exhibit C), ¶3)].

14. Simcala's Purchasing Manager, Richard Wymer, anticipated that Simcala would once again purchase a large amount of oversize gravel from TCC in 2005 assuming an agreement could be reached on price, until he received a telephone call from a representative of TCC on January 4, 2005. During that telephone call, the TCC representative advised Wymer that TCC would be substantially reducing their shipments to Simcala and that Simcala would receive only 500 tons of oversize gravel from the Ward plant each month for the foreseeable future, in contrast to the approximately 2,000 tons of oversize gravel that Simcala had been receiving from the Ward plant. [Exhibit C, ¶4; Deposition Transcript of Harold Sorrell (Exhibit D), pp. 336-39].

15. On April 8, 2005, Hugh Sorrell of TCC visited the Simcala plant and told Wymer that TCC's Phoenix City plant was not making much oversize gravel and that shipments to Simcala would be reduced. [Exhibit C, ¶4].

16. As Simcala's Purchasing Manager, Wymer believed it was essential to find additional suppliers of oversize gravel in the event that TCC was unable to meet Simcala's needs for that product. [Exhibit C, ¶5].

4

17.     A day or two after he learned that Simcala might not have a secure source for this raw material, Wymer saw Lambert driving a truck at Simcala's plant and asked Lambert if he knew anyone that Simcala could get oversize gravel from.  Wymer subsequently received a telephone call from Robert Alexander who was considering starting a new gravel operation in this area.  Simcala eventually negotiated for Alabama Gravel to provide oversize gravel to Simcala's plant beginning in April 2005.  [Exhibit C, ¶5].

18.     Simcala purchased a small amount of oversize gravel from TCC in early 2005 based upon the limited quantities of suitable oversize gravel that TCC made available for purchase.  Wymer's subsequent conversations with Don Triplett, Hugh Sorrell and Gene Talley of TCC during the spring and summer of 2005 indicated that TCC had only a small amount of good oversize gravel available for purchase and that the prices would be much higher.  [Exhibit C, ¶6].

19.     Simcala's Purchasing Manager states that in his affidavit that Alabama Gravel did not solicit or induce Simcala to purchase less oversize gravel from TCC.  [Exhibit C, ¶7].

20.     Simcala's Purchasing Manager also states in his affidavit that Alabama Gravel did not interfere in any business relationship between Simcala and TCC.  [Exhibit C, ¶7].

21.     Simcala's Purchasing Manager made the unilateral decision to seek out other suppliers, including Alabama Gravel, when he received information which led him to believe that TCC might be unable to supply Simcala with adequate quantities of suitable oversize gravel.  [Exhibit C, ¶7].

## SUMMARY JUDGMENT STANDARD

Pursuant to FED. R. CIV. P. 56(c), a motion for summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing … that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Mays v. United States Postal Serv.*, 928 F. Supp. 1552, 1563 (M.D. Ala. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once that initial showing has been made, the burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citing *Celotex*, 477 U.S. at 324). "In meeting this burden the nonmoving party 'must do more than simply show that there is a metaphysical doubt as to the material facts.'" *Dubisar-Dewberry v. District Attorney's Office*, 927 F. Supp. 1479, 1481-82 (M.D. Ala. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cook Oil Co. v. United States*, 919 F. Supp. 1556, 1561 (M.D. Ala. 1996) (citing FED. R. CIV. P. 56(c)).

## ARGUMENT

**I.    LAMBERT'S NON-COMPETE AGREEMENT WAS NOT ENFORCEABLE BY TCC AFTER APRIL 1, 2005.**

In Counts III and IV of the Complaint, TCC alleges that Alabama Gravel intentionally interfered with TCC's non-compete agreement with Defendant Harry Lambert and with TCC's business relations with Simcala and other customers.  Similarly, Counts V and VI allege that Alabama Gravel conspired with Harry Lambert and/or Carol's Contracting to carry out such intentional inference.  From the face of TCC's Complaint, it is apparent that all such claims are based upon the erroneous presumption that the non-compete agreement between Harry Lambert and TCC was in full force and effect as of April 2005.  As discussed at length in Defendant Harry Lambert's Brief in Support of Motion for Summary Judgment, however, the non-compete agreement was <u>not</u> enforceable by TCC at any time after April 1, 2005 -- the date upon which TCC transferred its assets to another entity and ceased its sand and gravel operations.  For the Court's convenience, Alabama Gravel will not repeat each of the arguments asserted by Defendant Harry Lambert, but simply states that it too is entitled to summary judgment for each of the reasons that have previously been set forth by the other Defendants.[1]

