# EXHIBIT D

# FREEDOM COURT REPORTING

```
1            IN THE UNITED STATES DISTRICT COURT

2            FOR THE MIDDLE DISTRICT OF ALABAMA

3                    NORTHERN DIVISION

4

5    THE CONCRETE COMPANY,

6                 Plaintiff,                    COPY

7      versus                         2:05-CV-1026-D

8    HARRY E. LAMBERT, et al.,

9                 Defendants.

10

11

12

13

14            *  *  *  *  *  *  *  *  *  *  *  *

15

16           DEPOSITION OF HORALD SORRELL,

17   taken pursuant to stipulation and agreement

18   before Jackie Parham, Certified Shorthand

19   Reporter and Commissioner for the State of

20   Alabama at Large, in the law offices of Balch

21   & Bingham, 105 Tallapoosa Street, Montgomery,

22   Alabama, on Tuesday, the 28th day of March,

23   2006, commencing at approximately 9:00 a.m.
```

# FREEDOM COURT REPORTING

1    A.    The mining and selling of aggregates.

2    Q.    Are you familiar with the Buy-Sell

3          Agreement that is at issue in this case?

4    A.    I am familiar with it. Yes.

5    Q.    Have you reviewed it prior to coming here

6          today to give your deposition for the

7          purpose of answering questions on behalf

8          of the plaintiff relating to it?

9    A.    I have looked over that document. Yes.

10   Q.    Let me ask you whether or not Foley

11         Materials Company, Inc. is in the business

12         of excavating, mining, distributing,

13         delivering, selling or otherwise disposing

14         of any aggregate at wholesale or retail?

15   A.    Yes.

16   Q.    Is that company in that business within a

17         sixty-mile radius of the City of

18         Montgomery?

19   A.    Is that company?

20   Q.    Yes.

21   A.    Do you mean --

22   Q.    Foley Materials Company, Inc.

23   A.    Where it is actually located?

## FREEDOM COURT REPORTING

```
1    Q.    No.  Is it --

2    A.    Are you talking about the home office

3          or --

4    Q.    No.

5    A.    Okay.

6    Q.    Is that company, Foley Materials, in that

7          business that you just described within

8          the territory as described in this

9          Buy-Sell Agreement?

10   A.    Yes.

11                   MR. GRISTINA:  Let him finish the

12                        question and then answer so

13                        you don't talk over each

14                        other.  And take your time.

15                   THE WITNESS:  I'm sorry.

16   Q.    What business is The Concrete Company,

17         Inc. in?

18   A.    The Concrete Company, Inc. now serves as a

19         holding company.

20   Q.    When did it begin serving as a holding

21         company, if you know?

22   A.    On April 1 of 2005.

23   Q.    By "holding company," describe for the
```

# FREEDOM COURT REPORTING

1           Record what you understand that to be.

2    A.     The Concrete Company is a holding company

3           that owns Foley Materials Company and

4           Foley Products Company.

5    Q.     Is Foley Products Company a company that

6           does business within the Montgomery

7           territory as defined in the Buy-Sell

8           Agreement?

9    A.     They could have had sales into this area.

10   Q.     Does Foley Products Company deal with the

11          excavating, mining, distributing,

12          delivering, selling or otherwise disposing

13          of aggregate at wholesale or retail?

14   A.     No.

15   Q.     Is that company essentially in the

16          business of manufacturing prefabricated

17          concrete structures?

18   A.     Yes.

19   Q.     Is The Concrete Company a closely-held

20          corporation?

21   A.     Yes.

22   Q.     Who are the stockholders of that company?

23   A.     I do not know who all the stockholders

# FREEDOM COURT REPORTING

1   A.    I would say that it had to be incorporated

2         prior to that if we began operations on

3         that date.  But I do not know the exact

4         date.

5   Q.    What is the reason, if you know, for the

6         formation of Foley Materials Company,

7         Inc.?

8   A.    I really do not know why that was --

9   Q.    Do you know who made that decision?

10  A.    Frank Foley would have made that decision.

11  Q.    Do you know what triggered that decision?

12  A.    No, I really do not.

13  Q.    Does Foley Materials Company, Inc. have

14        business operations in the territory as

15        defined by the Buy-Sell Agreement, Exhibit

16        A to the Complaint?

17  A.    Yes.

18  Q.    And where are those locations?

19  A.    We have a location on Wares Ferry Road in

20        Montgomery, Alabama.

21  Q.    And what is the location number for that?

22  A.    The number on Wares Ferry Road?

23  Q.    No.  I mean, doesn't the company use a

# FREEDOM COURT REPORTING

1           location code?

2    A.     Our location number is 511.

3    Q.     Are there any other location numbers

4           located in the Montgomery territory as

5           defined in Exhibit A?

6    A.     We have a location on Rifle Range Road.

7    Q.     What is that location number?

8    A.     I'm sorry.  The one on Rifle Range Road is

9           511.  The one on -- the other one is 512.

10                  MR. GRISTINA:  Wares Ferry is

11                  512?

12   A.     Wares Ferry Road is 512.  That's what we

13          call our City Pit.  And the other one is

14          called our Dozier Pit.

15   Q.     And why have those numbers changed from

16          the former numbers used, 501 and 502?

17   A.     I'm not aware that 501 and 502 have ever

18          been used for those two plants.  You asked

19          me for any within Montgomery, or did you

20          say --

21   Q.     In the territory as defined in Exhibit A

22          to the Complaint.

