# EXHIBIT F

# PART ONE

AGREEMENT

This June 10, 1997, MONTGOMERY MATERIALS COMPANY, L.L.C., an Alabama limited liability company (hereinafter "Montgomery, LLC") THE CONCRETE COMPANY, a Georgia corporation, (hereinafter "Concrete"), MMC HOLDINGS, INC., an Alabama corporation (herein-after "Montgomery, Inc."), FRANK D. FOLEY, III, an individual resident of the State of Georgia (hereinafter "Foley") and HARRY E. LAMBERT, an individual resident of the United States (herein-after "Lambert"), for the premises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:

1.  <u>Recitals</u>.  The following recitals are a material part of this Agreement:
(a)   On or about June 4, 1997 Montgomery, Inc. ac-quired by merger all assets and liabilities of Beaver Rock, Inc. ("Beaver Rock");

(b)  Concrete and Montgomery, Inc. each have contemporaneously herewith acquired fifty percent (50%) of the Membership Interests in Montgomery, LLC which was formed for the purpose of acquiring the business of Montgomery, Inc. and exca-vating, mining, selling and distributing sand, gravel, clay and/or topsoil (each of the foregoing is herein called a "Prod-uct") in the Montgomery, Alabama area; and

(c)   Concrete, as consideration for its fifty percent (50%) Membership Interest in Montgomery, LLC, contributed $300,000 in cash, and Montgomery, Inc. contributed the "Trans-ferred Assets" (herein so called) described on Exhibit "A" attached hereto and made a part hereof in consideration for its fifty percent (50%) Membership Interest and the assumption by Montgomery, LLC of certain "Assumed Liabilities" (herein so called) of Montgomery, Inc. and Beaver Rock described on Exhibit "B" attached hereto and made a part hereof;

(d)   Foley and Lambert are shareholders of Concrete and Montgomery, Inc., respectively, and therefore benefit by the terms of this Agreement; and

(e)   Concrete and Montgomery, Inc. wish to reduce to writing the terms of an Agreement whereby Concrete and Montgom-ery, Inc., must first offer its Membership Interest in Montgom-ery, LLC to Montgomery, LLC and the other Members before selling or otherwise conveying such interest to an unrelated third party, and whereby either Concrete or Montgomery, Inc., may cause the other to either purchase or sell (such selling party may be hereinafter referred to as "Seller" and such purchasing party may hereinafter be referred to as "Purchaser") its Membership Inter-est pursuant to the terms of this Agreement; and

C0593-123
41024.3

1

(f)  Both Concrete and Montgomery, Inc. acknowledge that neither would have been willing to organize and capitalize Montgomery, LLC or be willing to purchase the other's Membership Interest upon the terms contained herein without assurance by the other, including the shareholders named herein, that such parties will not engage in the activities prohibited by Paragraph 8 hereinbelow as and for the period set forth, and, in order to induce the Buyer to consummate the acquisition of such Membership Interest the Seller agrees to restrict its actions throughout the Territory (as herein defined), or otherwise as provided in this Agreement.  All of the parties hereto acknowledge that such restrictions are reasonable in light of the business engaged in and planned to be engaged in by Montgomery, LLC, and in light of the benefit to the Seller  and its shareholders of the purchase by the Buyer of the Seller's Membership Interest in Montgomery, LLC and do not place an undue hardship on the Seller and its shareholders.

2.   Definitions.  The following definitions shall control the meaning of the respective terms:

2.1. Alabama Act.  The Alabama Limited Liability Company Act at Code of Alabama § 10-12-1, et seq.

2.2. Continuing Members.  "Continuing Members" means those Members who are not terminating their interests in Montgomery, LLC.

2.3   Effective Date. May 1, 1997.

2.4. Member.  Each of the parties who executed a counterpart of the Operating Agreement as a Member and each of the parties who may thereafter have become Members or may hereafter become Members pursuant to the terms of the Operating Agreement.

2.5. Membership Interest.  A Member's entire interest in Montgomery, LLC consisting of such Member's Financial Rights and Governance Rights as defined in the Alabama Act.

2.6  Operating Agreement.  The Operating Agreement of Montgomery Materials Company, LLC executed the date hereof, as amended from time to time.

2.7. Terminating Members.  "Terminating Member"  means the Member (or Members) which is terminating its interest in Montgomery, LLC.

3.   General Terms.

3.1. Effect on Other Agreements.  Unless expressly provided herein  otherwise, nothing contained in this Agreement shall

discharge, release, or otherwise change, amend, or alter any sums due, or rights under, any employment contract or other employment arrangement between Montgomery, LLC and any party hereto. Further, no other contractual relationship between Montgomery, LLC and a Member or between Members shall be affected by this Agreement save one that attempts to define or speak to the terms of this Agreement, in which case the other contract shall be null and void unless it is in writing, it expressly indicates that it is amending this Agreement, and it is signed by Montgomery, LLC and all Members.

3.2. <u>Rights of Transferees</u>. All (1) assignees, transferees, trustees, receivers, or others who obtain an interest in the Membership Interests, whether by attachment, execution, bankruptcy law, receivership law, or otherwise by operation of law, and (2) assignees, transferees, secured parties, creditors, and others who obtain an interest in the Membership Interests, whether or not said transfer occurred with the consent of Montgomery, LLC, take subject to the terms and conditions of this Agreement.

3.3. <u>Rights of Continuing Members</u>. Unless otherwise express-ly provided herein, any rights of the Continuing Members hereun-der shall be shared among them proportionately according to the Membership Interests that each owns in relation to the total owned by all Continuing Members. If one or more Continuing Members decline to participate in the exercise of a right, the remaining Continuing Members shall share the right proportionate-ly according to the Membership Interest that each owns in rela-tion to the total owned by all of the Continuing Members who exercise the right. If only one Continuing Member desires to exercise the right, he may do so, and, by reason of such exer-cise, he shall be under no fiduciary duty to the other Continuing Members who declined to participate, and the Continuing Member who elects to act may purchase control of Montgomery, LLC.

3.4. <u>First lien</u>. All rights of Montgomery, LLC and Members under this Agreement shall be a first lien or encumbrance upon the Membership Interest of each Member. No transfer (as herein-after defined), whether or not consented to by Montgomery, LLC, shall release any Membership Interest from the force and effect of this Agreement.

4.   <u>Transferred Assets; Assumed Liabilities; Representa-tions and Warranties</u>.

4.1. <u>Transferred Assets</u>. Montgomery, Inc. hereby sells, assigns, transfers, conveys, and delivers the Transferred Assets to Montgomery, LLC, free and clear of all liens and encumbrances other than the Assumed Liabilities in the amounts shown on Exhibit "B".

