THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE CONCRETE COMPANY, | * |
| Plaintiff, | * |
| v. | * Case No.: 2:05-cv-01026-CSC |
| HARRY E. LAMBERT, CAROL'S CONTRACTING, INC. and ALABAMA GRAVEL, LLC, | * |
| Defendants. | * |

## OPPOSITION TO DEFENDANT ALABAMA GRAVEL, LLC'S SUMMARY JUDGMENT MOTION

### INTRODUCTION

Alabama Gravel's summary judgment motion repeats Harry Lambert's and Carol's Contracting's inaccurate allegation that The Concrete Company ("TCC") has removed itself from the sand and gravel business and cannot enforce the non-compete that Lambert has breached. In fact, TCC remains actively engaged in the sand and gravel business both in its own name and via its wholly owned subsidiary Foley Materials Company.

Alabama Gravel also claims that there is no evidence supporting TCC's tortious interference or conspiracy claims. This ignores evidence already in the record, misstates tortious interference law and is premature given that TCC has not been afforded its right to depose any Defendants or complete discovery.

For these and other reasons, and as more specifically set forth below, Alabama Gravel's summary judgment motion should be denied in its entirety.

168731.1

## DISPUTED FACTS

Alabama Gravel's "Statement of Undisputed Facts" consists of 21 numbered paragraphs. TCC responds to a number of those paragraphs that it disputes below.[1]

### I. Paragraphs 3 & 4

Alabama Gravel alleges, in paragraphs 3 and 4, that it has been in the gravel business since April 2005 and made its first shipment of gravel on or about April 10, 2005. By its own admission, however, Robert Alexander was in contact with representatives of Simcala in or about January 2005 to discuss providing Simcala with white oversize gravel. *See* Defendant Alabama Gravel, LLC's Responses and Objections to Plaintiff's First Interrogatories ("Alabama Gravel's First Int. Resp."), a copy of which is attached as Exhibit A hereto, at Response No. 7; *see also* Defendant Alabama Gravel, LLC's Supplemental Responses and Objections to Plaintiff's First Interrogatories ("Alabama Gravel's Supplemental First Int. Resp."), a copy of which is attached as Exhibit B hereto, at Response No. 7; *see also* Alabama Gravel's Brief at p.4. In addition, TCC has not yet had the opportunity to depose Alabama Gravel's members, employees or agents and anticipates discovery of additional details concerning the relationship between Simcala and members of Alabama Gravel leading up to and following the January 2005 meeting. TCC also anticipates learning of contacts between Alabama Gravel and Harry Lambert and aggregate customers. All this discovery will further refute Alabama Gravel's contention that it has been in business only since April 2005. It may also demonstrate that Alabama Gravel, through its founding members and other agents, began shipping aggregates or brokering aggregates before it was officially formed.

---

[1] In addition to those paragraphs specifically addressed below, TCC disputes all the paragraphs to the extent they suggest any potential liability against TCC.

## II.  **Paragraphs 5 & 6**

Alabama Gravel asserts, in paragraphs 5 and 6, that Harry Lambert has never been a member or employee of Alabama Gravel and received no payment or compensation from Alabama Gravel during the time period involved in this case. TCC has not had the opportunity to depose Harry Lambert or, as stated above, any Alabama Gravel members, employees or agents. TCC, therefore, is not in a position to determine whether Lambert has been a member, employee or some other type of agent of Alabama Gravel. It is already clear, however, that Lambert has benefited financially from Alabama Gravel. His wife is an employee of Alabama Gravel, and he and his wife lease office space to Alabama Gravel. *See* Defendant Carol's Contracting's Responses to First Interrogatories ("Carol's Contracting's Int. Resp."), a copy of which is attached as Exhibit C hereto, at Responses 5 & 6. And, Lambert's wife's company, Carol's Contracting, Inc., hauls aggregate products to Alabama Gravel's customers. *See* Alabama Gravel's First Int. Resp., Exhibit A, at Response No. 7. Lambert benefits from all three forms of compensation.

Lambert has also received deferred financial benefit. In April 2006, Lambert formalized a consulting agreement with Alabama Gravel. *See* Consulting Agreement, a copy of which is attached as Exhibit D hereto. This agreement is, at the very least, circumstantial evidence of deferred compensation for Lambert's assistance before the agreement was formalized. Lambert has already admitted to placing Simcala in touch with Alabama Gravel's members, and Alabama Gravel admits that Harry visited its Deatsville, Alabama, operation before the consulting agreement was formalized and the expiration of the non-compete at issue. *See* Defendant Harry E. Lambert's Responses to First Interrogatories ("Lambert's Int. Resp."), a copy of which is attached as Exhibit E hereto, at Response 7; *see also* Alabama Gravel's Supplemental First Int.

