IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE CONCRETE COMPANY, | |
| PLAINTIFF, | |
| vs. | CASE NO. 2:05-CV-1026-CSC |
| HARRY E. LAMBERT, CAROL'S CONTRACTING, INC., and ALABAMA GRAVEL, LLC, | |
| DEFENDANTS. | |

**DEFENDANTS HARRY E. LAMBERT AND CAROL'S CONTRACTING, INC.'S SECOND MOTION FOR PROTECTIVE ORDER AND SUPPLEMENTATION OF BRIEF IN SUPPORT OF MOTIONS FOR <u>SUMMARY JUDGMENT</u>**

COME NOW Defendants Harry E. Lambert (hereinafter "Lambert") and Carol's Contracting, Inc. (hereinafter "Carol's Contracting") and as requested at the hearing June 23, 2006, notifies the Court that it has identified a case on point holding that a company in the position of TCC has no standing to enforce a non-competition agreement and pursuant to Federal Rule of Civil Procedure 26(c) moves this Honorable Court to protect these defendants from having to engage in expensive discovery on the merits of the case prior to a ruling on pending motions relating to the standing of TCC to enforce the non-competition agreement in issue. Furthermore, these defendants would supplement their briefs regarding summary

judgment [Doc. 40 & Doc. 42] by adding a citation to the case of <u>Russell v. Birmingham Oxygen Service, Inc.</u>, 408 So.2d 90 (Ala. 1981), *cited with approval and explained* <u>Campbell & Sons Oil Company, Inc. v. Murphy Oil USA, Inc.</u>, 2000 U.S. Dist. 9196 (N.D. Ala. Jan. 3, 2000).  As grounds for this motion, Lambert and Carol's Contracting would state as follows:

1. On December 31, 1981, the Alabama Supreme Court, on application for rehearing, issued a unanimous corrected opinion in the case styled <u>Jerry Russell, et. al. v. Birmingham Oxygen Service, Inc.</u>, No. 79-607.  This case is on point to the issues pending before this Court.  The facts of that case were that as part of the sale of a home respiratory therapy business (J&J) in Madison County, the buyer (Birmingham Oxygen) required a non-competition agreement with the owner of J&J: Jerry Russell prohibiting him from engaging in the home care respiratory therapy field in Madison County.  408 So. 2d at 91. Within a few months, Russell was working with his wife in one business and his former partner in another that together indisputably offered home care respiratory therapy services in Madison County identical to those which had been provided by J&J. *Id*. at 92. At the time defendants formed these businesses Birmingham Oxygen was not engaged in the business of oxygen services in Madison County.  However, Birmingham Oxygen's wholly owned subsidiary,

Southeastern Medical, Inc. did engage in that business in Madison County at that time. *Id.*

2. Birmingham Oxygen[1] filed suit against Russell and his wife and the companies operating in Madison County for breach of contract and injunctive relief relating to the non-competition agreement. *Id.* The trial court granted an injunction against all defendants from participating in the respiratory therapy business in Madison County for the remaining term of the agreement and the defendant's appealed. *Id.* at 93.

3. On appeal, the defendants raised the same issue presented in the Motions for Summary Judgment Briefs filed by Lambert and Carol's Contracting in Docs. 40 & 42:  They argued that Birmingham Oxygen had no standing to enforce the non-competition clause in the sales' agreement because Birmingham Oxygen was not operating an oxygen and respiratory services business in Madison County at the same time as the defendants and, therefore, defendants were not competing with Birmingham Oxygen. *Id.*

4. The Alabama Supreme Court reversed the ruling of the trial court holding that Birmingham Oxygen could not enforce the non-competition agreement unless that corporation was itself engaged in the respiratory

---

[1] It is not clear whether the subsidiary was also a plaintiff although the opinion discusses the rights of the subsidiary as if it was also a party.  Here, however, the subsidiary Foley Materials is not even a party to the case.

therapy business in Madison County. The court rejected the argument that it was engaging in the business through a wholly owned subsidiary saying:

> "Appellees argue that it makes no difference whether Birmingham Oxygen or Southeastern Medical enforces the non-competition agreement, since Barney C. Eller wholly owns both corporations and it was him with whom [Russell] dealt. This contention is without merit. A corporation is an entity created by compliance with statutory requirements. A corporation has the right to sue and be sued just like a natural person. A corporation, just like an individual, must enforce its own rights and privileges."

408 So. 2d at 93 (citations omitted). The Alabama Supreme Court concluded that because there was no finding of a valid assignment from Birmingham Oxygen to Southeastern Medical, neither could enforce the non-competition agreement[2]. *Id.* at 94. Accordingly, the case was reversed and remanded.

