IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE CONCRETE COMPANY, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Case No.: 2:05-cv-01026-ID-CSC |
| | * |
| HARRY E. LAMBERT, CAROL'S | * |
| CONTRACTING, INC. and | * |
| ALABAMA GRAVEL, LLC, | * |
| | * |
| Defendants. | * |

**PLAINTIFF'S OPPOSITION AND MOTION TO STRIKE IN
RESPONSE TO DEFENDANTS HARRY E. LAMBERT'S
AND CAROL'S CONTRACTING, INC.'S SECOND MOTION FOR
PROTECTIVE ORDER AND SUPPLEMENTATION OF BRIEF IN
SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff The Concrete Company ("TCC") respectfully submits the following in opposition and motion to strike in response to Harry E. Lambert's and Carol's Contracting, Inc.'s' Second Motion for Protective Order and Supplementation of Brief in Support of Motions for Summary Judgment.

**I.   Opposition**

Through their motion, Defendants Harry E. Lambert ("Lambert") and Carol's Contracting, Inc. ("Carol's Contracting")(collectively, "Defendants"), for the second time in this litigation, seek a protective order shielding them from providing any deposition testimony.[1] Defendants argue that a protective order is warranted because they have identified a case "on-point" with their claim that TCC lacks standing to enforce the terms of the non-compete

---

[1] In addition, Defendants' depositions of Defendants were previously set for June 5-7, 2006. However, on May 15, 2006, Defendants' counsel requested postponement. All parties eventually agreed to postpone the depositions until June 20-22, 2006. Then, on June 14, 2006, Defendants filed their first motion for a protective order, which was granted on June 19, 2006. The Defendants' depositions are currently scheduled for July 12-13, 2006.

agreement Lambert voluntarily entered into with TCC. To the contrary, the authority Defendants represent as "on-point" is blatantly distinguishable. As such, Defendants' purported standing defense continues to be wholly without merit, and their request for a protective order preventing TCC from exercising its right to depose Defendants should be denied along with their summary judgment motions.

**I.** *Russell v. Birmingham Oxygen Service, Inc. Is Clearly Distinguishable*

Defendants cite *Russell v. Birmingham Oxygen Serv., Inc.*, 408 So. 2d 90 (Ala. 1981), for the proposition that "a company in the position of TCC has no standing to enforce a non-competition agreement …."[2,3] *See* Defs' Mot. at p.1. Despite this conclusory statement, Defendants make no attempt to explain what TCC's "position" actually is. Instead, Defendants apparently want the Court to assume that TCC's and the *Russell* plaintiff's corporate structures and subsidiary relationships are identical. In reality, the corporate structures and subsidiary relationships are distinctly different.

Although *Russell* does not contain great detail concerning plaintiff Birmingham Oxygen's corporate structure, the opinion clearly suggests that Birmingham Oxygen operated solely as a holding company of Southeastern Medical Center, Inc. It was undisputed that with respect to the business and competition at issue, Birmingham Oxygen had no existence outside

---

[2] Defendants also assert that *Russell* was cited with "approval and explained" by *Campbell & Sons Oil Co., Inc. v. Murphy Oil USA, Inc.*, 2000 U.S. Dist. LEXIS 9196 (N.D. Ala. Jan 3, 2003). A copy of *Campbell & Sons Oil Co., Inc.* is attached hereto as Exhibit A. However, *Campbell & Sons Oil Co., Inc.* merely cites *Russell* for the proposition that a wholly owned subsidiary cannot enforce a non-compete agreement executed by the subsidiary's parent corporation. *Id.* at *4. The case is inapposite because, here, the actual contract holder, TCC, is seeking to enforce the non-compete, not a subsidiary.

[3] TCC also disputes Defendants' contention that *Russell* "is normally cited for the proposition that a parent corporation cannot sue for damage to a subsidiary and vice versa." *See* Defs' Mot. at p.4. TCC was unable to locate any decision from an Alabama appellate court citing *Russell* for this proposition. *Russell* is, however, commonly cited for the proposition that "[a] corporation, just like an individual, must enforce its own rights and privileges." *See, e.g., Ex parte ReLife, Inc.*, 679 So. 2d 664, 667 (Ala. 1996); *Power Equip. Co., Inc. v. First Ala. Bank*, 585 So. 2d 1291, 1299 (Ala.1991); *Ramsey v. Taylor*, 567 So. 2d 1325, 1327 (Ala. 1990). Yet, this legal theory has no application here because TCC *is seeking to enforce its own rights and privileges* (i.e., the non-compete it entered into with Lambert).

its "paper" existence as a holding company. As the court pointed out, "Birmingham Oxygen *never* engaged in the business of oxygen services or respiratory services purchased from J&J in Madison County." *Russell*, 408 So. 2d at 92 (emphasis added). In contrast, TCC has a very real existence outside of its ownership of its subsidiary Foley Materials Company ("FMC") and – as set forth in its brief in opposition to Defendants' summary judgment motions – has been and continues to be actively engaged in the sand and gravel business through its own business dealings and through its operation of and interrelationship with FMC.

