# EXHIBIT A

AGREEMENT

This June 10, 1997, MONTGOMERY MATERIALS COMPANY, L.L.C., an Alabama limited liability company (hereinafter "Montgomery, LLC") THE CONCRETE COMPANY, a Georgia corporation, (hereinafter "Concrete"), MMC HOLDINGS, INC., an Alabama corporation (hereinafter "Montgomery, Inc."), FRANK D. FOLEY, III, an individual resident of the State of Georgia (hereinafter "Foley") and HARRY E. LAMBERT, an individual resident of the United States (hereinafter "Lambert"), for the premises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:

1. <u>Recitals</u>. The following recitals are a material part of this Agreement:

(a) On or about June 4, 1997 Montgomery, Inc. acquired by merger all assets and liabilities of Beaver Rock, Inc. ("Beaver Rock");

(b) Concrete and Montgomery, Inc. each have contemporaneously herewith acquired fifty percent (50%) of the Membership Interests in Montgomery, LLC which was formed for the purpose of acquiring the business of Montgomery, Inc. and excavating, mining, selling and distributing sand, gravel, clay and/or topsoil (each of the foregoing is herein called a "Product") in the Montgomery, Alabama area; and

(c) Concrete, as consideration for its fifty percent (50%) Membership Interest in Montgomery, LLC, contributed $300,000 in cash, and Montgomery, Inc. contributed the "Transferred Assets" (herein so called) described on Exhibit "A" attached hereto and made a part hereof in consideration for its fifty percent (50%) Membership Interest and the assumption by Montgomery, LLC of certain "Assumed Liabilities" (herein so called) of Montgomery, Inc. and Beaver Rock described on Exhibit "B" attached hereto and made a part hereof;

(d) Foley and Lambert are shareholders of Concrete and Montgomery, Inc., respectively, and therefore benefit by the terms of this Agreement; and

(e) Concrete and Montgomery, Inc. wish to reduce to writing the terms of an Agreement whereby Concrete and Montgomery, Inc., must first offer its Membership Interest in Montgomery, LLC to Montgomery, LLC and the other Members before selling or otherwise conveying such interest to an unrelated third party, and whereby either Concrete or Montgomery, Inc., may cause the other to either purchase or sell (such selling party may be hereinafter referred to as "Seller" and such purchasing party may hereinafter be referred to as "Purchaser") its Membership Interest pursuant to the terms of this Agreement; and

(f)  Both Concrete and Montgomery, Inc. acknowledge that neither would have been willing to organize and capitalize Montgomery, LLC or be willing to purchase the other's Membership Interest upon the terms contained herein without assurance by the other, including the shareholders named herein, that such parties will not engage in the activities prohibited by Paragraph 8 hereinbelow as and for the period set forth, and, in order to induce the Buyer to consummate the acquisition of such Membership Interest the Seller agrees to restrict its actions throughout the Territory (as herein defined), or otherwise as provided in this Agreement.  All of the parties hereto acknowledge that such restrictions are reasonable in light of the business engaged in and planned to be engaged in by Montgomery, LLC, and in light of the benefit to the Seller and its shareholders of the purchase by the Buyer of the Seller's Membership Interest in Montgomery, LLC and do not place an undue hardship on the Seller and its shareholders.

2.  <u>Definitions</u>.  The following definitions shall control the meaning of the respective terms:

2.1. <u>Alabama Act</u>.  The Alabama Limited Liability Company Act at Code of Alabama § 10-12-1, et seq.

2.2. <u>Continuing Members</u>.  "Continuing Members" means those Members who are not terminating their interests in Montgomery, LLC.

2.3  <u>Effective Date</u>. May 1, 1997.

2.4. <u>Member</u>.  Each of the parties who executed a counterpart of the Operating Agreement as a Member and each of the parties who may thereafter have become Members or may hereafter become Members pursuant to the terms of the Operating Agreement.

2.5. <u>Membership Interest</u>.  A Member's entire interest in Montgomery, LLC consisting of such Member's Financial Rights and Governance Rights as defined in the Alabama Act.

2.6  <u>Operating Agreement</u>.  The Operating Agreement of Montgomery Materials Company, LLC executed the date hereof, as amended from time to time.

2.7. <u>Terminating Members</u>.  "Terminating Member" means the Member (or Members) which is terminating its interest in Montgomery, LLC.

3.  <u>General Terms</u>.

3.1. <u>Effect on Other Agreements</u>.  Unless expressly provided herein  otherwise, nothing contained in this Agreement shall

discharge, release, or otherwise change, amend, or alter any sums due, or rights under, any employment contract or other employment arrangement between Montgomery, LLC and any party hereto. Further, no other contractual relationship between Montgomery, LLC and a Member or between Members shall be affected by this Agreement save one that attempts to define or speak to the terms of this Agreement, in which case the other contract shall be null and void unless it is in writing, it expressly indicates that it is amending this Agreement, and it is signed by Montgomery, LLC and all Members.

3.2. <u>Rights of Transferees</u>. All (1) assignees, transferees, trustees, receivers, or others who obtain an interest in the Membership Interests, whether by attachment, execution, bankruptcy law, receivership law, or otherwise by operation of law, and (2) assignees, transferees, secured parties, creditors, and others who obtain an interest in the Membership Interests, whether or not said transfer occurred with the consent of Montgomery, LLC, take subject to the terms and conditions of this Agreement.

3.3. <u>Rights of Continuing Members</u>. Unless otherwise express-ly provided herein, any rights of the Continuing Members hereun-der shall be shared among them proportionately according to the Membership Interests that each owns in relation to the total owned by all Continuing Members. If one or more Continuing Members decline to participate in the exercise of a right, the remaining Continuing Members shall share the right proportionate-ly according to the Membership Interest that each owns in rela-tion to the total owned by all of the Continuing Members who exercise the right. If only one Continuing Member desires to exercise the right, he may do so, and, by reason of such exer-cise, he shall be under no fiduciary duty to the other Continuing Members who declined to participate, and the Continuing Member who elects to act may purchase control of Montgomery, LLC.

3.4. <u>First lien</u>. All rights of Montgomery, LLC and Members under this Agreement shall be a first lien or encumbrance upon the Membership Interest of each Member. No transfer (as herein-after defined), whether or not consented to by Montgomery, LLC, shall release any Membership Interest from the force and effect of this Agreement.

4.    <u>Transferred Assets; Assumed Liabilities; Representa-tions and Warranties</u>.

4.1. <u>Transferred Assets</u>. Montgomery, Inc. hereby sells, assigns, transfers, conveys, and delivers the Transferred Assets to Montgomery, LLC, free and clear of all liens and encumbrances other than the Assumed Liabilities in the amounts shown on Exhibit "B".

4.2. <u>Assumed Liabilities</u>. Montgomery, LLC hereby assumes and agrees to timely pay and discharge the Assumed Liabilities.

4.3. <u>Representations and Warranties of Lambert and Montgomery, Inc.</u>

Lambert and Montgomery, Inc. jointly and severally represent and warrant to the other parties hereto as follows:

(1) Montgomery, Inc. has herewith vested in Montgomery, LLC, good and marketable title to the Transferred Assets, free of all claims, liens, and encumbrances other than the Assumed Liabilities.

(2) The Transferred Assets constitute all of the assets used by Montgomery, Inc. in its sand and gravel business on the Effective Date.

(3) The outstanding amount of each Assumed Liability (including accrued interest and other charges) as of the Effective Date as shown on Exhibit "B" is correct.

(4) The amount of the Assumed Liabilities outstanding (including accrued interest and other charges) as of the Effective Date exceeds the "Value" (as hereinafter defined) of the Transferred Assets by no more than $15,136. The Value of all Transferred Assets is the net book value thereof immediately prior to the Effective Date as owned by Montgomery, Inc. and Beaver Rock determined according to the method utilized by Montgomery, Inc. and Beaver Rock for purposes of generally accepted accounting principles.

(5) The Combined Financial Statements of Montgomery, Inc. and Beaver Rock as of December 31, 1996, attached hereto and made a part hereof as Exhibit "C" is complete and correct, and fairly represents the combined financial condition of Montgomery, Inc. and Beaver Rock as of December 31, 1996, and the combined results of operations for the period covered thereby.

(6) The Balance Sheet of Montgomery, Inc. as of April 30, 1997, attached hereto and made a part hereof as Exhibit "D" is complete and correct, and fairly represents the financial condition of Montgomery, Inc. The financial condition of Beaver Rock as of April 30, 1997 is not significantly different from the financial condition as of December 31, 1996.

(7) The Mining Lease Agreement dated December 2, 1994, between SFP, LTD, an Alabama Limited Partnership, and Beaver Rock, as Lessee, as assigned by Beaver Rock to Montgomery, Inc., is in full force and effect, Montgomery, Inc. is the current "Lessee" thereunder, and there are no defaults by the Lessor or the Lessee thereunder.

4.4    Adjustments to Montgomery, Inc.'s Contribution.
Lambert and Montgomery, Inc, jointly and severally, will pay to
Montgomery, LLC on August 1, 1997, the amount, if any, by which
the excess of (1) the Assumed Liabilities outstanding (include
accrued interest and other charges) as of the Effective Date over
(2) the Value of the Transferred Assets as of the Effective Date,
exceeds $15,136.  For purposes of this section, the Value of
Accounts Receivable as of the Effective Date is the amount of
such Accounts Receivable collected by Montgomery prior to August
1, 1997.  Upon such payment, Montgomery, LLC will assign to Mont-
gomery, Inc. any of the Accounts Receivable which had not been
collected by August 1, 1997.

4.5    Payment of Assumed Liabilities.  If Lambert and/or
Montgomery, Inc. pay any of the Assumed Liabilities for which
either or both of them is liable, whether as a result of the
failure of Montgomery, LLC to pay such Assumed Liabilities or
otherwise, Concrete, within ten (10) days after written request
therefor is given to it by Lambert and Montgomery, Inc., will
reimburse the payor one-half (1/2) of the amount of the Assumed
Liabilities so paid, including interest and other charges accru-
ing thereon after the Effective Date.

4.6    Operation of Montgomery, Inc. and Beaver Rock Since
        Effective Date.  Notwithstanding that the contributions
by Concrete and Montgomery, Inc. to Montgomery, LLC are being
made on the date hereof, the parties agree that Montgomery, LLC
will become the "Owner" of the sand and gravel business of
Montgomery, Inc. "as of" the Effective Date.  Therefore, on or
after the Effective Date all receipts of Montgomery, Inc. and
Beaver Rock  with respect to such sand and gravel business are
the property of Montgomery, LLC and shall be transferred to
Montgomery, LLC, and all disbursements of Montgomery, Inc. and
Beaver Rock with respect to such sand and gravel business shall
be paid from and charged against such receipts.

