IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE CONCRETE COMPANY, | &#124; |
| | &#124; |
|    PLAINTIFF, | &#124; |
| | &#124; |
| vs. | &#124;   CASE NO. 2:05-CV-1026-CSC |
| | &#124; |
| HARRY E. LAMBERT, | &#124; |
| CAROL'S CONTRACTING, | &#124; |
| INC., and ALABAMA GRAVEL, | &#124; |
| LLC, | &#124; |
| | &#124; |
|    DEFENDANTS. | &#124; |

**DEFENDANTS HARRY E. LAMBERT AND CAROL'S CONTRACTING, INC.'S RESPONSE TO ORDER TO SHOW CAUSE [Doc. 82] WHY MOTION FOR DISCOVERY [Doc. 77] SHOULD BE DENIED**

COME NOW Defendants Harry E. Lambert (hereinafter "Lambert") and Carol's Contracting, Inc. (hereinafter "Carol's Contracting") and as ordered by this Court [Doc. 82] provides the following reasons the Motion For Discovery [Doc. 77] is due to be denied:

1. A stay of discovery is appropriate during the pendency of a dispositive motion which does not "appear to be without foundation in law". MOORE'S FEDERAL PRACTICE 3D § 26.105[3][c] at 26-271. *See also*, Landry v. Air Line Pilots Ass'n Int'l AFL-CIO, 901 F.2d 404, 436 (5th

1

Cir. 1990), *cert. denied*, 498 U.S. 895 (1990) *and* <u>Nolan v. United States Dept. of Justice</u>, 973 F.2d 843, 849 (10th Cir. 1992).

2. A stay of discovery pending the outcome of a summary judgment motion may be granted if: (1) the pending motion is potentially dispositive of the entire case; and (2) the pending motion can be decided without additional discovery. *Id.* at 26-272. *See also*, <u>Pacific Lumber v. National Union Fire Ins. Co.</u>, 220 F.R.D. 349, 351-352 (N.D. Cal. 2003). Here the pending motions for summary judgment would be dispositive of the case and TCC has conceded that no further discovery is needed to respond thereto.

3. This cause was filed October 25, 2005. [Doc. 1] The sole plaintiff in the case is The Concrete Company "TCC".

4. TCC's claim involves a non-competition agreement which is void under Alabama law unless it meets certain statutory criteria. *See* ALA. CODE 8-1-1(a). The provision was part of a buy-sell agreement triggered by TCC which required Lambert to sell his interest in Montgomery Materials Company LLC. The five year non-compete provision expired of its own terms January 2, 2006.

5. On March 28, 2006, Lambert took the deposition of the 30(b)(6) representative of TCC (Hugh Sorrells). During his testimony the

      defendants discovered that as of April 1, 2005 TCC transferred its sand and gravel operations to Foley Materials LLC and thereafter operated solely as a holding company.  Sorrells also testified that neither TCC nor Foley Materials LLC were ever in the commercial trucking business.  Montgomery Materials Company LLC was never in the commercial trucking business.

6.   Defendants have also learned that in 2005 TCC transferred its Alabama Department of Environmental Management Pollutant Discharge Permit in this area to Foley Materials Company.  *See* Exhibit A.  ADEM permits are indicia of engaging in the sand and gravel business. 33 U.S.C. §§ 1251-1378 (Federal Water Pollution Control Act) and ALA. CODE §§ 22-22-1 to 14 (Alabama Water Pollution Control Act).

7.   On April 27, 2006, Lambert and Carol's Contracting filed Motions for Summary Judgment on the question of whether TCC had standing to enforce the terms of the non-compete and whether it was otherwise enforceable against Carol's Contracting which is a commercial trucking company not in the sand and gravel business.  [Doc. 39 & 41]

8.   On May 2, 2006, this Court set the motions for summary judgment for submission on May 23, 2006 and gave TCC until that date to file a response. [Doc. 44]

9. On May 23, 2006, TCC filed its response to the motions for summary judgment filed by these defendants. [Doc. 49]

10. No discovery to respond to the pending motions for summary judgment has yet been requested by TCC.

11. Indeed, TCC stated on May 23, 2006, that no further discovery on the questions raised by these defendants was essential. *See* Doc. 49, pg. 14, fn. 8.

