## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| THE CONCRETE COMPANY, | \| |
| | \| |
| PLAINTIFF, | \| |
| | \| |
| vs. | \|    CASE NO. 2:05-CV-1026-ID-CSC |
| | \| |
| HARRY E. LAMBERT and | \| |
| CAROL'S CONTRACTING, | \| |
| INC., | \| |
| | \|    EXHIBIT E |
| DEFENDANTS. | \| |

## <u>AFFIDAVIT</u>

| | |
|---|---|
| STATE OF ALABAMA | \| |
| | \| |
| COUNTY OF MONTGOMERY | \| |

PAUL B. FIELDS, being duly sworn, deposed and says:

My name is Paul B. Fields. I am a certified public accountant and consultant for Wilson, Price, Barranco, Blankenship & Billingsley, P.C. The information set forth hereafter is based upon my review of certain documents related to the sale of white, oversized gravel by The Concrete Company, through its Foley Materials Company Division, from April 1, 2005, to January 2, 2006. Attached is a copy of my report regarding my review of those documents which I incorporate by reference herein.

Based on the facts and assumptions noted in my report, I have reached the following conclusions regarding Foley's sales of white oversize gravel for the period April 1, 2005 through December 31, 2005:

1.      The sales level of white oversize gravel in the three months prior to April 2005 was approximately the same as April 2005 and does not indicate a downturn.

2.      From examination of the emails (Exhibits 1-4 of my report), it is my opinion that the two common customers of Foley and Alabama Gravel, LLC, namely Simcala, Inc. and Globe Metallurgical, Inc., desired to receive their white oversize gravel from Foley's Ward plant (502) because of its purity.  Those same emails indicate that there was concern on the part of Foley's management that their needs could not be met by the Ward plant production or by its reserves.

3.      The reduction in the sales to Simcala, Inc. of white oversize gravel appears to be directly related to the quality of the product as well as its lack of availability.

4.      There has been no significant change in sales of white oversize gravel to Globe Metallurgical, Inc. during the period April 1, 2005 through December 31, 2005.

5.      Inventories of white oversize gravel are not excessive based on the average monthly sales volume of white oversize gravel to Globe and the company's production volume.  The company had approximately 25 days of inventory on hand at December 1, 2005.

6.      If Simcala was not a customer of Montgomery Materials, LLC and the loss of sales to Simcala are not to be considered, then the only common customer to consider would be Globe Metallurgical.

7.      There do not appear from a forensic accounting standpoint to be any losses to Foley Materials resulting from sales of Alabama Gravel to Globe. Attributing any losses to Foley Materials to these sales would be, from a forensic accounting standpoint, highly speculative.

PAUL B. FIELDS

SWORN TO and subscribed before me this 23rd day of October, 2006.

(Seal)

Notary Public
My Commission Expires: 12/05/09

# EXPERT REPORT OF PAUL B. FIELDS, CPA, CVA PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(B)

THE CONCRETE COMPANY, PLAINTIFF v. HARRY E. LAMBERT, CAROL'S CONTRACTING, INC., and ALABAMA GRAVEL, LLC

CASE NUMBER 2:05-CV-1026-CSC

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

FOR HEARING NOVEMBER 6, 2006

# TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ................................................................. 1

SUMMARY CONCLUSION ........................................................................ 2

OVERVIEW OF FACTS AND ASSUMPTIONS ......................................................... 3

OVERVIEW OF SALES AND INVENTORY INFORMATION ............................... 5

EXHIBITS ........................................................................................ 7
  1   Email dated August 30, 2004 .............................................................. 7
  2   Email dated August 31, 2004 .............................................................. 8
  3   Email dated October 18, 2004 ............................................................ 9
  4   Email dated January 11, 2005 ........................................................... 10
  5   Foley Products Company – Aggregates Division – Shipments of Oversize Gravel to Simcala, Inc. and Globe Metallurgical, Inc. - January 1 through 11, 2005 ................................................................................... 11
  6   Foley Materials Company - White Oversize Gravel - Sold to Simcala, Inc. and Globe Metallurgical, Inc. from Plants 502 and 511 - April 2004 through March 2005 .............................................................................. 12
  7   Foley Materials Company - White Oversize Gravel - Sold to Simcala, Inc. and Globe Metallurgical, Inc. from Plants 502 and 511 - April 2005 through December 2005 ........................................................................... 13
  8   Foley Materials Company - White Oversize Gravel – Combined Tons Sold to Simcala, Inc. and Globe Metallurgical, Inc. - January 2005 through December 2005 ................................................................................... 14
  9   Foley Materials Company - White Oversize Gravel – Schedule of Calculation of Production Based on Inventories Furnished for Specific Dates and Sales Furnished for Corresponding Time Periods – January 1, 2005 through December 1, 2005 ............................................................................... 15
 10  Plaintiff's Responses and Objections to Defendant Carol's Contracting, Inc.'s First Interrogatories and Request for Production of Documents ......................... 16
 11  Foley Materials Company (Sales Reports) Incorporated Herein by Reference – TCC0002006 through TCC0002343

APPENDIX A:  Expert's Curriculum Vitae And Court Cases For Which He Has Provided Testimony and/or Assistance

## INTRODUCTION AND BACKGROUND

My name is Paul B. Fields. I am a Certified Public Accountant and a Certified Valuation Analyst. In June of 1964, immediately after receiving my Bachelor of Science degree from Huntingdon College in Montgomery, Alabama, I began my professional career with the public accounting firm of Wilson, Barfield & Company whose name is now Wilson, Price, Barranco, Blankenship & Billingsley, P.C. I became a Certified Public Accountant in 1969 and since then I have been a member in good standing of the Alabama Society of Certified Public Accountants and the American Institute of Certified Public Accountants. In 1971, I became a shareholder in the firm.

During the first 25 years of my employment with the firm, my practice centered around the performance of accounting and audit services for small and medium size companies and tax planning and compliance for those companies and for mid to high net worth individuals. Over the last 16 years, I have been deposed and/or testified or been asked to assist in litigation support in several domestic court cases, business valuation cases and in one economic damages case. I have also continued to provide estate and income tax planning for mid to high net worth individuals as well as consulting and valuation services for businesses.

In 2004, I became a member of the National Association of Certified Valuation Analysts (NACVA) and in 2005 I completed their requirements and received the designation of Certified Valuation Analyst (CVA).

Appendix A contains my curriculum vitae and a list of the court cases for which I have provided testimony at trial or at deposition.

