# Exhibit 34

FREEDOM COURT REPORTING

Page 1

1   IN THE UNITED STATES DISTRICT COURT
2   FOR THE MIDDLE DISTRICT OF ALABAMA
3   NORTHERN DIVISION
4
5   THE CONCRETE COMPANY,      )
6           Plaintiff,         )
7   vs.                        ) CASE NUMBER:
8   HARRY E. LAMBERT and       ) 2:05-CV-1026-ID-CSC
9   CAROL'S CONTRACTING,       )
10  INC.,                      )
11          Defendants.        )
12
13  DEPOSITION OF SAMUEL WARREN ESTOCK, JR.
14          In accordance with Rule 5(d) of
15  The Alabama Rules of Civil Procedure, as
16  Amended, effective May 15, 1988, I, Cindy
17  Weldon, am hereby delivering to Thomas F.
18  Gristina, the original transcript of the
19  oral testimony taken on the 10th day of
20  January, 2007, along with exhibits.
21          Please be advised that this is the
22  same and not retained by the Court Reporter,
23  nor filed with the Court.

ORIGINAL

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

FREEDOM COURT REPORTING

Page 20

1  Alabama.
2      Q.   You sold that to him?
3      A.   I sold him wear parts.
4      Q.   That's what I was -- As I
5  understand it, your business is in
6  materials?
7      A.   Yes.  Just the wear parts, you
8  know, wear parts and machines that are used
9  to produce the gravel.
10     Q.   What is a wear part?  The word
11 wear is what's confusing me.  What is wear?
12     A.   Like a log washer that cleans
13 gravel, it's the blades that go on that
14 churn the gravel that cleans it.
15     Q.   And is that the sort of thing that
16 Southern Wire sells?
17     A.   Right.
18     Q.   Well, I'm going to go through the
19 invoices to be more specific.  But I'm
20 trying to get some background here.
21     A.   Right.  Right.
22     Q.   That's why I'm asking questions
23 like that.  Now, going up to the -- Do you

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

FREEDOM COURT REPORTING

Page 28

don't recall. No more than -- There's other people that I call just as often, I mean, just as often as I've called him.

Q. Can you tell me what percentage of your calls during that period with Mr. Lambert dealt with discussions about items that you were thinking about selling?

A. Oh, two or three percent. I mean, it wasn't that many. I mean, you could probably count ten or twelve times maybe, fifteen times that I asked him information about, you know, what he thought I should do on certain things or what size screen he might recommend or should I recommend.

But I just reckon I felt like he had some, you know, knowledge in his head. And I didn't see where it, you know, would cause any damage to ask those questions.

Q. During that period from the spring of 2002 to the beginning of 2005, did Mr. Lambert ever buy anything from your company?

A. No, sir.

Q. Did he refer any customers to you?

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

**FREEDOM COURT REPORTING**

Page 29

1   A.   Yes.

2   Q.   Who were they?

3   A.   To the best of my recollection, Robert Alexander was at a company that we worked with up in north Alabama called Coosa Sand and Gravel. And Mr. Rex Alexander was -- Robert Alexander was planning on I guess going in business or maybe trying to buy him or something.

And I guess Harry apparently had told him, you know, that he might contact me. He was asking about equipment and some of the equipment that Joe had. And Joe had some of our equipment up there. And Robert had asked about, you know, who he might contact to start getting prices.

And Harry had given him my name. And Harry had called me and told me that this Robert Alexander was possibly going to be going in business I thought in north Alabama, and that I might want to, you know, contact him. He said he had given him my name and he had given me his name.

