Defendants. At the time it received the June 15, 2006 letter, Plaintiff was not mining on the land on which the Ward plant and mining operation are located. Due to Defendants' malfeasance, mining had stopped in February 2006. This included stopping the mining of White Oversize Gravel at that location. Plaintiff has not restarted its mining operation on the land on which the Ward plant and mining operation are located. Plaintiff further states that in response to Plaintiff's request to resume mining operations, on November 9, 2006, the United States Environmental Protection Agency sent Plaintiff a letter advising Plaintiff not to resume mining operations. Subject to the foregoing objections, a copy of the November 9, 2006 letter from the EPA are being provided to Defendants.

INTERROGATORY 21. Was any amount of money exchanged between Plaintiff and Alabama Gravel as a condition of the settlement agreement entered into between Plaintiff and Alabama Gravel? If so, state that amount and identify which entity paid it.

RESPONSE: No.

## REQUEST FOR PRODUCTION

REQUEST 19. Documents relating to actions of the Army Corps of Engineers and/or the Alabama Department of Environmental Management taken with respect to mining operations at Plaintiff's Shorter a/k/a Ward plant/pit and which have affected mining operations at that location.

RESPONSE: Plaintiff objects to this request to the extent that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, subject thereto and without waiver thereof, documents responsive to this request are being produced.

REQUEST 20. Documents/financial records showing the profit or loss of Plaintiff due to

sales of White Oversize Gravel for each fiscal or calendar year (whichever is used by Plaintiff for accounting purposes) beginning in 2004 to the present.

RESPONSE: Documents responsive to this request are being produced and/or have already been produced.

REQUEST 21. Documents/financial/tax records of Plaintiff which Plaintiff contends document a loss or damage to Plaintiff from the activities of Harry Lambert which Plaintiff contends were in violation of the agreement.

RESPONSE: Documents responsive to this request are being produced and/or have already been produced.

REQUEST 22. Documents responsive to interrogatory 17.d

RESPONSE: Documents responsive to this request are being produced and/or have already been produced..

This 4th day of January, 2007.

_____
One of the Attorneys for Plaintiff
The Concrete Company

OF COUNSEL:

Robin G. Laurie (ASB-4217-U64R)
G. Lane Knight (ASB-6748-I72K)
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, Alabama 36101
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
rlaurie@balch.com

11

Thomas F. Gristina
William L. Tucker
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
1111 Bay Avenue, Third Floor, Synovus Centre
Columbus, Georgia 31901

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE CONCRETE COMPANY, | * |
| Plaintiff, | * |
| v. | * Case No.: 2:05-cv-01026-CSC |
| HARRY E. LAMBERT AND CAROL'S CONTRACTING, INC., | * |
| Defendants. | * |

## VERIFICATION

COMES NOW, Hugh Sorrell, on behalf of the Plaintiff in the above-styled action, and verifies that all information contained in the above responses to Interrogatories is true and correct to the best of his knowledge and belief.

This 4 day of January, 2007.

_____
Hugh Sorrell

Sworn to and subscribed before
me this 4th day of Jan, 2007.

_____
Notary Public
State of _____
County of _____
Comm. Exp. _____
(Notarial Seal)

Teresa K. Smith
- Notary Public – Official Seal -
Muscogee County, Georgia
My Commission Expires October 8, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January, 2007, I served a copy of the foregoing by U.S. Mail, properly addressed and postage prepaid to the following:

Dennis R. Bailey, Esquire
Rushton, Stakely, Johnston & Garrett
P. O. Box 270
Montgomery, Alabama 36101-0270

_____
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE CONCRETE COMPANY, | * |
| Plaintiff, | * |
| v. | * Case No.: 2:05-cv-01026-CSC |
| HARRY E. LAMBERT AND CAROL'S CONTRACTING, INC., | * |
| Defendants. | * |

