# Exhibit 27

# FREEDOM COURT REPORTING

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

```
THE CONCRETE COMPANY,      )
           Plaintiff,      )
vs.                        )  CASE NUMBER:
HARRY E. LAMBERT and       )  2:05-CV-1026-ID-CSC
CAROL'S CONTRACTING,       )
INC.,                      )
           Defendants.     )
```

ORIGINAL

DEPOSITION OF SAMUEL WARREN ESTOCK, JR.

In accordance with Rule 5(d) of The Alabama Rules of Civil Procedure, as Amended, effective May 15, 1988, I, Cindy Weldon, am hereby delivering to Thomas F. Gristina, the original transcript of the oral testimony taken on the 10th day of January, 2007, along with exhibits.

Please be advised that this is the same and not retained by the Court Reporter, nor filed with the Court.

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

FREEDOM COURT REPORTING

Page 20

1  Alabama.
2      Q.   You sold that to him?
3      A.   I sold him wear parts.
4      Q.   That's what I was -- As I
5  understand it, your business is in
6  materials?
7      A.   Yes.  Just the wear parts, you
8  know, wear parts and machines that are used
9  to produce the gravel.
10     Q.   What is a wear part?  The word
11 wear is what's confusing me.  What is wear?
12     A.   Like a log washer that cleans
13 gravel, it's the blades that go on that
14 churn the gravel that cleans it.
15     Q.   And is that the sort of thing that
16 Southern Wire sells?
17     A.   Right.
18     Q.   Well, I'm going to go through the
19 invoices to be more specific.  But I'm
20 trying to get some background here.
21     A.   Right.  Right.
22     Q.   That's why I'm asking questions
23 like that.  Now, going up to the -- Do you

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

1  don't recall.  No more than -- There's other
2  people that I call just as often, I mean,
3  just as often as I've called him.
4      Q.   Can you tell me what percentage of
5  your calls during that period with Mr.
6  Lambert dealt with discussions about items
7  that you were thinking about selling?
8      A.   Oh, two or three percent.  I mean,
9  it wasn't that many.  I mean, you could
10 probably count ten or twelve times maybe,
11 fifteen times that I asked him information
12 about, you know, what he thought I should do
13 on certain things or what size screen he
14 might recommend or should I recommend.
15          But I just reckon I felt like he
16 had some, you know, knowledge in his head.
17 And I didn't see where it, you know, would
18 cause any damage to ask those questions.
19     Q.   During that period from the spring
20 of 2002 to the beginning of 2005, did Mr.
21 Lambert ever buy anything from your company?
22     A.   No, sir.
23     Q.   Did he refer any customers to you?

1   A.   Yes.

2   Q.   Who were they?

3   A.   To the best of my recollection,
Robert Alexander was at a company that we
worked with up in north Alabama called Coosa
Sand and Gravel. And Mr. Rex Alexander was
-- Robert Alexander was planning on I guess
going in business or maybe trying to buy him
or something.

And I guess Harry apparently had
told him, you know, that he might contact
me. He was asking about equipment and some
of the equipment that Joe had. And Joe had
some of our equipment up there. And Robert
had asked about, you know, who he might
contact to start getting prices.

And Harry had given him my name.
And Harry had called me and told me that
this Robert Alexander was possibly going to
be going in business I thought in north
Alabama, and that I might want to, you know,
contact him. He said he had given him my
name and he had given me his name.

FREEDOM COURT REPORTING

Page 30

1    And that is the only -- the only
2 customer that he ever -- And, of course, he
3 wasn't a customer then. He was just a name
4 he gave me. But other than that particular
5 name, no other name has he given me in this
6 period of time or ever that I recall.
7    Q.   And did Mr. Alexander end up
8 calling you?
9    A.   Yes, sir.
10   Q.   Do you recall when he called you?
11   A.   I do not. I don't know the date
12 that he called honestly. I think there's a
13 quote in there when we quoted some
14 equipment. So it was prior -- prior to that
15 date. But I honestly don't remember what
16 date that he actually called on.
17   Q.   Now, the documents that you gave
18 me, are these copies that I can keep?
19   A.   Yes.
20   Q.   All right. So I can make another
21 set? And we will make another set.
22   A.   No, you can -- They're yours.
23   Q.   All right. Let's mark this if we

