# Exhibit W

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

THE CONCRETE COMPANY,         )
            Plaintiff,        )
vs.                           ) CASE NUMBER:
HARRY E. LAMBERT and          ) 2:05-CV-1026-ID-CSC
CAROL'S CONTRACTING,          )
INC.,                         )
            Defendants.       )

DEPOSITION OF LARRY SPEAKS

In accordance with Rule 5(d) of The Alabama Rules of Civil Procedure, as Amended, effective May 15, 1988, I, Cindy Weldon, am hereby delivering to Thomas F. Gristina, the original transcript of the oral testimony taken on the 12th day of January, 2007, along with exhibits.

Please be advised that this is the same and not retained by the Court Reporter, nor filed with the Court.

1 submitted, we usually try to have it

2 attached to the file somewhere.

3      Q.   All right.  And what I'd like to

4 do is follow the same procedure with this

5 Deatsville file and mark that as Plaintiff's

6 Exhibit 2.

7           (Whereupon, Plaintiff's Exhibit

8 No. 2 was marked for identification and

9 attached to the original transcript.)

10     Q.   Now the third file in chronology

11 appears to be -- starts 2-8-06, Lambert

12 Materials, L.L.C.?

13     A.   Yes, sir.

14     Q.   And that's for the Poly pit?

15     A.   Poly pit in Macon County.

16     Q.   Is that near Tysonville?

17     A.   Yes, sir.

18          MR. BAILEY:  Let me take him on

19 voir dire to see if this needs to be under

20 the protective order.

21 EXAMINATION BY MR. BAILEY:

22     Q.   Has the application been approved

23 or a permit issued in the Poly pit yet?

1    A.    To tell you the truth, I don't
2 know. It has? Yes, it has.
3    Q.    Okay.
4 EXAMINATION BY MR. GRISTINA:
5    Q.    I'm going to try to interpret that
6 now, sir.
7    A.    Those are scratch sheets when I
8 was trying to get a railroad permit, that I
9 was walking up and down that railroad trying
10 to get distances and measure bridges, what
11 we were going to have to do if we were going
12 to have to put a walking side walk on one of
13 those bridges. And I doubt I can interpret
14 those drawings even though I made them.
15    Q.    There's some staples in here and
16 there's a business card from Mr. Lambert on
17 the back side and I can't read the whole
18 thing.
19        MR. GRISTINA:  Dennis, I might
20 just take them off. Are you all right with
21 that?
22        MR. BAILEY:  That's fine.
23        MR. GRISTINA:  I wanted to make

1 sure you wouldn't object to it.
2    Q.   Is this a business card that Mr.
3 Lambert gave you?
4    A.   Yes, sir.
5    Q.   Would it have been on or about
6 February of 2006?
7    A.   It should have been when I wrote
8 that job order where I had it attached right
9 there to it.
10   Q.   Am I correct that in the upper
11 left-hand corner it appears that the word --
12 the three letters CCI are crossed out?
13   A.   Yes, sir.
14   Q.   And then it has Mr. Harry
15 Lambert's cell phone number. It looks like
16 in the middle it says heavy equipment
17 hauling with a line through that. Do you
18 see that?
19   A.   Yes, sir.
20   Q.   And then Lambert Materials?
21   A.   Yes, sir.
22        MR. BAILEY:  Let me see that.
23        MR. GRISTINA:  Sure.

1   Q.   I note here the date February
2 8-06. Do you recall the first time you were
3 contacted by Mr. Lambert with respect to
4 this professional work that you were doing
5 for him?
6   A.   No. Not other than that.
7 Generally, I'll write the job order when he
8 calls or when we're talking. Whether he
9 called me or said I want to come in and meet
10 with you two weeks from now or whether he
11 walked in the door or whatever, I just don't
12 know.
13   Q.   It looks like there's a -- there's
14 some whiteout that you put on next to the
15 file number. I see you wrote a new file
16 number and then you wrote new?
17   A.   This is my secretary's
18 handwriting. In fact, this is not even my
19 handwriting.
20   Q.   Okay.
21   A.   So that probably had something to
22 do with the file and she had written on
23 there the wrong place to file it. She

Page 88

1        If something was done during that
2 period, that three month period -- I can't
3 tell you when the work was done based on
4 this.  But I know sometime in that three
5 month period that work was done.
6        I would assume that that work was
7 done in December because if it had been in
8 October, it would have been invoiced the
9 first of next month.  If it was done in
10 November, it would have been invoiced the
11 first of December.  I'd have to check the
12 time sheets to tell you that for sure.
13    Q.   Okay.
14        MR. GRISTINA:  Mr. Speaks, I don't
15 have any further questions at this time.
16 Mr. Bailey might and I may have some after
17 that.
18 EXAMINATION BY MR. BAILEY:
19    Q.   Mr. Speaks, from a review of
20 Plaintiff's Exhibit 1 related to Gentry Sand
21 and Gravel's Independence pit, according to
22 your records, was Harry Lambert involved in
23 obtaining a permit for the Independence pit?

1    A.    No, sir.

2    Q.    According to Plaintiff's Exhibit
3  2, your file related to Alabama Gravel, the
4  Alabama Gravel pit in Deatsville, do your
5  records reflect that Harry Lambert was
6  involved in getting a permit for the Alabama
7  Gravel pit in Deatsville?

8    A.    No, sir.

9    Q.    According to your records, was the
10 first time that he had any involvement with
11 a notice of violation with regard to that
12 operation would be sometime in July of 2006?

13   A.    Yes, sir.

14   Q.    Looking at Plaintiff's Exhibit 3,
15 the Lambert Materials' Poly pit, was the
16 first time your office was contacted about
17 doing any work on that February the 8th,
18 2006?

19   A.    Yes, sir.

20   Q.    And the card that was given to
21 someone in your office listed Mr. Harry
22 Lambert as a heavy equipment hauling --
23 being in the heavy equipment hauling