# Exhibit X

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE CONCRETE COMPANY, | |
| PLAINTIFF | |
| vs. | CASE NO. 2:05-CV-1026-CSC |
| HARRY E. LAMBERT, CAROL'S CONTRACTING, INC., and ALABAMA GRAVEL, LLC, | |
| DEFENDANTS | |

**SUPPLEMENTAL AFFIDAVIT OF DEFENDANT HARRY E. LAMBERT**

STATE OF ALABAMA  }
}
COUNTY OF MONTGOMERY  }

HARRY LAMBERT, being duly sworn, deposed and says:

30. My name is Harry Lambert. I am over the age of 19 years and hereby supplement my prior affidavit in support of a joint motion for summary judgment for myself and my wife's company: Carol's Contracting, Inc. by reaffirming paragraphs 1-29 of Exhibit A to Doc. 86 and in opposition to the Motion for Summary Judgment filed by TCC---Doc. 114A---by adding the following based upon my knowledge, information and belief:

31. After the non-compete expired January 2, 2006, I became the manager of Lambert Materials LLC "Lambert Materials", which was company formed in

January 2006. At that time, I began the process of trying to acquire property for Lambert Materials suitable for mining.

32. In March 2006, Lambert Materials was able to negotiate a mining lease for property in Macon County. I negotiated that lease for Lambert Materials. None of those negotiations occurred before January 1, 2006.

33. Of course, an ADEM permit is required before any mining operations can begin. After acquiring the lease, Lambert Materials began the process of attempting to obtain a permit to mine the property. I was the one who arranged for that work to take place.

34. ADEM granted Lambert Materials a permit to mine the property sometime in August or September 2006. As manager of Lambert Materials, I determined that the company should wait to acquire equipment until the permit was obtained.

35. Once the permit was obtained I attempted to find investors to try to help pay for the expensive equipment needed to build a sand and gravel pit. Lambert Materials needed investors because it did not have the funds to pay for equipment and Carol and I had already incurred over $100,000 dollars of legal fees defending this suit. Investors were reluctant to participate they said because of Foley's reputation for suing and this suit against me personally.

36. Only recently, have investors and lenders been willing to provide capital to Lambert Materials for the purchase of equipment for a sand and gravel operation.

37. If all goes well, Lambert Materials may be ready to enter the sand and gravel business in this area by the first of May, 2007—which is 16 months after my non-compete expired. I distinctly recall Mr. Gristina, attorney for TCC, representing in open court that if I had honored the non-compete it would take me at least 8 months after the expiration to go back into business. It looks like it will actually take twice that time—partially because of the expense and threat of this lawsuit.

38. It has gotten back to me that Frank Foley has told several people that he "was going to put me out of business when I go back into business." He has told people he is going to break me.

39. As of this date, Lambert Materials has not been able to mine or sell a single load of sand or gravel to anyone.

40. While I was manager of Montgomery Materials LLC. I was never made aware that TCC was lending money to competitors of that company and specifically I was not aware of the loan to Mike Phillips' company until after I was terminated from Montgomery Materials LLC.

41. I have often lent my cell phone to friends and acquaintances whenever my phone had a signal and theirs did not or their batteries were dead and they needed to make a call. The fact that a call is listed on my cell phone record is not proof that I personally made the call.

_____
HARRY E. LAMBERT

SWORN TO and subscribed before me this 3th day of March, 2007.

(Seal)

_____
Notary Public
My Commission Expires: Nov 3, 2010