IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE CONCRETE COMPANY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: 2:05-cv-01026-CSC |
| | * | |
| HARRY E. LAMBERT AND CAROL'S | * | |
| CONTRACTING, INC., | * | |
| | * | |
| Defendants. | * | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff The Concrete Company ("TCC") briefly replies to Defendant Harry Lambert's opposition to TCC's motion for partial summary judgment as follows.

**-- REPLY --**

! *The Length Of The Factual Briefing Supports Summary
Judgment*

TCC acknowledges that collectively, the summary judgment briefs amount to more than 100 pages. The volume of briefing, however, does not suggest a material issue of fact. On the contrary, TCC has gone to great lengths to document the overwhelming indisputable evidence of Lambert's violation of his non-compete. That this took dozens of pages is a reflection of the number of instances Lambert violated the contract and, further, a reflection of why TCC is entitled to summary judgment as to liability on this issue.

! *Lambert Has Failed To Refute The Facts Supporting Summary
Judgment As To Liability*

Lambert's opposition brief is a rehash of the bald generalizations made in his summary

judgment motion.  In summary, he claims that he drove a truck for free, merely answered his friends questions concerning their aggregate operations and did not do anything to harm TCC. He also continues to try to redefine the terms of the non-compete and TCC's business in an effort to circumvent his contractual obligations.  But, no matter how hard Lambert tries, he cannot avoid the *facts*.  During the term and in direct violation of his non-compete, Lambert was integrally involved in the formation of a vertically integrated sand and gravel business for which he and his wife have been handsomely paid.  Lambert can deny this, but he does not and cannot refute this.  His actions, represented by direct and circumstantial evidence – exhaustively detailed in TCC's motion – are indisputable.  The following are just some examples.

**FACT:**  Lambert assisted his wife in forming and operating CCI, received extensive compensation for his efforts and placed himself in a perfect position to take advantage of TCC's temporary supply issue in early 2005.

**FACT:**  The Simcala, Gadsden, Gentry, Hotel and Gunnells Road Meetings.[1]  He cannot explain away or create an issue of fact as to his being the catalyst for and a major participant in these meetings, which he cannot now deny took place.  Nor can he refute the testimony describing the business he conducted and facilitated at these meetings in violation of his non-compete.

**FACT:**  The ADEM Permit Meeting.  It is not clear, but it appears Lambert tries to suggest this meeting did not take place.  Lambert cites Larry Speaks' lack of recollection of that meeting.  ***But, Lambert himself, never denies the meeting took place.***

**FACT:**  Lambert assisted Alabama Gravel in obtaining Globe – an old Montgomery

---

[1]    Defendants have conceded that Lambert was engaged in the sand and gravel business when he attended the ADEM Permit Meeting.  As Defendants state, an ADEM Permit is indicia of engaging in the sand and gravel business.  It is not, however, the only indicia.  All of Lambert's and CCI's other activities are also part of the business.

Materials customer – as a customer via his delivery of product for testing and discussions with Becker at the Deatsville site and elsewhere.

**FACT:**  The Southern Wire documents, Pete Long's statement and Lambert's own telephone records -- all indicating that Lambert was also actively involved in the construction of the Deatsville site both via contractor and equipment supplier recommendations and telephone conversations with contractors and equipment suppliers.

!    *Authority Cited By TCC Supports Summary Judgment*

Lambert states that TCC has cited no "legal authority" in support of its motion.  This is not true.  TCC's has, through its opposition brief and earlier filings, put forth extensive case law supporting enforcement of the non-compete.  There was no reason to re-state these cases in TCC's motion.  Moreover, armed with the facts, TCC has no need to parse cases and contractual terms to prove its case.

!    *TCC Did Not Run Out Of White Oversize*

On page 5, at ¶13(b), of his evidentiary submission [Doc. #116] in opposition to TCC's summary judgment motion, Lambert states that:

> [t]he reason Simcala stopped purchasing from TCC in 2005 was that after telling him [Simcala's Mt. Meigs site manager, William Edward Boardwine] that supplies in 2005 would continue, in late December 2004 and early January 2005 TCC advised him that TCC's white oversize gravel was going to "dry up" and by April 2005, according to TCC, it did.