---

[1] Alabama Gravel expressly adopts and incorporates herein by reference all of the arguments and citations of legal authority contained in Defendant Harry E. Lambert's Brief in Support of Motion for Summary Judgment, as well as all arguments and citations of legal authority contained in Defendant Carol's Contracting's Brief in Support of Motion for Summary Judgment.  Because TCC became a holding company in April 2005 and is no longer actively engaged in a "like" business as that covered by its non-compete agreement with Harry Lambert (*i.e.*, the sand and gravel business), it simply cannot enforce the agreement or bring any tort claims that arise out of the agreement.  *See* ALA. CODE § 8-1-1.  Alternatively, because it is undisputed that Alabama Gravel did not make its first shipment of gravel until approximately April 10, 2005 (<u>after</u> TCC had already transferred all of its assets), it is clear that TCC could in no event recover any damages against Alabama Gravel.  *See ISS Int'l Serv. Sys. v. Alabama Motor Express*, 686 So. 2d 1184, 1189 (Ala. Civ. App. 1996).

II.   **ALABAMA GRAVEL IS ENTITLED TO SUMMARY JUDGMENT AS TO TCC'S CLAIMS FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL/BUSINESS RELATIONS.**

Even if TCC's claims could otherwise be brought in this lawsuit, the undisputed evidence establishes that Alabama Gravel would nonetheless be entitled to summary judgment as to all claims for intentional interference asserted in Counts III and IV of the Complaint. Specifically, in order to recover on a claim for intentional inference with contractual or business relations, a plaintiff must first establish: "1) the existence of a contract or business relation; 2) defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; and 4) damage to the plaintiff as a result of the defendant's interference." *Fossett v. Davis*, 531 So. 2d 849, 851 (Ala. 1988). Additionally, a plaintiff "must produce substantial evidence of fraud, force, or coercion on the defendant's part." *Barber v. Business Products Center, Inc*., 677 So. 2d 223, 227 (Ala. 1996); *see also Teitel v. Wal-Mart Stores, Inc*., 287 F. Supp. 2d 1268, 282 (M.D. Ala. 2003). For the reasons discussed below, the undisputed evidence demonstrates that TCC cannot satisfy its burden in this case and that summary judgment is therefore due to be entered in favor of Alabama Gravel as a matter of law.

A.   **As a matter of law, Alabama Gravel could not have intentionally interfered with TCC's contractual or business relations.**

Alabama Gravel did not <u>intentionally</u> interfere with the non-compete agreement between TCC and Defendant Harry Lambert or with any business relationship between TCC and its customers, as all such claims are wholly dependent upon Alabama Gravel having some actual knowledge and intent to violate the non-compete agreement at issue. It is undisputed that Alabama Gravel neither received nor reviewed a copy of the 1997 Agreement between TCC and Lambert until being served with the Summons and Complaint in this case, and there is no evidence to suggest that Alabama Gravel knew of the specific terms of the non-compete

agreement prior to the filing of this lawsuit.  Indeed, the President of TCC has admitted that TCC did not advise Alabama Gravel of the terms of the non-compete agreement, nor did TCC advise Alabama Gravel that Harry Lambert was possibly violating the agreement by hauling gravel for his wife's company or by providing free advice.  [Exhibit B, pp. 239-430].  Because TCC's claims in Counts III and IV require a showing of <u>intentional</u> interference, Alabama Gravel is entitled to summary judgment as a matter of law.  Put simply, without having seen Harry Lambert's non-compete agreement or otherwise having knowledge of its terms, Alabama Gravel could not possibly have engaged in any intentional interference as alleged in this lawsuit.

When, as here, no evidence can be presented that the defendant <u>intentionally</u> interfered with a known contractual or business relationship, summary judgment is appropriate on an intentional interference claim as a matter of law.  *Underwood v. South Central Bell Telephone Co.*, 590 So. 2d 170, 177 (Ala. 1991) (affirming summary judgment where the plaintiff failed to rebut the defendant's *prima facia* showing by "presenting evidence that South Central Bell or L.M. Berry *intentionally* omitted the roofing company's advertisement from the June 1989 issue of the Yellow Pages") (emphasis in original).  Absent the intent element, summary judgment is appropriate even if the defendant has some general awareness of the business or contractual relationship at issue.  *See Barber*, 677 So. 2d at 227 (affirming summary judgment where "[b]oth Canon and Panasonic were aware of the contract between GSA and Moore," but "Moore failed to present substantial evidence of the third element, intentional interference").