23   A.     Okay.  We have another -- we have two

# FREEDOM COURT REPORTING

1       more.

2    Q.    Okay.  What are those?

3    A.    We have one in Tysonville, and the number

4          for that is 503.

5    Q.    Okay.

6    A.    And then we have one in Shorter, and our

7          number for that is 502.

8    Q.    What does the location code 501 represent?

9    A.    That is located in Phenix City, Alabama.

10   Q.    Now, when you say "we" in reference to

11         these locations of -- I would guess plants

12         is what you would call these?

13   A.    Yes.  We would call them -- I would call

14         those our plants.

15   Q.    "We" being Foley Materials Company since

16         April 1, 2005?

17   A.    Correct.

18   Q.    Prior to April 1, 2005 what entity owned

19         or operated all or most of these plants?

20   A.    The Concrete Company.

21   Q.    Are you familiar with the transaction that

22         resulted in the formation of Foley

23         Materials Company, Inc.?

# FREEDOM COURT REPORTING

```
 1   A.    I was aware of it, but I did not

 2         participate in that transaction.

 3   Q.    Are you aware of any agreements between

 4         Foley Materials Company, Inc. and The

 5         Concrete Company which relate in any way

 6         to Exhibit A to the Complaint?

 7   A.    No.

 8   Q.    As of the date suit was filed, then, are

 9         you aware of any transfer of rights or

10         assignment of rights from The Concrete

11         Company to Foley Materials Company related

12         to Exhibit A to the Complaint?

13   A.    I feel there would have been some, but I

14         have not seen those.

15   Q.    Why do you feel there would have been

16         some?

17   A.    I would just think in the legal process

18         that our attorneys would have advised us

19         that transfers would have been necessary.

20   Q.    Transfers of what to whom?

21   A.    Of assets from --

22   Q.    Were assets transferred from The Concrete

23         Company to Foley Materials?
```

# FREEDOM COURT REPORTING

Page 21

```
1    A.    Yes.

2    Q.    Was Exhibit A in your mind considered an

3          asset of The Concrete Company?

4    A.    I would -- I personally don't think it

5          would be an asset.  No.

6    Q.    Is it your understanding that The Concrete

7          Company retained the rights with regard to

8          Exhibit A to the Complaint?

9    A.    I do not know that.

10   Q.    But The Concrete Company is not currently

11         in the business of aggregate in the

12         territory, is it?

13   A.    The Concrete Company is not.

14   Q.    And that's been true since April 1st,

15         2005, correct?

16   A.    Yes.

17   Q.    One of the first items that you have

18         indicated that you would be able to speak

19         for The Concrete Company about pertains to

20         the claim that Harry Lambert violated the

21         Non-Competition Agreement referenced in

22         the Complaint; is that correct?

23   A.    Yes.
```

# FREEDOM COURT REPORTING

1   Q.    Let me show you a copy of the Complaint

2        and ask you whether or not this document

3        was approved by you for filing based upon

4        the information you had at the time that

5        led you to believe that Harry Lambert had

6        violated the Non-Competition Agreement

7        that was attached to this document.

8   A.    Okay.

9   Q.    And was it approved by you?

10   A.    Yes.

11   Q.    As of the time you filed this Complaint

12        for The Concrete Company through counsel,

13        what information did you have that led you

14        to believe that there had been a breach of

15        the non-competition provisions in Exhibit

16        A to the Complaint?

17   A.    We were aware that Mr. Lambert had

18        delivered materials to customers within

19        the area and had sold materials to

20        customers within the area.  We were aware

21        that a mining operation was in the process

22        of being built in the Deatsville, Alabama

23        area and that Mr. Lambert was

# FREEDOM COURT REPORTING

Page 133

1            coverage, if that helps.

2            He's not -- I was handling

3            that. So I'll tell you

4            there is no coverage.

5            MR. BAILEY: Would you provide me

6            with a letter?

7    A.    I've seen a document. I just don't recall

8          what's on it.

9    Q.    Is it your position as a representative of

10         The Concrete Company that Carol's

11         Contracting is in competition with TCC for

12         the sale of product in this area?

13   A.    Through her relationship with Harry, that

14         is our contention. Yes.

15   Q.    And how are they selling the product in

16         this area?

17   A.    They're selling it through phone calls

18         being made to Harry.

19   Q.    Now, TCC is not involved in the sale of

20         product in this area at this time,

21         correct?

22   A.    TCC?

23   Q.    Right.

# FREEDOM COURT REPORTING

Page 134

1    A.    Through its ownership of Foley Materials

2          it is.

3    Q.    Only as a holding company?

4    A.    That's correct.

5    Q.    But it is not directly in this business

6          any longer, correct?

7    A.    Only through the holding company.

8    Q.    And TCC doesn't have any employees that

9          are in the business of selling product in

10         this area?

11   A.    Correct.

12   Q.    And you said that was true since April

13         1st, 2005, but I heard you also say that

14         Lafarge purchased the assets of TCC April

15         1st, 2004.  Are those dates correct?

16   A.    That's correct.  Well, they purchased the

17         assets on March 31 of 2004.

18   Q.    So effective April 1, 2004 TCC was no

19         longer in business in this area as a

20         company?

21   A.    It was in business as -- in the aggregates

22         business but not in the ready-mix

23         business.  The aggregates business was not