C0593-123
41024.1

3

4.2. <u>Assumed Liabilities</u>.  Montgomery, LLC hereby assumes and agrees to timely pay and discharge the Assumed Liabilities.

4.3. <u>Representations and Warranties of Lambert and Montgomery, Inc.</u>

Lambert and Montgomery, Inc. jointly and severally represent and warrant to the other parties hereto as follows:

(1)  Montgomery, Inc. has herewith vested in Montgomery, LLC, good and marketable title to the Transferred Assets, free of all claims, liens, and encumbrances other than the Assumed Liabilities.

(2)  The Transferred Assets constitute all of the assets used by Montgomery, Inc. in its sand and gravel business on the Effective Date.

(3)  The outstanding amount of each Assumed Liability (including accrued interest and other charges) as of the Effective Date as shown on Exhibit "B" is correct.

(4)  The amount of the Assumed Liabilities outstanding (including accrued interest and other charges) as of the Effective Date exceeds the "Value" (as hereinafter defined) of the Transferred Assets by no more than $15,136. The Value of all Transferred Assets is the net book value thereof immediately prior to the Effective Date as owned by Montgomery, Inc. and Beaver Rock determined according to the method utilized by Montgomery, Inc. and Beaver Rock for purposes of generally accepted accounting principles.

(5)  The Combined Financial Statements of Montgomery, Inc. and Beaver Rock as of December 31, 1996, attached hereto and made a part hereof as Exhibit "C" is complete and correct, and fairly represents the combined financial condition of Montgomery, Inc. and Beaver Rock as of December 31, 1996, and the combined results of operations for the period covered thereby.

(6)  The Balance Sheet of Montgomery, Inc. as of April 30, 1997, attached hereto and made a part hereof as Exhibit "D" is complete and correct, and fairly represents the financial condition of Montgomery, Inc.  The financial condition of Beaver Rock as of April 30, 1997 is not significantly different from the financial condition as of December 31, 1996.

(7)  The Mining Lease Agreement dated December 2, 1994, between SFP, LTD, an Alabama Limited Partnership, and Beaver Rock, as Lessee, as assigned by Beaver Rock to Montgomery, Inc., is in full force and effect, Montgomery, Inc. is the current "Lessee" thereunder, and there are no defaults by the Lessor or the Lessee thereunder.

4.4   Adjustments to Montgomery, Inc.'s Contribution.
Lambert and Montgomery, Inc, jointly and severally, will pay to
Montgomery, LLC on August 1, 1997, the amount, if any, by which
the excess of (1) the Assumed Liabilities outstanding (include
accrued interest and other charges) as of the Effective Date over
(2) the Value of the Transferred Assets as of the Effective Date,
exceeds $15,136.  For purposes of this section, the Value of
Accounts Receivable as of the Effective Date is the amount of
such Accounts Receivable collected by Montgomery prior to August
1, 1997.  Upon such payment, Montgomery, LLC will assign to Mont-
gomery, Inc. any of the Accounts Receivable which had not been
collected by August 1, 1997.

4.5   Payment of Assumed Liabilities.  If Lambert and/or
Montgomery, Inc. pay any of the Assumed Liabilities for which
either or both of them is liable, whether as a result of the
failure of Montgomery, LLC to pay such Assumed Liabilities or
otherwise, Concrete, within ten (10) days after written request
therefor is given to it by Lambert and Montgomery, Inc., will
reimburse the payor one-half (1/2) of the amount of the Assumed
Liabilities so paid, including interest and other charges accru-
ing thereon after the Effective Date.

4.6   Operation of Montgomery, Inc. and Beaver Rock Since
      Effective Date.  Notwithstanding that the contributions
by Concrete and Montgomery, Inc. to Montgomery, LLC are being
made on the date hereof, the parties agree that Montgomery, LLC
will become the "Owner" of the sand and gravel business of
Montgomery, Inc. "as of" the Effective Date.  Therefore, on or
after the Effective Date all receipts of Montgomery, Inc. and
Beaver Rock  with respect to such sand and gravel business are
the property of Montgomery, LLC and shall be transferred to
Montgomery, LLC, and all disbursements of Montgomery, Inc. and
Beaver Rock with respect to such sand and gravel business shall
be paid from and charged against such receipts.

5.    Restrictions on Disposition.  ,No Member shall transfer
his Membership Interests except as expressly permitted in this
Agreement and the Operating Agreement, and any such transfer
which is not permitted by and in strict compliance with the terms
of this Agreement and the Operating Agreement shall be null and
void, shall not be recognized by Montgomery, LLC for any purpose,
and the transferee of such purported transfer shall have no
right, title, or interest in such Membership Interests as a
result thereof.  The term "transfer" as used herein includes, but
is not limited to, a sale, exchange, hypothecation, assignment,
gift, pledge,  transfer through legal action such as divorce,
levy, attachment, foreclosure or sale by the holder of a security
interest, judgment, garnishment, bankruptcy, or otherwise, or any
other encumbrance of the  Membership Interests.

5.1. Operating Agreement Controlling. A transfer of a Membership Interest pursuant to this Agreement shall be deemed to be in compliance with the Operating Agreement. Each Member agrees to execute such consent or consents as may be necessary to approve the transfers contemplated herein in strict compliance with the terms of the Operating Agreement. A Member shall have no rights hereunder with respect to the transferability of a Membership Interest or any part thereof in contravention of the terms of the Operating Agreement.

5.2. Transfer of Membership Interest. A Member may transfer its Membership Interest, subject to the provisions hereof, if Montgomery, LLC and the Continuing Members do not exercise their respective options to purchase such Membership Interest as hereinafter set forth.

5.2.1. Notice to Montgomery, LLC. The Member desiring to transfer its Membership Interest (hereinafter referred to as the "Offering Member") shall first offer to sell its Membership Interest to Montgomery, LLC at the same purchase price and upon the terms and conditions contained in a bona fide written offer from any non-related third party. Such offer to Montgomery, LLC shall specify in reasonable detail the facts and circumstances of the proposed transfer of the Membership Interest, including the name and address of each prospective transferee, the percentage interest involved in the proposed transfer, the terms under which such transfer is to take place and shall include a copy of the third party offer.