Resp., Exhibit B, at Responses 6 & 12. TCC anticipates additional evidence further establishing compensation as discovery continues.

### III.     Paragraphs 8 & 10

Alabama Gravel asserts, in paragraphs 8 and 10, that neither TCC nor Lambert furnished Alabama Gravel with a copy of the agreement containing the non-compete and that the first time any member of Alabama Gravel received or reviewed the agreement was after Alabama Gravel was served with the Complaint in late October 2005. Both Lambert and Carol's Contracting, however, admit that Alabama Gravel was aware of "TCC's contractual and business relations with Defendant Harry Lambert pertaining to the June 10, 1997 Agreement," which contained the non-compete, before the Complaint was filed. *See* Complaint at ¶59 and Answers of Defendants Harry E. Lambert and Carol's Contracting, Inc. at ¶59. In addition, since Carol's Contracting was aware of the non-compete, Carol Lambert (Lambert's wife and Alabama Gravel's agent and bookkeeper) was aware of the agreement. *See* Complaint at ¶59 and Answers of Carol's Contracting, Inc. at ¶59.

Finally, Lambert states that he advised Alabama Gravel that he was in "jail" until January 2, 2006 "as far as operating any sand and gravel business was concerned so we have avoided talking about or taking any action that would involve me engaging in the sand and gravel business." *See* Lambert's Int. Resp., Exhibit E, at Response 6. Lambert adds that he "specifically" told Alabama Gravel he "could not become involved in the sand and gravel business until after January 2, 2006." *See id.*

### V.     Paragraph 11

Alabama Gravel asserts, in paragraph 11, that it has never used fraud, force, or coercion in selling gravel to customers. TCC has not been afforded its opportunity to complete discovery

168731.1

4

with respect to these issues. But, at this point, given Alabama Gravel's attempts to obfuscate its relationship with Lambert – i.e., payments to his wife's company, deferred compensation, leasing office space from Lambert and his wife – depict circumstantial evidence of fraud. TCC anticipates discovery of additional evidence.

## V.  Paragraph 12

Alabama Gravel asserts, in paragraph 12, that Simcala, Globe Metallurgical, Inc. and Maddox Stone and Gravel, Inc. were all looking for additional white oversize gravel suppliers when Alabama Gravel started its business operations. TCC has not been afforded its opportunity to complete discovery. It is, therefore, unable to confirm or refute this claim at this time.

## VI.  Paragraphs 14-21

Paragraphs 14 through 21 track Simcala employee Dick Wymer's affidavit proffered in support of Alabama Gravel's motion. TCC has not deposed Mr. Wymer in large part because TCC has not had the opportunity to depose any of the Defendants. TCC, therefore, disputes all the paragraphs to the extent TCC has been denied cross-examination. TCC also more specifically disputes paragraph 20 to the extent Alabama Gravel claims Simcala denies that Alabama Gravel interfered with the relationship between Simcala and TCC. Such interference is a question for the trier of fact.

\*     \*     \*     \*     \*

All of the above disputed facts unequivocally demonstrate that Alabama Gravel is not entitled to summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law. *Fed. R. Civ. P.* 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of a claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law, the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor. *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985). In deciding whether an inference is reasonable, the court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." *Southway Theatres, Inc. v. Georgia Theatre Co.*, 672 F.2d 485, 493 (5th Cir. Unit B 1982). The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. *Id.* at 495. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one. *Id.*

In keeping with the above, "summary judgment may only be decided upon an adequate record." *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988). Indeed, the Eleventh Circuit has held that this is the "common denominator" of the Supreme Court's three seminal summary judgment cases. *Id.*[2] "[S]ummary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Ga. Bank of*

---

[2] *Citing generally Celotex Corp.*, 477 U.S. 317 (1986), *Anderson*, 477 U.S. 242 (1986), and *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

*Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988); *e.g., Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1145 (5th Cir.)(en banc), *cert. denied*, 414 U.S. 1116 (1973); *Ala. Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir.), *cert. denied*, 449 U.S. 820 (1979)("[s]ummary [j]udgment should not, therefore, ordinarily be granted before discovery has been completed"). The opposing party has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery to determine whether it can furnish opposing affidavits. *Snook*, 859 F.2d at 870.

## ARGUMENT AND CITATION OF AUTHORITY

In accordance with this standard, Alabama Gravel's purported argument in support of summary judgment will be addressed and refuted below.