5. The Russell case has not been overruled and has been cited several times since 1981. It was cited with approval and explained by Judge Lynwood Smith in the context of a unfair competition claim in the case of Campbell & Sons Oil Company, Inc. v. Murphy Oil USA, Inc., 2000 U.S. Dist. 9196 (N.D. Ala. Jan. 3, 2000). It is normally cited for the proposition that a parent corporation cannot sue for damage to a subsidiary and vice versa.

---

[2] Here, however, there is no contention that such an assignment ever took place.

6. This cause was filed October 25, 2005. [Doc. 1] The sole plaintiff in the case is The Concrete Company "TCC". The underlying linchpin of all claims asserted in the complaint is the existence of an enforceable non-competition agreement and, because Foley Materials, Inc. is not a party, TCC's standing to enforce it.

7. Lambert is an individual who was not able to earn a living in the sand and gravel business for several years. He has no insurance to pay for the defense of the claims alleged in the complaint nor to pay for the attorneys' fees associated with the defense. Harry Lambert has also suffered from bouts with cancer which have limited his ability to earn income.

8. Carol's Contracting is a closely-held corporation owned and managed by Harry's wife Carol Lambert. It was formed to provide income while Harry was unable to work for the reasons stated above. It is a trucking company with one or two vehicles operating at a time. It has no insurance coverage for the claims asserted in this case nor for the attorneys' fees associated with the defense.

9. Timely answers were filed by these defendants on November 23, 2005 [Docs. 7&8]. Lambert's answer included a counterclaim seeking, among other things, a declaration that the non-competition agreement was

unenforceable on its face due to the unreasonableness of its stated length and breadth.

10. On January 2, 2006, the non-compete agreement expired by its own terms.

11. On February 3, 2006, Lambert filed a motion for judgment on the pleadings [Doc. 28] seeking a determination that the non-competition agreement had expired on its own terms January 2, 2006. The motion was denied as moot after TCC stipulated that the agreement had expired on that date.

12. On February 8, 2006, this Court entered a new scheduling order setting the deadline for dispositive motions for July 24, 2006 and cutoff date for discovery of October 6, 2006. [Doc. 31]

13. On March 28, 2006, Lambert took the deposition of the 30(b)(6) representative of TCC (Hugh Sorrells). During his testimony Lambert discovered that as of April 1, 2005 TCC operated solely as a holding company and was not in the sand and gravel business. Thereafter, a wholly owned subsidiary, Foley Materials, Inc., conducted sand and gravel business in the territory.

14. On April 18, 2006, Lambert took the deposition of Frank Foley at which Foley produced the document showing the transfer of assets from TCC to

Foley Materials effective April 1, 2005. No assignment of the non-competition agreement to Foley Materials, Inc. was alleged or produced.

15. On April 27, 2006, Lambert and Carol's Contracting filed Motions for Summary Judgment on the question of whether TCC had standing to enforce the terms of the non-compete and whether it was otherwise enforceable. [Doc. 39 & 41]

16. On May 2, 2006, this Court set the motions for summary judgment for submission on May 23, 2006 and gave TCC until that date to file a response. [Doc. 44]

17. On May 11, 2006, TCC noticed the depositions of all defendants to take place over the period of June 5-7. This was the first deposition notice issued by TCC.

18. On May 15, 2006, counsel for these defendants e-mailed counsel for TCC and stated:

> One of the primary reasons of filing the MSJ motions early was to try to avoid costly discovery expenses on the merits in the event the Court finds the issues raised in our MSJ have merit. Those issues were specifically raised as to not require merits discovery.
>
> Accordingly, this is my effort to try to resolve a possible discovery dispute. I would like your agreement that if we do not have a decision on our pending motions by 5 p.m. on June 1, then we will cancel and reschedule the depositions you have noticed. If you will not agree to this proposal then I shall file a

>Motion for Protective Order with regard to all merits discovery pending a ruling on the potentially dispositive motions.
>
>Obviously, I would not object to any effort to extend other deadlines based upon such a delay

19. Alabama Gravel filed a motion for summary judgment on May 17, 2006. [Doc. 47] This Court set the submission date for that motion for June 7, 2006. [Doc. 50]

20. On May 23, 2006, TCC filed its response to the motions for summary judgment filed by these defendants. [Doc. 49] TCC did not request any further discovery on the issues raised in the motions. Rather, it indicated that no further discovery on the questions raised by these defendants was essential. *See* Doc. 49, pg. 14, fn. 8.