TCC historically conducted its operations through three operating divisions, two of which, FMC and Foley Products Company became wholly owned TCC subsidiaries in April 2005.[4] Despite this change in the legal structure of its operating divisions, TCC remained a viable and active corporation engaged in the aggregate business directly and by exercising control of FMC. TCC runs FMC's accounting, invoicing, payables, payroll and human resources. And, although TCC and FMC have some separate employees, they share many common employees. TCC and FMC also share common retirement and health plans, which TCC also administers.

Perhaps the most telling evidence of TCC's active involvement in the aggregate business is that while TCC has transferred certain specified personalty to FMC, TCC retained numerous assets actively engaging it in the aggregate business. For example, TCC currently holds 16 aggregate leases in Montgomery, Macon and Russell Counties. These aggregate leases are held in its own name. TCC also owns 16 pieces of land in Montgomery and Macon Counties, and one piece of land in Taylor County, Georgia, which will be used for aggregate mining. In addition to

---

[4] TCC sold its other operating division, its ready-mix concrete division, to Lafarge Corporation in March 2004.

3

its leases and owned real estate, TCC also retained numerous contractual rights and obligations, specifically including the contract containing the non-compete with Lambert.

It is also worth recognizing that despite Defendants' contention that the "court rejected the argument that it [Birmingham Oxygen Services] was engaging in the business through a wholly owned subsidiary," *see* Defs' Mot. at p.4, *Russell* did not appear to specifically address whether a company can engage in a business through its subsidiary operating entities. Again, it appears to have been undisputed that Birmingham Oxygen Services was not in the business at issue. More importantly, the portion of the opinion that Defendants cite in purported support for the above quote addresses the *Russell* plaintiffs claim that it made no difference whether the parent company or the subsidiary enforced the non-compete because the parent and the subsidiary were owned by the same individual who dealt with the party against whom the Birmingham Oxygen Services sought to enforce the non-compete. *Russell*, 408 So. 2d at 93. This is a meaningful distinction. TCC's contention is different. It does not ague that either it or FMC could enforce the non-compete because Frank Foley owns both and dealt with Lambert. TCC argues that it is entitled to enforce the non-compete because it is a party to the non-compete and because it is in the aggregate business both directly and via its operations through FMC. *Russell* does not refute this position. It simply states that a corporation must enforce its own rights and privileges. *Id*. **The non-compete is TCC's right and privilege.**

In summary, it is clear that TCC's and the *Russell* plaintiff's corporate structures and subsidiary relationships are fundamentally different. TCC is much more than a "paper" holding company. TCC's aggregate leases, real estate holdings and other various contractual rights and obligations, coupled with its active involvement in and through FMC, demonstrate that TCC unquestionably continues to be engaged in the aggregate business. Defendants' motion for

4

protective order, therefore, respectfully should be denied along with their summary judgment motions as they have no viable argument that TCC lacks standing.

## II. Motion To Strike

In Paragraphs 7 and 8 of Defendants' motion, it is stated that neither Lambert nor Carol's Contracting have "insurance coverage to pay for the defense of the claims alleged in the complaint nor to pay for the attorneys' fees associated with the defense." *See* Defs' Mot. at p.5. It is well established that "[e]vidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully." *Fed. R. Evid.* 411; *see also Preferred Risk Mut. Ins. Co. v. Ryan*, 589 So. 2d 165, 168 (Ala. 1991) ("Generally … evidence of a defendant's insurance is inadmissible to show fault or lack thereof"). Accordingly, Defendants statements as to their alleged lack of insurance coverage are due to be stricken.

In addition, in Paragraph 7, it is stated that "Harry Lambert has also suffered from bouts with cancer which have limited his ability to earn income." *See* Defs' Mot. at p.5. This statement is irrelevant, unfairly prejudicial and an obvious attempt to garner sympathy, and it also is due to be stricken. *See Fed. R. Evid.* 402 & 403.

Respectfully submitted this the 10th day of July, 2006.

/s/ G. Lane Knight
One of the Attorneys for Plaintiff The
Concrete Company

OF COUNSEL:

Robin G. Laurie (ASB-4217-U64R)
G. Lane Knight (ASB-6748-I72K)
BALCH & BINGHAM LLP
P. O. Box 78

5

Montgomery, Alabama 36101
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
rlaurie@balch.com

Thomas F. Gristina, Esquire
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
1043 Third Avenue
P.O. Box 1199
Columbus, GA 31902-1199

William L. Tucker, Esquire
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
1111 Bay Avenue, Third Floor, Synovus Centre
Columbus, Georgia  31901

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July, 2006, I served a copy of the foregoing by

U.S. Mail, properly addressed and postage prepaid to the following:

Dennis R. Bailey, Esquire
Rushton, Stakely, Johnston & Garrett
P. O. Box 270
Montgomery, Alabama 36101-0270

James N. Walter, Jr., Esquire
Capell & Howard, P.C.
P. O. Box 2069
Montgomery, Alabama 36102-2069

Chad W. Bryan, Esquire
Capell & Howard, P.C.
P. O. Box 2069
Montgomery, Alabama 36102-2069

/s/ G. Lane Knight
OF COUNSEL