5.    Restrictions on Disposition.  No Member shall transfer
his Membership Interests except as expressly permitted in this
Agreement and the Operating Agreement, and any such transfer
which is not permitted by and in strict compliance with the terms
of this Agreement and the Operating Agreement shall be null and
void, shall not be recognized by Montgomery, LLC for any purpose,
and the transferee of such purported transfer shall have no
right, title, or interest in such Membership Interests as a
result thereof.  The term "transfer" as used herein includes, but
is not limited to, a sale, exchange, hypothecation, assignment,
gift, pledge,  transfer through legal action such as divorce,
levy, attachment, foreclosure or sale by the holder of a security
interest, judgment, garnishment, bankruptcy, or otherwise, or any
other encumbrance of the  Membership Interests.

5.1. <u>Operating Agreement Controlling</u>.  A transfer of a Membership Interest pursuant to this Agreement shall be deemed to be in compliance with the Operating Agreement.  Each Member agrees to execute such consent or consents as may be necessary to approve the transfers contemplated herein in strict compliance with the terms of the Operating Agreement.  A Member shall have no rights hereunder with respect to the transferability of a Membership Interest or any part thereof in contravention of the terms of the Operating Agreement.

5.2. <u>Transfer of Membership Interest</u>.  A Member may transfer its Membership Interest, subject to the provisions hereof, if Montgomery, LLC and the Continuing Members do not exercise their respective options to purchase such Membership Interest as hereinafter set forth.

5.2.1. <u>Notice to Montgomery, LLC</u>.  The Member desiring to transfer its Membership Interest (hereinafter referred to as the "Offering Member") shall first offer to sell its Membership Interest to Montgomery, LLC at the same purchase price and upon the terms and conditions contained in a bona fide written offer from any non-related third party.  Such offer to Montgomery, LLC shall specify in reasonable detail the facts and circumstances of the proposed transfer of the Membership Interest, including the name and address of each prospective transferee, the percentage interest involved in the proposed transfer, the terms under which such transfer is to take place and shall include a copy of the third party offer.

5.2.2. <u>Option To Montgomery, LLC and Continuing Members</u>. Montgomery, LLC may, but shall not be required to, purchase the Membership Interest proposed to be transferred by notifying the Offering Member of its acceptance of such offer within sixty (60) days after notice of said offer is given by the Offering Member. Should Montgomery, LLC fail to accept the offer within thirty (30) days after notice of said offer is given, or shall give written notice of the non-exercise of the option, then the Offering Member shall notify all Continuing Members within five (5) days that the offer has been extended and no response received (or offer declined in the case of written notice) and each Continuing Member shall then have the option to purchase the Offering Member's Membership Interest, or any part thereof as to which Montgomery, LLC does not exercise its option, upon the same terms and conditions offered to Montgomery, LLC, and in the proportion that such Continuing Member's Membership Interest bears to the Membership Interests of all Continuing Members desiring to purchase the Offering Member's Membership Interest, subject however, to the right of Montgomery, LLC to accept the offer prior to the expiration of the above 60 day period.  While any Continuing Member may give notice of intention to purchase the Offering Member's Membership Interest prior to the expiration

of the 60 day option period to Montgomery LLC, no Continuing Member may accept such offer until the earlier of (i) the expiration of the 60 day option period to Montgomery, LLC, or (ii) the receipt by the Continuing Member of written notification of non-acceptance by Montgomery, LLC.  A Continuing Member shall have the right to accept such Offering Member's offer (should Montgomery, LLC fail to accept the offer in full or in part) at any time during the 30 day period following the first to occur of (i) the expiration of Montgomery, LLC's option period or (ii) the receipt by such Continuing Member of notice of Montgomery, LLC's non-exercise.  Closing shall occur within thirty (30) days of delivery of notice, whether by Montgomery, LLC or one or more Continuing Members, of acceptance of the Offering Member's offer.  Anything to the contrary contained herein notwithstanding, in no event shall any combination of Montgomery, LLC and Continuing Members be allowed to accept such Offering Member's offer with respect to less than the entire interest proposed to be transferred pursuant to such Offering Member's offer.  Should Montgomery, LLC accept such Offering Member's offer with respect to less than the entire interest proposed to be transferred, then closing of such purchase shall be delayed until such time as one or more of the Continuing Members have accepted the Offering Member's offer with respect to any remaining interest proposed to be transferred.  If the Continuing Members do not accept such Offering Member's offer with respect to the remainder of such interest proposed to be transferred, then Montgomery, LLC's acceptance with respect to less than the entire interest proposed to be transferred shall be deemed non-exercise of its option and the Offering Member shall be free to transfer such interest pursuant to Section 5.2.3 hereinbelow.

5.2.3   <u>Nonexercise Of Option</u>.  If notice of acceptance of such offer is not given by Montgomery, LLC or the Continuing Members within the periods hereinabove provided, then the Offering Member may make a bona fide transfer of its Membership Interest to the prospective transferee named in said offer, but such transfer shall be made only in strict accordance with the terms stated in such offer and only after such transferee agrees in writing to become a party to and be bound by the terms of this Agreement, including Section 5.3.  Such transfer shall be made within the thirty (30) day period next following the expiration of the period hereinabove set forth for the acceptance of such offer by the Continuing Members.  If such Membership Interest is not transferred to such prospective transferee within the period hereinabove provided, the Membership Interest shall again become subject to the provisions of this Section 5 as though it had never been so offered.

5.3   <u>Obligation to Purchase or Sell in Certain Events</u>.  This section shall be applicable notwithstanding that an event of dissociation may have occurred.

(a)   One or more Members (hereinafter collectively referred to as the "Activating Members") may at any time require that the other Member or Members (hereinafter collectively referred to as the "Electing Members") either (i) purchase all of the Activating Members' Interests in the Company or (ii) sell all of the Electing Members' Interests in the Company to the Activating Members, subject to the terms and conditions herein.   For purposes of this Section only, a Member's "Interest" in the Company shall include, in addition to all Governance Rights and Financial Rights owned by the Member, all other Financial Rights which are associated with the Governance Rights owned by the Member notwithstanding that such Financial Rights have been transferred by the Member to third parties.   Such third parties shall be subject to and bound by all of the provisions of this Section, but shall have no right to participate in any elections pursuant to this Section.

(b)   The Activating Members shall notify the Electing Members that the provisions of this Section are being activated. The notice shall set forth a "Cash Price" (herein so called) for all assets of Montgomery, LLC, subject to all liabilities of Montgomery, LLC, (which may include a formula and/or components established with reference to items which cannot be definitely determined until or after closing) at which the Activating Members are willing to either sell all their Interests or purchase all of the Interests of the Electing Members for cash; provided however, if the election of the Electing Members is made on or before April 30, 2000, the Cash Price used to determine the amount of cash actually paid to the Selling Members (after pre-closing and post-closing adjustments as provided in the preceding parenthetical) shall not be less than One Million Two Hundred Thousand Dollars ($1,200,000.00).   The price of an Interest shall be the cash price for the entire company set forth in the notice multiplied by the percentage interest of the Interest being purchased.   The Electing Members shall have a period of one hundred twenty (120) days after such notice is given to elect to either purchase all of the Interests owned by the Activating Members or sell to the Activating Members all of the Interests owned by the Electing Members, at the price so set forth by the Activating Members.   An Electing Member who fails to make an election shall be deemed to have sold its Interest to the Activating Members. If all the Electing Members do not make the same election, then each Electing Member who elected to purchase the Interests of the Activating Members shall have a period of ten (10) days after all elections are made to change its election from an election to purchase the Activating Member's Interests to an election to sell its Interests to the Activating Members by giving written notice to all other Members.   The Members (either Activating Members or Electing Members, as the case may be) who become obligated to purchase the Interests from the other Members shall purchase all of the Interests owned by the other Members in proportion to the relative percentage interests owned by the pur-

chasing Members. The closing of the purchase of the Interests provided for herein shall take place simultaneously no later than fifteen (15) days after the giving of the final notice herein which establishes which Members will purchase and which Members will sell or, if notices have not been given, no later than fifteen (15) days after the last date for the giving of the final notice which would determine which Members will sell and which Members will purchase. At the closing, the Selling Members and owners of any associated Financial Rights will convey their Interests by assignment with general warranty, free and clear of all liens and encumbrances.

(c) At the closing, the purchasing Members will cause the Selling Members and owners of any associated Financial Rights to be released from all guaranties of and other contractual obligations for liabilities of Montgomery, LLC.

5.4. Right to Assign. Any Member purchasing a Membership Interest pursuant to this Section 5, shall have the right to assign such right to purchase to any related or affiliated party of such Member, in whole or in part.

6.    Purchase Price.

6.1. Payment of Purchase Price. The purchase price for any Membership Interest being purchased pursuant to this Agreement shall be paid at the Closing (as defined hereinbelow) as follows:

6.2. Payment of Indebtedness. A part or all of the pur-chase price, as the case may be, shall first be applied to the payment of all amounts of every nature whatsoever owed by the seller or a shareholder of seller who is a party to this Agree-ment or his estate, as the case may be, to the purchaser, without regard to whether such amounts are by the terms of the evidences of indebtedness then due;

6.3. Cash Payment. The amount, if, any, by the purchase price exceeds the amount applied against indebtedness pursuant to Section 6.2. shall be paid in cash at Closing;

6.4. Payment of Other Indebtedness. At the Closing all indebtedness of the purchaser or a shareholder of purchaser who is a party to this Agreement or his estate, as the case may be, to the seller (other than indebtedness representing the purchase price) and all accrued interest thereon shall become immediately due and payable, and the seller shall not be required to consum-mate the sale of the Membership Interest until such indebtedness is paid in full.

7.    Closing. The Closing (herein referred to as the "Closing") of the purchase of the Membership Interest provided

for in this Agreement shall be on such dates as the purchaser and seller agree within the periods provided herein, but if no such Agreement is reached, then on the last business day within such period for Closing. The Closing shall take place at the principal offices of Montgomery, LLC, or in such other place as purchaser and seller may agree.

8.    Non-competition Provisions.

8.1. Territory. The parties hereto acknowledge that Montgomery, LLC presently operates and sells Product in all locations which are within 60 miles (measured in a straight line by air) from the present limits of the City of Montgomery, Alabama (the area contained within 60 miles of the present limits of Montgomery, Alabama is herein called the "Territory").

8.2. During Co-Ownership. Except as otherwise provided in Section 8.6, so long as both Concrete and Montgomery, Inc. own a Membership Interest in Montgomery, LLC none of Montgomery, Inc., Concrete, Foley or Lambert, or any entity, other than Montgomery, LLC, in which any of them has an ownership interest will engage in the excavation, mining, selling, delivery, or distribution, or other disposition of Product within the Territory. In addition, so long as both Concrete and Montgomery, Inc., own a Membership Interest in Montgomery, LLC, any opportunity for leasing or otherwise obtaining additional sources of Product within the Territory, now or hereafter known to Concrete, Montgomery, Inc., Foley, Lambert or any entity in which any of them has an ownership interest shall be first the opportunity of Montgomery, LLC, and none of the foregoing shall take advantage of such opportunity until both Concrete and Montgomery, Inc. elect that Montgomery, LLC shall refuse it.