12. Furthermore, if relevant to any existing issues, the recently listed additional discovery in Doc. 77 goes to the merits of the claims of TCC against Lambert and Carol's Contracting and not to the pending motions for summary judgment. For example:

   a. ALA. CODE § 8-1-1(b) only allows the enforcement of a non-compete by the "buyer" of a business "so long as the buyer, or any person deriving title to the good will from him…carries on a like business [in the territory]."

   b. None of the requested additional discovery goes to the pending motion for summary judgment of Lambert or Carol's Contracting which is based upon the standing of TCC to enforce the agreement after it formed a separate legal entity (Foley Materials) to which it transferred the assets and good will of the sand and gravel business it

purchased from Lambert. Foley Materials is not a party to this suit and the non-compete agreement has now expired. *See* <u>Russell v. Birmingham Oxygen Service, Inc.</u>, 408 So.2d 90 (Ala. 1981), *cited with approval and explained* <u>Campbell & Sons Oil Company, Inc. v. Murphy Oil USA, Inc.</u>, 2000 U.S. Dist. 9196 (N.D. Ala. Jan. 3, 2000). The time for amending to add parties has long expired. [Doc. 15, § 4].

c. Also, ALA. CODE § 8-1-1(b) only allows the enforcement of a non-compete to "refrain [the seller of the business] from carrying on or engaging in *a similar business ... within a specified [territory]*."

d. Carol's Contracting is a common carrier authorized to haul all types of freight except household goods by the Alabama Public Service Commission. *See* Exhibit B.

e. TCC is not a common carrier authorized to haul any type of freight by the Alabama Public Service Commission and neither is Foley Materials. *See* Exhibit K.

f. None of the requested discovery goes to the pending motion for summary judgment by Lambert or Carol's Contracting on the issue of whether a common carrier of freight is in a "similar business" as the "sand and gravel" business sold by Lambert to TCC.

g. Additionally, ALA. CODE § 8-1-1(b) only allows the enforcement of a non-compete to "refrain [the seller of the business] from carrying on or engaging in a similar business *and from soliciting old customers of such employer within a specified [territory]*."

h. In the complaint, TCC alleges that Alabama Gravel sold white oversize gravel to Simcala as a result of the actions of Lambert. [Doc. 1 ¶ 42-43). In fact, Simcala is the only current customer of TCC mentioned in the Complaint. *Id*.

i. Simcala was never a customer of Montgomery Materials Company, LLC. *See* Exhibit C (Affidavit of Carol Lambert). Because TCC acquired all the business records of Montgomery Material Company LLC, it was aware that Simcala had not been a customer of that company when it filed the complaint in this case. TCC needs no discovery to determine whether Simcala was a customer of Montgomery Materials Company, LLC.

j. Furthermore, even if it had been a customer of Montgomery Materials LLC, Simcala's decision to stop buying white oversize gravel from TCC was caused by TCC's own actions and not actions of Lambert. [Doc. 47 Exhibit C] (Affidavit of Dick Wymer of Simcala). He stated: "I made the unilateral decision to seek out other suppliers,

including Alabama Gravel, when I received information [from TCC] which led me to believe that The Concrete Company might be unable to supply Simcala with adequate quantities of suitable oversize gravel." *Id.* at ¶ 7. TCC has not specified what discovery it now needs from Simcala on this issue that it does not already have or why more discovery would be relevant to any existing claims or the pending motions for summary judgment.

13. On or about July 11, 2006, Alabama Gravel entered into a release and settlement agreement with TCC. [Doc. 74] The terms of the release are general and release Alabama Gravel "and its successors, assigns, employees, directors, officers, agents, subsidiaries, affiliated companies, attorneys, members and representatives from any and all claims, demands, damages, actions, causes of action, or suits of any kind whatsoever, whether known or unknown, relating to, arising from or connected in any way with any and all claims which were asserted or which could have been asserted in the above-styled cause or to any action taken by or on behalf of Alabama Gravel in the prosecution of this action. This release and discharge includes, but is not limited to, any claim, demand, damage, action, cause of action or suit of any kind under the

   Alabama Litigation Accountability Act and/or Federal Rule of Civil Procedure 11." [Doc. 74]

14. TCC took no depositions of Alabama Gravel representatives before it released Alabama Gravel as a party in this case with prejudice.

15. The deposition of Dave Tuten of Alabama Gravel was taken July 13, 2006.

16. TCC has stated no reasons why further depositions from other owners of Alabama Gravel would be relevant to any of the issues pending before this Court on summary judgment.