Mr. Harry Lambert's counsel has requested that I provide expert analysis in a lawsuit against Mr. Lambert and others in which the plaintiff claims that he violated a non-competition agreement between The Concrete Company ("TCC") and Mr. Lambert. In particular, I have been asked to review certain documents related to the sale by TCC, through its Foley Materials Company Division ("Foley"), of white oversize gravel from April 1, 2005 through January 2, 2006 and to advise them if I can express an opinion, based on this information, as to whether Foley has been unable to sell its inventory of this type of gravel for the same period due to the alleged violation of the non-competition agreement. I am charging $285.00 per hour for this work and any testimony associated with this engagement.

In reaching my conclusions, I have drawn on my experience and knowledge as a CPA, CVA and business consultant. Beyond my technical and personal background, I have used the documents cited in the text of this report that have been furnished to me by defense counsel.

If I am furnished additional materials and perform further analyses after the date of this report, I reserve the right to revise and supplement my opinion if I deem necessary.

## SUMMARY CONCLUSION

Based on the facts and assumptions noted in this report, I have reached the following conclusions regarding Foley's sales of white oversize gravel for the period April 1, 2005 through December 31, 2005:

1. The sales level of white oversize gravel in the three months prior to April 2005 was approximately the same as April 2005 and does not indicate a downturn.
2. From examination of the emails (Exhibits 1 - 4), it is my opinion that the two common customers of Foley and Alabama Gravel, LLC, namely Simcala, Inc. and Globe Metallurgical, Inc., desired to receive their white oversize gravel from Foley's Ward plant (502) because of its purity. Those same emails indicate that there was concern on the part of Foley's management that their needs could not be met by the Ward plant production or by its reserves.
3. The reduction in the sales to Simcala, Inc. of white oversize gravel appears to be directly related to the quality of the product as well as its lack of availability.
4. There has been no significant change in sales of white oversize gravel to Globe Metallurgical, Inc. during the period April 1, 2005 through December 31, 2005.
5. Inventories of white oversize gravel are not excessive based on the average monthly sales volume of white oversize gravel to Globe and the company's production volume. The company had approximately 25 days of inventory on hand at December 1, 2005.

Below I discuss the underlying facts and assumptions used in reaching my conclusions listed above.

## OVERVIEW OF FACTS AND ASSUMPTIONS

We have received, reviewed and relied upon the following information related to Foley:
- Reports of sales from Foley to the following customers from five of its plants located in Central Alabama (TCC0002006 through TCC0002343):
  - Agg-Tran
  - Agg-Tran, LLC
  - Globe Metallurgical, Inc. ("Globe")
  - Maddox Stone & Gravel Co.
  - Sand Rock Transit, Inc.
  - Simcala, Inc. ("Simcala")
- Foley internal communication documents referencing matters concerning some of the above listed customers and the sales of white oversize gravel to those customers.
- Plaintiff's responses to Interrogatories and Requests for Production of Documents from Carol's Contracting, Inc., Harry Lambert and Alabama Gravel, LLC.

The non-competition agreement contains a territory within a 60 mile straight line radius from the city limits of Montgomery, Alabama. The locations of Agg-Tran, Agg-Tran, LLC, Maddox Stone & Gravel Co. and Sand Rock Transit, Inc. are outside this 60 mile radius and therefore, all sales to those customers have been disregarded. The sales information utilized by me was also restricted to the Ward (Shorter) plant (502) and the Dozier plant (511) because these are the only two plants within the non-competition radius that indicated significant sales of white oversize gravel (Exhibit 11).

In an email dated August 30, 2004 (Exhibit 1) from Don Triplett (employee of TCC) to Frank Foley (President of TCC) and Hugh Sorrell (Vice-President of Foley), Mr. Triplett expresses concern that both Globe and Simcala had inquired about a long term contract to supply them with metallurgical gravel but that since it had been the policy of Foley to increase prices for increased tonnage, they seemed to avoid discussing it at length. Mr. Triplett also states that "with the inventories of oversize at 501 [Bickerstaff], 502 and 511 all going down and with the limited reserve situation at Ward [502], I believe we should evaluate our present and anticipated production at these plants before committing to a long term supply agreement."

Based on an email dated August 31, 2004 (Exhibit 2), Don Triplett states to Hugh Sorrell that Foley is selling white oversize gravel to Simcala and Globe from the 501, 502 and 511 plants at a rate which will cause them to "be out of oversize by January 2005." This would indicate that if sales to these two customers continued at the August rate that the company would be selling the oversize gravel faster than it would be able to produce. In addition he states that Foley may need to "force some adjustments on their [customers] end" in order to continue supplying oversize gravel from the three locations or "we may have to make one of them [customers] seek material from other sources."

Exhibit 3 is an email dated October 18, 2004 from Don Triplett to Frank Foley and Hugh Sorrell. On the copy of the email furnished to me, it appears to me that what might have

3

been items 1, 4 and 5 have been blanked out leaving items 2, 3 and 6. It also appears to me that there were possibly other items below 6 that were blanked out. Nevertheless, in item 2 of the email, Mr. Triplett states that Simcala is concerned that the "material is not as clean as needed." In point 3 of this exhibit, Mr. Triplett notes that Simcala is being told by the truckers that the Ward plant (502) is "almost out" of oversize gravel. He states that "unless we improve production of this size we will be facing a rationing situation before too long."

Exhibit 4 is an email dated January 11, 2005 from Don Triplett to Hugh Sorrell. Mr. Triplett states that he has spoken to Bobby Becker and Skip of Globe. The email states that Mr. Becker did not realize the limit of 500 tons at Ward (502) was an absolute. Mr. Triplett states that he "explained and told them the consequences (none next month) so they have stopped the trucks on oversize." The email goes on further to say that Globe's "analysis on the material from Bickerstaff [501] shows too much iron for his operation." Mr. Triplett did seem to think that Hickory Bend (503) could ship material in place of Bickerstaff but that it would have to be re-washed and that they would need to schedule it and price it out.

The Exhibit 4 email also refers to a conversation that Mr. Triplett had with Dick Wymer with Simcala. Production on Simcala's furnaces had apparently been dropping for several months due to the high iron content of the material from Bickerstaff (501). It should be noted that Simcala ceased purchasing from Foley in April 2005 (Exhibit 7).

## OVERVIEW OF SALES AND INVENTORY INFORMATION

From the information furnished to me, I have prepared 3 charts and 1 graph which are attached to this report as Exhibits 6 - 9. These exhibits were generated utilizing the Foley sales reports (Exhibit 11). Exhibit 6 reflects sales of white oversize gravel to Simcala and Globe beginning in April 2004 and ending in March 2005. A graph of the combined sales of white oversize gravel to Simcala and Globe (Exhibit 8) reflects a relatively steady sales stream for the period January 1, 2005 through December 31, 2005.