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

1           And that is the only -- the only
2  customer that he ever -- And, of course, he
3  wasn't a customer then.  He was just a name
4  he gave me.  But other than that particular
5  name, no other name has he given me in this
6  period of time or ever that I recall.
7       Q.   And did Mr. Alexander end up
8  calling you?
9       A.   Yes, sir.
10      Q.   Do you recall when he called you?
11      A.   I do not.  I don't know the date
12 that he called honestly.  I think there's a
13 quote in there when we quoted some
14 equipment.  So it was prior -- prior to that
15 date.  But I honestly don't remember what
16 date that he actually called on.
17      Q.   Now, the documents that you gave
18 me, are these copies that I can keep?
19      A.   Yes.
20      Q.   All right.  So I can make another
21 set?  And we will make another set.
22      A.   No, you can -- They're yours.
23      Q.   All right.  Let's mark this if we

FREEDOM COURT REPORTING

Page 31

1  could, please, as Plaintiff's 1. This will
2  be a collective exhibit.
3       MR. GRISTINA: Dennis, I'll make a
4  set at some point.
5       (Whereupon, Plaintiff's Exhibit
6  No. 1 was marked for identification and
7  attached to the original transcript.)
8       Q.  Now, the first document in what's
9  been marked as a collective exhibit
10 Plaintiff's Exhibit 1, is a February 16th,
11 2005 letter to Mr. Robert Alexander at
12 Alabama Gravel, Highway 111, Deatsville,
13 Alabama 36022. What was this? Is this the
14 price quote you were speaking of?
15      A.  That's one. I think there might
16 have been another one, too, possibly.
17 That's the one I'm speaking of mainly. But
18 that's basically what he bought from me.
19      Q.  Is this the first --
20      A.  I believe that's -- I believe
21 that's the first, yes.
22      Q.  Yes, sir. Now, I'm going to have
23 to read sideways. And you tell me if you

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

Page 32

can't see this. But you -- The address you used here is on Highway 111 in Deatsville, Alabama. Do you know what is located at that address, Highway 111?

A. No, I don't. When we started business, we really didn't have an address for I think Independence. And therefore, nearly all the correspondence, I just used that address because he had talked about, you know, he might be going to put a plant down there.

And I virtually hand delivered most everything. We faxed some pieces. But most of it I hand delivered to him at Independence.

Q. And the Independence address, is that -- we started to call it the Gentry pit. Is that -- Do you know that?

A. Right. Right. Right. Right.

Q. So if I said the Gentry pit, that's Mr. Mike Gentry's land in Independence?

A. That's right.

1    Q.    I believe his first name is Mike.
2  Now, you have a fax stamp on here.  Do you
3  -- You faxed this to Mr. Alexander?
4    A.    I honestly don't remember.  I
5  mean, I personally didn't fax it.  My office
6  could have faxed it.  But with that being on
7  it -- normally that's put on there if it's
8  faxed, yes.
9    Q.    Now, Mr. Estock, all these
10 documents that you gave me, were these --
11   A.    Estock.
12   Q.    I apologize.  And my name gets
13 torn apart routinely.
14   A.    And if you don't tell people what
15 it is, nobody knows.
16   Q.    I know how it feels.  Now, Mr.
17 Estock -- you can imagine with a name like
18 Gristina.
19   A.    I'm going to call you Thomas.
20   Q.    That's fine.  All these documents
21 that you brought with you today, are these
22 all documents that were prepared by Southern
23 Wire in the normal course of its business?

Page 34

1  A. Right. Right.

2  Q. And did you prepare all these
3  documents?

4  A. No.

5  Q. Were they done by a secretary
6  there?

7  A. It was done by my wife.

8  Q. Is she your assistant?

9  A. My assistant. And my daughter.
10 And my daughter, too. She works there.

11 Q. I understand. All right. Now, it
12 looks like to me that -- I'll try to be as
13 precise as I can looking at the document --
14 that this quote was for a twin fine material
15 washer or two twin fine material washers; is
16 that correct?

17 A. It was for two, yes. One -- two
18 different sizes.

19 Q. Now, were these -- were these
20 material washers going to be used at the
21 Deatsville plant?

22 A. That is what I assumed, yes.

23 Q. And when I refer to the Deatsville

Page 68

1   A.   Correct.

2   Q.   And was that item for use at the
3  Deatsville site?

4   A.   I assume that's where Robert was
5  going to use that, was the Deatsville.  I
6  didn't know how long they were going to stay
7  at Independence.  I assume that it was.  But
8  I don't know.