## PLAINTIFF'S RESPONSES TO DEFENDANT HARRY E. LAMBERT'S THIRD INTERROGATORIES AND REQUEST FOR PRODUCTION

Comes now Plaintiff The Concrete Company and files this its responses to Defendant Harry E. Lambert's Third Interrogatories and Request for Production to Plaintiff:

### INTERROGATORIES

INTERROGATORY 22. Do you contend that Harry Lambert has caused damage to Plaintiff by driving a truck for Carol's Contracting? If so,

    a. Itemize the actual damages claimed by Plaintiff caused by Lambert driving a truck for Carol's Contracting.

    b. Describe the method used to calculate the claimed damages.

    c. Show the underlying computations used to arrive at the actual damage figure.

    d. Describe and identify the documents which support your itemization.

RESPONSE: Yes. Plaintiff's actual damages, excluding attorneys' fees and costs to which it is also entitled and which continue to accrue, are at least $1,096,038.00, plus interest. These damages are calculated and computed as follows.

These damages are the result of Defendants' improper activity resulting in Plaintiff's two largest white oversize gravel customers, Simcala and Globe, purchasing less of that product from Plaintiff beginning in January 2005.

By the spring 2004, Plaintiff had accumulated an estimated inventory stockpile of 51,592 tons of white oversize gravel at the Ward Plant in Shorter, Alabama. Production continued at the plant into 2006. Plaintiff began selling large quantities of oversize to Simcala in April 2004, and to Globe in July 2004. From April to December 2004, the net effect of plant production and sales to Simcala and Globe was a decrease in Plaintiff's estimated oversize gravel inventory stockpile. As a result of the decreasing stockpile levels at the Ward Plant, Plaintiff's management became aware that its estimated oversize gravel inventory stockpile was less than it had previously thought. Plaintiff notified its two largest customers, Simcala and Globe, that it was working to sort through this inventory discrepancy. Plaintiff also notified these customers that in the short term, Plaintiff would only sell each of them 500 tons of white oversize per month.

Again, this was intended to be a short term arrangement, and in fact, in assessing its inventory, Plaintiff determined that it could increase the Ward Plant production by working six days per week instead of the four it had previously been producing. There was sufficient capacity at the plant and sufficient reserves in the ground to allow for this 50% increase in production. Plaintiff was willing to increase production to meet its customers' additional needs for white oversize gravel. At the time, the land available at the Ward Plant for mining had several years of aggregate reserves remaining.

As a result of Defendants' impermissible activity, however, Plaintiff was improperly denied the opportunity to increase production and retain Simcala and Globe as its customers.

2

Simcala bought 22,307 tons of white oversize gravel from Plaintiff's Ward Plant from April 2004 through December 2004. Simcala purchased 540 tons of white oversize in January 2005, 566 tons in February 2005, none in March 2005, 333 tons in April 2005 and none since. Globe bought 21,296 tons of white oversize gravel from Plaintiff's Ward Plant from July 2004 through December 2004. Globe purchased 1,049 tons in January 2005, 31 tons in February 2005, 947 tons in March 2005, an average of 2,360 tons per month from April to December 2005, a total of 2,716 tons in January and February 2006 and none since.

Therefore, after consistent purchases of white oversize gravel by Simcala and Globe in the second half of 2004, Simcala's purchasing level was zero by April 2005 and has never recovered. Globe's purchasing level returned to approximately 65% of its 2004 level before stopping in February 2006. Additionally, as stated above, Plaintiff's management was prepared to increase production by 50% to meet increased demand for its white oversize gravel.

There are two elements of lost profits as a result of Defendants' improper activity and interference in Plaintiff's relationship with Simcala and Globe: lost profits on sales consistent with 2004 monthly levels and lost profits on sales resulting from a 50% increase in production. The term of the damages calculation is from January 1, 2005 to June 15, 2006. This period is consistent with the timing of Defendants' improper activity and interference with Plaintiff's relationship with Simcala and Globe. It is also consistent with the date the lessor of the Ward Plant requested that Plaintiff temporarily not conduct mining operations on the site. This request is addressed further in response to Interrogatory No. 23 below, and the response and objections thereto are incorporated herein. Lost profits resulting from Defendants' actions during this period are $751,482.