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

Page 31

1  could, please, as Plaintiff's 1. This will
2  be a collective exhibit.
3         MR. GRISTINA: Dennis, I'll make a
4  set at some point.
5         (Whereupon, Plaintiff's Exhibit
6  No. 1 was marked for identification and
7  attached to the original transcript.)
8     Q.  Now, the first document in what's
9  been marked as a collective exhibit
10 Plaintiff's Exhibit 1, is a February 16th,
11 2005 letter to Mr. Robert Alexander at
12 Alabama Gravel, Highway 111, Deatsville,
13 Alabama 36022. What was this? Is this the
14 price quote you were speaking of?
15    A.  That's one. I think there might
16 have been another one, too, possibly.
17 That's the one I'm speaking of mainly. But
18 that's basically what he bought from me.
19    Q.  Is this the first --
20    A.  I believe that's -- I believe
21 that's the first, yes.
22    Q.  Yes, sir. Now, I'm going to have
23 to read sideways. And you tell me if you

FREEDOM COURT REPORTING

Page 32

1  can't see this. But you -- The address you
2  used here is on Highway 111 in Deatsville,
3  Alabama. Do you know what is located at
4  that address, Highway 111?
5      A.  No, I don't. When we started
6  business, we really didn't have an address
7  for I think Independence. And therefore,
8  nearly all the correspondence, I just used
9  that address because he had talked about,
10 you know, he might be going to put a plant
11 down there.
12     And I virtually hand delivered
13 most everything. We faxed some pieces. But
14 most of it I hand delivered to him at
15 Independence.
16     Q.  And the Independence address, is
17 that -- we started to call it the Gentry
18 pit. Is that -- Do you know that?
19     A.  Right. Right. Right. Right.
20     Q.  So if I said the Gentry pit,
21 that's Mr. Mike Gentry's land in
22 Independence?
23     A.  That's right.

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

**FREEDOM COURT REPORTING**

Page 33

1  Q.  I believe his first name is Mike.
2  Now, you have a fax stamp on here.  Do you
3  -- You faxed this to Mr. Alexander?
4  A.  I honestly don't remember.  I
5  mean, I personally didn't fax it.  My office
6  could have faxed it.  But with that being on
7  it -- normally that's put on there if it's
8  faxed, yes.
9  Q.  Now, Mr. Estock, all these
10 documents that you gave me, were these --
11 A.  Estock.
12 Q.  I apologize.  And my name gets
13 torn apart routinely.
14 A.  And if you don't tell people what
15 it is, nobody knows.
16 Q.  I know how it feels.  Now, Mr.
17 Estock -- you can imagine with a name like
18 Gristina.
19 A.  I'm going to call you Thomas.
20 Q.  That's fine.  All these documents
21 that you brought with you today, are these
22 all documents that were prepared by Southern
23 Wire in the normal course of its business?

**FREEDOM COURT REPORTING**

Page 34

```
 1     A.    Right.  Right.
 2     Q.    And did you prepare all these
 3  documents?
 4     A.    No.
 5     Q.    Were they done by a secretary
 6  there?
 7     A.    It was done by my wife.
 8     Q.    Is she your assistant?
 9     A.    My assistant.  And my daughter.
10  And my daughter, too.  She works there.
11     Q.    I understand.  All right.  Now, it
12  looks like to me that -- I'll try to be as
13  precise as I can looking at the document --
14  that this quote was for a twin fine material
15  washer or two twin fine material washers; is
16  that correct?
17     A.    It was for two, yes.  One -- two
18  different sizes.
19     Q.    Now, were these -- were these
20  material washers going to be used at the
21  Deatsville plant?
22     A.    That is what I assumed, yes.
23     Q.    And when I refer to the Deatsville
```