Lambert repeats this statement that TCC ran out of white oversize gravel in his brief.  He does this because he is trying to suggest that TCC cannot claim damages for something it did not have to sell.  Lambert's problem, however, is that his statement is totally false.  TCC has never run out of white oversize.

Moreover, Lambert's statement is not even supported by the deposition testimony upon which he purports to rely. Lambert cites to – ***but does not quote*** – page 142, line 16, through page 144, line 6, of Boardwine's deposition transcript. That testimony is as follows:

> Q.    Let me ask you some questions about the decision to start buying from Alabama Gravel. Let me – What – As the person who is the site manager for the Simcala plant, what is the reason that Simcala stopped purchasing from the Concrete Company in 2004, if you know?
>
> A.    What are the reasons we stopped purchasing?
>
> Q.    Yes, sir.
>
> A.    We – They couldn't supply us. We met with them there in the fourth quarter – going into the fourth quarter of 2004 and then everything felt fine, you know. The Concrete Company thought the tonnage and everything was okay.
>      Before '05, around the December time frame, is when the Ward – the Phenix City, from what I remember, was going to be okay, but the Ward was – the first six months would be okay.
>      And then sometime, either late December or early January, then the Phenix City – we were still getting ***Phenix City***, but it was told to us from Don Triplett that pretty soon that gravel was going to dry up.
>      And back in April of that year, it was just a few months later, it did. It was producing – I think it was in their ninety-two percent sand or something. So we didn't have a security.
>
> Q.    Where did you get that information that they were running out?
>
> A.    From Don Triplett.
>
> Q.    And who is he?
>
> A.    Don Triplett was our – one of our contacts with the Concrete Company.

*See* Transcript of Deposition of William Edward Boardwine ("Boardwine Tr."), taken January 10, 2007, Exhibit A hereto, at 142.16-144.6 (emphasis added). Boardwine, therefore, did not testify that TCC's white oversize supply was going to dry up or that it ran out. Rather, he was

4

referring to the gravel supply from TCC's Phenix City operation.  This is a huge distinction.

Phenix City did not even supply Simcala *white* oversize, it supplied larger *brown* oversize, and

TCC is not seeking damages for lost sales of brown oversize from Phenix City.[2]

!    *TCC's Overall 2005 Sales Confirm Its Supply Issue In Early 2005 Was Temporary*

On page 22, at ¶27, of his evidentiary submission [Doc. #116] in opposition to TCC's

summary judgment motion, Lambert points out that TCC sold over 24,000 tons of white oversize

from the Ward Pit in 2005 and that this amount was in excess of the 500 tons per month TCC

told Simcala and Globe it could sell in early 2005.  Lambert suggests that this somehow shows

that TCC's sales were unaffected by Alabama Gravel's entry into the market.  *See* Lambert's

Opposition Brief [Doc. No. 115] at p.13, ¶27.  Again, Lambert is wrong.

TCC's overall sales demonstrate that the supply issue in early 2005 was – as represented

to Simcala and Globe – temporary.  Moreover, TCC's would have sold much more than 24,000

tons of white oversize in 2005 as it would have increased production from four to six days a

week to accommodate Simcala had Alabama Gravel not entered the market.  TCC's damages

model, already submitted in opposition to Defendants' summary judgment motions, is

production based.  Simcala and Globe's demand and Simcala's willingness to pay more would

have resulted in sales of all additional white oversize produced as a result of going to six days

production.