To permit TCC's claims to go forward against Alabama Gravel in this case would equate what is at most an inadvertent interference with a type of interference that is blatant and intentional.  It is clear, however, that an <u>inadvertent</u> interference with a contractual or business relation is not synonymous with a claim for <u>intentional</u> interference.

> Alabama law requires that, in order to recover, the interference
> with the [contractual or business relationship] must be intentional,
> malicious, wrongful and willfully caused.

*Wadsworth v. Nalco Chemical Co.*, 523 F. Supp 997, 999 (N.D. Ala. 1981).  It has been further

observed that "[a] merely negligent interference does not give rise to a cause of action and no

recovery may thus be had unless the plaintiff shows that the interference was intentional or

knowing." *Id.*; *see also Louisville and Nashville R.R. Co. v. Arrow Transp. Co.*, 170 F. Supp

597, 600 (N.D. Ala. 1959) ("Mere negligence in interfering with another's contract rights will

not sustain a cause of action for damages.").  Because TCC is in effect asserting causes of action

in Counts III and IV that simply do not exist under Alabama law (*i.e.*, negligent or inadvertent

interference), Alabama Gravel is entitled to summary judgment on all such claims.

**B.    Any alleged harm to TCC was not proximately caused by Alabama Gravel.**

In addition to each of the above-stated reasons, summary judgment is also appropriate as

to all claims asserted in Counts III and IV because the undisputed evidence demonstrates that

TCC itself was the reason that its customers began doing business with Alabama Gravel.  Just as

with any other tort claim, a plaintiff cannot recover on a claim for intentional interference with

business or contractual relations without establishing that its alleged damages were the <u>proximate</u>

<u>result</u> of the defendant's conduct.  *See Fossett*, 531 So. 2d at 851.  As evidenced by the attached

sworn affidavit of Richard Wymer, however, TCC is wholly incapable of making any such

showing in this case.

According to Mr. Wymer, who is Simcala's Purchasing Manager, the decision for

Simcala to cease purchasing white oversize gravel from TCC (and to begin purchasing white

oversize gravel from Alabama Gravel) was in no way attributable to any affirmative conduct on

the part of Alabama Gravel or any Alabama Gravel representative.  [Exhibit C].  To the contrary,

Simcala ceased purchasing white oversize gravel from TCC only because TCC was unable to satisfy Simcala's requirements as to quantity and quality. [*Id.* at ¶¶4-6]. In fact, Simcala was expressly informed by TCC in January 2005 that TCC was running extremely low on white oversize gravel and would be substantially reducing shipments from its Ward plant from 2,000 tons per month to 500 tons per month. [*Id.* at ¶4]. Similarly, TCC informed Simcala in April 2005 that substantial reductions would also be made in shipments received from its Phoenix City plant. [*Id.*]. According to Mr. Wymer, a blend of white oversize gravel from <u>both</u> the Ward plant <u>and</u> the Phoenix City plant was absolutely critical in order for Simcala to meet its needs; if left with gravel from just one plant, the resulting product would fail Simcala's basic quality requirements and standards. [*Id.* at ¶3].

In response to TCC's admitted inability to supply the necessary quantity and quality of materials, it is undisputed that Simcala made the unilateral decision to seek additional suppliers of white oversize gravel. [*Id.* at ¶¶5-7]. It was only at this point that Simcala contacted Harry Lambert to inquire into other potential sources of white oversize gravel and was eventually contacted by Robert Alexander. [*Id.* at ¶5]. Moreover, even after beginning the negotiations that would ultimately lead to purchases being made by Alabama Gravel, Simcala continued to purchase white oversize gravel from TCC through the spring and summer of 2005, at which time it ceased placing orders from TCC due to TCC's reduced amounts of available material and increasingly higher prices. [*Id.* at ¶6]. Richard Wymer has expressly stated under oath that such concerns over supply and pricing were the primary motivating factors in Simcala's decision-making process and that Alabama Gravel in no way solicited or induced Simcala to cease purchasing white oversize gravel from TCC. [*Id.* at ¶7]. <u>Furthermore, Mr. Wymer has stated</u>

11

that Alabama Gravel engaged in no interference with any existing business relationship between Simcala and TCC.[2]  [*Id*.].