5.2.2. Option To Montgomery, LLC and Continuing Members. Montgomery, LLC may, but shall not be required to, purchase the Membership Interest proposed to be transferred by notifying the Offering Member of its acceptance of such offer within sixty (60) days after notice of said offer is given by the Offering Member. Should Montgomery, LLC fail to accept the offer within thirty (30) days after notice of said offer is given, or shall give written notice of the non-exercise of the option, then the Offering Member shall notify all Continuing Members within five (5) days that the offer has been extended and no response received (or offer declined in the case of written notice) and each Continuing Member shall then have the option to purchase the Offering Member's Membership Interest, or any part thereof as to which Montgomery, LLC does not exercise its option, upon the same terms and conditions offered to Montgomery, LLC, and in the proportion that such Continuing Member's Membership Interest bears to the Membership Interests of all Continuing Members desiring to purchase the Offering Member's Membership Interest, subject however, to the right of Montgomery, LLC to accept the offer prior to the expiration of the above 60 day period. While any Continuing Member may give notice of intention to purchase the Offering Member's Membership Interest prior to the expiration

of the 60 day option period to Montgomery LLC, no Continuing Member may accept such offer until the earlier of (i) the expiration of the 60 day option period to Montgomery, LLC, or (ii) the receipt by the Continuing Member of written notification of non-acceptance by Montgomery, LLC.  A Continuing Member shall have the right to accept such Offering Member's offer (should Montgomery, LLC fail to accept the offer in full or in part) at any time during the 30 day period following the first to occur of (i) the expiration of Montgomery, LLC's option period or (ii) the receipt by such Continuing Member of notice of Montgomery, LLC's non-exercise.  Closing shall occur within thirty (30) days of delivery of notice, whether by Montgomery, LLC or one or more Continuing Members, of acceptance of the Offering Member's offer. Anything to the contrary contained herein notwithstanding, in no event shall any combination of Montgomery, LLC and Continuing Members be allowed to accept such Offering Member's offer with respect to less than the entire interest proposed to be transferred pursuant to such Offering Member's offer.  Should Montgomery, LLC accept such Offering Member's offer with respect to less than the entire interest proposed to be transferred, then closing of such purchase shall be delayed until such time as one or more of the Continuing Members have accepted the Offering Member's offer with respect to any remaining interest proposed to be transferred.  If the Continuing Members do not accept such Offering Member's offer with respect to the remainder of such interest proposed to be transferred, then Montgomery, LLC's acceptance with respect to less than the entire interest proposed to be transferred shall be deemed non-exercise of its option and the Offering Member shall be free to transfer such interest pursuant to Section 5.2.3 hereinbelow.

5.2.3    Nonexercise Of Option.  If notice of acceptance of such offer is not given by Montgomery, LLC or the Continuing Members within the periods hereinabove provided, then the Offering Member may make a bona fide transfer of its Membership Interest to the prospective transferee named in said offer, but such transfer shall be made only in strict accordance with the terms stated in such offer and only after such transferee agrees in writing to become a party to and be bound by the terms of this Agreement, including Section 5.3.  Such transfer shall be made within the thirty (30) day period next following the expiration of the period hereinabove set forth for the acceptance of such offer by the Continuing Members.  If such Membership Interest is not transferred to such prospective transferee within the period hereinabove provided, the Membership Interest shall again become subject to the provisions of this Section 5 as though it had never been so offered.

5.3    Obligation to Purchase or Sell in Certain Events.  This section shall be applicable notwithstanding that an event of dissociation may have occurred.

(a)  One or more Members (hereinafter collectively referred
to as the "Activating Members") may at any time require that the
other Member or Members (hereinafter collectively referred to as
the "Electing Members") either (i) purchase all of the Activating
Members' Interests in the Company or (ii) sell all of the Elect-
ing Members' Interests in the Company to the Activating Members,
subject to the terms and conditions herein.  For purposes of this
Section only, a Member's "Interest" in the Company shall include,
in addition to all Governance Rights and Financial Rights owned
by the Member, all other Financial Rights which are associated
with the Governance Rights owned by the Member notwithstanding
that such Financial Rights have been transferred by the Member to
third parties.  Such third parties shall be subject to and bound
by all of the provisions of this Section, but shall have no right
to participate in any elections pursuant to this Section.

(b)  The Activating Members shall notify the Electing
Members that the provisions of this Section are being activated.
The notice shall set forth a "Cash Price" (herein so called) for
all assets of Montgomery, LLC, subject to all liabilities of
Montgomery, LLC, (which may include a formula and/or components
established with reference to items which cannot be definitely
determined until or after closing) at which the Activating
Members are willing to either sell all their Interests or pur-
chase all of the Interests of the Electing Members for cash;
provided however, if the election of the Electing Members is made
on or before April 30, 2000, the Cash Price used to determine the
amount of cash actually paid to the Selling Members (after
pre-closing and post-closing adjustments as provided in the
preceding parenthetical) shall not be less than One Million Two
Hundred Thousand Dollars ($1,200,000.00).  The price of an
Interest shall be the cash price for the entire company set forth
in the notice multiplied by the percentage interest of the
Interest being purchased.  The Electing Members shall have a
period of one hundred twenty (120) days after such notice is
given to elect to either purchase all of the Interests owned by
the Activating Members or sell to the Activating Members all of
the Interests owned by the Electing Members, at the price so set
forth by the Activating Members.  An Electing Member who fails to
make an election shall be deemed to have sold its Interest to the
Activating Members. If all the Electing Members do not make the
same election, then each Electing Member who elected to purchase
the Interests of the Activating Members shall have a period of
ten (10) days after all elections are made to change its election
from an election to purchase the Activating Member's Interests to
an election to sell its Interests to the Activating Members by
giving written notice to all other Members.  The Members (either
Activating Members or Electing Members, as the case may be) who
become obligated to purchase the Interests from the other Members
shall purchase all of the Interests owned by the other Members in
proportion to the relative percentage interests owned by the pur-

chasing Members. The closing of the purchase of the Interests
provided for herein shall take place simultaneously no later than
fifteen (15) days after the giving of the final notice herein
which establishes which Members will purchase and which Members
will sell or, if notices have not been given, no later than
fifteen (15) days after the last date for the giving of the final
notice which would determine which Members will sell and which
Members will purchase. At the closing, the Selling Members and
owners of any associated Financial Rights will convey their
Interests by assignment with general warranty, free and clear of
all liens and encumbrances.

     (c)  At the closing, the purchasing Members will cause
the Selling Members and owners of any associated Financial Rights
to be released from all guaranties of and other contractual
obligations for liabilities of Montgomery, LLC.

    5.4. <u>Right to Assign</u>.  Any Member purchasing a Membership
Interest pursuant to this Section 5, shall have the right to
assign such right to purchase to any related or affiliated party
of such Member, in whole or in part.