### I.     The Non-Compete Was Enforceable After April 1, 2005

Section I of Alabama Gravel's argument is a repetition and incorporation of claims raised in Lambert's and Carol's Contracting's summary judgment motions. TCC, therefore, incorporates herein by reference its opposition to those motions. Alabama Gravel's argument in section I fails for the same reasons as Lambert's and Carol's Contracting's.

### II.    Fact Issues Remain As To Alabama Gravel's Tortious Interference

Alabama Gravel next argues that it cannot be liable for tortious interference allegedly because (1) it could not have intentionally interfered; (2) the alleged harm to TCC was not proximately caused by Alabama Gravel; and (3) Alabama Gravel did not use fraud, force or coercion to obtain any business from TCC's customers. None of these claims warrant summary judgment.

#### A.     *There Is Evidence Of Intentional Interference*

Alabama Gravel baldly claims that it is undisputed that it "neither received nor reviewed

a copy of the 1997 Agreement between TCC and Lambert" before the Complaint was filed. This is inaccurate. Both Lambert and Carol's Contracting admit that Alabama Gravel was aware of the contractual relations pertaining to 1997 Agreement, which included the non-compete. In addition, Carol Lambert, Alabama Gravel's book-keeper was obviously aware of the non-compete. Finally, Lambert admits that he specifically told Alabama Gravel that he was in "jail" and could not become involved in the sand and gravel business until after January 2, 2006.

Thus, even on the evidence in the record to date, evidence which, through no fault of TCC, does not include depositions of Defendants, it is clear that Alabama Gravel was aware of the non-compete. Whether they actually read it word for word is immaterial when it is clear that they were aware that Lambert was not to be involved in the sand and gravel business and were, therefore, also aware of the terms of the non-compete.[3]

Alabama Gravel also appears to suggest that any interference with the non-compete was an accident. The above facts demonstrate knowledge of the terms of the non-compete making Alabama Gravel's interference anything but accidental. Nevertheless, if the Court does not consider it at least a question of fact as to whether Alabama Gravel intentionally interfered, TCC hereby certifies, in accordance with the Court's May 25, 2006 Order, that the additional discovery is necessary to opposing the motion, that TCC has, through no fault of its own, been unable to gather this discovery in the form of affidavit or other sworn testimony, and that it

---

[3] Alabama Gravel cites *Barber v. Bus. Prods. Ctr., Inc.*, 677 So. 2d 223 (Ala. 1996), for the apparent proposition that absent the intent element, summary judgment is appropriate even if a defendant has some general awareness of the business of contractual relationship at issue. Alabama Gravel's argument up to that point is that it had no knowledge of the non-compete and, thus, could not have intentionally interfered. The citation to *Barber* makes little sense. To the extent, however, Alabama Gravel may be using *Barber* to imply that "general" awareness of a non-compete will not support a tortious interference claim, the citation would be inappropriate. In *Barber*, which did not even deal with a non-compete, the Court found that the defendants were aware of the contractual relations at issue, but that they did not intentionally interfere with the relations because their disputed actions were taken pursuant to an established company policy. *Id.* at 227-228. *Barber* is inapposite to this case.

168731.1                                           8

should be given until October 6, 2006 to collect this discovery. *See* Affidavit of Horald "Hugh Sorrell ("Sorrell Aff."), dated June 7, 2006, a copy of which is attached as Exhibit F hereto, at ¶3. "[S]ummary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook*, 859 F.2d at 870; *e.g.*, *Littlejohn*, 483 F.2d at 1145; *Ala. Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d at 609 ("[s]ummary [j]udgment should not, therefore, ordinarily be granted before discovery has been completed").

### B.  *Alabama Gravel's Veiled "But For" Argument Is Inapplicable*

Alabama Gravel next claims that its actions were not the proximate cause of TCC's damages because TCC's customers' decision to stop purchasing from TCC was not attributable to Alabama Gravel's affirmative conduct. Alabama Gravel relies on *Powell v. S. Cent. Bell Tel. Co.*, 361 So. 2d 103 (Ala. 1978). *Powell*, however, is not even a tortious interference with business relations case. The disputed claim was a "trespass" where the defendant allegedly "coerced" sponsors from withdrawing their adds from the plaintiff's weekly column. *Id.* at 103. The court found lack of proximate cause because each of the sponsors denied any coercive conduct by the defendant. *Id.* at 105.

TCC concedes that it must show proximate cause for its damages; but *Powell* does not stand for the proposition that in a tortious interference case, a defendant prevails where a customer states that it was not going to do business with the plaintiff irrespective of the defendant's conduct. Alabama Gravel's use of *Powell* in this regard is a veiled attempt to apply a "but for" test, which the Alabama Supreme Court has rejected in tortious interference cases, such as *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So. 2d 1345 (Ala. 1991).