21. On May 25, 2006, TCC agreed to move the depositions of all defendants from the week of June 6 to the week of June 19.

22. On June 7, 2006, TCC noticed the depositions of all defendants to be taken during the period of June 20-23.

23. On June 9, 2006, these defendants notified TCC counsel that if no ruling was issued on the pending motions by June 14th, these defendants would probably file a motion for protective order.

24. On June 13, 2006, this Court ordered that TCC file a list of all discovery conducted by TCC and that a hearing on the issue of whether discovery

would be required by TCC to adequately respond to the motion for summary judgment filed by Alabama Gravel be conducted on June 23, 2006. [Doc. 52]

25. On June 14, 2006, in an effort to attempt to resolve a potential discovery dispute, counsel for these defendants called counsel for TCC to inquire in a civil manner whether TCC would agree to postpone the depositions pending a ruling on the aforesaid motions. TCC counsel politely declined.

26. On June 14, 2006, Lambert and Carol's Contracting filed their first Motion for Protective Order [Doc. 54].

27. This Court granted the motion June 19, 2006. [Doc. 57]

28. A hearing was conducted June 23, 2006 on the issue of further discovery. During the hearing the Court requested to know whether there was authority on the issue of the standing of TCC and counsel for these defendants indicated they believed there was a case and would supply it. [Doc. 59]. That case, Russell v. Birmingham Oxygen, *supra*, was identified July 7, 2006.

29. However, on June 23, 2006, this Court issued an order permitting TCC to complete "any discovery necessary to fully respond to the defendant's motions for summary judgment" through August 1, 2006. [Doc. 58]

30. On June 28, 2006, counsel for TCC requested dates to depose Harry Lambert and Carol's Contracting (as well as Alabama Gravel principals).

31. On July 5, 2006, counsel for Lambert and Carol's Contracting received notices for their depositions July 12, 2006, as well as, notices of depositions of 10 third party individuals—some of which are out of state. Counsel was advised that three members of Alabama Gravel were also to be deposed in July.

32. The depositions of Harry Lambert and Carol Lambert are not necessary to respond to the pending motions for summary judgment of any defendant. They have no first hand information on the standing issue nor whether TCC can prove damages.

33. The defense of the claims of TCC is an expensive proposition for these defendants.

34. The purpose of the filing of the pending motions for summary judgment months before the cutoff date for such motions was, as stated above, to avoid unnecessary expenses of litigation if TCC was determined, as these defendants strongly believe should be determined, not a proper party or that the non-compete was unenforceable.

35. No discovery on the merits of the standing claim from these Harry or Carol Lambert is required for TCC to respond to the pending motion on

the standing issue since they are based upon the relationship between TCC and Foley Materials and a transfer of assets which occurred April 1, 2005.

36. If the Court grants the pending motions on the standing issue the depositions of Harry and Carol Lambert will be unnecessary.

37. These defendants have no objection to TCC moving forward with depositions of third parties on the issues of damages since that issue is raised in the Motion for Summary Judgment of Alabama Gravel.

38. Further, these defendants have no objection to any reasonable extension of discovery (currently set for completion by October 6, 2006) or other deadlines that might be warranted by a delay in discovery pending a ruling on the pending motions.

WHEREFORE, Defendants Harry E. Lambert and Carol's Contracting, Inc., respectfully request that this Court enter a protective order requiring the depositions scheduled of Lambert and Carol's Contracting be delayed until a ruling is issued on the pending motions on the standing issue raised therein.

Respectfully submitted this 7th day of July 2006.

    /s/ Dennis R. Bailey
    Dennis R. Bailey
    Bethany L. Bolger
    Attorneys for Defendant Harry E. Lambert

                                 and Carol's Contracting, Inc.

Of counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270
(334) 206-3234 (phone)
(334) 481-0031 (fax)
drb@rsjg.com (e-mail)
bbolger@rsjg.com (e-mail)

## CERTIFICATE OF SERVICE

 I hereby certify that I have filed the foregoing pleading through the ECMF system on this the 7th day of July 2006 which will forward same to:

  Robin G. Laurie, Esq.
  Griffin Lane Knight, Esq.
  Balch & Bingham, LLP
  105 Tallapoosa Street, Suite 200
  Montgomery, Alabama   36104-3515

  James N. Walter, Jr., Esq.
  Chad W. Bryan, Esq.
  Capell & Howard
  Post Office Box 2069
  Montgomery, Alabama   36102-2069

  Thomas Gristina, Esq.
  William Leonard Tucker, Esq.
  Page, Scrantom, Sprouse, Tucker & Ford
  Synovus Center, Third
  1111 Bay Avenue
  Columbus, Georgia   31901


          /s/ Dennis R. Bailey
          Of counsel

### Jerry Russell, et al. v. Birmingham Oxygen Service, Inc., et al.

### No. 79-607

### Supreme Court of Alabama

### *408 So. 2d 90; 1981 Ala. LEXIS 3953*

### December 23, 1981

**PRIOR HISTORY:** [**1]

Appeal from Madison Circuit Court.