8.3. Montgomery, Inc.; Concrete. If either Montgomery, Inc. or Concrete transfers all its Membership Interest in Montgomery, LLC to the other or to any third party, then except as otherwise provided in Section 8.6, during the five-year period beginning with the transfer (the "Period") such transferring party shall not:

(1)  engage in the Territory in the business of excavating, mining, distributing, delivering, selling, or otherwise disposing of any Product at wholesale or retail, (such business is herein referred to as the "Prohibited Activity");

(2)  in the Territory (i) have any interest in (whether as a shareholder, partner, member or otherwise), (ii) act as agent, broker, or distributor for or advisor or consultant to, or (iii) in any way assist (whether by solicitation of customers or employees or otherwise), any person, firm, corporation or business entity which is engaged, or which he reasonably knows is

undertaking to become engaged, in the Territory in the Prohibited Activity;

(3) in the Territory induce a Customer (as defined below): (i) to purchase any Product in the Territory from any business entity operating in the Territory (other than Montgomery, LLC or its affiliates); or (ii) to withdraw, curtail or cancel such Customer's business with Montgomery, LLC. As used in this subsection, "Customer" means any actual customer who purchased any Product from Montgomery, LLC in the Territory, within the twenty-four month period prior to the date of the closing of the sale by Montgomery, Inc. or Concrete of its Membership Interest in Montgomery, LLC;

8.4. <u>Lambert</u>. If Montgomery, Inc. transfers its entire Membership Interest in Montgomery, LLC to Concrete or any other party, Lambert agrees that during the Period he will not:

(1) engage, as an employee or otherwise, in the Territory in the Prohibited Activity;

(2) in the Territory (i) have any interest in (whether as a shareholder, partner, member or otherwise), (ii) act as agent, broker, or distributor for or advisor or consultant to, or (iii) in any way assist (whether by solicitation of customers or employees or otherwise), any person, firm, corporation or business entity which is engaged, or which he reasonably knows is undertaking to become engaged, in the Territory in the Prohibited Activity;

(3) in the Territory induce a Customer (as defined below): (i) to purchase Product in the Territory from any business entity operating in the Territory (other than Montgomery, LLC or its affiliates); or (ii) to withdraw, curtail or cancel such Customer's business with Montgomery, LLC. As used in this subsection, "Customer" means any actual customer who purchased Product from Montgomery, LLC in the Territory, within the twenty-four month period prior to the date of the closing of the sale by Montgomery, Inc. of its Membership Interest in Montgomery, LLC;

8.5 <u>Foley</u>. If Concrete transfers its entire Membership Interest in Montgomery, LLC to Montgomery, Inc. or any other party, Foley agrees that, except as provided in Section 8.6 herein, during the Period he will not:

(1) engage, as an employee or otherwise, in the Territory in the Prohibited Activity;

(2) in the Territory (i) have any interest in (whether as a shareholder, partner, member, or otherwise), (ii) act as agent, broker, or distributor for or advisor or consultant to, or (iii)

in any way assist (whether by solicitation of customers or employees or otherwise), any person, firm, corporation or business entity which is engaged, or which he reasonably knows is undertaking to become engaged, in the Territory in the Prohibited Activity;

(3)  in the Territory induce a Customer (as defined below): (i) to purchase Product in the Territory from any business entity operating in the Territory (other than Montgomery, LLC or its affiliates); or (ii) to withdraw, curtail or cancel such Customer's business with Montgomery, LLC.  As used in this subsection, "Customer" means any actual customer who purchased products from Montgomery, LLC in the Territory within the twenty-four month period prior to the date of the closing of the sale by Concrete of its Membership Interest in Montgomery, LLC.

8.6.  Exceptions for Foley and Concrete.  Notwithstanding anything contained in this Agreement to the contrary, Concrete and Foley may engage in the following activities in the Territory at the times indicated:

(1)  Subject to the Requirements and Supply Contract entered into between Concrete and Montgomery, LLC contemporaneously herewith, mining and selling Product from the "Ward Property" (herein so called and more particularly described on Exhibit "E" attached hereto) it presently leases in Macon County, Alabama at any time;

(2)  Subject to the Requirements and Supply Contract entered into between Concrete and Montgomery, LLC contemporaneously herewith, mining and selling Product from the "Dozier Property" (herein so called and more particularly described on Exhibit "F" attached hereto) it presently leases in Montgomery County, Alabama at any time after the first to occur of (a) April 30, 2001, and (b) the time when either Concrete or Montgomery, Inc. no longer owns an interest in Montgomery, LLC;

(3)  Subject to the Requirements and Supply Contract entered into between Concrete and Montgomery, LLC contemporaneously herewith, obtaining Product for use in its own operations from any source;

(4)  Selling Product as part of Ready-Mix concrete and in raw form as an incidental part of the Ready-Mix concrete business.

9.    Remedies.  The parties hereto acknowledge that any violation of this Agreement may cause irreparable harm to Montgomery, LLC and damages are not an adequate remedy.  The parties therefore agree that Montgomery, LLC shall be entitled to an

injunction by an appropriate court in the appropriate jurisdiction, enjoining such party from the continuance of any violation, in addition to any monetary damages which might occur by reason of the violation of the prohibitions of this Agreement. Nothing in this Agreement shall restrict any rights that the Montgomery, LLC may have at law or in equity with respect to matters covered by this Agreement.

10.  Disclosure.  The parties hereto agree that any party may disclose the provisions of this Agreement in connection with the sale of such party's Membership Interest or as required by law.

11.  Severability, Modification.

11.1.  The covenants set forth in this Agreement shall be deemed and shall be construed as separate and independent covenants, and should any part or provision of such covenants be held invalid, void or unenforceable by any court of competent jurisdiction, such invalidity, voidness or unenforceability shall in no way render invalid, void or unenforceable any other part or provision thereof or any separate covenant not declared invalid, void or unenforceable; and this Agreement shall in that case be construed as if the void, invalid or unenforceable provision were omitted.

11.2.  The parties agree that should any portion, provision or clause of this Agreement be deemed too broad to permit enforcement to its full extent, then it shall be enforced to the maximum extent permitted by law, and the parties hereby consent and agree that such scope may be judicially modified accordingly in any proceeding brought to enforce such restriction.

11.3.  This Agreement is separate from and independent of each and any other agreements between the parties in any capacity, and the existence of any claim or cause of action of one party against the other, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement of this Agreement.  The sole consideration given by the parties for this Agreement was as set forth herein, and the parties' obligations under this Agreement are in no manner contingent or conditioned upon the performance of obligations under any other agreement.

12.  Notices.  Any notice required permitted to be given to one party by another party hereto and any election to be made pursuant to this Agreement shall be in writing and shall be personally delivered or sent by United States mail, certified or registered, return receipt requested, first class postage and

charges prepaid, in envelopes addressed to the parties as fol-
lows:

| | |
|---|---|
| Montgomery, LLC: | c/o Harry E. Lambert<br>26 Carol Villa<br>Montgomery, Alabama  36109 |
| Montgomery, Inc: | c/o Harry E. Lambert<br>26 Carol Villa<br>Montgomery, Alabama  36109 |
| Harry E. Lambert: | 26 Carol Villa<br>Montgomery, Alabama  36109 |
| Concrete or<br>Foley: | The Concrete Company<br>Attention:  Frank D. Foley, III<br>P. O. Box 7877<br>Columbus, Georgia  31908-7877 |
| With a copy to: | Charles H. Ford, Jr.<br>Page, Scrantom, Sprouse<br>Tucker & Ford, P.C.<br>P. O. Box 1199<br>Columbus, Georgia  31902 |

or at such other addresses as shall be designated in writing as
aforesaid by either party to the other party hereto.  Notices
delivered in person shall be effective on the date of delivery.
Notices and elections sent by United States mail shall be effec-
tive upon the date of mailing.

13.  _Amendments_.  No amendment or modification of this
Agreement shall be valid or binding unless made in writing and
executed by all of the parties hereto. ;

14.  _Waiver_.  The waiver by one party of a breach of any
provision of this Agreement by the other party shall not operate
or be construed as a waiver of any subsequent breach of the same
or any other provision by the other party.

15.  _Governing Law_.  This Agreement shall be construed in
accordance with the laws of the State of Alabama.

16.  _Nouns, Pronouns, Singular and Plural_.  Any masculine
personal pronouns shall be considered to mean the corresponding
feminine (or neuter) personal pronoun.  Any terms in the singular
number shall include the plural and those in the plural shall
include the singular, all as the context may require.

C0593-123
41024.1                              14

17. _Entire Agreement_. This Agreement and the exhibits attached hereto, constitute the entire agreement and understanding among the parties hereto and supersede and revoke any prior agreement or understanding relating to the subject matter of this Agreement.

18. _Beneficiaries; Assignment_. The rights and obligations of the parties hereto shall inure to the benefit of and shall be binding upon their respective heirs, personal representatives, successors, and assigns. Without in any way limiting the generality of the foregoing, a purchaser's rights and privileges hereunder may be assigned to any person, firm, organization, or corporation which is succeeding to any part or all of the business of the purchaser.

19. _Counterparts_. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

20. _Captions_. The captions used in this Agreement are inserted for convenience only and shall not constitute a part hereof.

21. _Attorney Fees_. The prevailing party in any litigation with respect to this Agreement shall be reimbursed by the opposing parties for its reasonable attorneys fees and expenses incurred in connection with such litigation.

IN WITNESS WHEREOF, the undersigned parties have entered into and executed this Agreement under seal as of the day and year first above written.

MONTGOMERY, LLC:

MONTGOMERY MATERIALS COMPANY, LLC

By all its Members ,

MMC HOLDINGS, INC.

By: _____
    HARRY E. LAMBERT, President

THE CONCRETE COMPANY

By: _____
    FRANK D. FOLEY, III, President

C0593-123
41024.1

MONTGOMERY, INC.:

MMC HOLDINGS, INC.

By: _____
Title: HARRY LAMBERT, President

CONCRETE:

THE CONCRETE COMPANY

By: _____
      FRANK D. FOLEY, III, President

FOLEY:

_____ (L.S.)
FRANK D. FOLEY, III

LAMBERT:

_____ (L.S.)
HARRY E. LAMBERT

C0593-123
41024.1

16

## SCHEDULE OF EXHIBITS

Exhibit "A" - Transferred Assets

Exhibit "B" - Assumed Liabilities

Exhibit "C" - Combined Financial Statements of Montgomery Materials Company, Inc. and Beaver Rock, Inc. as of December 31, 1996

Exhibit "D" - Balance Sheet of Montgomery Materials Company, Inc. of April 30, 1997

Exhibit "E" - Legal Description of Ward Property

Exhibit "F" - Legal Description of Dozier Property

EXHIBIT "A"

TRANSFERRED ASSETS

The "Transferred Assets" consist of all of the assets used by Montgomery, Inc. in its sand and gravel business on the Effective Date, including cash, accounts receivable, machinery and equipment, buildings and improvements, automobiles, furniture and fixtures and other assets, all assets of Beaver Rock, Inc. (which were acquired by Montgomery, Inc. by merger after the Effective Date), all rights of Montgomery, Inc. as Lessee under equipment leases and the Mining Lease Agreement dated December 2, 1994 between SFP, Ltd., an Alabama Limited Partnership, and Beaver Rock, Inc., as Lessee, as assigned by Beaver Rock, Inc. to Montgomery, Inc., and which include, without limitations, the specific assets described on Exhibit A-1 attached hereto;

LESS AND EXCEPT accounts receivable in the face amount of $201,653, and that certain deposit on motor home in the amount of $20,000, which amounts have been determined as shown on Exhibit "A-2" attached hereto and made a part hereof, subject in all instances to adjustment as provided in Section 4.4 of the Agreement to which this Exhibit is attached.