17. The deposition of Carol Lambert was taken August 22, 2006 and the deposition of Harry Lambert was taken August 29, 2006. TCC has demonstrated no evidence discovered in those depositions that would be relevant to the issues pending before this Court on summary judgment or that would create the necessity to open discovery on those issues.

18. The defense of the claims of TCC has already been an expensive proposition for these defendants and settlement does not appear to be an option.

19. The purpose of the filing of the pending motions for summary judgment months before the cutoff date for such motions was to avoid unnecessary discovery on the merits of the various claims if TCC was determined, as

these defendants strongly believe should be determined, not a proper party or if Carol's Contracting was determined not to be a "similar business" as that sold by Lambert to TCC.

20. Delaying expensive discovery until the submitted motions are ruled upon would serve the best interests of judicial economy.

21. The Court mentioned at a prior hearing that it might allow more discovery in order for TCC to prepare and file its own Motion for Summary Judgment. However, further discovery on the merits will not establish any basis for any summary judgment for TCC on the merits because discovery to date has uncovered numerous disputed issues of fact with regard to the allegations asserted by TCC in its Motion for Discovery [Doc. 77]. Here are just a few examples taken from Document 77 alone:

   a. In Document 77 on page 2, TCC makes the preposterous suggestion that because TCC produced more documents than Carol's Contracting more discovery is needed from Carol's Contracting on some unspecified subject. The fact that TCC, a large corporation with hundreds of employees, produced 3000 pages of documents based upon requests related to both liability and damages does not even raise an inference that the defendants have failed to respond to discovery

directed to them on the issue of liability. Individual defendant Harry Lambert did not have a paying job during the period in question and was not engaging in the sand and gravel business while Carol's Contracting was simply a common carrier with a handful of trucks which was owned by one person. Nevertheless, it produced 100 documents in response to specific questions concerning its hauling for specific customers which are identical to the documents TCC directly obtained from those same customers per subpoena. It has produced its invoices through December 25, 2005 *i.e.* up through the expiration of the non-compete on January 2, 2006.

b. Also on page 2, TCC refers to a "pro tanto" settlement agreement with Alabama Gravel when the terms of the settlement do not limit the general release language thereof. *See* ¶ 13 *supra*. The nature of that agreement will be contested due to the broad general terms drafted by TCC's own lawyers.

c. On page 3, TCC mentions the "hundreds" of calls placed to or from Harry Lambert's cell phone they claim are "conversations" between Harry Lambert and persons involved in the Deatsville operation. However, Harry Lambert testified that others have borrowed his cell phone and the records show that the phone was used to send or

receive 10,000 calls during the extended period requested. When specifically questioned about the nature of those calls the participants will not support the inference that they had to do with Lambert engaging in the sand and gravel business. *See, e.g.*, Exhibits D and E. Alan King has testified that he made calls from Lambert's cell phone to order materials due to the poor reception at the site. *See* Exhibit G, pg. 2.

d. On page 4, TCC says that Carol's Contracting was focused "predominately on delivering sand and gravel" where the records show it was formed as a common carrier to haul any type of freight- except household goods. *See* Exhibit B. Furthermore, the testimony of Carol Lambert establishes that one of Carol's Contracting's trailers is a flatbed trailer that cannot haul sand or gravel. TCC further omits that when originally formed Carol's Contracting's trucks were leased to a common carrier named Foshee Trucking which dispatched the trucks. TCC also omits that once on its own, Carol's Contracting has used its dump trailers to transport coal and other bulk materials not considered by any stretch of the imagination to be "sand" or "gravel".

e. On page 4, TCC states that Lambert and Carol's Contracting "stayed out of sand and gravel mining until late 2004." This date contradicts

    TCC's statement on page 2 that Carol's Contracting had been in the sand and gravel business since 2002. The Court will also note that on page 7, TCC states that Lambert materially violated the non-compete in the fall of 2005. These statements are consistently untrue and contradictory.

f. On page 4, TCC mentions "three major TCC customers" but fails to point out that in the non-compete agreement itself, as well as under ALA. CODE § 8-1-19(b), only solicitation of customers of the company sold by Lambert—Montgomery Materials Company LLC—is prohibited. TCC knows that two of the "three major TCC customers" (Simcala and Maddox Stone) were never customers of Montgomery Materials Company LLC prior to the sale by Lambert to TCC. *See* Exhibits C & D. Accordingly, discovery from Simcala and Maddox Stone would be irrelevant and immaterial to any of the claims asserted. Furthermore, affidavits from Simcala and Maddox establish Lambert did not solicit their business during the term of the non-compete. Both sought Alabama Gravel product because they were unable to secure adequate quantities from other suppliers such as TCC. *See* Exhibit D (Jim Maddox affidavit) and Doc. 47, Exhibit C (Richard Wymer affidavit).