In the emails dated October 18, 2004 (Exhibit 3) and January 11, 2005 (Exhibit 4), Simcala expressed concern regarding the cleanliness of the material it was receiving from the Bickerstaff plant (501). The January email stated that they thought the material from Bickerstaff was the problem and that they may drop it completely. After the January 11, 2005 email, the sales reports indicate that Simcala purchased only 14.82 more tons in January, 566.42 tons in February, none in March and a final 2005 purchase of 333.43 tons in April (Exhibits 6 - 7).

Inventory of white oversize gravel was furnished to me for the following dates:
- January 1, 2005
- June 1, 2005
- November 1, 2005
- December 1, 2005

Based on the white oversize gravel inventory levels provided on page 7 of Plaintiff's Responses and Objections to Defendant Carol's Contracting, Inc.'s First Interrogatories and Request for Production of Documents (Exhibit 10) and the sales charts for the period January 2005 through December 2005 (Exhibits 6 - 7), a calculation of production was prepared for the Ward (502) and Dozier (511) plants (Exhibit 9). On December 1, 2005, the inventory levels at Ward (502) and Dozier (511) were 2,846 tons and 442 tons, respectively. This is a total inventory of 3,288 tons. In December 2005, the Ward plant (502) sold to Globe 2,602.18 tons which represents 79% of the inventory level on hand at the two plants on December 1, 2005. It is reasonable that the company would want to keep on hand at least one month's sales and it appears that it is able to accomplish this through its production schedule. In other words, it seems to be able to sell all it has produced within a reasonable period of time after its production.

## SIGNATURE

I declare, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.  Signed this 2nd day of May 2006, in Montgomery, Alabama.


_____

Paul B. Fields, CPA, CVA

## Hugh Sorrell

| | |
|---|---|
| **From:** | Don Triplett |
| **Sent:** | Monday, August 30, 2004 9:24 AM |
| **To:** | Frank Foley |
| **Cc:** | Hugh Sorrell |
| **Subject:** | Call from Globe |

I got a call from Bob Becker with Globe Friday P.M. inquiring about their account, etc. It has been 60 days since we began billing Globe directly and we said we would review the account status at this time but the real reason for his call was to begin discussions regarding a long term contract to supply them metallurgical gravel. In most supply situations, the price tends to drop as the volume increases but Bob said in years past, the tendency of TCC is to want to increase prices with increased tonnage. Dick Wymer with Simcala said the same thing so while both companies would like to firm up a supply agreement, they both have a tendency to avoid discussing it because of that. Nonetheless, since Bob opened the door, I would like for us to discuss it at your convenience.

With the inventories of oversize at 501, 502 and 511 all going down and with the limited reserve situation at Ward, I believe we should evaluate our present and anticipated production at these plants before committing to a long term supply agreement, especially since a sizeable portion of the silica business revolves around our ability to continue supplying material from Ward. I would be open to discussing a long term arrangement for the gravel from 511 or 512 but I am fairly certain that they will want to tie Ward into any agreement.

Your thoughts, please?

**Hugh Sorrell**

| From: | Don Triplett |
|---|---|
| Sent: | Tuesday, August 31, 2004 7:53 AM |
| To: | Hugh Sorrell |
| Cc: | Frank Foley |
| Subject: | Ward Inventory - Oversize |

According to the latest DOR, Ward produced prox 3,400 tons of oversize in August and shipped prox 9,900 tons. Remaining inventory is prox 27,000 tons. At this rate, we will be out of oversize by January, 2005. As quickly as possible, we need to know exactly how many tons of material is going to each of our oversize customers from each location, i.e. Simcala takes material from 501 and 502 - we need to know how much they got from each location. Globe at Selma and at Beverly is buying from 502 and 511- we need to know how much is going to each location from each. We may need to force some adjustments on their end in order to be able to keep on supplying all three locations or we may have to make one of them seek material from other sources. In either event, we need to give them as much warning as possible if such a change is warranted.

8/31/2004

TCC0001984

**Hugh Sorrell**

From:        Don Triplett
Sent:        Monday, October 18, 2004 10:05 AM
To:          Frank Foley
Cc:          Hugh Sorrell
Subject:     Items from last week

2.  Simcala called re an increase in aluminum and titanium levels.  These usually appear when the material is not as clean as needed.  I talked to Roy and he will watch out for this.  Simcala is to report back this week re signs of improvement or lack thereof.

3.  Once again the truckers have told Simcala that the Ward plant is "almost out" of oversize.  I looked at the stockpiles and while we are not nearly "out", the stockpiles have gone down considerably.  Unless we improve production of this size we will be facing a rationing situation before too long.

6.  While in Atlanta delivering the sand, I went by to see Randy Willingham.  He is truck hauling sand in to try to stay alive til the rail situation improves.  He said Cartersville is virtually out of sand.  He also reminded me that he wants to finalize a supply agreement for next year asap.

## Hugh Sorrell

**From:** Don Triplett
**Sent:** Tuesday, January 11, 2005 9:43 PM
**To:** Hugh Sorrell
**Subject:** Re: Shipments - Oversize Gravel

talked to Bobby Becker and Skip this P.M. They are saying they didn't realize the limit of 500 tons at Ward was an absolute. Thought it meant 500 if no more was available. I explained and told them the consequences ( none next month) so they have stopped the trucks on oversize but will take several loads of #5 as a supplement. Will take prox 4 weeks to get a read on whether the #5 works in the furnaces. His analysis on the material from Bickerstaff shows too much iron for his operation but he is asking what/when we can do for him from Hickory Bend. Looks like that may be a possibility. Can we offer moving some Hickory Bend to Ward and re-wash for them? If so, how long will it take to get that scheduled and at what price?

Talked to Dick Wymer with Simcala and he has several problems. The production on their furnaces has been dropping for several months. The furnace people believe it is due to the material from Bickerstaff. If so, he wants to know if his ability to get material from Ward is still tied to his taking the material from Bickerstaff. Our deal was for them to take 50/50. If they think the material from Bickerstaff is the problem, they may want to drop it completely but still want the Ward material. On the other hand, if the Bickerstaff material isn't the [problem, they may want to double their usage (1000 tons per week instead of the 500). I realize this puts both of us in the chicken and egg situation. He wants to know what is/may be available and we want to know what will they take. Dick got some samples of the white we are now making at Dozier and thinks it is a possibility (Fe ran 0.048 to 0.057 which is pushing the high side and the Ti was high as expected so we would have to re-wash). Give me your thoughts.