9   Q.   Have you -- I interrupted you.
10 I'm sorry.  Were you finished?

11  A.   I'm through.

12  Q.   I apologize for interrupting you.
13 Looking back at the February 16th, 2005
14 price quote to Mr. Alexander, it lists one
15 trio forty-four inch by thirty-two foot twin
16 fine material washer for fifty-six four
17 eighty.

18       Is that the same piece of
19 equipment that's listed on the December
20 15th, 2005 invoice?

21  A.   That would be the same piece, yes.

22  Q.   Have you been paid for that piece
23 of equipment?

1   A.   Probably.  I'm sure we have.  I
2   sure hope we have.
3   MR. GRISTINA:  Can we take a
4   couple of minutes.
5   (Whereupon, a short recess was
6   taken.)
7   MR. GRISTINA:  Let's go back on
8   the record.
9   Q.   What were you just saying, sir, if
10  you don't mind me --
11  MR. BAILEY:  I asked him a
12  question.  I asked him does the fact that
13  Harry Lambert's name on those P.O.'s mean
14  that Harry Lambert ordered the equipment.
15  And he was talking to me about that.
16  MR. GRISTINA:  When I was out of
17  the room in a deposition?
18  MR. BAILEY:  Mr. Gristina, are you
19  suggesting that I cannot talk to a witness
20  in this case whether you're present or not?
21  MR. GRISTINA:  You certainly can,
22  Mr. Bailey.  But the fact that we brought
23  this witness here for a deposition and I

FREEDOM COURT REPORTING

Page 70

1  took a break and then when the record was
2  off, you asked him a question outside my
3  presence, it stinks. It stinks, sir. I
4  wouldn't have done that, not in a million
5  years.
6      MR. BAILEY: Put it in writing and
7  send it to me.
8      MR. GRISTINA: Not in a million
9  years. Now, once we leave this room -- Of
10 course, you don't represent him. He's a
11 fact witness. You can speak to any fact
12 witnesses, but that stinks.
13     THE WITNESS: I'll be happy to
14 repeat every word I said.
15     Q.   If you would, sir, please. And
16 I'm not -- Mr. Estock, I'm not accusing you
17 of doing anything improper in answering his
18 question. My outrage is directed at Mr.
19 Bailey.
20     A.   His question exactly was, with Mr.
21 Harry Lambert's name on here meant that he
22 purchased that piece of equipment. I said
23 not necessarily. I said I had -- Just like

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

**FREEDOM COURT REPORTING**

Page 71

1  I told y'all before you left -- Just like I
2  told Thomas before he left, I said I had
3  mentioned Harry's name many times because I
4  appreciated what he had done in getting us
5  in there.
6       Just like you saw.  I've mentioned
7  his name ten thousand times to people.  And
8  I -- When I saw this, I asked Melissa.  I
9  could have taken that off -- but I guess
10 you'd still have a copy.  But I could have
11 taken it off.  I didn't take it off.
12      I asked Melissa, Melissa, why did
13 you put Mr. Harry Lambert's name on there.
14 She said daddy, I don't know.  She said
15 you've mentioned him, you know, so many
16 times about getting that account, she said I
17 just had him on my mind.  And she said
18 that's what I put.
19      And she said should I take it
20 off.  I said don't you take nothing off.
21 You give it just like it's on the file.  And
22 that's exactly what he asked and that's
23 exactly what I told him word-for-word.

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

**FREEDOM COURT REPORTING**

Page 72

1  Q. And, Mr. Estock, I appreciate
2  that. And to be sure, I'm not suggesting
3  that your daughter did anything improper at
4  all.
5  A. Because if you did, I'd just call
6  you a sorry devil.
7  Q. I know you would. I know you
8  would. And I would never do that. I would
9  never do that. And I appreciate you
10 producing those documents in the form they
11 came from your office.
12     They were not produced to me in
13 that form when they came from Alabama
14 Gravel. But you produced them in the form
15 that came from your office and I appreciate
16 that. Now --
17 A. Just let it be understood that Mr.
18 Harry Lambert did not order that piece of
19 equipment.
20 Q. All right. I appreciate that, Mr.
21 Estock.
22 A. Okay.
23 Q. Let me show you what's been marked

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**