Plaintiff's earlier lost profits calculation, indicated in part by February 2006 spread sheets tendered to Defendants, were based on facts and circumstances known in February 2006. That calculation was prepared by calculating lost profits on additional sales to Simcala for production at Ward for six days per week versus the four days per week. Damages were also projected for lost profits associated with projected 2006 sales to Globe, based on actual sales for April 2004 through December 2005. Additionally, lost profits were calculated for a projected price decrease to Globe from $21 to $17 per ton for white oversize gravel, and from $11.75 to $10.95 per ton for brown gravel.

Plaintiff's updated damages calculation is based on lost profits on sales from January 2005 to June 15, 2006, that would have occurred with the production level that Plaintiff would have generated from the Ward Plant absent Defendants' improper activity and interference. The updated damages calculation does not differentiate sales to Simcala versus sales to Globe or any other smaller customers. This is because the previous damages calculation was a customer oriented calculation, whereas the updated damages calculation is based on Ward Plant production that would have occurred and been sold.

Given the stable market that existed before Defendants' improper activity and interference in late 2004 and early 2005, the updated calculation is conservative and a reasonable and rational method for calculating damages.

The updated calculation, shown on the spread sheets attached hereto, begins with a calculation of the variable cost per unit of production at the Ward Plant. This calculation is different from the previously submitted damages calculation in which variable costs were based on a per unit processed computation (which separately counts units produced and units shipped and adds the two together). In the updated calculation, the variable cost per unit is calculated by

4

dividing variable production costs by the number of units produced. The result is a higher variable cost per unit, which then yields a lower incremental profit. While either approach works and gives a reasonable and sound basis for calculating damages, the updated calculation is more conservative. Actual plant costs for January through December 2005 were used as a basis for calculating the variable cost per unit of production for 2005.

The next element of the updated damages calculation is the projection of production of white oversize gravel. This is calculated by projecting actual production levels at a four day production week to a six day production week, assuming the same output per day for each of the six days. Plaintiff then added its estimated inventory at December 31, 2004 of 1,200 tons and subtracted an inventory level for downtime of 4,000 tons to arrive at tons available for shipment in 2005 of 46,498.

Next, Plaintiff reduces the tonnage of white oversize gravel from the Ward Plant available for shipment by the amount that was actually sold out of the plant. This yields a net tonnage available for shipment. Plaintiff multiplies this tonnage by the lower of its 2005 prices of $19.50 to arrive at lost revenues due to Simcala and Globe not buying from Plaintiff. From these lost revenues, Plaintiff subtracts the required royalty fee of 7% and the previously described variable cost per unit of $1.89. This results in lost profits due to Simcala and Globe not buying white oversize gravel from Plaintiff in 2005 of at least $351,119.

This calculation is prepared similarly but separately for 2005 and 2006. The 2006 computation covers the period from January 1, 2006 to June 15, 2006.[1] To account for a partial

---

[1] It must be noted that while sales apparently did not start at Alabama Gravel's Deatsville site until after June 15, 2006, those sales and Defendants' activity with respect to that site are relevant and admissible as to both liability and damages in that the opening of the Deatsville site was clearly a significant factor in Simcala and Globe shifting their purchases from Plaintiff.

5

year of production, Plaintiff calculates a per week production figure that is applied to the 24 weeks from January 1, to June 15, 2006. One difference between the 2005 and 2006 calculations is that the 4,000 tons held in inventory reserve for downtime is treated as available for sale in 2006. Otherwise the two years' computations are similar. It should also be recognized that Plaintiff has conservatively held the price per ton at the lowest of the 2005 prices ($19.50). The lost profits for 2006 are at least $400,363.