FREEDOM COURT REPORTING

Page 68

1  A. Correct.
2  Q. And was that item for use at the
3  Deatsville site?
4  A. I assume that's where Robert was
5  going to use that, was the Deatsville. I
6  didn't know how long they were going to stay
7  at Independence. I assume that it was. But
8  I don't know.
9  Q. Have you -- I interrupted you.
10 I'm sorry. Were you finished?
11 A. I'm through.
12 Q. I apologize for interrupting you.
13 Looking back at the February 16th, 2005
14 price quote to Mr. Alexander, it lists one
15 trio forty-four inch by thirty-two foot twin
16 fine material washer for fifty-six four
17 eighty.
18       Is that the same piece of
19 equipment that's listed on the December
20 15th, 2005 invoice?
21 A. That would be the same piece, yes.
22 Q. Have you been paid for that piece
23 of equipment?

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

FREEDOM COURT REPORTING

Page 69

1   A.   Probably. I'm sure we have. I
2   sure hope we have.
3         MR. GRISTINA: Can we take a
4   couple of minutes.
5         (Whereupon, a short recess was
6   taken.)
7         MR. GRISTINA: Let's go back on
8   the record.
9   Q.   What were you just saying, sir, if
10  you don't mind me --
11        MR. BAILEY: I asked him a
12  question. I asked him does the fact that
13  Harry Lambert's name on those P.O.'s mean
14  that Harry Lambert ordered the equipment.
15  And he was talking to me about that.
16        MR. GRISTINA: When I was out of
17  the room in a deposition?
18        MR. BAILEY: Mr. Gristina, are you
19  suggesting that I cannot talk to a witness
20  in this case whether you're present or not?
21        MR. GRISTINA: You certainly can,
22  Mr. Bailey. But the fact that we brought
23  this witness here for a deposition and I

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

FREEDOM COURT REPORTING

Page 70

1  took a break and then when the record was
2  off, you asked him a question outside my
3  presence, it stinks.  It stinks, sir.  I
4  wouldn't have done that, not in a million
5  years.
6          MR. BAILEY:  Put it in writing and
7  send it to me.
8          MR. GRISTINA:  Not in a million
9  years.  Now, once we leave this room -- Of
10 course, you don't represent him.  He's a
11 fact witness.  You can speak to any fact
12 witnesses, but that stinks.
13         THE WITNESS:  I'll be happy to
14 repeat every word I said.
15     Q.  If you would, sir, please.  And
16 I'm not -- Mr. Estock, I'm not accusing you
17 of doing anything improper in answering his
18 question.  My outrage is directed at Mr.
19 Bailey.
20     A.  His question exactly was, with Mr.
21 Harry Lambert's name on here meant that he
22 purchased that piece of equipment.  I said
23 not necessarily.  I said I had -- Just like

FREEDOM COURT REPORTING

Page 71

1  I told y'all before you left -- Just like I
2  told Thomas before he left, I said I had
3  mentioned Harry's name many times because I
4  appreciated what he had done in getting us
5  in there.
6      Just like you saw. I've mentioned
7  his name ten thousand times to people. And
8  I -- When I saw this, I asked Melissa. I
9  could have taken that off -- but I guess
10 you'd still have a copy. But I could have
11 taken it off. I didn't take it off.
12     I asked Melissa, Melissa, why did
13 you put Mr. Harry Lambert's name on there.
14 She said daddy, I don't know. She said
15 you've mentioned him, you know, so many
16 times about getting that account, she said I
17 just had him on my mind. And she said
18 that's what I put.
19     And she said should I take it
20 off. I said don't you take nothing off.
21 You give it just like it's on the file. And
22 that's exactly what he asked and that's
23 exactly what I told him word-for-word.

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

Page 72

Q. And, Mr. Estock, I appreciate that. And to be sure, I'm not suggesting that your daughter did anything improper at all.

A. Because if you did, I'd just call you a sorry devil.

Q. I know you would. I know you would. And I would never do that. I would never do that. And I appreciate you producing those documents in the form they came from your office.

They were not produced to me in that form when they came from Alabama Gravel. But you produced them in the form that came from your office and I appreciate that. Now --

A. Just let it be understood that Mr. Harry Lambert did not order that piece of equipment.

Q. All right. I appreciate that, Mr. Estock.

A. Okay.

Q. Let me show you what's been marked