---

[2]    Additional Boardwine testimony, that Lambert fails to cite, explains the distinction between the Phenix City and Ward oversize and the fact that Boardwine was speaking about Phenix City oversize running out.  Simcala purchased oversize from both Phenix City and Ward.  *See* Boardwine Tr., Exhibit A, at 27.7-28.1.  Triplett told Boardwine (in a meeting that followed a November 30, 2005 meeting Boardwine had with TCC) that TCC's Phenix City operation would be out of gravel within a few months.  *See id.* at 58.3-64.16.  The chemistry of the Phenix City oversize was not as good as the Ward oversize, but it was blended with Ward oversize because the Phenix City oversize was larger.  *See id.*

Again, Lambert's citation to 2005's overall sales proves that TCC's supply issue was temporary.  It is also worth noting that Lambert's citation to 2005's overall sales also confirms the harm that TCC suffered as a result of Defendants' actions.  Because of Defendants, TCC lost its best customer during the supply issue and the increased sales it would have made.[3]

! ***Lambert's Populist Theme Is Baseless***

As he has done throughout this litigation, Lambert tries to portray a populist theme.  He says he is a victim of TCC and has done nothing but simply try to earn a living.  He claims – without any evidence – that Frank Foley has vowed to put him out of business.  Foley has made no such statements.  Lambert also claims – without any evidence – that this lawsuit is filed for improper anti-competitive purpose.  There is, however, nothing wrong with TCC seeking to enforce its contractual rights.  TCC has no improper purpose here, and the evidence overwhelmingly validates TCC's claims.

! ***It Is Clear Why Lambert Sought To Avoid Discovery***

Lambert asserts that the "Court has been very generous during the discovery phase of this matter" and that "it is clear that TCC's expensive and protracted attempts to prove its claims against Defendant Lambert have fallen well short."  Lambert is simply wrong again.  As evidenced by the extensive deposition testimony and documentary evidence submitted in TCC's summary judgment filings, discovery in this case yielded tremendous amounts of additional evidence proving TCC's case.  That is why Lambert repeatedly sought to block it.

Taking a few examples, discovery obtained after TCC filed its motion for additional discovery in an effort to overcome Defendants' motion to stay, included the depositions of Robert Alexander, Rex Dasinger, Mike Gentry, Ed Boardwine, Dick Wymer and Larry Speaks.

---

[3]     Lambert's citation to 2005 sales is also inconsistent with his above-referenced assertion that TCC ran out of white oversize.  TCC could not possibly have run out of white oversize in April 2005 when it sold 24,000 tons overall in 2005.

Up to that point, TCC had only been allowed to depose Dave Tuten and Harry and Carol Lambert. The Alexander, Dasinger and Gentry depositions provided extensive evidence surrounding the Simcala, Gadsden, Gentry, Hotel and Gunnells Road Meetings – all of which prove Lambert violated the non-compete. Similarly, the Speaks deposition yielded a PAP map bearing Lambert's hand-writing and allowed TCC to provide additional direct evidence of the ADEM Permit Meeting – another blatant violation of the non-compete.

Discovery, therefore, has been fruitful. Unfortunately, however, it may have been unnecessary had Lambert simply acknowledged his activities. This brings up a final point. Lambert suggests the Court has been generous with discovery and implies that TCC has somehow protracted the same. In fact, TCC has simply been afforded its rights as a litigant in our judicial system. Lambert protracted discovery by his refusal to admit his actions.

## -- CONCLUSION --

For the foregoing reasons, as well as for those set forth in TCC's initial brief in support of its summary judgment motion, TCC respectfully submits that its motion for partial summary judgment should be granted in its entirety and that the Court should enter an order granting judgment in its favor as to liability on Count I of the Complaint.

This the 21st day of May, 2007.

s/ Robin G. Laurie
One of the Attorneys for Plaintiff
The Concrete Company

OF COUNSEL:
Robin G. Laurie (ASB-4217-U64R)
G. Lane Knight (ASB-6748-I72K)
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, Alabama 36101
Telephone: (334) 834-6500

Facsimile: (334) 269-3115
rlaurie@balch.com

Thomas F. Gristina
William L. Tucker
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
1111 Bay Avenue, Third Floor, Synovus Centre
Columbus, Georgia  31901

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2007, the foregoing has been electronically

filed with the Clerk of the Court using the CM/ECF system which will send notification of such

filing to the following:

Dennis R. Bailey, Esquire
Rushton, Stakely, Johnston & Garrett
P. O. Box 270
Montgomery, Alabama 36101-0270

s/ Robin G. Laurie
OF COUNSEL