Under these circumstances, the Alabama Supreme Court's decision in *Powell v. South Central Bell Telephone Co.*, 361 So. 2d 103 (Ala. 1978) is directly on point and highly instructive.  *Powell* involved a claim for intentional interference that arose when the defendant contacted certain sponsors/advertisers who immediately ceased their sponsorship of the plaintiff. Just as in the present case, however, all of the sponsors/advertisers in *Powell* denied that the defendant placed any pressure upon them to discontinue their relationship with the plaintiff.  *Id.* at 104.  As stated by one of the sponsors/advertisers, "[M]y decision to cancel the advertising with [the plaintiff] was not connected, in any way, with my conversation with whoever called me from the [defendant]."  *Id.*  Similarly, other sponsors/advertisers provided affidavits stating that the actions of the defendant had absolutely no bearing on their decision to discontinue sponsorship.  *Id.* at 104-105.  Therefore, because the defendant negated any allegation that "unlawful or coercive force [was] brought upon the plaintiff which proximately resulted in a discontinuance of the sponsorships," the Alabama Supreme Court affirmed summary judgment in the defendant's favor.  *Id.* at 105-106.

For the same reason, Alabama Gravel is entitled to summary judgment as to all allegations that it intentionally interfered with TCC's business or contractual relations.  The undisputed evidence clearly establishes that neither Simcala nor any other customer ceased purchasing white oversize gravel from TCC because of some affirmative conduct on the part of Alabama Gravel.  Moreover, even assuming *arguendo* that TCC might insinuate that such

---

[2] Similarly, the undisputed evidence demonstrates that Alabama Gravel's two other customers (Globe Metallurgical, Inc. and Maddox Stone and Gravel, Inc.) were also looking for additional suppliers of white oversize gravel when Alabama Gravel started its business operations.  [Exhibit A, ¶6].

decisions were at least influenced in part by the alleged actions of Alabama Gravel, it is clear that "being 'part of the reason' does not amount to 'proximate' reason" so as to support a claim for intentional interference with business or contractual relations. *See Powell*, 361 at 106.

      **C.    Alabama Gravel did not exert fraud, force, or coercion to obtain any business from TCC's customers.**

Even if TCC could somehow present evidence of an intentional interference by Alabama Gravel, and could further demonstrate that such interference was the proximate cause of its alleged damages, there would still be no evidence to suggest that Alabama Gravel engaged in any conduct that was fraudulent, forceful, or coercive. *See Barber*, 677 So. 2d at 227 ("Additionally, plaintiffs must produce substantial evidence of fraud, force, or coercion on the defendant's part.") (citing *Joe Cooper & Assocs., Inc. v. Central Life Assurance Co.*, 614 So. 2d 982, (Ala. 1992)). On the contrary, the undisputed evidence establishes that TCC's customers were voluntarily seeking alternate sources of white oversize gravel in April 2005 due to TCC's own warnings that it could no longer supply materials of the required quality and quantity. Simcala has further stated that price increases by TCC also contributed to its decision to seek an alternate supplier. All such factors are clearly related to conduct on the part of TCC and are in no way attributable to any fraud, force, or coercion on the part of Alabama Gravel. In fact, no allegation of fraud, force, or coercion has even been made in this lawsuit.

It is clear that the element of fraud/force/coercion is an integral part of an intentional inference claim and is critical to any recovery under the tort. In *United States Steel, LLC v. Tieco, Inc.*, for example, the Eleventh Circuit specifically held that summary judgment should have been entered where "Appellees have not pointed to any evidence indicating the use of fraud, force, or coercion by [the defendant]." 261 F.3d 1275, 1292 (11th Cir. 2001) (citing the decisions of the Alabama Supreme Court in *Barber* and *Joe Cooper*). This Court has likewise

recognized the necessity of proving some fraud, force, or coercion against the defendant, with

Judge Albritton specifically noting as follows:

> In addition to the five elements that a plaintiff must establish for
> the tort of interference with contracts or business relationship, the
> plaintiff "must [also] produce substantial evidence of fraud, force,
> or coercion, on the defendant's part."

*Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp. 2d 1268, 282 (M.D. Ala. 2003) (quoting *Barber*,

677 So. 2d at 227).  Because no such evidence can be presented in this case, Alabama Gravel is

entitled to summary judgment on TCC's claims for intentional interference as a matter of law.