    6.  <u>Purchase Price</u>.

    6.1. <u>Payment of Purchase Price</u>.  The purchase price for any
Membership Interest being purchased pursuant to this Agreement
shall be paid at the Closing (as defined hereinbelow) as follows:

    6.2. <u>Payment of Indebtedness</u>.  A part or all of the pur-
chase price, as the case may be, shall first be applied to the
payment of all amounts of every nature whatsoever owed by the
seller or a shareholder of seller who is a party to this Agree-
ment or his estate, as the case may be, to the purchaser, without
regard to whether such amounts are by the terms of the evidences
of indebtedness then due;

    6.3. <u>Cash Payment</u>.  The amount, if, any, by the purchase
price exceeds the amount applied against indebtedness pursuant to
Section 6.2. shall be paid in cash at Closing;

    6.4. <u>Payment of Other Indebtedness</u>.  At the Closing all
indebtedness of the purchaser or a shareholder of purchaser who
is a party to this Agreement or his estate, as the case may be,
to the seller (other than indebtedness representing the purchase
price) and all accrued interest thereon shall become immediately
due and payable, and the seller shall not be required to consum-
mate the sale of the Membership Interest until such indebtedness
is paid in full.

    7.  <u>Closing</u>.  The Closing (herein referred to as the
"Closing") of the purchase of the Membership Interest provided

for in this Agreement shall be on such dates as the purchaser and
seller agree within the periods provided herein, but if no such
Agreement is reached, then on the last business day within such.
period for Closing.  The Closing shall take place at the princi-
pal offices of Montgomery, LLC, or in such other place as pur-
chaser and seller may agree.

    8.   <u>Non-competition Provisions</u>.

    8.1. <u>Territory</u>.  The parties hereto acknowledge that Mont-
gomery, LLC presently operates and sells Product in all locations
which are within 60 miles (measured in a straight line by air)
from the present limits of the City of Montgomery, Alabama (the
area contained within 60 miles of the present limits of Montgom-
ery, Alabama is herein called the "Territory").

    8.2. <u>During Co-Ownership</u>.  Except as otherwise provided in
Section 8.6, so long as both Concrete and Montgomery, Inc. own a
Membership Interest in Montgomery, LLC none of Montgomery, Inc.,
Concrete, Foley or Lambert, or any entity, other than Montgomery,
LLC, in which any of them has an ownership interest will engage
in the excavation, mining, selling, delivery, or distribution, or
other disposition of Product within the Territory.  In addition,
so long as both Concrete and Montgomery, Inc., own a Membership
Interest in Montgomery, LLC, any opportunity for leasing or
otherwise obtaining additional sources of Product within the
Territory, now or hereafter known to Concrete, Montgomery, Inc.,
Foley, Lambert or any entity in which any of them has an owner-
ship interest shall be first the opportunity of Montgomery, LLC,
and none of the foregoing shall take advantage of such opportuni-
ty until both Concrete and Montgomery, Inc. elect that Montgom-
ery, LLC shall refuse it.

    8.3. <u>Montgomery, Inc.; Concrete</u>.  If either Montgomery, Inc.
or Concrete transfers all its Membership Interest in Montgomery,
LLC to the other or to any third party, then except as otherwise
provided in Section 8.6, during the five-year period beginning
with the transfer (the "Period") such transferring party shall
not:

    (1)  engage in the Territory in the business of exca-
vating, mining, distributing, delivering, selling, or otherwise
disposing of any Product at wholesale or retail, (such business
is herein referred to as the "Prohibited Activity");

    (2)  in the Territory (i) have any interest in (whether as a
shareholder, partner, member or otherwise), (ii) act as agent,
broker, or distributor for or advisor or consultant to, or (iii)
in any way assist (whether by solicitation of customers or
employees or otherwise), any person, firm, corporation or busi-
ness entity which is engaged, or which he reasonably knows is

undertaking to become engaged, in the Territory in the Prohibited Activity;

(3)  in the Territory induce a Customer (as defined below): (i) to purchase any Product in the Territory from any business entity operating in the Territory (other than Montgomery, LLC or its affiliates); or (ii) to withdraw, curtail or cancel such Customer's business with Montgomery, LLC.  As used in this subsection, "Customer" means any actual customer who purchased any Product from Montgomery, LLC in the Territory, within the twenty-four month period prior to the date of the closing of the sale by Montgomery, Inc. or Concrete of its Membership Interest in Montgomery, LLC;

8.4. Lambert.  If Montgomery, Inc. transfers its entire Membership Interest in Montgomery, LLC to Concrete or any other party, Lambert agrees that during the Period he will not:

(1)  engage, as an employee or otherwise, in the Territory in the Prohibited Activity;

(2)  in the Territory (i) have any interest in (whether as a shareholder, partner, member or otherwise), (ii) act as agent, broker, or distributor for or advisor or consultant to, or (iii) in any way assist (whether by solicitation of customers or employees or otherwise), any person, firm, corporation or business entity which is engaged, or which he reasonably knows is undertaking to become engaged, in the Territory in the Prohibited Activity;

(3)  in the Territory induce a Customer (as defined below): (i) to purchase Product in the Territory from any business entity operating in the Territory (other than Montgomery, LLC or its affiliates); or (ii) to withdraw, curtail or cancel such Customer's business with Montgomery, LLC.  As used in this subsection, "Customer" means any actual customer who purchased Product from Montgomery, LLC in the Territory, within the twenty-four month period prior to the date of the closing of the sale by Montgomery, Inc. of its Membership Interest in Montgomery, LLC;

8.5  Foley.  If Concrete transfers its entire Membership Interest in Montgomery, LLC to Montgomery, Inc. or any other party, Foley agrees that, except as provided in Section 8.6 herein, during the Period he will not:

(1)  engage, as an employee or otherwise, in the Territory in the Prohibited Activity;

(2)  in the Territory (i) have any interest in (whether as a shareholder, partner, member, or otherwise), (ii) act as agent, broker, or distributor for or advisor or consultant to, or (iii)

in any way assist (whether by solicitation of customers or employees or otherwise), any person, firm, corporation or business entity which is engaged, or which he reasonably knows is undertaking to become engaged, in the Territory in the Prohibited Activity;

(3)  in the Territory induce a Customer (as defined below): (i) to purchase Product in the Territory from any business entity operating in the Territory (other than Montgomery, LLC or its affiliates); or (ii) to withdraw, curtail or cancel such Customer's business with Montgomery, LLC.  As used in this subsection, "Customer" means any actual customer who purchased products from Montgomery, LLC in the Territory within the twenty-four month period prior to the date of the closing of the sale by Concrete of its Membership Interest in Montgomery, LLC.