In *Utah Foam*, the defendant tried to argue that to prove damages for tortious interference, the plaintiffs had to prove that "but for" the defendant's interference, plaintiffs

would have been awarded the contract at issue. *Id.* at 1353. The Court rejected this. "The tort of interference with a business relationship is designed to protect property interests in businesses and to compensate for the damage caused by that interference. It is the right to do business in a fair setting that is protected." *Id.*[4] Moreover, "proof that a company would not have been awarded a particular contract is not the sine qua non of the tort of interference with contract or a business relationship." *Utah Foam*, 584 So. 2d at 1353. The tort has two aspects: damage can occur regardless of the fact that the company would not have been awarded the contract, and it can also take other forms. *Id.* Thus, the court found, regardless of the fact that the customer maintained it would not have awarded the contract to the plaintiff, the defendants actions thwarted the plaintiffs' ability to adequately present products and services and virtually eliminated any possibility that the plaintiffs could have been awarded the contract. *Id.*

Alabama Gravel urges what *Utah Foam* rejects. Even if Simcala or another customer claims that it would not have done business with TCC irrespective of Alabama Gravel's affirmative conduct,[5] summary judgment is inappropriate because TCC has been denied the right to conduct business in a fair setting. Alabama Gravel tortiously interfered when it went into business with Lambert, thereby denying TCC the ability to compete in the absence of Lambert. Had Alabama Gravel not done this, TCC may have been able to retain Simcala and other lost business. As in *Utah Foam*, Alabama Gravel's conduct virtually eliminated this possibility.

### C. *Fact Issues Remain As To Fraud By Alabama Gravel*

Alabama Gravel's last argument against tortious interference is an alleged absence of "fraud, force or coercion." Again, however, TCC has not been afforded its opportunity to

---

[4] *See also Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp. 2d 1268, 1280-81 (M.D. Ala. 2003)(J. Albritton)(rejecting "but for" analysis and citing *Utah Foam* with approval).

complete discovery with respect to these issues, making any dispositive ruling premature. *See* Sorrell Aff., Exhibit F, at ¶3. In any event, at this point, given Alabama Gravel's attempts to obfuscate its inappropriate business relationship with Lambert – i.e., payments to his wife's company, deferred compensation, leasing office space from Lambert and his wife – depict circumstantial evidence of fraud. *Utah Foam*, 584 So. 2d at 1352 ("evidence of fraud in many cases is circumstantial"). More directly, if there were no business relationship between Lambert and Alabama Gravel, then why did Lambert travel to the Deatsville site long before his covenant expired? TCC anticipates discovery of additional evidence.

### III.   The Conspiracy Claims Also Remains Viable

Alabama Gravel's final argument is that TCC's conspiracy claims allegedly fail because there is no tortious interference claim. As shown above, summary judgment would be inappropriate on the tortious interference claim. As a result, Alabama Gravel's argument against the conspiracy claims fails as well. *See Willis v. Parker*, 814 So. 2d 857, 867 (Ala. 2001) (conspiracy will lie where there is an underlying tort upon which to base the conspiracy claim.)

### CONCLUSION

For the foregoing reasons, TCC respectfully submits that Alabama Gravel's summary judgment motion should be denied in its entirety.

This the 7th day of June, 2006.

/s/G. Lane Knight
G. Lane Knight (ASB-6748-I72K)
One of the Attorneys for Plaintiff The
Concrete Company
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, Alabama 36101
Telephone: (334) 834-6500

---

[5]   TCC denies Simcala's claims in this regard as well as Alabama Gravel's apparent assertion that none of TCC's customers now served by Alabama Gravel were going to stay with TCC and looks forward to its discovery as of right into these claims.

Facsimile: (334) 269-3115
lknight@balch.com

Thomas F. Gristina, Esquire
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
1043 Third Avenue
P.O. Box 1199
Columbus, GA 31902-1199

William L. Tucker, Esquire
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
1111 Bay Avenue, Third Floor, Synovus Centre
Columbus, Georgia  31901

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of June, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Dennis R. Bailey, Esquire
Rushton, Stakely, Johnston & Garrett
P. O. Box 270
Montgomery, Alabama 36101-0270

James N. Walter, Jr., Esquire
Capell & Howard, P.C.
P. O. Box 2069
Montgomery, Alabama 36102-2069

Chad W. Bryan, Esquire
Capell & Howard, P.C.
P. O. Box 2069
Montgomery, Alabama 36102-2069

      /s/Robin G. Laurie
      OF COUNSEL