**DISPOSITION:**

REVERSED AND REMANDED. APPLICATION FOR REHEARING OVERRULED AND OPINION CORRECTED.

**JUDGES:**

Torbert, Chief Justice. Faulkner, Almon, Embry and Adams, JJ., concur.

**OPINIONBY:**

TORBERT

**OPINION:**

[*91] ON APPLICATION FOR REHEARING

The original opinion in this case is withdrawn and the following corrected opinion is substituted in its place.

Defendants Jerry Russell and James Edwards were partners in a home respiratory therapy business located in Madison County, Alabama, known as J&J Respiratory Service Company (J&J). Primarily, J&J rented respiratory equipment, oxygen equipment and oxygen. Approximately one-half of J&J's business related to the service of providing oxygen to patients and the other half of J&J's business related to the renting of other respiratory equipment such as IPPB (intermittent or immediate positive pressure breathing) machines.

[*92] Russell and Edwards d/b/a J&J sold the half of their business relating to the service of providing oxygen to their patients, to Birmingham Oxygen Service, Inc. (Birmingham Oxygen) in May of 1977. This transaction consisted of a series of three interrelating contracts. The first contract [**2] (purchase agreement) consisted of the sale of J&J's oxygen business (including the equipment and names of patients) to Birmingham Oxygen for: (1) The payment of $ 3,260.38 so that Russell and Edwards could pay off a bank note in that amount and (2) a $ 1,220.96 credit against the amount J&J owed Birmingham Oxygen for previously purchased merchandise. The second contract (non-competition agreement) provided that Russell and Edwards would "not compete with the business of Birmingham Oxygen Service, Inc., for a period of ten years. . . ." The second contract further provided that Russell and Edwards would exert "their 'best efforts,' to obtain patients for Birmingham Oxygen Service, Inc., in order to build the business and enable the said Birmingham Oxygen Service Inc., to recover the expense and cost of this purchase." The third and final contract in this series gave Birmingham Oxygen a right of first

refusal if J&J decided to sell the remainder of its business.

In June of 1977, J&J decided to sell the remainder of its business and Birmingham Oxygen desired to purchase the business. While the contract expressing the terms of this transaction designated Russell as the sole owner of [**3] the remaining assets of J&J, testimony during the trial showed that the partnership still existed on the date of the contract; that Edwards could not make it to the meeting concerning the sale; and that the Russell as sole owner designation was simply for convenience. Edwards did receive one-half of the proceeds of the sale and did give his consent to the sale of the remaining assets of J&J. Russell and Barney Eller, the President of Birmingham Oxygen, were the only individuals signing the agreement. Birmingham Oxygen paid to Russell (one-half going to Edwards) approximately $ 11,200 for the respiratory business of J&J. This included J&J's equipment, and accounts receivable. Russell also agreed not "to engage in or become interested, either directly or indirectly . . . in any corporation, partnership, sole proprietorship, association, or any business in competition with Birmingham Oxygen in the home care respiratory therapy field [in Madison County]." Edwards, however, did not sign any agreement relating to the second transaction. Russell testified that part of the "deal" was an offer of employment to him by Birmingham Oxygen. Birmingham Oxygen denies this.

Russell's wife, [**4] Maggie Waddell Russell, and her brother started a business during the summer of 1977 known as Respiratory Rental Company. Respiratory Rental engaged in the business of providing oxygen services to its patients. Russell admitted that he did the majority of the work of Respiratory Rental. Sometime during the fall of 1977, Russell and Edwards created a partnership that rented hospital equipment, including respiratory equipment. This business was known as E&R Rental Company. It was undisputed that the combination of the services offered by Respiratory Rental and E&R Rental Company equated the services previously offered by J&J.

Birmingham Oxygen never engaged in the business of oxygen services or respiratory services purchased from J&J in Madison County. However, Birmingham Oxygen's wholly owned subsidiary, Southeastern Medical, Inc. (Southeastern Medical), did engage in the business purchased from J&J.