MONTGOMERY MATERIALS COMPANY, INC.
BEAVER ROCK,INC.
EQUIPMENT TRANSFERRED

1994 C-10 Chevy Pickup
1995 Chevy
John Deere Dozer
Caterpillar Dump Truck ( S/N 1HK00227)
Caterpillar Dump Truck ( S/N 1HK00157)
Caterpillar Wheelloader 966F
Caterpillar Generator 3406TA
Berkley Rupp Pump 16C2-F
2 A/C units for Dump Trucks
Various office equipment
Testing Lab
Scalehouse
Tool building
Lateral file cabinet
Computer
Computer network
Lateral file cabinet ( 5 drawer)
Office set-up
ML320T printer
Drafting Table
Water truck
Gorman Rupp Trash Pump
Berkley Water Pumps
Pipe
Dump Hopper
Welder & trailer
100' conveyor
Seiko 5 X 14 screen
O/S Conveyor
Pekor Sand Pump
Steel pipe
Linatex sand separator
Electrical switches and wire
Scales
Pekor sand pump
Land improvements
Retaining wall
Fuel tanks
980G Caterpillar Wheel Loader (S/N 2KB00501)      Leased
970F Caterpillar Wheel Loader (S/N 7SK00699)      Leased
330BL Caterpillar Hydraulic Excavator (S/N 6DR00472)  Leased

### 1997 Additions:

Desk (Stern Brothers)
2 legal files (Stern Brothers)
2 Bookcases ( Stern Brothers)
Canon Multipass 2500 Fax printer (S/N UWJ11110)
Cardinal scales (Model #738 S/N 9508-46)
Collman Vantage Generator 7000 (Model #PM0477023
   S/N 74390019)
Gorman Rupp Pump (Model #16C2FL S/N 907086)
Gorman Rupp Pump (Model #16C2FL S/N 1070977)
Caterpillar Motor Grader (S/N 80C646)

EXHIBIT "A-1"

Exhibit A-2

MONTGOMERY MATERIALS COMPANY, INC.
BEAVER ROCK, INC.

Tentative Change in Equity from 01-01-97 to 4-30-97:

| | | |
|---|---|---|
| Combined stockholders' equity (S/E) at 12-31-96 per compiled financial statements | | $ (15,136) |
| Montgomery Materials, Inc. S/E at 04-3097 per compiled financial statements (monthly write-up) | $ 285,704 | |
| Beaver Rock, Inc. S/E at 04-30-97 (unchanged from 01-01-97) | (16,843) | |
| Elimination entry in connection with investment in lease | (62,344) | 206,517 |
| Net Change - tentative | | $ 221,653 |

LESS:

| | | |
|---|---|---|
| 1) Deposit on motor home not transferred | | $ -20,000 |
| 2) Accounts Receivable not transferred | | -201,653 |
| Combined stockholders' equity in Transferred Assets net of Assumed Liabilities | | $ (15,136) |

41733.1

Exhibit "B"

## ASSUMED LIABILITIES

The Assumed Liabilities are all liabilities of MMC Holdings, Inc. and Beaver Rock, Inc. as of the Effective Date, in the amounts shown on Exhibit "D" of the Agreement to which this Exhibit is attached with respect to MMC Holdings, Inc., and, with respect to Beaver Rock, Inc., in amounts not significantly different from the amounts as of December 31, 1996.

# WPBB&B

## WILSON, PRICE, BARRANCO, BLANKENSHIP & BILLINGSLEY, P.C.

*Certified Public Accountants*
3815 Interstate Court, Third Floor
Montgomery, Alabama 36109

## FACSIMILE TRANSMITTAL COVER SHEET

**TRANSMIT TO:**

| | |
|---|---|
| **Name:** | Charles Ford |
| **Company:** | Page, Scranton |
| **Date:** | 6.04-97      **Time:** |
| **Fax Number:** | 706-324-2835 |

**TRANSMITTED FROM:**

Richard M. Stabler, C.P.A.          Sender's Direct Phone: 334/260-2377

Phone: 334/271-2200                 Fax Number: 334/274-1577

Number of pages transmitted (including cover sheet): 30

**COMMENTS:** Chuck! Please call me if we need
to discuss.            Rick

If you do not receive all pages of this fax, or have trouble with this transmission, please call 334/271-2200.

UNLESS OTHERWISE INDICATED, THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, OR HIS/HER EMPLOYEE OR AGENT, YOU ARE NOT AUTHORIZED TO DISTRIBUTE OR COPY THIS COMMUNICATION. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE. THANK YOU.

EXHIBIT    C

## BEAVER ROCK, INC.
## MONTGOMERY MATERIALS COMPANY, INC.

### COMBINED FINANCIAL STATEMENTS

### DECEMBER 31, 1996

EXHIBIT   C

**BEAVER ROCK, INC.**
**MONTGOMERY MATERIALS COMPANY, INC.**
DECEMBER 31, 1996

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Accountants' Compilation Report | 1 |
| Combined Balance Sheet | 2 |
| Combined Statement of Income | 3 |
| Combined Statement of Retained Earnings | 4 |
| Combined Statement of Cash Flows | 5 |
| Notes to Combined Financial Statements | 7 |

### SUPPLEMENTARY INFORMATION

| | PAGE |
|---|---|
| Cost of Sales | 12 |
| General and Administrative Expenses | 13 |
| Combining Balance Sheet | 14–15 |
| Combining Statement of Income | 16 |

EXHIBIT   C



### Wilson, Price, Barranco, Blankenship & Billingsley, P.C.
Certified Public Accountants
Montgomery, Alabama

Member
American Institute
Of Certified Public
Accountants

Member
Alabama Society
Of Certified Public
Accountants

To the Board of Directors
Beaver Rock, Inc.
Montgomery Materials Company, Inc.

We have compiled the accompanying combined balance sheets of Beaver Rock, Inc. and Montgomery Materials Company, Inc., as of December 31, 1996 and the related combined statements of income, retained earnings, cash flows and supplementary information for the year then ended, in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants.

A compilation is limited to presenting in the form of financial statements information that is the representation of management. We have not audited or reviewed the accompanying combined financial statements and, accordingly, do not express an opinion or any other form of assurance on them.

*Wilson, Price, Barranco, Blankenship & Billingsley, P.C.*

March 10, 1997

1        EXHIBIT    C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
COMBINED BALANCE SHEET
DECEMBER 31, 1996

## ASSETS

### CURRENT ASSETS

| | |
|---|---:|
| Cash | $ 79,053 |
| Accounts receivable - trade | 181,533 |
| Accounts receivable - employees | 3,405 |
| Total current assets | 263,991 |

### PROPERTY AND EQUIPMENT

| | |
|---|---:|
| Machinery and equipment | 871,077 |
| Buildings and improvements | 31,056 |
| Automobiles | 46,189 |
| Furniture and fixtures | 9,034 |
| | 957,356 |
| Less accumulated depreciation | 295,155 |
| Total property and equipment | 662,201 |

### OTHER ASSETS

| | |
|---|---:|
| Loan costs | 6,113 |
| Total other assets | 6,113 |

| | |
|---|---:|
| **TOTAL ASSETS** | $ 932,305 |

EXHIBIT C

Case 2:05-cv-01026-CSC   Document 77-2   Filed 09/19/2006   Page 28 of 61

## LIABILITIES AND STOCKHOLDER'S EQUITY

### CURRENT LIABILITIES

| | |
|---|---:|
| Current portion of long-term debt | $ 347,649 |
| Accounts payable - trade | 156,772 |
| Loan from stockholder | 14,645 |
| Payroll taxes payable | 4,370 |
| Sales taxes payable | 666 |
| Total current liabilities | 524,102 |

### OTHER LIABILITIES

| | |
|---|---:|
| Noncurrent portion of long-term debt | 423,339 |
| Total other liabilities | 423,339 |

### TOTAL LIABILITIES

| | |
|---|---:|
| | 947,441 |

### STOCKHOLDER'S EQUITY

| | |
|---|---:|
| Capital stock | 2,000 |
| Additional paid-in capital | 150,965 |
| Retained earnings | 131,899 |
| Less treasury stock | (300,000) |

### TOTAL STOCKHOLDER'S EQUITY

| | |
|---|---:|
| | (15,136) |

### TOTAL LIABILITIES AND STOCKHOLDER'S EQUITY

| | |
|---|---:|
| | $ 932,305 |

See accountants' compilation report and notes to combined financial statements.

2

EXHIBIT   C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.

COMBINED STATEMENT OF INCOME
FOR THE YEAR ENDED DECEMBER 31, 1996

| | |
|---|---:|
| **INCOME** | $ 2,889,279 |
| **COST OF SALES** | 1,906,453 |
| **GROSS PROFIT** | 982,826 |
| **OPERATING EXPENSES** | |
| General and administrative | 315,933 |
| Depreciation | 230,537 |
| Amortization | 175 |
| Total operating expenses | 546,645 |
| **INCOME FROM OPERATIONS** | 436,181 |
| **OTHER INCOME** | |
| Freight income | 23,722 |
| Interest income | 179 |
| Total other income | 23,901 |
| **OTHER EXPENSES** | |
| Interest | 153,564 |
| Loss on disposition of equipment | 71,270 |
| Total other expenses | 224,834 |
| **NET INCOME** | $ 235,248 |

See accountants' compilation report and notes to combined financial statements.

3

EXHIBIT C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
COMBINED STATEMENT OF RETAINED EARNINGS
FOR THE YEAR ENDED DECEMBER 31, 1996

| | | |
|---|---|---|
| **DEFICIT AT BEGINNING OF YEAR** | $ | (92,518) |
| Net income | | 235,248 |
| Distributions | | (10,831) |
| **BALANCE AT END OF YEAR** | $ | 131,899 |

See accountants' compilation report and notes to combined financial statements.