g. Footnote 3 on page 5 demonstrates who is actually playing "word games" with the Court. TCC states that Lambert "provided [Alabama Gravel] an office on his family land" when the footnote below correctly acknowledges that the property had been solely Carol Lambert's since 2000, long before there were any disputes between Lambert and TCC over the non-compete.

h. On page 5, TCC continues to allege that it was Lambert who improperly arranged for Mike Gentry to allow Alabama Gravel to mine white oversize gravel. However, TCC fails to mention that (1) Harry Lambert mentioned Gentry to Robert Alexander as part of consulting work Lambert was doing for Alexander *outside the territory;* (2) that the reference to Gentry had nothing to do with mining white oversize gravel; and (3) that the communications between Alexander and Gentry occurred *before* Alexander ever formed Alabama Gravel. *See* Exhibit F (Mike Gentry affidavit).

i. Also, as a further example of "word games" TCC states on page 7 that it sent a letter to Lambert on March 26, 2002 which supposedly reminded him that his non-compete was "effective as of January 2, 2001 and ran until January 2, 2006". Actually, it was only after this

13

suit was filed and Lambert sought a declaration of the expiration date that TCC conceded the agreement expired January 2, 2006.

j. In section III on page 7, TCC states that Lambert was "selling" aggregate to TCC customers. Lambert and Carol's Contracting have testified that neither ever sold any aggregate to any TCC customer or to any other customers. Carol's Contracting, as a common carrier, transported aggregate to or from customers of TCC, with Lambert on occasion, serving as the actual driver of the truck. But, again, neither ever sold the product to anyone. Affidavits from Maddox Stone (Exhibit D) and Ag-Tran/Willingham Stone (Exhibit E) confirm that Carol's Contracting only acted as any commercial trucking company would *i.e.* it hauled commodities for a per ton price but never was the seller thereof.

k. Footnote 6 on page 7 references testimony of a Foley Materials employee attempting to establish that an Allan King said he was building a plant for Harry Lambert in 2005. King has given an affidavit that he was building the plant for Alabama Gravel and not for Harry Lambert. *See* Exhibit G. He says "I never had any dealings with Harry Lambert related to the Deatsville plant until sometime in 2006." *Id*. That would have been after the non-compete expired.

l. On page 8, TCC asserts as fact that Simcala—a customer Lambert could legally solicit if he chose to do so—stopped purchasing because of a "visit" by Lambert. Yet TCC is well aware that a representative of Simcala—Richard Wymer—has already submitted an affidavit refuting any causal connection between contacts with Lambert and Simcala's decision to stop purchasing from TCC. *See* Doc. 47, Exhibit C.

m. TCC also alleges on page 8 that Jim Maddox and Randy Willingham have told a Foley Materials employee they "placed orders for sand and gravel" with Lambert in 2005. Maddox Stone was never a customer of Montgomery Materials LLC. *See* Exhibit C. Since was never a customer of Montgomery Materials Company LLC, solicitation of orders of gravel from Maddox would not have been permitted if they had taken place and discovery from them would be irrelevant and immaterial. Nevertheless, affidavits from Willingham and Maddox state that they never ordered or purchased sand or gravel from Lambert. *See* Exhibits D & E. Their only communications with Lambert would have concerned transportation by Carol's Contracting of product Maddox and Willingham had purchased from other sources.

n. In part V on pages 9 and 10 TCC again plays loose with the facts. It states that Carol's Contracting "hauls sand and gravel for Alabama Gravel" when there is no evidence that Carol's Contracting ever hauled sand for Alabama Gravel. As has been stated before, Carol's Contracting has transported only two types of freight as a common carrier for Alabama Gravel: white oversize gravel and heavy equipment. Alabama Gravel never even sold sand while Lambert's non-compete was in effect.

o. On page 11 TCC states that Carol's Contracting received $10,000 from Simcala for hauling white oversize gravel to Marietta, Ohio. The documents produced and the facts show that Carol's hauled metal alloy to Marietta, Ohio and returned with coal for Simcala. Also, the "aggregate" which is described as being transported for Willingham was a type of rock used in roofing material which is not sold by Alabama Gravel.

p. Also on page 11 in section C, TCC loosely alleges that Lambert was involved in transportation of gravel "as a driver, coordinator and/or broker". Lambert has denied any involvement in the sale of gravel as a broker or otherwise. He has testified to his minimal involvement in the driving and dispatching of trucks for his wife's trucking company.