───── Original Message ─────
**From:** Hugh Sorrell
**To:** Don Triplett
**Sent:** Tuesday, January 11, 2005 3:07 PM
**Subject:** Shipments - Oversize Gravel

Please refer to Worksheet "MONTH SHIPMENTS OVERSIZE" for report of shipments through 01/10/05.. As you can see, Globe has picked up 800 tons through yesterday against an agreed amount of 500 tons. Have you talked to Bob yet?

Thanks,

Hugh

# FOLEY PRODUCTS COMPANY
## AGGREGATES DIVISION
### SHIPMENTS OF OVERSIZE GRAVEL
### FOR PERIODS AS SHOWN

1/11/2006

| Date | Simcala Daily | Simcala Loads Month to Date | Simcala Tons Month to Date | Globe Daily | Globe Loads Month to Date | Globe Tons Month to Date |
|---|---|---|---|---|---|---|
| 01/03/05 | 10 | 10 | 250 | 5 | 5 | 125 |
| 01/04/05 | 11 | 21 | 525 | 11 | 16 | 400 |
| 01/05/05 | 0 | 21 | 525 | 5 | 21 | 525 |
| 01/06/05 | 0 | 21 | 525 | 1 | 22 | 550 |
| 01/07/05 | 0 | 21 | 525 | 4 | 26 | 650 |
| 01/10/05 | 0 | 21 | 525 | 6 | 32 | 800 |
| 01/11/05 | 0 | 21 | 525 | 4 | 36 | 900 |
| 01/12/05 | | | | | | |
| 01/13/05 | | | | | | |
| 01/14/05 | | | | | | |
| 01/17/05 | | | | | | |
| 01/18/05 | | | | | | |
| 01/19/05 | | | | | | |
| 01/20/05 | | | | | | |
| 01/21/05 | | | | | | |
| 01/24/05 | | | | | | |
| 01/25/05 | | | | | | |
| 01/26/05 | | | | | | |
| 01/27/05 | | | | | | |
| 01/28/05 | | | | | | |
| 01/31/05 | | | | Total shipped for month | | 1425 |

**Exhibit 6**
**The Concrete Company v. Harry Lambert et al.**
**Foley Materials Company - White Oversize Gravel**
**Sold to Simcala, Inc. and Globe Metallurgical, Inc. from Plants 502 and 512**
**April 2004 - March 2005**

| | Tons Sold | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Plant # 502 | | | Plant # 511 | | | Totals | | |
| | Simcala | Globe | Total | Simcala | Globe | Total | Simcala | Globe | Total |
| Apr-04 | 1,522.17 | - | 1,522.17 | - | - | - | 1,522.17 | - | 1,522.17 |
| May-04 | 2,490.22 | - | 2,490.22 | - | - | - | 2,490.22 | - | 2,490.22 |
| Jun-04 | 2,744.00 | - | 2,744.00 | - | - | - | 2,744.00 | - | 2,744.00 |
| Jul-04 | 2,348.07 | 3,107.99 | 5,456.06 | - | 1,576.86 | 1,576.86 | 2,348.07 | 4,684.85 | 7,032.92 |
| Aug-04 | 2,684.39 | 3,544.45 | 6,228.84 | - | 4,965.22 | 4,965.22 | 2,684.39 | 8,509.67 | 11,194.06 |
| Sep-04 | 2,451.38 | 3,508.35 | 5,959.73 | - | 1,698.61 | 1,698.61 | 2,451.38 | 5,206.96 | 7,658.34 |
| Oct-04 | 2,598.15 | 3,496.53 | 6,094.68 | - | 1,222.74 | 1,222.74 | 2,598.15 | 4,719.27 | 7,317.42 |
| Nov-04 | 3,132.72 | 3,529.06 | 6,661.78 | - | 593.10 | 593.10 | 3,132.72 | 4,122.16 | 7,254.88 |
| Dec-04 | 2,337.15 | 4,110.68 | 6,447.83 | - | 1,309.53 | 1,309.53 | 2,337.15 | 5,420.21 | 7,757.36 |
| Jan-05 | 539.82 | 1,049.52 | 1,589.34 | - | 2,095.97 | 2,095.97 | 539.82 | 3,145.49 | 3,685.31 |
| Feb-05 | 566.42 | 30.94 | 597.36 | - | 2,746.91 | 2,746.91 | 566.42 | 2,777.85 | 3,344.27 |
| Mar-05 | - | 947.80 | 947.80 | - | 2,420.28 | 2,420.28 | - | 3,368.08 | 3,368.08 |
| | | | | - | | | | | |
| Totals | 23,414.49 | 23,325.32 | 46,739.81 | - | 18,629.22 | 18,629.22 | 23,414.49 | 41,954.54 | 65,369.03 |

**Exhibit 7**
**The Concrete Company v. Harry Lambert et al.**
**Foley Materials Company - White Oversize Gravel**
**Sold to Simcala, Inc. and Globe Metallurgical, Inc. from Plants 502 and 512**
**April 2005 - December 2005**

| | Tons Sold | | | | | | | | |
| | Plant # 502 | | | Plant # 511 | | | Totals | | |
| | Simcala | Globe | Total | Simcala | Globe | Total | Simcala | Globe | Total |
|---|---|---|---|---|---|---|---|---|---|
| Apr-05 | 333.43 | 1,806.01 | 2,139.44 | - | 709.64 | 709.64 | 333.43 | 2,515.65 | 2,849.08 |
| May-05 | - | 2,182.44 | 2,182.44 | - | 1,046.75 | 1,046.75 | - | 3,229.19 | 3,229.19 |
| Jun-05 | - | 3,435.59 | 3,435.59 | - | 1,764.98 | 1,764.98 | - | 5,200.57 | 5,200.57 |
| Jul-05 | - | 2,048.70 | 2,048.70 | - | 2,024.91 | 2,024.91 | - | 4,073.61 | 4,073.61 |
| Aug-05 | - | 1,604.66 | 1,604.66 | - | 1,489.14 | 1,489.14 | - | 3,093.80 | 3,093.80 |
| Sep-05 | - | 2,265.84 | 2,265.84 | - | - | - | - | 2,265.84 | 2,265.84 |
| Oct-05 | - | 2,204.05 | 2,204.05 | - | - | - | - | 2,204.05 | 2,204.05 |
| Nov-05 | - | 3,086.71 | 3,086.71 | - | - | - | - | 3,086.71 | 3,086.71 |
| Dec-05 | - | 2,602.18 | 2,602.18 | - | - | - | - | 2,602.18 | 2,602.18 |
| Totals | 333.43 | 21,236.18 | 21,569.61 | - | 7,035.42 | 7,035.42 | 333.43 | 28,271.60 | 28,605.03 |