It must also be recognized that the spread sheets do not specifically mention Maddox Stone & Gravel, who apparently purchased white oversize gravel from Alabama Gravel in 2005 and 2006. This is because Plaintiff reasonably anticipates that all increased production would have been sold to Simcala and Globe. Nevertheless, Maddox's purchases are relevant to liability in that they demonstrate Defendants' improper conduct and to damages in that in the unlikely event that Simcala and Globe did not purchase all available increased production, material would have been available to Maddox.

Another element of compensable damages to Plaintiff is for Harry Lambert's breach of the non-compete and the effect this and Defendants' other improper actions had on Plaintiff's customer relations and on Plaintiff's ability to present white oversize gravel in the market. Defendants denied Plaintiff the benefit of the non-compete for which it paid. The debt assumed by Plaintiff and the funds paid to MMC Holdings, which was owned and controlled by Harry Lambert, at the time of the Montgomery Materials buy-out were for the benefit of and in exchange for the non-compete. Lambert never complied with the non-compete and while violating the same interfered, along with CCI, with Plaintiff's business relations. Plaintiff was denied the benefit of its bargain. This additional element of damages amounts to at least $344,556.00, plus the aforementioned lost profits.

The following documents support this itemization:

(1) Damages spread sheets already produced and those produced herewith.

(2) Financial statements for the Ward Plant already produced and/or produced herewith.

(3) Invoices, tickets and other records produced by Defendants, Simcala, Globe, Maddox Stone & Gravel, copies of which Defendants have and/or which have already been produced.

(4) April 9, 2002 Closing Statement and April 10, 2002 Assignment, copies of which are already in Defendants' possession and are being produced herewith.

INTERROGATORY 23. Has the Plaintiff's Shorter Plant a/k/a the Ward plant/pit mining operation been halted at any time by order or action of the Army Corps of Engineers, the Alabama Department of Environmental Management and/or the Environmental Protection Agency (EPA)? If so, state:

a. The date of the order/action.

b. The reason given for the order/action.

c. Whether the halting of mining operations has affected mining of White Oversize Gravel at that location.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, subject thereto and without waiver thereof, Plaintiff states that Plaintiff's Shorter Plant a/k/a the Ward plant/pit mining operation has not been halted at any time by order or action of the Army Corps of Engineers and/or the Alabama Department of Environmental Management. In further response to this interrogatory, Plaintiff states that on

7

June 15, 2006, it received a letter from the lessor of the land on which the Ward plant and mining operation are located requesting that Plaintiff suspend until further notice its mining operation. The lessor sent this June 15, 2006 letter in response to a June 1, 2006 cease and desist order the lessor received from the Army Corps of Engineers. Subject to the foregoing objections, copies of the June 15, 2006 letter and the June 1, 2006 cease and desist order are being provided to Defendants. At the time it received the June 15, 2006 letter, Plaintiff was not mining on the land on which the Ward plant and mining operation are located. Due to Defendants' malfeasance, mining had stopped in February 2006. This included stopping the mining of White Oversize Gravel at that location. Plaintiff has not restarted its mining operation on the land on which the Ward plant and mining operation are located. Plaintiff further states that in response to Plaintiff's request to resume mining operations, on November 9, 2006, the United States Environmental Protection Agency sent Plaintiff a letter advising Plaintiff not to resume mining operations. Subject to the foregoing objections, a copy of the November 9, 2006 letter from the EPA are being provided to Defendants.

INTERROGATORY 24. Has Plaintiff, Foley Materials or Frank Foley ever had a business relationship with, ever sold product to, purchased product from, or contracted with or allowed William P. "Pete" Long of Gadsden, Alabama (or any business owned or associated with him) to install equipment used for the purpose of reclaiming precious metals? If so, describe the business relationship with Mr. Long and/or any business he owns or is associated.

RESPONSE: Plaintiff objects to this interrogatory to the extent that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, subject thereto and without waiver thereof, Plaintiff states that to the best of its knowledge, during a short period approximately three years ago, Mr.

8