*See Purcell Co., Inc. v. Spriggs Enters., Inc.*, 431 So. 2d 515, 522 (Ala. 1983) (holding that the

trial court erred in denying motion for directed verdict where "[t]here is a complete absence of

any evidence in the record from which one might find any form of fraud or coercion").

## III.    ALABAMA GRAVEL IS ENTITLED TO SUMMARY JUDGMENT ON TCC'S CONSPIRACY CLAIM.

In Count V of the Complaint, TCC alleges that Alabama Gravel conspired with

Defendants Harry Lambert and Carol's Contracting to intentionally interfere with TCC's existing

contractual and business relations with Simcala and other customers.  Likewise, TCC alleges in

Count VI that Alabama Gravel conspired to intentionally interfere with Harry Lambert's non-

compete agreement.  For the reasons previously addressed, however, it is obvious that TCC's

underlying allegations of intentional interference are without merit and should be resolved on

summary judgment.[3]  As a result, TCC cannot predicate any conspiracy claim upon that alleged

conduct.

In the absence of any actionable wrong, Alabama courts have consistently demonstrated

that no cause of action for civil conspiracy can exist.

---

[3]    Alabama Gravel expressly incorporates herein by reference all arguments and citations of
authority contained in Sections II.A.-C., *supra*.

> "Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action.   The gist of the action is not the conspiracy alleged but the wrong committed." *O'Dell v. State ex rel. Patterson*, 270 Ala. 236, 240, 117 So. 2d 164, 168 (Ala. 1959).   Since we have already determined that Spriggs failed to establish a prima facie case of tortious interference as a matter of law, the conspiracy claim must also fail because there is no "actionable wrong" to support the latter theory.

*Purcell*, 431 So. 2d at 522 (holding that a directed verdict should have been granted on the plaintiff's conspiracy claim where the underlying claim for intentional inference also failed as matter of law); *Mooneyham v. State Board of Chiropractic Exam'rs.*, 802 So. 2d 200, 206-07 (Ala. 2001) ("Because we have held … that Mooneyham has no other actionable claims, his conspiracy claim necessary fails."); *Holton v. Blue Cross and Blue Shield of South Carolina*, 56 F. Supp. 20 1347, 1357-58 (M.D. Ala. 1999) ("Because this court has concluded that there are no facts which could be proven … to state a claim for fraud, the court similarly concludes that Holton has failed to state a claim for conspiracy to defraud.").   Therefore, because summary judgment is due on all underlying claims of intentional interference, Alabama Gravel is also entitled to summary judgment on TCC's corresponding conspiracy claims as a matter of law. *See Callens v. Jefferson County Nursing Home,* 769 So. 2d 273, 280-81 (Ala. 2000) (affirming summary judgment on claims for conspiracy where summary judgment was entered on underlying tort claims).

## CONCLUSION

Based on the foregoing undisputed facts and citations of authority, Defendant Alabama

Gravel, LLC is entitled to summary judgment on all claims asserted against it in this case.

Respectfully submitted,


 s/ James N. Walter, Jr.
**JAMES N. WALTER, JR. (WAL021)**
**CHAD W. BRYAN (BRY032)**

*ATTORNEYS FOR DEFENDANT ALABAMA GRAVEL, LLC*


**OF COUNSEL:**
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, Alabama 36102-2069
Telephone:    (334) 241-8000
Facsimile:    (334) 323-8888

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of May, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robin G. Laurie, Esq**.**
G. Lane Knight, Esq.
BALCH & BINGHAM, LLP
105 Tallapoosa (36104)
P.O. Box 78
Montgomery, Alabama 36101

Dennis R. Bailey, Esq.
Bethany L. Bolger, Esq.
RUSHTON, STAKELY, JOHNSTON
 & GARRETT
Post Office Box 270
Montgomery, Alabama 36101-0270

Thomas F. Gristina, Esq.
PAGE, SCRANTOM, SPROUSE, TUCKER
 & FORD, P.C.
1043 Third Avenue
P.O.Box 1199
Columbus, Georgia  31902-1199

William L. Tucker, Esq.
PAGE, SCRANTOM, SPROUSE, TUCKER
 & FORD, P.C.
1111 Bay Avenue
Synovus Centre, Third Floor
Columbus, Georgia  31901


s/ James N. Walter
OF COUNSEL

17

1068846