8.6.  Exceptions for Foley and Concrete.  Notwithstanding anything contained in this Agreement to the contrary, Concrete and Foley may engage in the following activities in the Territory at the times indicated:

(1)  Subject to the Requirements and Supply Contract entered into between Concrete and Montgomery, LLC contemporaneously herewith, mining and selling Product from the "Ward Property" (herein so called and more particularly described on Exhibit "E" attached hereto) it presently leases in Macon County, Alabama at any time;

(2)  Subject to the Requirements and Supply Contract entered into between Concrete and Montgomery, LLC contemporaneously herewith, mining and selling Product from the "Dozier Property" (herein so called and more particularly described on Exhibit "F" attached hereto) it presently leases in Montgomery County, Alabama at any time after the first to occur of (a) April 30, 2001, and (b) the time when either Concrete or Montgomery, Inc. no longer owns an interest in Montgomery, LLC;

(3)  Subject to the Requirements and Supply Contract entered into between Concrete and Montgomery, LLC contemporaneously herewith, obtaining Product for use in its own operations from any source;

(4)  Selling Product as part of Ready-Mix concrete and in raw form as an incidental part of the Ready-Mix concrete business.

9.   Remedies.  The parties hereto acknowledge that any violation of this Agreement may cause irreparable harm to Montgomery, LLC and damages are not an adequate remedy.  The parties therefore agree that Montgomery, LLC shall be entitled to an

injunction by an appropriate court in the appropriate jurisdic-
tion, enjoining such party from the continuance of any violation,
in addition to any monetary damages which might occur by reason
of the violation of the prohibitions of this Agreement. Nothing
in this Agreement shall restrict any rights that the Montgomery,
LLC may have at law or in equity with respect to matters covered
by this Agreement.

    10.  Disclosure.  The parties hereto agree that any party
may disclose the provisions of this Agreement in connection with
the sale of such party's Membership Interest or as required by
law.

    11.  Severability, Modification.


    11.1.  The covenants set forth in this Agreement shall be
deemed and shall be construed as separate and independent cove-
nants, and should any part or provision of such covenants be held
invalid, void or unenforceable by any court of competent juris-
diction, such invalidity, voidness or unenforceability shall in
no way render invalid, void or unenforceable any other part or
provision thereof or any separate covenant not declared invalid,
void or unenforceable; and this Agreement shall in that case be
construed as if the void, invalid or unenforceable provision were
omitted.

    11.2.  The parties agree that should any portion, provision
or clause of this Agreement be deemed too broad to permit en-
forcement to its full extent, then it shall be enforced to the
maximum extent permitted by law, and the parties hereby consent
and agree that such scope may be judicially modified accordingly
in any proceeding brought to enforce such restriction.

    11.3.  This Agreement is separate from and independent of
each and any other agreements between the parties in any capaci-
ty, and the existence of any claim or cause of action of one
party against the other, whether predicated on this Agreement or
otherwise, shall not constitute a defense to the enforcement of
this Agreement.  The sole consideration given by the parties for
this Agreement was as set forth herein, and the parties' obliga-
tions under this Agreement are in no manner contingent or condi-
tioned upon the performance of obligations under any other
agreement.

    12.  Notices.  Any notice required permitted to be given to
one party by another party hereto and any election to be made
pursuant to this Agreement shall be in writing and shall be
personally delivered or sent by United States mail, certified or
registered, return receipt requested, first class postage and

charges prepaid, in envelopes addressed to the parties as fol-
lows:

    Montgomery, LLC:    c/o Harry E. Lambert
                             26 Carol Villa
                             Montgomery, Alabama  36109

    Montgomery, Inc:    c/o Harry E. Lambert
                             26 Carol Villa
                             Montgomery, Alabama  36109

    Harry E. Lambert:    26 Carol Villa
                             Montgomery, Alabama  36109

    Concrete or
    Foley:           The Concrete Company
                             Attention:  Frank D. Foley, III
                             P. O. Box 7877
                             Columbus, Georgia  31908-7877

    With a copy to:    Charles H. Ford, Jr.
                             Page, Scrantom, Sprouse
                             Tucker & Ford, P.C.
                             P. O. Box 1199
                             Columbus, Georgia  31902

or at such other addresses as shall be designated in writing as
aforesaid by either party to the other party hereto.  Notices
delivered in person shall be effective on the date of delivery.
Notices and elections sent by United States mail shall be effec-
tive upon the date of mailing.

    13.  _Amendments_.  No amendment or modification of this
Agreement shall be valid or binding unless made in writing and
executed by all of the parties hereto.  .

    14.  _Waiver_.  The waiver by one party of a breach of any
provision of this Agreement by the other party shall not operate
or be construed as a waiver of any subsequent breach of the same
or any other provision by the other party.

    15.  _Governing Law_.  This Agreement shall be construed in
accordance with the laws of the State of Alabama.

    16.  _Nouns, Pronouns, Singular and Plural_.  Any masculine
personal pronouns shall be considered to mean the corresponding
feminine (or neuter) personal pronoun.  Any terms in the singular
number shall include the plural and those in the plural shall
include the singular, all as the context may require.

17.  <u>Entire Agreement</u>.  This Agreement and the exhibits attached hereto, constitute the entire agreement and understanding among the parties hereto and supersede and revoke any prior agreement or understanding relating to the subject matter of this Agreement.

18.  <u>Beneficiaries; Assignment</u>.  The rights and obligations of the parties hereto shall inure to the benefit of and shall be binding upon their respective heirs, personal representatives, successors, and assigns.  Without in any way limiting the generality of the foregoing, a purchaser's rights and privileges hereunder may be assigned to any person, firm, organization, or corporation which is succeeding to any part or all of the business of the purchaser.

19.  <u>Counterparts</u>.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

20.  <u>Captions</u>.  The captions used in this Agreement are inserted for convenience only and shall not constitute a part hereof.

21.  <u>Attorney Fees</u>.  The prevailing party in any litigation with respect to this Agreement shall be reimbursed by the opposing parties for its reasonable attorneys fees and expenses incurred in connection with such litigation.

IN WITNESS WHEREOF, the undersigned parties have entered into and executed this Agreement under seal as of the day and year first above written.

MONTGOMERY, LLC:

MONTGOMERY MATERIALS COMPANY, LLC

By all its Members ,

MMC HOLDINGS, INC.