On April 18, 1979, Birmingham Oxygen filed suit against Jerry Russell, Jerry Russell d/b/a J&J Respiratory Service Co., and Jerry Russell d/b/a Respiratory Services. The complaint was later amended to include as defendants James Edwards, Maggie Waddell Russell, Maggie and Jerry [**5] Russell d/b/a Respiratory Rental Co., and Jerry Russell and James Edwards d/b/a E & R Hospital Rental Company. Birmingham Oxygen sought damages for breach of contract and injunctive relief. On April 23, 1980, the trial court granted an injunction restraining Jerry Russell, James Edwards, and Maggie Russell from engaging in the [*93] respiratory therapy care business or competing with the plaintiffs for seven years. Defendants appeal.

Defendants argue initially that neither Birmingham Oxygen nor Southeastern Medical has standing to enforce the non-competition clause contained in the contracts entered into between Birmingham Oxygen and the defendants. Defendants contend that Birmingham Oxygen has no standing to enforce the contract because it is not now operating, nor has it ever operated, an oxygen and respiratory services business in Madison County. Therefore, defendants argue, they are not competing with Birmingham Oxygen.

Russell and Edwards contracted, in May of 1977, "not to compete with the business of Birmingham Oxygen Service, Inc., for a period

of ten years from the date of this instrument." The phrase "business of Birmingham Oxygen Service Inc." was not defined [**6] in the contract. This clause, however, must deal with the oxygen service business since only this aspect of J&J was sold at this time. In any case, if the corporate entity of Birmingham Oxygen Service, Inc., does not operate an oxygen services business, Russell and Edwards cannot be in competition with it, for Russell and Edwards did not contract to refrain from operating altogether, just to refrain from competing with Birmingham Oxygen. This principle also applies to the non-competition clause associated with the sale of the respiratory services aspect of J&J. Therefore, Russell and Edwards did not breach their contract with Birmingham Oxygen.

Furthermore, Southeastern Medical has no standing to enforce the contract entered into by Birmingham Oxygen and Russell and Edwards. A third person has no rights under a contract between others unless the contracting parties intend that the third person receive a direct benefit enforceable in court. *See, Sly v. South Central Bell Telephone Co.*, 387 So. 2d 137 (Ala. 1980); *Wood Chevrolet Co. v. Bank of the Southeast*, 352 So. 2d 1350 (Ala. 1977); *Federal Mogul Corp. v. Universal Construction Co.*, 376 So. 2d 716 (Ala. Civ. App.), [**7] *cert. denied*, 376 So. 2d 726 (Ala. 1979). Since it is apparent from the face of the contract that Southeastern Medical is not a third party beneficiary, Southeastern Medical has no standing to enforce it in court.

Appellees argue that it makes no difference whether Birmingham Oxygen or Southeastern Medical enforces the non-competition agreement, since Barney C. Eller wholly owns both corporations and it was him with whom Edwards and Russell dealt. This contention is without merit. A corporation is an entity created by compliance with statutory requirements. A corporation has the right to sue and be sued just like a natural person. *Alabama Constitution*, Article XII, § 240; *Code 1975, § 10-2A-20(2)*. A corporation, just like an individual, must enforce its own rights and privileges.

Appellees next contend that Birmingham Oxygen assigned the contracts to Southeastern Medical. The evidence upon which they base this contention is testimony by Henry Turner, a former employee of Birmingham Oxygen, now employed by Southeastern Medical, that "Southeastern Medical succeed[ed] to the business of Birmingham Oxygen . . . in Huntsville."

Appellees are correct in their assertion [**8] that an assignment of a contract may be either oral or written and no magic words are necessary. However, this without more is not enough to constitute an assignment. There must be an affirmative showing of an intent to assign. *Strickland & Co. v. Lesesne & Ladd*, 160 Ala. 213, 49 So. 233 (1909). "*The owner must do or say something which would indicate a transfer of his claim or right to another.*" *160 Ala. at 217* (emphasis added). There is no suggestion in the record of an act or statement by Birmingham Oxygen evidencing an intention to assign the non-competition agreement to Southeastern Medical. Absent such evidence, there can be no finding of an assignment. *See, Lowery v. Peterson*, 75 Ala. 109 (1883); *Andalusia Motor Co. v. Mullins*, 28 Ala. App. 201, 183 So. 456, *cert. denied*, 236 Ala. 474, 183 So. 460 (1938). [*94] The learned trial judge erroneously issued the injunction against the appellants.

Since we find dispositive the issue of whether either Birmingham Oxygen or Southeastern Medical may enforce the non-competition agreement with Russell and Edwards, we do not reach the other issues raised by appellants. Accordingly, the judgment is due to [**9] be reversed and the cause remanded.

REVERSED AND REMANDED.