EXHIBIT C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
COMBINED STATEMENT OF CASH FLOWS
FOR THE YEAR ENDED DECEMBER 31, 1996

**CASH FLOWS FROM OPERATING ACTIVITIES**

| | |
|---|---:|
| Net income | $ 235,248 |
| Adjustments to reconcile net income to net cash | |
| provided by operating activities: | |
| Depreciation | 230,537 |
| Amortization | 175 |
| Loss on disposition of equipment | 71,270 |
| Changes in assets and liabilities: | |
| Accounts receivable | 48,277 |
| Inventory | 113,217 |
| Loan costs | (6,288) |
| Accounts payable | (82,352) |
| Payroll and sales taxes payable | (19,276) |
| Other accrued liabilities | (2,261) |
| Net cash provided by operating activities | 588,547 |

**CASH FLOWS FROM INVESTING ACTIVITIES**

| | |
|---|---:|
| Purchase of property and equipment | (218,161) |

**CASH FLOWS FROM FINANCING ACTIVITIES**

| | |
|---|---:|
| Repayment of borrowings | (234,591) |
| Distributions to stockholder | (10,331) |
| Repayment of loans from stockholder | (77,410) |
| Repayment of loans to stockholder | 3,800 |
| Net cash used by financing activities | (318,532) |

| | |
|---|---:|
| **NET INCREASE IN CASH** | 51,854 |
| **CASH AT BEGINNING OF YEAR** | 27,199 |
| **CASH AT END OF YEAR** | $ 79,053 |

See accountants' compilation report and notes to combined financial statements.

EXHIBIT C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
COMBINED STATEMENT OF CASH FLOWS
FOR THE YEAR ENDED DECEMBER 31, 1996

SUPPLEMENTAL DISCLOSURES OF CASH FLOW INFORMATION

**Cash paid during the year for:**

| | |
|---|---|
| Interest | $ 153,564 |

SCHEDULE OF NONCASH INVESTING AND FINANCING ACTIVITIES

| | |
|---|---|
| Equipment purchased with long-term debt | $ 11,314 |
| Issuance of common stock | $ 1,000 |
| Purchase of treasury stock with long-term debt | $ 300,000 |
| Equipment contributed as additional paid-in capital | $ 150,000 |
| Trade-in of equipment and payoff of related long-term debt | $ 247,707 |

See accountants' compilation report and notes to combined financial statements.

EXHIBIT C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
NOTES TO COMBINED FINANCIAL STATEMENTS
DECEMBER 31, 1996

---

1.  SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

    *Companies' Activities and Operating Cycle*

    The Companies are engaged in the sand and gravel mining business in Alabama and Georgia.
    The Company grants credit to customers substantially all of whom are contractors and businesses
    located in Alabama and Georgia. 

    *Basis of Combination*

    The combined financial statements include the accounts of Beaver Rock, Inc. and Montgomery
    Materials Company, Inc., both of which are under common control and stock ownership. All
    intercompany transactions and balances have been eliminated in combination.

    *Property and Equipment*

    Property and equipment are recorded at cost. Depreciation is provided principally on the
    straight-line basis over the estimated useful lives of the various assets as follows:

    | | |
    |---|---|
    | Furniture and fixtures | 7 years |
    | Automobiles and trucks | 5 years |
    | Plant assets | 5 years |

    Total depreciation expense was $230,537 for 1996.

    Maintenance and repairs are charged against income when incurred. Significant additions are
    capitalized.

    The cost and accumulated depreciation of assets sold or retired are removed from the respective
    accounts. Any gain or loss from sale or retirement of property is reflected in income.

    *Loan Costs*

    Loan costs are being amortized on the straight-line basis over the life of the loan. The amount of
    amortization expense was $175 for 1996.

---

EXHIBIT

**BEAVER ROCK, INC.**
**MONTGOMERY MATERIALS COMPANY, INC.**
NOTES TO COMBINED FINANCIAL STATEMENTS
DECEMBER 31, 1996

1.  **SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (Continued)**

    *Income Taxes*

    Federal and State of Alabama income taxes are not payable by or provided for the Companies, since both corporations are S Corporations for income tax purposes. The sole stockholder of both companies is taxed individually on his share of the earnings.

    *Cash and Cash Equivalents*

    For the purposes of the combined statement of cash flows, the Companies consider all highly liquid debt instruments purchased with a maturity of three months or less to be cash equivalents.

    *Use of Estimates in the Preparation of Financial Statements*

    The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

2.  **LONG-TERM DEBT**

    Long-term debt as of December 31, 1996 consisted of the following:

    Payable by Beaver Rock, Inc.:

    | | |
    |---|---:|
    | Note payable to John Deere Credit: 11.25% note payable in monthly installments of $2,830 through December 1997, secured by equipment | $ 38,064 |
    | Note payable to Nations Bank: 10.5% note payable in monthly installments of $2,192 through December 2000, secured by real estate | 85,368 |
    | Note payable to GMAC: 6.99% note payable in monthly installments of $462 through March 1998, secured by automobile | 6,932 |

EXHIBIT C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
NOTES TO COMBINED FINANCIAL STATEMENTS
DECEMBER 31, 1996

---

2.   **LONG-TERM DEBT (Continued)**

Payable by Beaver Rock, Inc.: (Continued)

Note payable to GMAC:
7.95% note payable in monthly installments of $510 through
December 2000, secured by automobile                                    $    18,363

Note payable to Caterpillar Finance:
12% note payable in monthly installments of $7,000 through
January 1998, secured by equipment                                           97,961

Note payable to Orix Credit Alliance, Inc.:
10.8% note payable in monthly installments of $4,491 through
July 1999, secured by equipment                                             139,221

Note payable Thompson Tractor Co., Inc.:
11.5% note payable in monthly installments of $1,368 through
December 1998, secured by equipment                                          17,842

Payable by Montgomery Materials Company, Inc.:

Note payable to Colonial Bank:
9.25% note payable in monthly installments of $3,210 through
July 1998, secured by accounts receivable, inventory and
equipment                                                                    56,620

Note payable to Colonial Bank:
9.25% note payable in monthly installments of $4,797 through
November 1999, secured by real estate                                       150,000

Note payable to former stockholder:
7.5% note payable in monthly installments of $4,814 through
May 2000, secured by personal guarantee of stockholder                      150,000

Note payable to Cowin Equipment Company, Inc.:
11.9% note payable in monthly installments of $943 through
October 1997, secured by equipment                                           10,617

---

**EXHIBIT   C**

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
NOTES TO COMBINED FINANCIAL STATEMENTS
DECEMBER 31, 1996

---

2.   **LONG–TERM DEBT** (Continued)

| | |
|---|---:|
| Total long-term debt | $ 770,988 |
| Less current maturities of long-term debt | 347,649 |
| Long-term debt - noncurrent maturities | $ 423,339 |

Maturities of long-term debt are as follows:

| | |
|---|---:|
| 1997 | $ 347,649 |
| 1998 | 205,693 |
| 1999 | 166,403 |
| 2000 | 51,243 |

3.   **CAPITAL STOCK**

Capital stock as of December 31, 1996 consists of the following:

| | Number of Shares | | |
|---|---|---|---|
| | Authorized | Issued and Outstanding | Par Value |
| Beaver Rock, Inc. | 1,000 | 1,000 | $ 1 |
| Montgomery Materials Company, Inc. | 20,000 | 100 | $ 10 |

On November 15, 1996, Montgomery Materials Company, Inc. purchased 50 shares of its stock at a cost of $300,000 from a stockholder pursuant to the Company's Stock Redemption Agreement.

During the year, equipment valued at $150,000 was contributed as paid-in capital.

EXHIBIT   C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
NOTES TO COMBINED FINANCIAL STATEMENTS
DECEMBER 31, 1996

---

4.  **OPERATING LEASES**

Montgomery Materials Company, Inc. is obligated under three leases for heavy machinery used in its mining operation. Minimum monthly rental payments under these leases are $7,516, $5,539 and $5,202, expiring May 31, 1999, March 31, 2000 and March 31, 2000, respectively.

Future minimum rentals due under these leases as of December 31, 1996, are as follows:

| | | |
|---|---|---|
| 1997 | $ | 219,084 |
| 1998 | | 219,084 |
| 1999 | | 166,472 |
| 2000 | | 32,223 |

5.  **RELATED PARTY TRANSACTIONS**

Following is a summary of transactions and balances with a party related through ownership as of December 31, 1996.

| | | |
|---|---|---|
| Loan from stockholder | $ | 14,645 |

---

11

EXHIBIT C

# SUPPLEMENTARY INFORMATION

EXHIBIT C

**BEAVER ROCK, INC.**
**MONTGOMERY MATERIALS COMPANY, INC.**
COST OF SALES
FOR THE YEAR ENDED DECEMBER 31, 1996

| | | |
|---|---|---:|
| Cost of purchased materials | $ | 521,197 |
| Contract labor | | 107,529 |
| Engineering | | 4,701 |
| Equipment rental | | 108,672 |
| Freight | | 331,324 |
| Fuel | | 160,140 |
| Gas and oil | | 11,603 |
| Other expenses | | 958 |
| Payroll taxes | | 34,032 |
| Permits and fees | | 4,893 |
| Repairs and maintenance | | 285,077 |
| Salaries | | 313,970 |
| Supplies | | 22,357 |
| | | |
| Cost of sales | $ | 1,906,453 |

See accountants' compilation report.

EXHIBIT C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
GENERAL AND ADMINISTRATIVE EXPENSES
FOR THE YEAR ENDED DECEMBER 31, 1996

| | | |
|---|---|---:|
| Auto expense | $ | 9,200 |
| Employee benefits | | 7,129 |
| Insurance | | 76,056 |
| Miscellaneous | | 16,700 |
| Office expense | | 7,526 |
| Postage | | 1,822 |
| Printing | | 7,765 |
| Professional fees | | 6,968 |
| Royalties | | 149,805 |
| Taxes and licenses | | 2,261 |
| Telephone | | 19,874 |
| Travel and entertainment | | 6,550 |
| Utilities | | 4,277 |
| | | |
| Total general and administrative expenses | $ | 315,933 |

See accountants' compilation report.

EXHIBIT C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
COMBINING BALANCE SHEET
DECEMBER 31, 1996

| | Beaver Rock, Inc. | Montgomery Materials Company, Inc. |
|---|---|---|
| **ASSETS** | | |
| **CURRENT ASSETS** | | |
| Cash | $ 924 | $ 78,129 |
| Accounts receivable - trade | - | 181,533 |
| Accounts receivable - employees | - | 3,405 |
| Accounts receivable - related organization | 53,805 | - |
| Total current assets | 54,729 | 263,067 |
| **PROPERTY AND EQUIPMENT** | | |
| Machinery and equipment | 539,769 | 331,308 |
| Buildings and improvements | - | 31,056 |
| Automobiles | 46,189 | - |
| Furniture and fixtures | 685 | 8,349 |
| | 586,643 | 370,713 |
| Less accumulated depreciation | 239,818 | 55,337 |
| Total property and equipment | 346,825 | 315,376 |
| **OTHER ASSETS** | | |
| Investment in lease | - | 63,437 |
| Loan costs | - | 6,113 |
| Total other assets | - | 69,550 |
| **TOTAL ASSETS** | $ 401,554 | $ 647,993 |

EXHIBIT C

| | Total Before Eliminations | Eliminations | Combined Balance Sheet |
|---|---:|---:|---:|
| $ | 79,053 | $ - | $ 79,053 |
| | 181,533 | - | 181,533 |
| | 3,405 | - | 3,405 |
| | 53,805 | (53,805) | - |
| | 317,796 | (53,805) | 263,991 |
| | | | |
| | 871,077 | - | 871,077 |
| | 31,056 | - | 31,056 |
| | 46,189 | - | 46,189 |
| | 9,034 | - | 9,034 |
| | 957,356 | - | 957,356 |
| | 295,155 | - | 295,155 |
| | 662,201 | - | 662,201 |
| | | | |
| | 63,437 | (63,437) | - |
| | 6,113 | - | 6,113 |
| | 69,550 | (63,437) | 6,113 |
| | | | |
| $ | 1,049,547 | $ (117,242) | $ 932,305 |

See accountants' compilation report.