The affidavits of Maddox and Willingham support that testimony. *See* Exhibits D & E.

q. TCC mentions it needs discovery from Crest Capital concerning a fax mentioned on page 14. Crest Capital has given an affidavit explaining that it has no records of any business relationships with Lambert since Lambert was managing Montgomery Materials Company LLC. *See* Exhibit H. TCC has been relying on the date of a 2005 fax transmittal and not the date the document was actually created. Not only are TCC's assertions concerning the document not true, but, given the affidavit of Crest Capital, discovery from Crest Capital would be a waste of time and money.

r. TCC mentions Lambert's phone records show calls to/from a William P. Long that, according to an affidavit from Long (which they obtained without any additional discovery through this case), they say indicate Lambert "brokered" a transaction for used mining equipment for Alabama Gravel. Of course, the facts are that Mack Tilley, the seller of the used equipment, (1) is located in North Georgia (out of the territory protected by the non-compete) and (2) completely denies that Lambert was involved in the brokering of any of his used mining equipment. *See* Exhibit I (Declaration of Mack Tilley).

22. There are many other disputed areas of fact as to the merits of the claims of TCC relating to the actions of Frank Foley. It has been learned, for example, that TCC and Foley (signatories to the non-compete) in 2001 made a large loan to a competitor of Montgomery Materials Company LLC within the "territory" in contravention of the terms of the Montgomery Materials Company LLC agreement. *See* Exhibit J (Mike Phillips Loan Agreement). This would indicate that Foley and TCC either (1) breached the contract themselves or (2) considered it proper to make a loan to a competitor of Montgomery Materials Company LLC while inconsistently contending that Lambert's driving a truck for a commercial common carrier constitutes a violation of a similar provision.

23. Accordingly, allowing more expensive discovery prior to the determination of potentially dispositive motions which have been under submission since May 23, 2006, on the assumption that there may be future motions for summary judgment filed by TCC defeats the purpose of a party bringing dispositive motions to the Court early in the process in order to save expenses.

24. It certainly appears to the Defendants that further discovery in this suit is being pursued while the pending motions are under submission merely to increase the cost of litigation in order to slow Lambert's re-entry into the

sand and gravel business in this area by requiring expenditures of capital on legal expenses instead of investing in a new sand and gravel business. Upon information and belief, TCC has used the pendency of this lawsuit to discourage individuals from doing business with Lambert since the expiration of the non-compete.

25. Further, these defendants have no objection to any reasonable extension of discovery or other deadlines that might be warranted by a delay in discovery pending a ruling on the pending motions.

WHEREFORE, Defendants Harry E. Lambert and Carol's Contracting, Inc., respectfully request that this Court deny the request for additional discovery pending a ruling on the pending motions for summary judgment which have been fully briefed and submitted since May 23, 2006 without any request for additional discovery to respond thereto by TCC.

Respectfully submitted this 5th day of October 2006.

                                                             /s/ Dennis R. Bailey
                                                          Dennis R. Bailey
                                                          Bethany L. Bolger
                                                          Attorneys for Defendant Harry E. Lambert
                                                          and Carol's Contracting, Inc.

Of counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270
(334) 206-3234 (phone)
(334) 481-0031 (fax)
drb@rsjg.com (e-mail)
bbolger@rsjg.com (e-mail)

## CERTIFICATE OF SERVICE

     I hereby certify that I have filed the foregoing pleading through the ECMF system on this the 5th day of October 2006 which will forward same to:

       Robin G. Laurie, Esq.
       Griffin Lane Knight, Esq.
       Balch & Bingham, LLP
       105 Tallapoosa Street, Suite 200
       Montgomery, Alabama   36104-3515

       Thomas Gristina, Esq.
       William Leonard Tucker, Esq.
       Page, Scrantom, Sprouse, Tucker & Ford
       Synovus Center, Third
       1111 Bay Avenue
       Columbus, Georgia   31901

         _/s/ Dennis R. Bailey_____
         Of counsel