13



**Exhibit 8**
**The Concrete Company v. Harry Lambert et al.**
**Foley Material Company White Oversize Gravel**
**Combined Tons Sold to Simcala, Inc. and Globe Metallurgical, Inc.**
**January 2005 - December 2005**

14

**Exhibit 9**
**The Concrete Company v. Harry Lambert et al.**
**Foley Materials Company - White Oversize Gravel**
**Schedule of Calculation of Production Based on Inventories Furnished for Specific**
**Dates and Sales Furnished for Corresponding Time Periods**
**January 1, 2005 - December 1, 2005**

**Inventory Levels (tons):**

| | | |
|---|---|---|
| January 1, 2005 | 2,353.00 | 726.00 |
| June 1, 2005 | 7,743.00 | 200.00 |
| November 1, 2005 | 1,935.00 | 442.00 |
| December 1, 2005 | 2,846.00 | 442.00 |

| | Ward | |
|---|---|---|
| **Inventory Roll-forward** | **(Shorter) (502)** | **Dozier (511)** |
| Inventory - January 1, 2005 | 2,353.00 | 726.00 |
| Sales January - May 2005 | 7,456.38 | 9,019.55 |
| Production January - May 2005* | 12,846.38 | 8,493.55 |
| | | |
| Inventory - June 1, 2005 | 7,743.00 | 200.00 |
| Sales June - October 2005 | 11,558.84 | 5,279.03 |
| Production June - October 2005* | 5,750.84 | 5,521.03 |
| | | |
| Inventory - November 1, 2005 | 1,935.00 | 442.00 |
| Sales November 2005 | 3,086.71 | - |
| Production November 2005* | 3,997.71 | - |
| | | |
| Inventory - December 1, 2005 | 2,846.00 | 442.00 |
| Sales December 2005 | 2,602.18 | - |

*Production is calculated based on beginning and ending inventory and related period sales.*

15

THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE CONCRETE COMPANY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: 2:05-cv-01026-CSC |
| | * | |
| HARRY E. LAMBERT, CAROL'S | * | |
| CONTRACTING, INC. and | * | |
| ALABAMA GRAVEL, LLC, | * | |
| | * | |
| Defendants. | * | |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT
CAROL'S CONTRACTING, INC.'S FIRST INTERROGATORIES
AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Comes now Plaintiff The Concrete Company in the above-stated matter and files this its

responses and objections to Defendant's First Interrogatories and Request for Production of

Documents as follows:

**INTERROGATORIES**

Interrogatory No. 1:    Identify all persons whom you contend have personal knowledge

of facts that you contend support your allegations that Carol's Contracting was a party to the

non-competition agreement between Plaintiff and Lambert.

Response:  Plaintiff has not alleged that Carol's Contracting is a party to the non-

competition agreement between Plaintiff and Lambert.

Interrogatory No. 2:    Identify all persons whom you contend have personal knowledge

of any involvement of Carol's Contracting in a conspiracy to conduct Prohibited Activity in the

territory.

<u>Response</u>: In addition to the Defendants and their employees and agent, Plaintiff

identifies the following:

   (1)   Frank D. Foley, III
         The Concrete Company
         5526 Schatulga Rd.
         Columbus, Georgia 31907

   (2)   Hugh Sorrell
         The Concrete Company
         5526 Schatulga Rd.
         Columbus, Georgia 31907

   (3)   Eric K. Nix
         The Concrete Company
         5526 Schatulga Rd.
         Columbus, Georgia 31907

   (4)   Gene Talley
         The Concrete Company
         4400 Lewisburg Road
         Birmingham, Alabama  35207

   (5)   Billy Ammons
         The Concrete Company
         4400 Lewisburg Road
         Birmingham, Alabama  35207

   (6)   Danny Luster
         The Concrete Company
         4400 Lewisburg Road
         Birmingham, Alabama  35207

   (7)   Leroy Bush
         The Concrete Company
         4400 Lewisburg Road
         Birmingham, Alabama  35207

   (8)   Representative(s) (including, but not limited to Randolph C. Willingham,
         Sr.) of Agg-Tran, LLC
         255 Hardage Drive, SW
         Marietta, Georgia 30064

2

(9)    Representative(s) (including, but not limited to Randolph C. Willingham, Sr.) of Willingham Stone Company
255 Hardage Drive, SW
Marietta, Georgia 30064

(10)   Representative(s) (including, but not limited to Randolph C. Willingham, Sr.) of Sand-Rock Transit, Inc.
255 Hardage Drive, SW
Marietta, Georgia 30064

(11)   Representative(s) (including, but not limited to James B. Maddox) of Maddox Stone & Gravel, LLC
3348 Plantation Drive
Valdosta, Georgia 31605

(12)   Representative(s) of Gentry Ready Mix, Inc.
1201 S. Memorial Drive
Prattville, AL 36067

(13)   Representative(s) of Anderson Road Materials, LLC
2000 Interstate Park Drive
Montgomery, AL 36109

(14)   Representative(s) of Capitol Materials, LLC
2501 Bell Road
Montgomery, AL 36117

(15)   Representative(s) of Capitol Materials, Inc.
2084 Marler Road
Pike Road, AL 36117

(26)   Representative(s) of Waugh Properties, LLC
2501 Bell Road
Montgomery, AL 36117

These interrogatories were served before Plaintiff was given the opportunity to depose any of the

Defendants or to conduct complete third party discovery. Plaintiff, therefore, reserves the right

to supplement this discovery response as discovery continues.

Interrogatory No. 3:    Do you contend that Carol's Contracting is in competition with

TCC for the sale of Product? If so, state the facts upon which you base that contention.

Response:    Yes. Defendant Harry Lambert operates, in part, through and collaborates

3

with Carol's Contracting in soliciting business for the sale of Product and in selling and delivering Product. Mr. Lambert and Carol's Contracting have admitted that Mr. Lambert drives a truck for Carol's Contracting and that Carol's Contracting hauls aggregate for Alabama Gravel and other contractors who compete with Plaintiff. For further response, Plaintiff states that these interrogatories were served before Plaintiff was given the opportunity to depose any of the Defendants or to conduct complete third party discovery. Plaintiff, therefore, reserves the right to supplement this discovery response as discovery continues.