By: _____

HARRY E. LAMBERT, President

THE CONCRETE COMPANY

By: _____

FRANK D. FOLEY, III, President

C0593-123
41024.1

15

MONTGOMERY, INC.:

MMC HOLDINGS, INC.

By: _____

Title: HARRY LAMBERT, President

     CONCRETE:

THE CONCRETE COMPANY

By: _____

   FRANK D. FOLEY, III, President

FOLEY:

_____ (L.S.)

FRANK D. FOLEY, III

LAMBERT:

_____ (L.S.)

HARRY E. LAMBERT

## SCHEDULE OF EXHIBITS

Exhibit "A" - Transferred Assets

Exhibit "B" - Assumed Liabilities

Exhibit "C" - Combined Financial Statements of Montgomery Materials Company, Inc. and Beaver Rock, Inc. as of December 31, 1996

Exhibit "D" - Balance Sheet of Montgomery Materials Company, Inc. of April 30, 1997

Exhibit "E" - Legal Description of Ward Property

Exhibit "F" - Legal Description of Dozier Property

EXHIBIT "A"

TRANSFERRED ASSETS

The "Transferred Assets" consist of all of the assets used by Montgomery, Inc. in its sand and gravel business on the Effective Date, including cash, accounts receivable, machinery and equipment, buildings and improvements, automobiles, furniture and fixtures and other assets, all assets of Beaver Rock, Inc. (which were acquired by Montgomery, Inc. by merger after the Effective Date), all rights of Montgomery, Inc. as Lessee under equipment leases and the Mining Lease Agreement dated December 2, 1994 between SFP, Ltd., an Alabama Limited Partnership, and Beaver Rock, Inc., as Lessee, as assigned by Beaver Rock, Inc. to Montgomery, Inc., and which include, without limitations, the specific assets described on Exhibit A-1 attached hereto;

LESS AND EXCEPT accounts receivable in the face amount of $201,653, and that certain deposit on motor home in the amount of $20,000, which amounts have been determined as shown on Exhibit "A-2" attached hereto and made a part hereof, subject in all instances to adjustment as provided in Section 4.4 of the Agreement to which this Exhibit is attached.

MONTGOMERY MATERIALS COMPANY, INC.
BEAVER ROCK, INC.
EQUIPMENT TRANSFERRED

1994 C-10 Chevy Pickup
1995 Chevy
John Deere Dozer
Caterpillar Dump Truck ( S/N 1HK00227)
Caterpillar Dump Truck ( S/N 1HK00157)
Caterpillar Wheelloader 966F
Caterpillar Generator 3406TA
Berkley Rupp Pump 16C2-F
2 A/C units for Dump Trucks
Various office equipment
Testing Lab
Scalehouse
Tool building
Lateral file cabinet
Computer
Computer network
Lateral file cabinet ( 5 drawer)
Office set-up
ML320T printer
Drafting Table
Water truck
Gorman Rupp Trash Pump
Berkley Water Pumps
Pipe
Dump Hopper
Welder & trailer
100' conveyor
Seiko 5 X 14 screen
O/S Conveyor
Pekor Sand Pump
Steel pipe
Linatex sand separator
Electrical switches and wire
Scales
Pekor sand pump
Land improvements
Retaining wall
Fuel tanks
980G Caterpillar Wheel Loader (S/N 2KB00501)     Leased
970F Caterpillar Wheel Loader (S/N 7SK00699)     Leased
330BL Caterpillar Hydraulic Excavator (S/N 6DR00472)  Leased

**1997 Additions:**

Desk (Stern Brothers)
2 legal files (Stern Brothers)
2 Bookcases ( Stern Brothers)
Canon Multipass 2500 Fax printer (S/N UWJ11110)
Cardinal scales (Model #738 S/N 9508-46)
Collman Vantage Generator 7000 (Model #PM0477023
       S/N 74390019)
Gorman Rupp Pump (Model #16C2FL S/N 907086)
Gorman Rupp Pump (Model #16C2FL S/N 1070977)
Caterpillar Motor Grader (S/N 80C646)

EXHIBIT "A-1"

Exhibit A-2

MONTGOMERY MATERIALS COMPANY, INC.
BEAVER ROCK, INC.

Tentative Change in Equity from 01-01-97 to 4-30-97:

| | | |
|---|---:|---:|
| Combined stockholders' equity (S/E) at 12-31-96 per compiled financial statements | | $ (15,136) |
| Montgomery Materials, Inc. S/E at 04-3097 per compiled financial statements (monthly write-up) | $ 285,704 | |
| Beaver Rock, Inc. S/E at 04-30-97 (unchanged from 01-01-97) | (16,843) | |
| Elimination entry in connection with investment in lease | (62,344) | 206,517 |
| Net Change - tentative | | $ 221,653 |

LESS:

| | | |
|---|---:|---:|
| 1) Deposit on motor home not transferred | | $ -20,000 |
| 2) Accounts Receivable not transferred | | -201,653 |
| Combined stockholders' equity in Transferred Assets net of Assumed Liabilities | | $ (15,136) |

Exhibit "B"

## ASSUMED LIABILITIES

The Assumed Liabilities are all liabilities of MMC Holdings, Inc. and Beaver Rock, Inc. as of the Effective Date, in the amounts shown on Exhibit "D" of the Agreement to which this Exhibit is attached with respect to MMC Holdings, Inc., and, with respect to Beaver Rock, Inc., in amounts not significantly different from the amounts as of December 31, 1996.

C0593-123
41739.1

# WPBB&B

## WILSON, PRICE, BARRANCO, BLANKENSHIP & BILLINGSLEY, P.C.

*Certified Public Accountants*

3815 Interstate Court, Third Floor

Montgomery, Alabama 36109

## FACSIMILE TRANSMITTAL COVER SHEET

**TRANSMIT TO:**

**Name:** Charles Ford

**Company:** Page, Scranton

**Date:** 6-04-97          **Time:** _____

**Fax Number:** 706-324-2835

**TRANSMITTED FROM:**

**Richard M. Stabler, C.P.A.**          **Sender's Direct Phone:** 334/260-2377

**Phone:** 334/271-2200          **Fax Number:** 334/274-1577

Number of pages transmitted (including cover sheet): 30

**COMMENTS:** Chuck!
Please call me if we need to discuss.
Rich

If you do not receive all pages of this fax, or have trouble with this transmission, please call 334/271-2200.

UNLESS OTHERWISE INDICATED, THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDE  ECIPIENT, OR HIS/HER EMPLOYEE OR AGENT, YOU ARE NOT AUTHORIZED TO DISTRIBUTE OR COPY THIS COMMUNICATION. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE. THANK YOU.