EXHIBIT    C

**BEAVER ROCK, INC.**
**MONTGOMERY MATERIALS COMPANY, INC.**
COMBINING BALANCE SHEET
DECEMBER 31, 1996

|  | Beaver Rock, Inc. | Montgomery Materials Company, Inc. |
|---|---|---|
| **LIABILITIES AND STOCKHOLDER'S EQUITY** | | |
| **CURRENT LIABILITIES** | | |
| Current portion of long-term debt | $ 233,996 | $ 113,653 |
| Accounts payable - trade | - | 156,772 |
| Accounts payable - related organization | - | 53,493 |
| Loan from stockholder | 14,645 | - |
| Payroll taxes payable | - | 4,370 |
| Sales taxes payable | - | 666 |
| Total current liabilities | 248,641 | 328,954 |
| **OTHER LIABILITIES** | | |
| Noncurrent portion of long-term debt | 169,756 | 253,583 |
| Total other liabilities | 169,756 | 253,583 |
| **TOTAL LIABILITIES** | 418,397 | 582,537 |
| **STOCKHOLDER'S EQUITY** | | |
| Capital stock | 1,000 | 1,000 |
| Additional paid-in capital | - | 150,965 |
| Retained earnings | (17,843) | 213,491 |
| Less treasury stock | - | (300,000) |
| **TOTAL STOCKHOLDER'S EQUITY** | (16,843) | 65,456 |
| **TOTAL LIABILITIES AND STOCKHOLDER'S EQUITY** | $ 401,554 | $ 647,993 |

EXHIBIT C

| | Total Before Eliminations | Eliminations | Combined Balance Sheet |
|---|---|---|---|
| $ | 347,649 | $ - | $ 347,649 |
| | 156,772 | - | 156,772 |
| | 53,493 | (53,493) | - |
| | 14,645 | - | 14,645 |
| | 4,370 | - | 4,370 |
| | 666 | - | 666 |
| | 577,595 | (53,493) | 524,102 |
| | | | |
| | 423,339 | - | 423,339 |
| | 423,339 | - | 423,339 |
| | 1,000,934 | (53,493) | 947,441 |
| | | | |
| | 2,000 | - | 2,000 |
| | 150,965 | - | 150,965 |
| | 195,648 | (63,749) | 131,899 |
| | (300,000) | - | (300,000) |
| | 48,613 | (63,749) | (15,136) |
| | | | |
| $ | 1,049,547 | $ (117,242) | $ 932,305 |

See accountants' compilation report.

EXHIBIT    C

# BEAVER ROCK, INC.
# MONTGOMERY MATERIALS COMPANY, INC.
COMBINING STATEMENT OF INCOME
FOR THE YEAR ENDED DECEMBER 31, 1996

| | Beaver Rock, Inc. | Montgomery Materials Company, Inc. |
|---|---|---|
| **INCOME** | $ 815,356 | $ 2,073,923 |
| **COST OF SALES** | 728,389 | 1,527,142 |
| **GROSS PROFIT** | 86,967 | 546,781 |
| **OPERATING EXPENSES** | | |
| General and administrative | 54,372 | 260,323 |
| Depreciation | 175,200 | 55,337 |
| Amortization | - | 6,738 |
| Total operating expenses | 229,572 | 322,398 |
| **INCOME FROM OPERATIONS** | (142,605) | 224,383 |
| **OTHER INCOME** | | |
| Freight income | - | 23,722 |
| Interest income | (155) | 334 |
| Equipment rental income | 348,152 | - |
| Gain on sale of lease | 70,000 | - |
| Total other income | 417,997 | 24,056 |
| **OTHER EXPENSES** | | |
| Interest | 129,449 | 24,116 |
| Loss on disposition of equipment | 71,270 | - |
| Total other expenses | 200,719 | 24,116 |
| **NET INCOME** | $ 74,673 | $ 224,323 |

EXHIBIT C

| | Total Before Eliminations | Eliminations | Combined Statement of Income |
|---|---|---|---|
| $ | 2,889,279 | $            - | $    2,889,279 |
| | 2,255,531 | (349,078) | 1,906,453 |
| | 633,748 | 349,078 | 982,826 |
| | | | |
| | 314,695 | 1,238 | 315,933 |
| | 230,537 | - | 230,537 |
| | 6,738 | (6,563) | 175 |
| | 551,970 | (5,325) | 546,645 |
| | | | |
| | 81,778 | 354,403 | 436,181 |
| | | | |
| | 23,722 | - | 23,722 |
| | 179 | - | 179 |
| | 348,152 | (348,152) | - |
| | 70,000 | (70,000) | - |
| | 442,053 | (418,152) | 23,901 |
| | | | |
| | 153,564 | - | 153,564 |
| | 71,270 | - | 71,270 |
| | 224,834 | - | 224,834 |
| | | | |
| $ | 298,997 | $    (63,749) | $    235,248 |

See accountants' compilation report.

16

**EXHIBIT    C**

WILSON, PRICE, BARRANCO, BLANKENSHIP & BILLINGSLEY, P.C.
Certified Public Accountants
Montgomery, Alabama

May 22, 1997

Shareholders
Montgomery Materials, Inc.
Montgomery, Alabama

We have compiled the accompanying balance sheet of Montgomery
Materials, Inc. as of April 30, 1997, and the related income statement
for the Four Months period then ended, in accordance with Statements on
Standards for Accounting and Review Services issued by the American
Institute of Certified Public Accounts.

A compilation is limited to presenting in the form of financial
statements information that is the representation of management. We
have not audited or reviewed the accompanying financial statements and,
accordingly, do not express an opinion or any other form of assurance
on them.

Management has elected to omit substantially all of the disclosures
and the statements of retained earnings and cash flows required by generally
accepted accounting principles. If the omitted disclosures were included
in the financial statements, they might influence the user's conclusions
about the Company's financial position, results of operations, and cash
flows. Accordingly, these financial statements are not designed for those
who are not informed about such matters.

*Wilson, Price, Barranco, Blankenship & Billingsley, P.C.*

EXHIBIT D

MONTGOMERY MATERIALS INC.
MONTGOMERY, ALABAMA

Page 1

BALANCE SHEET

April 30, 1997

================================================================================

ASSETS

| | | |
|---|---:|---:|
| **Current Assets** | | |
| Cash in Bank - Operating | $ 68,021.96 | |
| Cash in Bank - Payroll | 1,353.36 | |
| Petty Cash | 495.00 | |
| Employee Loans | 1,921.83 | |
| Accounts Receivable | 434,709.02 | |
| Total Current Assets | | 506,501.17 |
| **Fixed Assets** | | |
| Buildings | 31,056.13 | |
| Furniture & Fixtures | 10,407.33 | |
| Machinery & Equipment | 52,480.14 | |
| Property & Equipment | 311,690.79 | |
| Vehicles | 20,000.00 | |
| Accumulated Depreciation | (79,737.00) | |
| Total Fixed Assets | | 345,897.39 |
| **Other Assets** | | |
| Undeposited Funds | 4,170.35 | |
| Investment in Lease | 62,343.75 | |
| Loan Costs | 5,414.20 | |
| Total Other Assets | | 71,928.30 |
| Total Assets | | $ 924,326.86 |

SEE ACCOUNTANT'S COMPILATION REPORT

EXHIBIT   D

MONTGOMERY MATERIALS INC.
MONTGOMERY, ALABAMA

Page 2

BALANCE SHEET

April 30, 1997

================================================================

LIABILITIES AND CAPITAL

Current Liabilities

| | | |
|---|---:|---:|
| Accounts Payable | $ 227,574.91 | |
| Federal Income Tax Withheld | 59.75 | |
| FICA Taxes Payable | 35.35 | |
| Alabama Income Tax Withheld | 1,230.30 | |
| State Unemployment Accrued | 553.28 | |
| Federal Unemployment Accrued | 144.99 | |
| Sales Tax Payable | 2,279.36 | |
| Loan Payable - Cowin Equip. | 4,309.04 | |
| Loan Payable | 10,617.41 | |
| Loan Payable - Colonial Bank | 45,601.12 | |
| Payable to Mike Phillips | 22,688.58 | |
| Loan Payable - Cowin Equip. | 6,345.72 | |
| Loan Payable - Colonial Bank | 34,924.64 | |
| | -------------- | |
| Total Current Liabilities | | 356,364.45 |
| | | |
| Noncurrent Liabilities | | |
| Loan Payable - Colonial Bank | 89,652.28 | |
| Loan Payable - Colonial Bank | 13,241.51 | |
| Payable to Mike Phillips | 127,311.42 | |
| Due to BRI | 52,052.82 | |
| | -------------- | |
| Total Noncurrent Liabilities | | 282,258.03 |
| | | -------------- |
| Total Liabilities | | 638,622.48 |
| | | |
| Net Capital | | |
| Treasury Stock | (300,000.00) | |
| Common Stock | 500.00 | |
| Additional Paid in Capital | 150,965.41 | |
| Shareholder Draw-Harry Lambert | (38,236.17) | |
| Retained Earnings | 224,324.22 | |
| Net Income | 248,150.92 | |
| | -------------- | |
| Total Capital | | 285,704.38 |
| | | -------------- |
| Total Liabilities and Capital | | $ 924,326.86 |