Interrogatory No. 4:   Do you contend that Carol's Contracting is in any way prohibited from hauling Product for competitors of TCC within the Territory? If so, state the facts known to Plaintiff which support such contention.

Response: Yes. Carol's Contracting is prohibited from hauling Product for competitors of TCC within the Territory to the extent that Carol's Contracting conducts such hauling with the assistance of or in conjunction with Harry Lambert. For further response, Plaintiff states that these interrogatories were served before Plaintiff was given the opportunity to depose any of the Defendants or to conduct complete third party discovery. Plaintiff, therefore, reserves the right to supplement this discovery response as discovery continues.

Interrogatory No. 5:   Prior to the filing of the Complaint, was TCC aware that trucks owned by Carol's Contracting had loaded Product at and/or delivered product to TCC within the Territory? If so, identify any documents which would show the dates, times, and amounts of products loaded at TCC or delivered to TCC during 2005.

Response: Prior to the filing of the Complaint, certain TCC employees were aware that trucks owned by Carol's Contracting had loaded Product at and/or delivered product to TCC within the Territory. These employees were either not aware of or not fully aware of the non-

4

competition agreement binding Harry Lambert, and they did not communicate this information to TCC management who were aware of the non-competition agreement. TCC is, therefore, not bound by the knowledge of these employees. Plaintiff is in the process of attempting to determine if any documents exist responsive to this interrogatory and, if so, will provide them separately along. For further response, Plaintiff states that these interrogatories were served before Plaintiff was given the opportunity to depose any of the Defendants or to conduct complete third party discovery. Plaintiff, therefore, reserves the right to supplement this discovery response as discovery continues.

Interrogatory No 6:    Prior to the filing of the complaint, was TCC aware that Lambert was driving trucks for Carol's Contracting within the Territory? If so, state the date TCC was first aware of that fact and identify the person(s) who provided that information.

Response:  Plaintiff's employee Danny Luster learned in 2002 that Harry Lambert was driving trucks leased on with Foshee Trucking. Mr. Luster was either not aware of or not fully aware of the non-competition agreement binding Harry Lambert, and did not communicate this information to TCC management who were aware of the non-competition agreement. TCC is, therefore, not bound by the knowledge of Mr. Luster.

Interrogatory No. 7:    Prior to the filing of the complaint, was TCC aware that Lambert had driven trucks which delivered Product to or hauled product from TCC within the Territory? If so, identify those employees of TCC with such knowledge.

Response:  Prior to the filing of the complaint, Danny Luster, Billy Ammons and Gene Talley were aware that Lambert had driven trucks which delivered Product to or hauled product from TCC within the Territory. These employees were either not aware of or not fully aware of the non-competition agreement binding Harry Lambert, and they did not communicate this

5

information to TCC management who were aware of the non-competition agreement. TCC is, therefore, not bound by the knowledge of these employees.

    <u>Interrogatory No. 8</u>:  Prior to the filing of the complaint, did TCC communicate to Carol's Contracting any objection to Carol's Contracting allowing Lambert to drive trucks that were hauling Product to or from TCC-owned or operated locations within the Territory? If yes, state the identity of the person who communicated said objection and the date thereof.

    <u>Response</u>: No, and there was no obligation to communicate such an objection.

    <u>Interrogatory No. 9</u>:  Prior to the filing of the complaint, did TCC communicate to Carol's Contracting any objection to Carol's Contracting allowing Lambert to drive trucks that were hauling Product to or from locations owned or operated by competitors of TCC within the Territory? If yes, state the identity of the person who communicated said objection and the date thereof.

    <u>Response</u>: No, and there was no obligation to communicate such an objection.

    <u>Interrogatory No. 10</u>: Do you contend that Carol's Contracting has engaged in impermissible activity of any kind which has caused actual damages to TCC? If so,

    a.     Itemize the actual damages claimed by TCC.

    b.     Describe the method used to calculate the claimed damages.

    c.     Show the underlying computations used to arrive at the actual damage figure.

    <u>Response</u>: Yes. Plaintiff's damages are lost sales to Simcala, Inc., Maddox Stone & Gravel, Willingham Stone Company and, upon information and belief, other customers. Plaintiff is providing documents showing sales to each of these customers. However, without information concerning the amount of sales by Defendants to these customers, Plaintiff is unable to provide a precise calculation of damages and will supplement this discovery response to extent required.

6

For further response, Plaintiff states that these interrogatories were served before Plaintiff was given the opportunity to depose any of the Defendants or to conduct complete third party discovery. Plaintiff, therefore, reserves the right to supplement this discovery response as discovery continues.

Interrogatory No. 11: State the amount of White Oversize Gravel which TCC had on hand as inventory at each TCC plant in the territory as of the following dates:

a.     January 1, 2005.

b.     June 1, 2005.

c.     November 1, 2005.

d.     December 1, 2005.

Response:

a.     Shorter Plant – 2,353 tons

       Dozier Plaint – 726 tons

b.     Shorter Plant – 7,743 tons

       Dozier Plaint – 200 tons

c.     Shorter Plant – 1,935 tons

       Dozier Plaint – 442 tons

d.     Shorter Plant – 2,846 tons

       Dozier Plaint – 442 tons

Interrogatory No. 12: State the price per ton FOB at each TCC plant within the territory at which TCC sold White Oversize Gravel in the territory as of the following dates:

a.     January 1, 2005.

b.     June 1, 2005.

7

c.    November 1, 2005.

d.    December 1, 2005.

<u>Response</u>:

a.    Shorter Plant – either $20.00 or $19.50 per ton

     Dozier Plaint – either $18.00 or $25.00

b.    Shorter Plant – either $20.00 or $25.00

     Dozier Plaint – either $18.00 or $25.00

c.    Shorter Plant – either $29.00 or $21.00

     Dozier Plaint – none sold

d.    Shorter Plant – $21.00

     Dozier Plaint – none sold

<u>Interrogatory No. 13</u>:  During 2005, has TCC advised or communicated to any customer purchasing White Oversize Gravel -- specifically but not limited to -- Simcala, Globe Metallurgical or Maddox Stone, that TCC did not have enough White Oversize Gravel to supply the customer's request, needs or order?  If so, identify the persons involved in the communications, the dates of the communications and any documents reflecting such communication.

    <u>Response</u>:  Yes.  Please see the documents provided in response to this Defendant's request for production.  Please also see Plaintiff's response to Interrogatory No. 14 below.

    <u>Interrogatory No. 14</u>:  Has TCC been ready willing and able to fill all orders for White Oversize Gravel by customers purchasing White Oversize Gravel in the territory during 2005?  If not, state how often and under what circumstances TCC was unable to fulfill such orders in 2005.