EXHIBIT   C

## BEAVER ROCK, INC.
## MONTGOMERY MATERIALS COMPANY, INC.

### COMBINED FINANCIAL STATEMENTS

### DECEMBER 31, 1996

EXHIBIT   C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
DECEMBER 31, 1996

---

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Accountants' Compilation Report | 1 |
| Combined Balance Sheet | 2 |
| Combined Statement of Income | 3 |
| Combined Statement of Retained Earnings | 4 |
| Combined Statement of Cash Flows | 5 |
| Notes to Combined Financial Statements | 7 |

## SUPPLEMENTARY INFORMATION

| Cost of Sales | 12 |
|---|---|
| General and Administrative Expenses | 13 |
| Combining Balance Sheet | 14–15 |
| Combining Statement of Income | 16 |

---

EXHIBIT   C



Member
American Institute
Of Certified Public
Accountants

Member
Alabama Society
Of Certified Public
Accountants

## Wilson, Price, Barranco, Blankenship & Billingsley, P.C.

Certified Public Accountants
Montgomery, Alabama

To the Board of Directors
Beaver Rock, Inc.
Montgomery Materials Company, Inc.

We have compiled the accompanying combined balance sheets of Beaver Rock, Inc. and Montgomery Materials Company, Inc., as of December 31, 1996 and the related combined statements of income, retained earnings, cash flows and supplementary information for the year then ended, in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants.

A compilation is limited to presenting in the form of financial statements information that is the representation of management. We have not audited or reviewed the accompanying combined financial statements and, accordingly, do not express an opinion or any other form of assurance on them.

*Wilson, Price, Barranco, Blankenship & Billingsley, P.C.*

March 10, 1997

1        EXHIBIT      C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.

COMBINED BALANCE SHEET
DECEMBER 31, 1996

## ASSETS

### CURRENT ASSETS

| | | |
|---|---:|---:|
| Cash | $ | 79,053 |
| Accounts receivable - trade | | 181,533 |
| Accounts receivable - employees | | 3,405 |
| Total current assets | | 263,991 |

### PROPERTY AND EQUIPMENT

| | |
|---|---:|
| Machinery and equipment | 871,077 |
| Buildings and improvements | 31,056 |
| Automobiles | 46,189 |
| Furniture and fixtures | 9,034 |
| | 957,356 |
| Less accumulated depreciation | 295,155 |
| Total property and equipment | 662,201 |

### OTHER ASSETS

| | |
|---|---:|
| Loan costs | 6,113 |
| Total other assets | 6,113 |

| | | |
|---|---:|---:|
| **TOTAL ASSETS** | $ | 932,305 |

EXHIBIT C

## LIABILITIES AND STOCKHOLDER'S EQUITY

### CURRENT LIABILITIES

| | |
|---|---:|
| Current portion of long-term debt | $        347,649 |
| Accounts payable - trade | 156,772 |
| Loan from stockholder | 14,645 |
| Payroll taxes payable | 4,370 |
| Sales taxes payable | 666 |
| Total current liabilities | 524,102 |

### OTHER LIABILITIES

| | |
|---|---:|
| Noncurrent portion of long-term debt | 423,339 |
| Total other liabilities | 423,339 |

### TOTAL LIABILITIES

| | |
|---|---:|
| | 947,441 |

### STOCKHOLDER'S EQUITY

| | |
|---|---:|
| Capital stock | 2,000 |
| Additional paid-in capital | 150,965 |
| Retained earnings | 131,899 |
| Less treasury stock | (300,000) |

### TOTAL STOCKHOLDER'S EQUITY

| | |
|---|---:|
| | (15,136) |

### TOTAL LIABILITIES AND STOCKHOLDER'S EQUITY

| | |
|---|---:|
| | $        932,305 |

See accountants' compilation report and notes to combined financial statements.

EXHIBIT  C

**BEAVER ROCK, INC.**
**MONTGOMERY MATERIALS COMPANY, INC.**
COMBINED STATEMENT OF INCOME
FOR THE YEAR ENDED DECEMBER 31, 1996

| | | |
|---|---|---:|
| **INCOME** | $ | 2,889,279 |
| **COST OF SALES** | | 1,906,453 |
| **GROSS PROFIT** | | 982,826 |
| **OPERATING EXPENSES** | | |
| General and administrative | | 315,933 |
| Depreciation | | 230,537 |
| Amortization | | 175 |
| Total operating expenses | | 546,645 |
| **INCOME FROM OPERATIONS** | | 436,181 |
| **OTHER INCOME** | | |
| Freight income | | 23,722 |
| Interest income | | 179 |
| Total other income | | 23,901 |
| **OTHER EXPENSES** | | |
| Interest | | 153,564 |
| Loss on disposition of equipment | | 71,270 |
| Total other expenses | | 224,834 |
| **NET INCOME** | $ | 235,248 |

See accountants' compilation report and notes to combined financial statements.

3

EXHIBIT    C

**BEAVER ROCK, INC.**
**MONTGOMERY MATERIALS COMPANY, INC.**
COMBINED STATEMENT OF RETAINED EARNINGS
FOR THE YEAR ENDED DECEMBER 31, 1996

| | | |
|---|---|---:|
| **DEFICIT AT BEGINNING OF YEAR** | $ | (92,518) |
| Net income | | 235,248 |
| Distributions | | (10,831) |
| **BALANCE AT END OF YEAR** | $ | 131,899 |

See accountants' compilation report and notes to combined financial statements.

4        EXHIBIT  C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
COMBINED STATEMENT OF CASH FLOWS
FOR THE YEAR ENDED DECEMBER 31, 1996

## CASH FLOWS FROM OPERATING ACTIVITIES

| | |
|---|---:|
| Net income | $ 235,248 |
| Adjustments to reconcile net income to net cash | |
| provided by operating activities: | |
| Depreciation | 230,537 |
| Amortization | 175 |
| Loss on disposition of equipment | 71,270 |
| Changes in assets and liabilities: | |
| Accounts receivable | 48,277 |
| Inventory | 113,217 |
| Loan costs | (6,288) |
| Accounts payable | (82,352) |
| Payroll and sales taxes payable | (19,276) |
| Other accrued liabilities | (2,261) |
| Net cash provided by operating activities | 588,547 |

## CASH FLOWS FROM INVESTING ACTIVITIES

| | |
|---|---:|
| Purchase of property and equipment | (218,161) |

## CASH FLOWS FROM FINANCING ACTIVITIES

| | |
|---|---:|
| Repayment of borrowings | (234,591) |
| Distributions to stockholder | (10,331) |
| Repayment of loans from stockholder | (77,410) |
| Repayment of loans to stockholder | 3,800 |
| Net cash used by financing activities | (318,532) |
| **NET INCREASE IN CASH** | 51,854 |
| **CASH AT BEGINNING OF YEAR** | 27,199 |
| **CASH AT END OF YEAR** | $ 79,053 |

See accountants' compilation report and notes to combined financial statements.