SEE ACCOUNTANT'S COMPILATION REPORT

EXHIBIT  D

MONTGOMERY MATERIALS INC.
MONTGOMERY, ALABAMA

Page 3

INCOME STATEMENT

FOR THE FOUR MONTHS PERIOD ENDED APRIL 30, 1997

| | Year-to-Date Amount | Y-T-D Ratio |
|---|---|---|
| **Sales** | | |
| Sales | $ 1,134,916.90 | 99.96 |
| Total Sales | 1,134,916.90 | 99.96 |
| | | |
| **Other Income** | | |
| Interest | 420.82 | .04 |
| Total Other Income | 420.82 | .04 |
| | .00 | .00 |
| Total All Revenues | 1,135,337.72 | 100.00 |
| | | |
| **Cost of Sales** | | |
| Rock Purchases | 42,845.71 | 3.77 |
| Freight | 174,740.52 | 15.39 |
| Permits & Fees | 15.97 | .00 |
| Leased Equipment | 135,099.62 | 11.90 |
| R/R Charges | 1,196.26 | .11 |
| Depreciation Expense | 24,400.00 | 2.15 |
| Payroll Tax Expense | 13,749.72 | 1.21 |
| Equipment Rental | 291.20 | .03 |
| Salaries - Contract Labor | 6,117.35 | .54 |
| | 6,347.54 | .56 |
| Salaries - Office | 25,711.00 | 2.26 |
| Licenses & Permits | 330.00 | .03 |
| Rent | 2,100.00 | .18 |
| Contract Hauling | 47,512.50 | 4.18 |
| Supplies | 6,125.19 | .54 |
| Plant Labor | 10,671.43 | .94 |
| Repairs & Maintenance | 95,557.98 | 8.42 |
| Salaries - Equip. Operators | 47,169.03 | 4.15 |
| Fuel | 56,529.84 | 4.98 |
| Truck Drivers | 5,926.40 | .52 |
| Salaries - Officers | 24,803.00 | 2.18 |
| Total Cost of Sales | 727,240.26 | 64.04 |
| Gross Profit | 408,097.46 | 35.96 |

SEE ACCOUNTANT'S COMPILATION REPORT

EXHIBIT D

MONTGOMERY MATERIALS INC.
MONTGOMERY, ALABAMA

Page 4

INCOME STATEMENT

FOR THE FOUR MONTHS PERIOD ENDED APRIL 30, 1997

===============================================================================

| | Year-to-Date Amount | Y-T-D Ratio |
|---|---:|---:|
| General & Admin. Expenses | | |
| Advertising | $ 330.44 | .03 |
| Bank Service Charges | 46.41 | .00 |
| Donations | 300.00 | .03 |
| Employee Training | 75.00 | .01 |
| Interest | 7,093.42 | .62 |
| Insurance | 30,815.38 | 2.71 |
| Meals & Entertainment | 2,474.82 | .22 |
| Medical | 168.35 | .01 |
| Office Supplies | 952.69 | .08 |
| Penalties | 2,668.13 | .24 |
| Postage | 1,127.96 | .10 |
| Printing | 2,375.15 | .21 |
| Janitorial Service | 431.85 | .04 |
| Professional Fees | 14,965.73 | 1.32 |
| Royalties Paid | 67,641.41 | 5.96 |
| Taxes | 922.26 | .08 |
| Telephone | 5,362.24 | .47 |
| Travel & Lodging | 15,497.83 | 1.37 |
| Utilities | 1,481.21 | .13 |
| Vehicle Expense | 2,604.20 | .23 |
| Other Expenses | 319.57 | .07 |
| | ------------ | ------ |
| Total General & Admin.Expenses | 158,154.15 | 13.93 |
| | | |
| Other Expenses | | |
| Amortization Expense | 1,792.39 | .16 |
| | ------------ | ------ |
| Total Other Expenses | 1,792.39 | .16 |
| | ------------ | ------ |
| Net Income from Operations | 248,150.92 | 21.87 |
| | ------------ | ------ |

SEE ACCOUNTANT'S COMPILATION REPORT

EXHIBIT D



Legend:

public road

private road

stream

forest sites -

suited to pines

marginally suited to pines
(bedding work required)

suited to flood-tolerant
hardwoods and cypress

BILL WARD'S PROPERTY in
MACON COUNTY, ALABAMA, 380 ac.
in Sects. 25, 26, 27, T 17 N, R 21 E

Western Railway

AL. Highway 229

Caleda Creek

EXHIBIT " E "

EXHIBIT "E" - LEGAL DESCRIPTION

The Northwest Quarter of Section 25, Township 17, Range 21, containing 162 acres, more or less.

That part of the North Half of Section 26 lying South and East of Western Railway of Alabama, containing 323 acres, more or less, less the highway right-of-way.

Ten acres in the North Half of the Southwest Quarter of Section 26, Township 17, Range 21, described as follows: Begin at the center of Section 26, thence West 40.00 chains to West line of said Section 26, thence South 5.00 chains, thence Northeasterly to the point of beginning.

The North Half of Section 27, Township 17, Range 21 South and East of Western Railway of Alabama, and containing 70 acres, more or less, less andexcept the highway right-of-way.

North Half of North Half of North Half of South Half of Section 27, Township 17, Range 21, lying South and East of Western Railway of Alabama, and containing 19 acres, more or less, less and except the highway right-of-way.

Less and except from the above described lands the following portion thereof: Begin at a point 330 feet South of the Quarter Section Corner on the West side of Section 26, Township 17, Range 21, thence North 84 degrees East along a portion of the South line of property above conveyed in the North Half of the North Half of the North Half of the Southwest Quarter of Section 26 a distance of 1203 feet; thence North 13 degrees East 1268 feet; thence North 24 degrees 30 minutes West 1365 feet to a point in the center of Calebee Creek; thence following the meanderings of the center of Calebee Creek in a Westerly direction to the East right-of-way line of Alabama Highway 229; thence South 38 degrees West along the East right-of-way line of said Highway, 2318 feet; thence South 1 degree 15 minutes West 568.5 feet; thence South 88 degrees 45 minutes East 1100 feet to the point of beginning. Lying in the West Half of Section 26 and the East Half of the East Half of Section 27, Township 17, Range 21, and containing 99 acres, more or less.

Also, less and except from the property herein conveyed the following portion thereof:  Commencing at the Southwest Corner of the Highway Bridge over Calebee Creek on Alabama Highway 229, thence South 34 degrees 00 minutes West 1310 feet; thence North 56 degrees 00 minutes West 30 feet to the West right-of-way line of said Alabama Highway 229 which is the point of beginning of the tract of land herein described; thence along said right-of-way line South 34 degrees 00 minutes West 350 feet; thence North 56 degrees 00 minutes West 150 feet; thence North 34 degrees 00 minutes East 350 feet; thence South 56 degrees 00 minutes East 150 feet to the point of beginning.  Said tract of land all lying in the Northeast Quarter of Section 27, Township 17 North, Range 21 East, and containing 1.2 acres, more or less; being the real estate conveyed by Sam Martin Engelhardt, Jr., and wife, to R. F. Ray, Jr., on August 28th, 1964, by deed of record in the Probate Office of Macon County, Alabama, in Deed Book 72, at Page 33.

The above description covers 485 acres of land, said land being the identical real estate conveyed by Annie Floyd Engelhardt to Sam Martin Engelhardt, Jr., on November 9th, 1962, by deed of record in the Probate Office of Macon County, Alabama, in Deed Book 66, at Page 376, less and except the 99 acres of land hereinabove described in the next to last paragraph, and also less and exept the 1.2 acres of land hereinabove described in the preceding paragraph.  The right-of-way for Alabama Highway 229 had been previously conveyed to Macon County Board of Revenue by deed which appears of record in said Probate Office in Deed Book 54, at Page 329.

EXHIBIT "E" - LEGAL DESCRIPTION CONTINUED

The property subject to said Sand and Gravel Lease includes the following:

Commencing at the southeast corner of Section 27, Township 17 North, Range 21 East in Macon County, Alabama; thence west, 2,394.8 feet to the easterly right-of-way line of Alabama Highway No. 229; thence along said right-of-way line through the following courses: northeasterly along a curve, concave westerly and having a radius of 7,029.8 feet for 542.3 feet; north 6 degrees 55 minutes east, 85.0 feet; northeasterly along a curve, concave easterly and having a radius of 2,247.3 feet for 753.7 feet; north 26 degrees 08 minutes east, 806.5 feet; northeasterly along a curve, concave southeasterly and having a radius of 3,708.5 feet for 661.3 feet; north 36 degrees 21 minutes east, 1,470.4 feet; south 53 degrees 29 minutes east, 20.0 feet; north 36 degrees 21 minutes east, 448.7 feet to the true point of beginning of the parcel of land herein described; thence continuing along said right-of-way line, north 36 degrees 21 minutes east 51.3 feet; thence north 53 degrees 39 minutes west 20.0 feet; thence north 36 degrees 21 minutes east, 601.2 feet to the intersection of said right-of-way line with the center of Calebee Creek; thence along the center of said creek, south 47 degrees 41 minutes east, 394.0 feet; thence north 33 degrees 04 minutes east, 551.2 feet; thence leaving said creek, south 26 degrees 09 minutes east, 1,365.0 feet; thence south 11 degrees 21 minutes west, 68.8 feet; thence north 75 degrees 40 minutes west, 608.3 feet; thence north 67 degrees 00 minutes west, 1,044.4 feet to the true point of beginning; containing 21.476 acres.

Said parcel of land lying partly in Section 26 and partly in Section 27, Township 17 North, Range 21 East, Macon County, Alabama.

Less and except therefrom any and all rights of way and easements from public roads and public utilities and less the liability for any consequence resulting from the change of the location thereof.

This is the same property which James K. Black and wife, Maria J. Richmond, and Robert H. Spiegel and wife, Rebecca B. Spiegel, conveyed to William G. Ward, Jr. by Warranty Deed dated May 12, 1980 recorded in Deed Book 106, in the Office of the Judge of Probate of Macon County, Alabama.

C043-299
071994
11519.

EXHIBIT F
(Lease #1)
Page 1 of 2

All those tracts or parcels of land situate, lying and being in
Montgomery County, Alabama, being more particularly described as
follows:

## PARCEL I

Beginning at the NW corner of the NE 1/4 of Section 29,
T17N, R19E, go thence East 135 feet, more or less, thence
South 6035 feet, more or less, thence West 170 feet, more or
less, thence North 3350 feet, more or less, thence West 530
feet, more or less, thence North 2690 feet, more or less,
thence East 520 feet, more or less, to the point of
beginning, said property lying in the N 1/2 and the SE 1/4
of Section 29 and the NE 1/4 of Section 32, T17N, R19E.

Said property also being the same property conveyed to Major
Robinson in that certain deed dated November 17, 1937, and
recorded in the Office of the Judge of Probate of Montgomery
County, Alabama, in Deed Book 205, at page 207, being
therein described as follows:

A tract of land situated in Sections 29 and 32, Township 17,
Range 19, beginning at a point 10.00 chains South and 38.15
chains West of the Northeast corner of Section 32, Thence
North 90.00 chains, more or less to North Line of Section
29, thence West 9.89 chains, thence South 40.00 chains, more
or less, to South line of Robinson Place, thence East 8.00
chains to center of Section 29, thence South 50.00 chains,
more or less, to S.W. corner of Robinson Place, thence East
1.89 chains, more or less, to point of beginning, containing
49 acres, more or less.

## PARCEL II

A tract of land situated in the East half of the Northwest
Quarter of Section 29, Township 17, Range 19, beginning at a
point 8.00 chains West of the Center of said Section 29,
thence North 40.00 chains, more or less to North line of
Section 29, thence West 12.00 chains, then South 40.00
chains, more or less, to Half Section Line, thence East
12.00 chains to the point of beginning, containing 48 acres.
This is the same parcel of land located in Section 29,
Township 17, Range 19 that was conveyed by deed to Will
Robinson, also known as Willie Robinson and Will Robison,
which deed was recorded in Deed Book 205 at Page 207 located
in the Office of the Judge of Probate of Montgomery County,
Alabama and was referred to in an affidavit filed in the
Office of the Judge of Probate of Montgomery County, Alabama
in Deed Book 473 at Page 31.