8

Response:  This interrogatory is incapable of a yes or no response because the term order is not defined.  Aggregate is provided to customers based on supply and demand.  Plaintiff's customers contact Plaintiff to inquire about available quantities and prices of aggregate.  Based on the information received, customers may then elect to place an order.  These orders are then filled.  Plaintiff, therefore, has been able to fill all orders placed.

Interrogatory No. 15:  Does TCC contend that Carol's Contracting was prohibited from utilizing Lambert as an employee for any purpose in the territory while the non-competition agreement was in effect?  If not, state what jobs Carol's Contracting could ask Lambert to perform which TCC would not contend violates the aforementioned agreement.

Response:  Yes.

Interrogatory No. 16:  Identify, specify and describe each instance in which you contend that Carol's Contracting, over the previous five years held any interest in (whether as a shareholder, partner, member, or otherwise) Alabama Gravel, LLC.

Response:  Given the apparent breadth of the above usage of the term "interest," Plaintiff states that it believes Carol's Contracting maintains an "interest" in Alabama Gravel to the extent that Harry Lambert maintains an interest in Alabama Gravel through ownership or assistance rendered by Harry Lambert to Alabama Gravel.  For further response, Plaintiff states that these interrogatories were served before Plaintiff was given the opportunity to depose any of the Defendants or to conduct complete third party discovery.  Plaintiff, therefore, reserves the right to supplement this discovery response as discovery continues.

Interrogatory No. 17:  Identify, specify and describe each instance in which you contend that Carol's Contracting has, over the previous five years acted as an agent, broker, or distributor for or advisor or consultant to any person, firm, corporation or business entity which is engaged,

9

or which you contend he knew was undertaking to become engaged, in any Prohibited Activity. For each instance, include the date, all parties involved, the nature and scope of the instance and any other information relevant to the allegations in the Complaint.

Response: Carol's Contracting has done this through its hauling for Alabama Gravel and other competitors of Plaintiff. Carol's Contracting has also done this through its employee Harry Lambert who has assisted and advised Alabama Gravel. For further response, Plaintiff states that these interrogatories were served before Plaintiff was given the opportunity to depose any of the Defendants or to conduct complete third party discovery. Plaintiff, therefore, reserves the right to supplement this discovery response as discovery continues.

Interrogatory No. 18: Identify, specify and describe each instance in which you contend that Carol's Contracting has, over the previous five years, induced a Customer (i) to purchase any Product in the Territory from any business entity operating in the Territory (other than Montgomery Materials or its affiliates) and/or (ii) withdraw, curtail and/or cancel such Customer's business with Montgomery Materials. For each instance, include the date and time, all parties involved, the nature and scope of the instance, and any other information relevant to the allegations in the Complaint.

Response: Carol's Contracting, working with Harry Lambert and Alabama Gravel, induced Simcala, Inc., Maddox Stone & Gravel, Willingham Stone Company and, upon information and belief, other customers to do the above. For further response, Plaintiff states that these interrogatories were served before Plaintiff was given the opportunity to depose any of the Defendants or to conduct complete third party discovery. Plaintiff, therefore, reserves the right to supplement this discovery response as discovery continues.

Interrogatory No. 19: Identify any Customer whom you contend has been induced by

Carol's Contracting to avoid business dealings with you.

    <u>Response</u>:  Simcala, Inc., Maddox Stone & Gravel and Willingham Stone Company.  For further response, Plaintiff states that these interrogatories were served before Plaintiff was given the opportunity to depose any of the Defendants or to conduct complete third party discovery. Plaintiff, therefore, reserves the right to supplement this discovery response as discovery continues.

    <u>Interrogatory No. 20</u>:  Identify all Customers who have communicated to TCC that Carol's Contracting has taken any action to harm the relationship between TCC and that Customer.

    <u>Response</u>:  Maddox Stone & Gravel and Willingham Stone Company.  These customers have indicated that they are doing business with Harry Lambert.  To the extend Lambert has acted also as an agent of Carol's Contracting, these communications have indicated that Carol's Contracting has taken action to harm the relationship between TCC and that Customer.  For further response, Plaintiff states that these interrogatories were served before Plaintiff was given the opportunity to depose any of the Defendants or to conduct complete third party discovery. Plaintiff, therefore, reserves the right to supplement this discovery response as discovery continues.

    <u>Interrogatory No. 21</u>:  Identify each expert you expect to call at the trial of this case to provide testimony adverse to Carol's Contracting and state the substance of the facts and opinions to which the expert is to testify; a summary of the grounds for each opinion of such expert; and a list of all published articles, books, or other documents authored by said expert.

    <u>Response</u>:  Plaintiff will provide any required expert witness disclosure, which will be appropriately responsive to this interrogatory, in accordance with the applicable scheduling order

and the Federal Rules of Civil Procedure.

Interrogatory No. 22:  Identify each person with TCC who has taken inventory of White Oversize Gravel at any plant of TCC in the territory since January 1, 2005.

Response:  Inventory is not "taken" in the sense this interrogatory appears to suggest. Inventory is kept by measuring the tons of aggregate traveling across the belts that lead to the separators.  Estimates are made each day as to how much White Oversize Gravel is then produced.  A perpetual inventory count is then kept and is periodically adjusted.  The employees involved in this process are Hugh Sorrell, Billy Ammons, Gene Talley and Danny Luster.

## REQUESTS FOR PRODUCTION

Request No. 1:  Produce invoices or other documents reflecting sales of White Oversize Gravel to the companies commonly known as Simcala, Globe Metallurgical and Maddox Stone by any TCC plant in the territory during the calendar year 2005.

Response:  Plaintiff objects to the extent that the request seeks confidential commercial information.  Notwithstanding this objection and without waiver thereof, documents responsive to this request will be produced subject to an appropriate confidentiality agreement between the parties.

Request No. 2:  Plaintiff objects to the extent that the request seeks confidential commercial information.  Notwithstanding this objection and without waiver thereof, documents responsive to this request will be produced subject to an appropriate confidentiality agreement between the parties.

Response:  Documents responsive to this request will be produced separately.

Request No. 3:  Produce ledgers, account statements, monthly income statements or other documents reflecting sales of White Oversize Gravel by TCC in the territory in 2005.

12

Response:  Plaintiff objects to this request on the grounds that the request is overly broad, unduly burdensome and seeks information which is not relevant to the subject matter of this litigation nor is such information reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to the extent that the request seeks confidential commercial information.  Notwithstanding these objections and without waiver thereof, documents responsive to this request will be produced subject to an appropriate confidentiality agreement between the parties.