5

EXHIBIT C

**BEAVER ROCK, INC.**
**MONTGOMERY MATERIALS COMPANY, INC.**
COMBINED STATEMENT OF CASH FLOWS
FOR THE YEAR ENDED DECEMBER 31, 1996

SUPPLEMENTAL DISCLOSURES OF CASH FLOW INFORMATION

Cash paid during the year for:

| | | |
|---|---|---|
| Interest | $ | 153,564 |

SCHEDULE OF NONCASH INVESTING AND FINANCING ACTIVITIES

| | | |
|---|---|---|
| Equipment purchased with long-term debt | $ | 11,314 |
| Issuance of common stock | $ | 1,000 |
| Purchase of treasury stock with long-term debt | $ | 300,000 |
| Equipment contributed as additional paid-in capital | $ | 150,000 |
| Trade-in of equipment and payoff of related long-term debt | $ | 247,707 |

See accountants' compilation report and notes to combined financial statements.

EXHIBIT C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
NOTES TO COMBINED FINANCIAL STATEMENTS
DECEMBER 31, 1996

---

1.    SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

*Companies' Activities and Operating Cycle*

The Companies are engaged in the sand and gravel mining business in Alabama and Georgia. The Company grants credit to customers substantially all of whom are contractors and businesses located in Alabama and Georgia.

*Basis of Combination*

The combined financial statements include the accounts of Beaver Rock, Inc. and Montgomery Materials Company, Inc., both of which are under common control and stock ownership. All intercompany transactions and balances have been eliminated in combination.

*Property and Equipment*

Property and equipment are recorded at cost. Depreciation is provided principally on the straight-line basis over the estimated useful lives of the various assets as follows:

| | |
|---|---|
| Furniture and fixtures | 7 years |
| Automobiles and trucks | 5 years |
| Plant assets | 5 years |

Total depreciation expense was $230,537 for 1996.

Maintenance and repairs are charged against income when incurred. Significant additions are capitalized.

The cost and accumulated depreciation of assets sold or retired are removed from the respective accounts. Any gain or loss from sale or retirement of property is reflected in income.

*Loan Costs*

Loan costs are being amortized on the straight-line basis over the life of the loan. The amount of amortization expense was $175 for 1996.

---

*EXHIBIT*

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
NOTES TO COMBINED FINANCIAL STATEMENTS
DECEMBER 31, 1996

1. **SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (Continued)**

   *Income Taxes*

   Federal and State of Alabama income taxes are not payable by or provided for the Companies, since both corporations are S Corporations for income tax purposes. The sole stockholder of both companies is taxed individually on his share of the earnings.

   *Cash and Cash Equivalents*

   For the purposes of the combined statement of cash flows, the Companies consider all highly liquid debt instruments purchased with a maturity of three months or less to be cash equivalents.

   *Use of Estimates in the Preparation of Financial Statements*

   The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

2. **LONG-TERM DEBT**

   Long-term debt as of December 31, 1996 consisted of the following:

   Payable by Beaver Rock, Inc.:

   | | | |
   |---|---|---|
   | Note payable to John Deere Credit: 11.25% note payable in monthly installments of $2,830 through December 1997, secured by equipment | $ | 38,064 |
   | Note payable to Nations Bank: 10.5% note payable in monthly installments of $2,192 through December 2000, secured by real estate | | 85,368 |
   | Note payable to GMAC: 6.99% note payable in monthly installments of $462 through March 1998, secured by automobile | | 6,932 |

EXHIBIT C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
NOTES TO COMBINED FINANCIAL STATEMENTS
DECEMBER 31, 1996

---

2.    **LONG-TERM DEBT (Continued)**

Payable by Beaver Rock, Inc.: (Continued)

Note payable to GMAC:
7.95% note payable in monthly installments of $510 through
December 2000, secured by automobile                                    $        18,363

Note payable to Caterpillar Finance:
12% note payable in monthly installments of $7,000 through
January 1998, secured by equipment                                               97,961

Note payable to Orix Credit Alliance, Inc.:
10.8% note payable in monthly installments of $4,491 through
July 1999, secured by equipment                                                 139,221

Note payable Thompson Tractor Co., Inc.:
11.5% note payable in monthly installments of $1,368 through
December 1998, secured by equipment                                              17,842

Payable by Montgomery Materials Company, Inc.:

Note payable to Colonial Bank:
9.25% note payable in monthly installments of $3,210 through
July 1998, secured by accounts receivable, inventory and
equipment                                                                        56,620

Note payable to Colonial Bank:
9.25% note payable in monthly installments of $4,797 through
November 1999, secured by real estate                                           150,000

Note payable to former stockholder:
7.5% note payable in monthly installments of $4,814 through
May 2000, secured by personal guarantee of stockholder                          150,000

Note payable to Cowin Equipment Company, Inc.:
11.9% note payable in monthly installments of $943 through
October 1997, secured by equipment                                               10,617

---

9

EXHIBIT    C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
NOTES TO COMBINED FINANCIAL STATEMENTS
DECEMBER 31, 1996

---

2.    **LONG-TERM DEBT** (Continued)

|  |  |  |
|---|---|---|
| Total long-term debt | $ | 770,988 |
| Less current maturities of long-term debt | | 347,649 |
| Long-term debt - noncurrent maturities | $ | 423,339 |

Maturities of long-term debt are as follows:

| | | |
|---|---|---|
| 1997 | $ | 347,649 |
| 1998 | | 205,693 |
| 1999 | | 166,403 |
| 2000 | | 51,243 |

3.    **CAPITAL STOCK**

Capital stock as of December 31, 1996 consists of the following:

| | Number of Shares | | |
|---|---|---|---|
| | Authorized | Issued and Outstanding | Par Value |
| Beaver Rock, Inc. | 1,000 | 1,000 | $  1 |
| Montgomery Materials Company, Inc. | 20,000 | 100 | $  10 |

On November 15, 1996, Montgomery Materials Company, Inc. purchased 50 shares of its stock at a cost of $300,000 from a stockholder pursuant to the Company's Stock Redemption Agreement.

During the year, equipment valued at $150,000 was contributed as paid-in capital.

---

EXHIBIT   C