## PARCEL III

Commence at the Northeast Corner of Section 29, T-17-N, R-19-E and run S 88°-37'-08"W for 1496.07' to the point of beginning of property herein described: Thence run S 00°-28'-36"E for 263.34', thence S 00°-17'-23"E for 374.29', thence S 05°-20'-49"E for 799.80', thence S 03°-48'-57"E for 1070.66', thence S 05°-10'-05"E for 238.22', thence S 04°-10'-31" E for 403.70', thence S 07°-33'-01"E for 607.94', thence S 01°-03'-25"W for 557.34', thence S 05°-07'-55"E for 710.92', thence S 04°-22'-19"E for 523.29', thence S 08°-09'-00"E for 528.10', thence S 84°-49'-35"W, for 359.04', thence N 03°-40'-40"W for 6092.32', thence N 88°-37'-08"E for 299.79' to the point of beginning. Described property contains 41.91 acres, more or less.

## PARCEL IV

A tract of land situated in Sections 29 and 32, Township 17, Range 19, beginning at a point 10 chains South and 27.25 chains West of the Northeast corner of Section 32, thence North 90.00 chains, more or less, to North line of Section 29, thence West 5.45 chains, thence South 90.00 chains, more or less, to South side of Robinson lands, thence East 5.45 chains to point of beginning, containing 49 acres.

## PARCEL V

A tract of land situated in the East half of the East half of Section 29, and the North half of the North half of the Northeast quarter of Section 32, Township 17, Range 19, beginning at a point 10.00 chains South and 10.88 chains West of the Northeast corner of said Section 32, thence North 90.00 chains to North line of Section 29, thence West 5.44 chains, thence South 90.00 chains, thence East 5.44 chains to point of beginning, containing 49 acres.

## PARCEL VI

A tract of land situated in the East half of Section 29 and the Northeast Quarter of Section 32, Township 17, Range 19, beginning at a point of the South side of the Robinson Place 10.00 chains South and 5.44 chains West of the Northeast corner of Section 32, thence West 2.72 chains, thence North 90.10 chains to Section line, thence East 2.72 chains, thence South 90.10 chains to point of beginning, containing 24.50 acres.

## PARCEL VII

Commence at the Northeast Corner of Section 29, T-17-N, R-19-E and run S 88°-37'-08"W for 1436.82' to the point of beginning of property herein described: Thence run S 03°-40'-45"E for 6068.56', thence N 08°-09'-00"W for 528.10' thence N 04°-22'-19"W for 523.29', thence N 05°-07'-55"W for 710.92' thence N 01°-03'-25"E for 557.34', thence N 07°-33'-01"W for 607.94' thence N 04°-10'-31"W for 403.70', thence N 05°-10'-05"W for 238.22' thence N 03°-48'-57"W for 1070.66' thence N 05°-20'-49"W for 799.80' thence N 00°-17'-23"W for 374.29', thence N 00°-28'-36"W for 263.34' thence N 88°-37'-08"E for 59.25' to the point of beginning. Described property contains 8.18 acres, more or less.

EXHIBIT F
(Lease #2)

All that tract or parcel of land situate, lying and being in
Montgomery County, Alabama, being more particularly described as
follows:

Beginning at the southeast corner of Section 36, Township 17
N., Range 19 E., and running thence north 48 chains to a
branch, thence northwesterly along said branch as follows:
N. 76 degrees and 20 minutes W. 19 chains, N. 67 deg. and
ten minutes W. 2.5 chains, thence N. 76 deg. W. 3 chains,
thence S. 80 deg. W. 8 chains, to the intersection of said
branch with a creek, thence southerly along said creek to
the S. line of said section 36, thence east along said south
line 32 chains to the point of beginning, and being a part
of the east half of said Sec. 36, Township 17, Range 19.

Also beginning at the northeast corner of Sec. 1, Township
16, R. 19, and running thence south 7 and 1/2 deg. W. along
the east line of said Section 38 thence to the right-of-way
of the Western of Alabama R. R., thence westerly along said
right-of-way 22 and 56/100 chains to the Old Augusta Public
Road, thence northwesterly along said Augusta Road 35 feet,
thence easterly and parallel with said Railroad, and 25 feet
therefrom, 6 and 41/100 chains, thence N. 23 and 4/10 chains
to the creek, thence northerly up said creek to the north
line of said Section 1, thence east 32 chains to the point
of beginning, and lying in the NE 1/4 of said Section 1,
Township 16, Range 19.

LESS AND EXCEPT therefrom 4.960 acres being described as
follows:
Commence at the Northeast corner of Sec. 1, T16N, R19E,
Montgomery County, Alabama; thence run along the East line
of said Section 1, S 07 deg. 30' 00" W, 2066.29 feet to an
iron pin and the point of beginning; thence from said point
of beginning continue to run along said east line of Section
1, S. 07 deg. 30' 00" W, 441.71 feet to an iron pin on the
North Right-of-Way of the Western of Alabama Railroad.  Said
point being in a curve (concave northeasterly); thence run
along said right-of-way and said curve a chord of N. 80 deg.
42' 10" W, 479.53 feet to an iron pin; thence leave said
right-of-way and run N. 04 deg. 32' 25" E., 441.06 feet to
an iron pin; thence run S 80 deg. 55' 30" E., 502.26 feet to
the point of beginning.

Said property lying in the East half of Section 1, T-16-N,
R-19-E, Montgomery County, Alabama, containing 4.960 acres,
more or less.

Also less 1.6 acres in the NE 1/4 of Sec. 1, T. 16, R. 19,
heretofore conveyed for a church site and also less 2 acres
in the NE 1/4 of Sec. 1, T. 16, R. 19, conveyed to the State
of Alabama, both parcels being further described in that
certain deed from Park Smith and Calvin Smith, as the
Executors under the Will of Eliza Quitman Henderson,
deceased, to Ralph Jenkins, dated December 14, 1937, and
recorded in the Office of the Judge of Probate of Montgomery
County, Alabama, in Deed Book 205, at Page 126.

EXHIBIT  F
(Lease #3)

All that tract or parcel of land situate, lying and being in
Montgomery County, Alabama, being more particularly described as
follows:

Beginning at a point where the East line of Section 36,
Township 17, Range 19 East, intersects the South side of the
Tallapoosa River, thence South 27 chains along said East
side of Section 36, which is marked by a fence and row of
trees to a point on said section line 8 chains North of the
Northeast corner of Southeast quarter of said section,
thence North 76° 20' West 19 chains along the course of a
dry creek, thence North 67°15' West 2.50 chains along said
creek, thence North 76° West 3 chains along said dry creek,
thence South 80° West 8.50 chains along said dry creek to
the intersection of said dry creek and the center of quarter
section creek, thence up the center of said quarter section
creek in a general southerly direction to a point which is
25 chains due South of the above mentioned intersection of
the dry creek and the center line of quarter section creek,
thence South 86° West 18.90 chains to the stake in a pasture
fence, thence South 2° 30' East 5 chains along said fence to
a gum tree, thence South 18° West 9 chains along said fence
to a mock orange tree, thence North 72 degrees 15 minutes
West 13.35 chains along fence, thence South 32° West 14.70
chains to the Old Augusta Road, thence North 55° 30' West
15.50 chains along said Old Augusta Road, thence North 34
degrees East 25 chains, thence North 28 degrees East 29
chains to a blazed pine tree on the South bank of the
Tallapoosa River, thence easterly along said Tallapoosa
River with its meanderings to the point of beginning,
containing in all 258.05 acres, more or less, and located in
Sections 35 and 36, Township 17 North, Range 19 East; also

30.34 acres, more or less, lying and being situated in the
Southwest quarter of Section 36, Township 17 North, Range 19
East, and the Northwest quarter of Section 1, Township 16
North, Range 19 East, described as follows:  Commencing at
the Southeast corner of the lands of W. J. Garnand as
described in a deed from Inda W. Cornell and E. M. Cornell,
dated January 17, 1914, which point of beginning is situated
on the North side of the Old Augusta Road, thence running
North 32° East 14.70 chains, thence South 72° 15' East 13.35
chains to a mock orange tree, thence South 12° West 22
chains, more or less, to the North line of said Old Augusta
Road, thence westerly along the North side of said Old
Augusta Road to the point of beginning.

LESS AND EXCEPT, therefrom any and all rights-of-way for
roads, railroads, telephone, telegraph, light, power or gas
lines.

Exhibit F
(Lease # 4)

## PROPERTY OF WARES FERRY PROPERTIES, LTD.

Commence at the intersection of the south right-of-way of the CSX Railroad with the east right-of-way of Wares Ferry Road in Section 1, Township 16 North, Range 19 East; thence South 31°00'49" East along said right-of-way 303.12 feet; thence South 28°05'22" East along said right-of-way 918.31 feet; thence South 89°22'08" East along the north line of a 60-foot wide access easement 1664.38 feet to a point in Section 6, Township 16 North, Range 20 East which is the point of beginning of the land to be herein described; thence continue South 04°41'31" East along the east side of a 60-foot wide access easement 575.10 feet to a point; thence South 82°04'39" East along the north side of said 60-foot wide access easement 279.08 feet to a point; thence North 87°31'46" East a distance of 2552.59 feet to a point on the west right-of-way line of Sprott Road; thence southeasterly and southerly along the west right-of-way line of Sprott Road to a point sixty (60) feet north of the south boundary line of said Section 6; thence proceed North 88°58'17" West a distance of 1320 feet more or less to a point on the east boundary of the Wares Ferry Acres Plat No. 2 Subdivision, a map or plat of which is recorded in the Office of the Judge of Probate of Montgomery County, Alabama in Plat Book 37, at Page 2; thence proceed North 01°01'43" West a distance of 264.18 feet to a point on the northeast corner of said subdivision; thence proceed North 88°58'17" West a distance of 1,334.19 feet more or less to the northwest corner of said subdivision; thence North 01°23'00" East a distance of 445.7 feet more of less to a concrete marker; thence North 82°38'47" West to a point on the southeast corner of the property conveyed to Richard K. Feaga by deed recorded in the Office of the Judge of Probate of Montgomery County, Alabama in real property record 1403, page 235; thence North 04°41'31" West a distance of 568.48 feet to a point on the north side of a 60-foot wide access easement; thence South 89°22'08" East along the north line of a 60-foot wide access easement to the point of beginning. This parcel lies in the South ¼ of the Southeast ¼, the South ¼ of the Southwest ¼, and the Northwest ¼ of the Southwest ¼ of Section 6, Township 16 North, Range 20 East, Montgomery County, Alabama, and contains 74 acres more or less.



Ehibit "F"