Request No. 4:  Produce accounting records or documents reflecting the profits generated by TCC in the territory due to the sale of White Oversize Gravel during 2005.

Response:  Plaintiff objects to the extent that the request seeks confidential commercial information.  Notwithstanding this objection and without waiver thereof, documents responsive to this request will be produced subject to an appropriate confidentiality agreement between the parties.

Request No. 5:  Produce all documents reflecting contracts between Customers and TCC for the sale of White Oversize Gravel in the Territory which are currently or were in effect during 2005.

Response:  Plaintiff objects to this request on the grounds that the request is overly broad, unduly burdensome and seeks information which is not relevant to the subject matter of this litigation nor is such information reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to the extent that the request seeks confidential commercial information.  Notwithstanding these objections and without waiver thereof, documents responsive to this request will be produced subject to an appropriate confidentiality agreement between the parties.

13

This 11th day of January, 2006.

_____
One of the Attorneys for Plaintiff
The Concrete Company

OF COUNSEL:

Robin G. Laurie
G. Lane Knight
BALCH & BINGHAM LLP
P.O. Box 78
Montgomery, Alabama 36101
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

William L. Tucker
Thomas F. Gristina
PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.
1111 Bay Avenue, Third Floor
Columbus, Georgia 31901
Telephone: (706) 324-0251
Facsimile: (706) 596-9992

**CERTIFICATE OF SERVICE**

I do hereby certify that I am counsel for Plaintiff and that a true and exact copy of the

foregoing PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT CAROL'S

CONTRACTING, INC.'S FIRST INTERROGATORIES AND REQUEST FOR

PRODUCTION OF DOCUMENTS was served via email as follows:

Dennis R. Bailey
Rushton, Stakely, Johnson & Garrett
P.O. Box 270
Montgomery, Alabama  36101

James N. Walter
Chad W. Bryan
Capell & Howard, P.C.
P.O. Box 2069
Montgomery, Alabama  36102

This _11_ day of _January_ , 2006.

_____
Counsel for Plaintiff

15

THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THE CONCRETE COMPANY,               *
                                    *
        Plaintiff,                  *
                                    *
v.                                  *        Case No.: 2:05-cv-01026-CSC
                                    *
HARRY E. LAMBERT, CAROL'S           *
CONTRACTING, INC. and               *
ALABAMA GRAVEL, LLC,                *
                                    *
        Defendants.                 *

## VERIFICATION

COMES NOW, Hugh Sorrell, on behalf of the Plaintiff in the above-styled action, and

verifies that all information contained in the above responses to Interrogatories is true and correct

to the best of his knowledge and belief.

This 11th day of January, 2006.

_____
Hugh Sorrell

Sworn to and subscribed before
me this _11th_ day of _January_ 2006.

_Vickie C. Kirkland_
Notary Public
State of _Georgia_
County of _Muscogee_
Comm. Exp. _9-10-06_
(Notarial Seal)

VICKIE C. KIRKLAND
–NOTARY PUBLIC-OFFICIAL SEAL–
MUSCOGEE COUNTY, GA
My Commission Expires September 10, 2006

**APPENDIX A**

Resume of Qualifications of
# Paul B. Fields, CPA, CVA
Of the Firm of
## Wilson, Price, Barranco, Blankenship & Billingsley, P.C.
3815 Interstate Court
Montgomery, Alabama 36109

## May 1, 2006

Telephone: 334-271-2200
Direct: 334-260-2314
Fax: 334-274-1514
Email – pfields@wilsonprice.com

## Educational Background

- Bachelor of Science Degree from Huntingdon College, 1964.

## Employment History

- Employed with Firm for 41 years.
- Certified Public Accountant since 1969.
- Shareholder of the Firm for 35 years.
- Certified Valuation Analyst since 2005.

## Expert Witness Qualifications and Experience

- Testified as an expert witness for the defendant in the United States District Court: BenchMark Medical Holdings, Inc. et al vs. Rehab Solutions, LLC et al CA No 03-A-993-N

- Testified as an expert witness for the plaintiff in the Circuit Court of Montgomery County, Alabama - OpenShaw Media Group, Inc. as intervenor CV-97-1900-SH and CV-97-2593-SH

- Testified as an expert witness in the Circuit Court, Domestic Relations Division of :

  Montgomery County, Alabama in the matters of:
  1. Longshore, Melanie vs. Longshore, Spencer (Business Valuation)
  2. Brantley, Cathy Caddell vs. Brantley, Robert (Business Valuation)
  3. Dees, Judith Mallory vs. Dees, Earl (Business Valuation)
  4. Lange, Michael vs. Lange, Cheryl (Present value of Retirement Plan)
  5. Overton, Paul vs. Overton, Signe (Domestic)

  Autauga County, Alabama in the matter of:
  1. Smith, Joyce vs. Smith, Myron (Business Valuation)

- Deposed and/or engaged as an expert witness or to assist in above cases and in other cases that settled before trial as follows:

  1. Blount, Winton M., Jr. vs. Blount, Mary Katherine (Domestic)
  2. Blount, S. Roberts vs. Blount, Jane S. (Domestic)
  3. Capp, Cathy vs. Capp, Morris (Business Valuation)
  4. Collins, Jo Nan vs. Collins, Robert (Domestic and Business Valuation)
  5. Blount, Winton M., III vs. Blount, Lucy D. (Domestic)
  6. Warnke, Langley vs. Warnke, Charles (Domestic)
  7. Premier Chevrolet, Inc., Bessemer and Sylacauga, Alabama (Business Valuation)
  8. Waller, Ann vs. Waller, Greg (Domestic)
  9. Turene, Roger vs. Turene, Patricia (Consultant in a Business Valuation)
  10. Gould vs. Gould (Domestic)
  11. McIntyre, Edward Patrick vs. McIntyre, Susan (Domestic)

## Other Experience:

- Engaged to value several businesses that were purchased or sold. Personally involved in the negotiation and the due diligence processes.
- Engaged to value a business for IRS Section 1374 (built-in gains) Subchapter S election.
- Engaged by the defendant to assist in lost profits arbitration.
- Engaged to consult in the valuation of a contingent stock agreement.

## Other Pertinent Information

- Member of the American Institute of Certified Public Accountants.
- Member of the Alabama Society of Certified Public Accountants.
- Member of the National Association of Certified Valuation Analysts.
- Special fields of expertise: tax planning for individuals, estate planning, business valuation services, litigation support, loan restructuring, small business consulting and accounting matters.